**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| **SOTHINATHAN SINNATHURAI**<br>34 Oak Street<br>Barrie, Ontario L4M 3V4<br>Canada<br><br>– Individually and on Behalf of All Others<br>Similarly Situated –<br><br>                                       **Plaintiff,**<br><br>        **v.**<br><br>**NOVAVAX, INC.**<br>21 Firstfield Road<br>Gaithersburg, MD 20878<br>(Montgomery County)<br><br>**STANLEY C. ERCK**<br>21 Firstfield Road<br>Gaithersburg, MD 20878<br>(Montgomery County)<br><br>**GREGORY F. COVINO**<br>21 Firstfield Road<br>Gaithersburg, MD 20878<br>(Montgomery County)<br><br>**JOHN J. TRIZZINO**<br>21 Firstfield Road<br>Gaithersburg, MD 20878<br>(Montgomery County)<br><br>                                  **Defendants.** | **Case No.**<br><br>      **CLASS ACTION**<br>        **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sothinathan Sinnathurai ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Novavax, Inc. ("Novavax" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Novavax securities between March 2, 2021 and October 19, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Novavax is a biotechnology company that focuses on the discovery, development, and commercialization of vaccines to prevent serious infectious diseases and address health needs. The Company's product candidates include, among others, NVX-CoV2373, which is in development as a vaccine for COVID-19. Prior to the start of the Class Period, Novavax

announced that it planned to complete Emergency Use Authorization ("EUA") submissions for NVX-CoV2373 with the U.S. Food and Drug Administration ("FDA") in the second quarter of 2021.

3. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4. On May 10, 2021, *The Washington Post* reported that Novavax's EUA "filing was delayed by manufacturing regulatory issues, until June at the earliest, according to four people who had recently been briefed on the [C]ompany's plans." Later that day, during after-market hours, on a call that Novavax hosted with investors and analysts to discuss the Company's first quarter 2021 financial and operational results (the "1Q21 Investor Call"), Novavax confirmed that it was unlikely to seek an EUA for NVX-CoV2373 in the U.S. until July 2021 at the earliest— *i.e.*, the third quarter of 2021.

5. Following publication of *The Washington Post* article, Novavax's stock price fell $15.50 per share, or 8.81%, to close at $160.50 per share on May 10, 2021. Moreover, following the Company's 1Q21 Investor Call, Novavax's stock price continued to fall an additional $22.32 per share, or 13.91%, to close at $138.18 per share on May 11, 2021.

6.     Then, on August 5, 2021, Novavax issued a press release reporting its financial results and operational highlights for the second quarter of 2021.  Among other news, Novavax reported that it expected to file for NVX-CoV2373's EUA in the fourth quarter of 2021, rather than the third quarter of 2021.

7.     On this news, Novavax's stock price fell $46.31 per share, or 19.61%, to close at $189.89 per share on August 6, 2021.

8.     Finally, on October 19, 2021, *Politico* published an article entitled "'They rushed the process': Vaccine maker's woes hamper global inoculation campaign".  The *Politico* article reported, in relevant part, that Novavax "faces significant hurdles in proving it can manufacture a shot that meets regulators' quality standards" with respect to NVX-CoV2373.  The *Politico* article cited anonymous sources as stating that Novavax's "issues are more concerning than previously understood" and that the Company could take until the end of 2022 to resolve its manufacturing issues and win regulatory authorizations and approvals.

9.     On this news, Novavax's stock price fell $23.69 per share, or 14.76%, to close at $136.86 per share on October 20, 2021.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Novavax is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Novavax securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Novavax is a Delaware corporation with principal executive offices located at 21 Firstfield Road, Gaithersburg, Maryland 20878.  Novavax's common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "NVAX".

17.     Defendant Stanley C. Erck ("Erck") has served as Novavax's President, Chief Executive Officer, and a Director of the Company at all relevant times.

18.     Defendant Gregory F. Covino ("Covino") served as Novavax's Chief Financial Officer ("CFO"), Treasurer, and an Executive Vice President ("EVP") of the Company from before the start of the Class Period until April 12, 2021.

19.     Defendant John J. Trizzino ("Trizzino") served as Novavax's Interim CFO from April 12, 2021 to August 16, 2021.  Trizzino also serves as the Company's Chief Commercial Officer, Chief Business Officer, and an EVP of the Company.

20.     Defendants Erck, Covino, and Trizzino are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Novavax's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Novavax's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Novavax, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Novavax and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Novavax is a biotechnology company that focuses on the discovery, development, and commercialization of vaccines to prevent serious infectious diseases and address health needs.  The Company's product candidates include, among others, NVX-CoV2373, which is in development as a vaccine for COVID-19.

**Materially False and Misleading Statements Issued During the Class Period**

24.     The Class Period begins on March 2, 2021, the day after Novavax issued a press release, during after-market hours, announcing its fourth quarter and full year 2020 financial results and operational highlights (the "4Q/FY20 Press Release"). That press release stated, in relevant part, that Novavax "[e]ngaged in ongoing dialogue with [the FDA] . . . with potential for EUA filing in the second quarter of 2021"; that Novavax "[i]ncreased projected global manufacturing capacity to over 2 billion annualized doses when at full-capacity, expected to occur in mid-2021[,]" with "[a]pproximately one billion doses to be manufactured by Serum Institute of India Private Limited (SIIPL)"; that Novavax "[c]ompleted collaborations for global manufacturing, commercialization and distribution of NVX-CoV2373"; and that the Company "[s]ecured agreements for approximately 200 million doses of NVX-CoV2373[.]"

25.     The 4Q/FY20 Press Release also quoted Defendant Erck, who stated, in relevant part, that "Novavax continues to make significant strides towards bringing NVX-CoV2373 . . . to market"; that "[w]e believe [NVX-CoV2373's] attributes support [EUA] and have initiated dialogue with regulators to pursue appropriate regulatory authorization"; that "we have secured agreements for the delivery of approximately 300 million doses of NVX-CoV2373"; that "we are proud to partner with the Serum Institute of India to jointly supply 1.1 billion doses of NVX-CoV2373 to Gavi through the COVAX Facility"; and that "[w]e continue to work tirelessly to make final commercial preparations in advance of delivering our product across the globe."

26.     Also on March 1, 2021, during after-market hours, Novavax filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for quarter and year ended December 31, 2020 (the "2020 10-K"). The 2020 10-K stated: "We . . . plan to

file submissions for [EUA] with the FDA and expect to complete our EUA filing in the second quarter of 2021."

27. The 2020 10-K also stated, in relevant part, that "[w]ith respect to the global manufacturing and supply of NVX-CoV2373, we have secured manufacturing for our antigen component and Matrix-M adjuvant, as well as secured fill / finish activities for NVX-CoV2373 at several sites globally"; that "[t]hrough our various manufacturing partnerships, we expect our projected global manufacturing production rate of NVX-CoV2373 to be over two billion doses annually when we are at full capacity, which we expect to occur in mid-2021"; and that "[t]hese additional partnerships will further increase our production capacity and are expected to support a rapid roll-out of NVX-CoV2373 globally."

28. Additionally, the 2020 10-K stated that "we anticipate bringing our NVXCoV2373 vaccine candidate to market following global regulatory approvals which, if achieved, should significantly impact revenue"; that, "[i]n anticipation, we have entered into various APAs [advance purchase agreements] with government customers that are expected to result in the delivery of approximately 200 million doses of NVX-CoV2373 throughout 2021 and into the first half of 2022"; and that "[w]e also entered into multiple supply and license agreements with strategic partners to supply NVX-CoV2373 in their specified territories under which we are entitled to receive royalty revenue from the sale of NVX-CoV2373 by such partners."

29. Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Erck and Covino certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended[,]" and that "[t]he information contained in the [2020 10-K]

fairly presents, in all material respects, the financial condition and results of operations of the Company for the dates and periods covered by th[e 2020 10-K]."

30. The statements referenced in ¶¶ 24-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

31. On May 10, 2021, *The Washington Post* reported that Novavax's EUA "filing was delayed by manufacturing regulatory issues, until June at the earliest, according to four people who had recently been briefed on the [C]ompany's plans." Specifically, *The Washington Post* reported that "[t]he delay is due in part to a regulatory manufacturing issue related to an assay," according to the people briefed on the trial status, which "are tests used throughout the manufacturing process to check the contents and quality of vaccines."

32. Later that day, during after-market hours, on the Company's 1Q21 Investor Call, Novavax confirmed that it was unlikely to seek EUA for NVX-CoV2373 in the U.S. until July 2021 at the earliest—*i.e.*, the third quarter of 2021.

33. Following publication of *The Washington Post* article, Novavax's stock price fell $15.50 per share, or 8.81%, to close at $160.50 per share on May 10, 2021. Moreover, following

the Company's 1Q21 Investor Call, Novavax's stock price continued to fall an additional $22.32 per share, or 13.91%, to close at $138.18 per share on May 11, 2021. Despite these declines in the Company's stock price, Novavax securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding NVX-CoV2373's EUA regulatory timeline, as well as Novavax's manufacturing capabilities and manufacturing issues that were likely to impact the approval timeline for NVX-CoV2373.

34. For example, also on May 10, 2021, during after-market hours, Novavax issued a press release reporting the Company's first quarter 2021 financial results and operational highlights (the "1Q21 Press Release"). That press release stated, in relevant part, that Novavax "[s]ecured additional manufacturing capacity for NVX-CoV2373 globally, with continued progress toward achieving full manufacturing capacity"; that Novavax's "[a]nticipated capacity [is] revised to 100 million doses per month by the end of the third quarter of 2021, with remainder of capacity expected to come online in the fourth quarter to support 150 million doses per month"; that "Novavax [is] to manufacture and distribute 350 million doses to participants of the COVAX Facility"; that Novavax "[p]rogressed regulatory processes for authorization of NVX-CoV2373 with multiple regulatory agencies globally"; and that Novavax "[i]ntend[s] to file for authorization with the [FDA] . . . in the third quarter of 2021[.]"

35. The 1Q21 Press Release also quoted Defendant Erck, who stated that "Novavax made great strides over the first quarter to pave the path for our COVID-19 vaccine candidate, NVX-CoV2373"; that, "[i]n parallel, we have secured additional manufacturing and supply agreements, expanding our global supply chain to over 10 countries"; that, "[i]n the coming months, we look forward to delivering on critical milestones, including [*inter alia*] . . . completing

our regulatory submissions"; and that, "[a]s we continue our dialogue with regulatory authorities for authorization, we remain committed to promptly delivering our vaccine globally, ensuring equitable access and expansive distribution."

36.     That same day, also during after-market hours, Novavax filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q"). The 1Q21 10-Q stated, in relevant part, that "[a]s of May 2021, we continue to work to complete various CMC [chemistry, manufacturing, and controls] requirements, which ensure that our manufacturing processes are in accordance with regulatory standards"; and that "[w]e plan to file submissions for [EUA] with the FDA and aim to complete our EUA filing [for NVX-CoV2373] in the third quarter of 2021."

37.     With respect to Novavax's manufacturing capabilities for NVX-CoV2373, the 1Q21 10-Q stated, in relevant part, that "[w]e have established a global manufacturing and supply chain to support the commercialization of NVX-CoV2373"; that "[w]ith significant progress made throughout 2020 and through the first quarter of 2021, our global supply chain now spans over 10 countries and includes Novavax owned facilities in the Czech Republic and Sweden, as well as partnerships with contract manufacturing organizations around the world"; that "[i]n the first quarter of 2021, we took additional steps to expand our global supply chain and ready our company for commercialization[,]" which "included securing additional manufacturing capacity for NVX-CoV2373, as well as furthering existing collaborations with manufacturing partners globally"; and that, "[i]n the quarter, we also continued to advance CMC activities[,]" including "ongoing analytical testing and product characterization, as well as the qualification and validation of assays needed to demonstrate process consistency across our network of manufacturing facilities."

38.     The 1Q21 10-Q further assured investors that "we expect our global manufacturing capacity of NVX-CoV2373 to be approximately 100 million doses per month by the end of the third quarter of 2021"; that "[w]e anticipate the remainder of our manufacturing capacity will come online in the fourth quarter of 2021, which we expect will support total global manufacturing capacity of approximately 150 million doses per month"; that, "[i]n April 2021, our Base Agreement and a Project Agreement (together, the 'OWS Agreement') . . . was amended to fully fund the agreement up to $1.75 billion to support certain activities related to the development of NVX-CoV2373[,]" including "the manufacture and delivery of 100 million doses of NVX-CoV2373 to the U.S. government"; and that "[w]e expect this funding will assist in rapidly developing our large-scale manufacturing capacity and transitioning into ongoing production, including the capability to stockpile and distribute large quantities of NVX-CoV2373 for use in clinical trials and potentially for commercial sale, if authorized for emergency use or licensed."

39.     Appended as exhibits to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by Defendants Erck and Trizzino.

40.     The statements referenced in ¶¶ 32 and 34-39 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory

and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

41.     On August 5, 2021, Novavax issued a press release reporting its second quarter 2021 financial results and operational highlights (the "2Q21 Press Release").  Among other news, Novavax reported that it "[e]xpect[s] to submit for [EUA] to the [FDA for NVX-CoV2373] in the fourth quarter of 2021[,]" rather than the third quarter of 2021.

42.     On this news, Novavax's stock price fell $46.31 per share, or 19.61%, to close at $189.89 per share on August 6, 2021.  Despite this decline in the Company's stock price, Novavax securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding NVX-CoV2373's EUA regulatory timeline, as well as Novavax's manufacturing capabilities and manufacturing issues that were likely to affect the approval timeline for NVX-CoV2373.

43.     For example, the 2Q21 Press Release stated, *inter alia*, that Novavax "[c]ollaborated with partners globally to progress toward anticipated manufacturing capacity" and that Novavax is "[o]n track to achieve capacity of 100 million doses per month by the end of the third quarter of 2021 and 150 million doses per month by the end of the fourth quarter 2021[.]"

44.     The 2Q21 Press Release also quoted Defendant Erck, who stated, in relevant part, that "[w]e are highly encouraged by the filing of regulatory submissions in multiple markets, made in partnership with Serum Institute of India[,]" and that "[w]e view these submissions as the first of many filings to come, which will allow NVX-CoV2373 to be made available at a global scale[.]"

45.     Also on August 5, 2021, during after-market hours, Novavax filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for

the quarter ended June 30, 2021 (the "2Q21 10-Q"). The 2Q21 10-Q stated, *inter alia*, that "[a]s of August 2021, we continue to work to complete various Chemistry, Manufacturing and Controls ('CMC') requirements, which ensure that our manufacturing processes are in accordance with regulatory standards"; that "[f]unding under the OWS Agreement is expected to support our plans to file submissions for EUA and licensure with the FDA"; that "[t]he U.S. government has recently instructed us to prioritize alignment with the FDA on our analytic methods before conducting additional U.S. manufacturing"; and that "[t]he U.S. government also instructed us to proceed with work under the OWS Agreement related to all other activities including [*inter alia*] . . . regulatory interactions, analytics/assays and characterization of manufactured vaccine and project management."

46.     With respect to Novavax's manufacturing capabilities for NVX-CoV2373, the 2Q20 10-Q stated, in relevant part, that "[w]e have established a global manufacturing and supply chain to support the commercialization of NVX-CoV2373"; that "[w]ith significant progress made throughout 2020 and through the second quarter of 2021, our global supply chain spans over ten countries and includes Novavax-owned facilities in the Czech Republic and Sweden, as well as partnerships with contract manufacturing organizations around the world"; that, "[i]n the second quarter of 2021, we remained focused on readying our global supply chain for commercialization in order to ensure we promptly deliver NXV-CoV2373 upon anticipated regulatory authorizations"; that "[w]e expect our global manufacturing capacity of NVX-CoV2373 to be approximately 100 million doses per month by the end of the third quarter of 2021"; and that "[w]e anticipate the remainder of our manufacturing capacity will be ready by the end of the fourth quarter of 2021, which we expect will support total global manufacturing capacity of approximately 150 million doses per month."

47.     Appended as exhibits to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by Defendants Erck and Trizzino.

48.     The statements referenced in ¶¶ 41 and 43-47 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Fully Emerges

49.     On October 19, 2021, *Politico* published an article entitled "'They rushed the process': Vaccine maker's woes hamper global inoculation campaign".  The *Politico* article reported that Novavax "faces significant hurdles in proving it can manufacture a shot that meets regulators' quality standards" with respect to NVX-CoV2373.  The *Politico* article also cited anonymous sources as stating that Novavax's "issues are more concerning than previously understood" and that the Company could take until the end of 2022 to resolve its manufacturing issues and win regulatory authorizations and approvals.

50.     Specifically, the *Politico* article reported that Novavax's "delay, which was confirmed by three other people familiar with the discussions between Maryland-based Novavax and the Biden administration, represents a major setback in the effort to vaccinate the world in the wake of new, more transmissible variants."  For example, according to the *Politico* article, the

Company "has consistently run into production problems[,]" including "[t]he methods it used to test the purity of the vaccine[,]" which "have fallen short of regulators' standards" as Novavax "has not been able to prove that it can produce a shot that is consistently up to snuff, according to multiple people familiar with Novavax's difficulties."

51.     The *Politico* article also reported that "[a]lthough Novavax recently attested to some of its analytics and testing issues in a quarterly filing with the [SEC], the [C]ompany's issues are more concerning than previously understood, according to two of the people with direct knowledge of the matter."  For example, while "it is generally understood that each [COVID-19] vaccine batch should reach at least 90 percent" in terms of purity levels, Novavax "has struggled to attain anywhere close to that, one of the people with direct knowledge of the situation said[,]" and, according to "[a]nother person familiar with the [C]ompany's manufacturing process[,]" the Company "has recently shown purity levels hovering around 70 percent."

52.     Moreover, the *Politico* article revealed that Novavax's manufacturing issues were so severe that they strained global COVID-19 vaccination efforts.  For example, with respect to the COVID-19 Vaccines Global Access initiative, also known as COVAX, the *Politico* article found that "[t]he global coalition is already behind on hundreds of millions of planned doses this month" and "is now also at risk of missing its already downgraded 2021 target."  The *Politico* article also quoted the director of the Duke Global Health Innovation Center, who stated: "COVAX continues to be challenged for adequate supply . . . in that context, Novavax's manufacturing challenges and delays have been massively disruptive[.]"

53.     The *Politico* article also found that Novavax was already aware of specific concerns with NVX-CoV2373's manufacturing process, stating that "senior Trump administration officials on Operation Warp Speed . . . repeatedly warned the [C]ompany that it

risked running into problems in scaling up manufacturing of the shot, two people with direct knowledge of those discussions said"; that, "[i]n particular, they worried that Novavax would have difficulty ensuring that the vaccine consistently met the FDA's rigorous quality standards once the vaccine went into mass production — the exact problem that has now stymied the company for months"; and that Novavax "rushed the process" and "can't make" the vaccine, according to one of the people with knowledge of the matter.

54.     Finally, the *Politico* article revealed that, even as Defendants repeatedly downplayed NVX-CoV2373's manufacturing issues, the U.S. government's confidence in Novavax's ability to successfully manufacture the drug had waned. For example, the *Politico* article stated, *inter alia*:

> U.S. officials working with the [C]ompany are not as confident [as Novavax is in its manufacturing capabilities], according to three people with knowledge of the matter. Novavax's manufacturing problems are seen as far more difficult to fix than the sanitary and design concerns that halted production of J&J's vaccine at the Emergent plant earlier this year, those people said.
>
> And even as the [C]ompany begins to seek regulatory approval in other countries, there remains doubt in the U.S. that it has solved the fundamental vaccine purity flaws that the people with knowledge said have affected its ability to make doses at plants around the world.
>
> Several vaccine batches have already been discarded, and four people with knowledge of the matter say U.S. officials now no longer expect the [C]ompany to win FDA sign-off on the vaccine until next year at the earliest.
>
> "At some level, I think the efficacy was never going to outweigh the risk associated with the impurity that was in there," said one of the people with knowledge of the matter. "I'm not surprised this is where we are."

55.     On this news, Novavax's stock price fell $23.69 per share, or 14.76%, to close at $136.86 per share on October 20, 2021.

56.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Novavax securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Novavax securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Novavax or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Novavax;

- whether the Individual Defendants caused Novavax to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Novavax securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

63.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Novavax securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Novavax securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

64.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

68.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Novavax securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Novavax securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Novavax securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Novavax's finances and business prospects.

70.     By virtue of their positions at Novavax, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Novavax, the Individual Defendants had knowledge of the details of Novavax's internal affairs.

72.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Novavax. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Novavax's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Novavax securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Novavax's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Novavax securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

73. During the Class Period, Novavax securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Novavax securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Novavax securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Novavax securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

74. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

<h1 style="text-align:center">COUNT II</h1>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

76.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     During the Class Period, the Individual Defendants participated in the operation and management of Novavax, and conducted and participated, directly and indirectly, in the conduct of Novavax's business affairs.  Because of their senior positions, they knew the adverse non-public information about Novavax's misstatement of income and expenses and false financial statements.

78.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Novavax's financial condition and results of operations, and to correct promptly any public statements issued by Novavax which had become materially false or misleading.

79.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Novavax disseminated in the marketplace during the Class Period concerning Novavax's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Novavax to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Novavax within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Novavax securities.

80.     Each of the Individual Defendants, therefore, acted as a controlling person of Novavax.  By reason of their senior management positions and/or being directors of Novavax,

each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Novavax to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Novavax and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

81. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Novavax.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  November 12, 2021

Respectfully submitted,

/s/ Daniel S. Sommers
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
**COHEN MILSTEIN SELLERS &**
    **TOLL PLLC**
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email:  stoll@cohenmilstein.com
        dsommers@cohenmilstein.com
        dbunch@cohenmilstein.com

*Liaison Counsel for Plaintiff*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        ahood@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I,   *Sothinathan   Sinnathurai*_____,

make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Novavax, Inc. ("Novavax" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Novavax securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Novavax securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Novavax securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed _Oct 22/2021_____
                **(Date)**


                                _____
                                          **(Signature)**


                                *Sothinathan Sinnathurai*_____
                                          **(Type or Print Name)**

**Novavax, Inc. (NVAX)**                                      **Sinnathurai, Sothinathan**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 10/7/2021 | 24 | $163.2590 |
| Purchase | 10/15/2021 | 25 | $169.0000 |
| Purchase | 10/19/2021 | 10 | $161.8100 |
| Sale | 10/14/2021 | (24) | $172.0000 |