# EXHIBIT D

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

-ooOoo-

SOTHINATHAN SINNATHURAI,   :
Individually and on
Behalf of All Others     :
Similarly Situated,

                         :

         Plaintiffs,         Civil Action No.
                         :     TDC-21-2910

vs.

                         :

NOVAVAX, INC., et al.,

                         :

         Defendants.

_____

VIDEO-CONFERENCED VIDEO RECORDED
DEPOSITION OF DAVID TRUONG
TAKEN THROUGH
VERITEXT

Taken on Wednesday, August 30, 2023
1:12 p.m. to 4:09 p.m.

Reported by:  Abigail D.W. Johnson, RPR, CRR, CRC

Page 2

A P P E A R A N C E S

For DAVID TRUONG and LEAD PLAINTIFFS:

David Schwartz
LABATON SUCHAROW LLP
300 Delaware Avenue
Suite 1340
Wilmington, Delaware 19801
Pleggio@labaton.com
(302) 573-2540

AND

James T. Christie
Michael H. Rogers
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Jchristie@labaton.com
Mrogers@labaton.com
(212) 907-0781

For JEFFREY GABBERT AND NUGGEHALLI NANDKUMAR:

Brian Calandra
POMERANTZ LLP
600 333rd Avenue
New York, New York 10016
Bcalandra@pomlaw.com
(212) 661-110

For the Defendants:

C. Thomas Brown

ROPES & GRAY

1211 Avenue of the Americas

New York, New York 10036-8704

Thomas.Brown@ropesgray.com

(212) 596-9812


AND


J. William (Will) Piereson

ROPES & GRAY

Prudential Tower

Boston, Massachusetts 02199-3600

Will.Piereson@ropesgray.com

(617) 951-7427

AND

Eileen M. Falk

ROPES & GRAY

2099 Pennsylvania Avenue, NW

Washington, District of Columbia 20006-6807

Eileen.Falk@ropesgray.com

(202) 508-4721


Also Present:              Andrea Francis (videographer)

-ooOoo-

Page 4

I N D E X

EXAMINATIONS                                                PAGE
 Examination By Mr. Brown.............................  7
 Examination By Mr. Schwartz......................... 108


              E X H I B I T S

 EXHIBIT NO.             DESCRIPTION                   PAGE
    Exhibit 1    Motion of David Truong for ........... 49
                Appointment as Lead Plaintiff and
                Approval of Selection of Lead
                Counsel

    Exhibit 2    Exhibit A............................. 50

    Exhibit 3    Exhibit B............................. 54

    Exhibit 4    Exhibit D............................. 56

    Exhibit 5    Plaintiffs' Memorandum of Law in ..... 60
                Support of Motion for Class
                Certification and Appointment of
                Class Representatives and Class
                Counsel

    Exhibit 6    Declaration of Brian Calandra in ..... 62
                Support of Plaintiffs' Motion for
                Class Certification and Appointment
                of Class Representatives and Class
                Counsel

    Exhibit 7    Exhibit D............................. 64

    Exhibit 8    March 2021 Robinhood Statement ....... 69
                [NOVAVAX_TRUONG_00000162-00000278]
    Exhibit 9    April 2021 Robinhood Statement ....... 75
                [NOVAVAX_TRUONG_00000001-00000035]

    Exhibit 10   May 2021 Robinhood Statement ......... 76
                [NOVAVAX_TRUONG_00000279-00000322]
    Exhibit 11   June 2021 Robinhood Statement ........ 85
                [NOVAVAX_TRUONG_00000126-00000161]

Page 5

Exhibit 12    July 2021 Robinhood Statement ........ 87
              [NOVAVAX_TRUONG_00000099-00000125]

Exhibit 13    August 2021 Robinhood Statement ...... 91
              [NOVAVAX_TRUONG_00000036-00000098]
              August 2021 Robinhood Statement ...... 91
              [NOVAVAX_TRUONG_00000036-00000098]

Exhibit 14    September 2021 Robinhood Statement ... 95
              [NOVAVAX_TRUONG_00000565-00000738]

Exhibit 15    October 2021 Robinhood Statement .....102
              [NOVAVAX_TRUONG_00000323-00000564]

Exhibit 16    Lead Plaintiff David Truong's.........106
              Notice of Errata

                        -o0o-

Page 6

August 30, 2023                                    1:12 p.m.

                    P R O C E E D I N G S

                          -o0o-

          VIDEOGRAPHER:  Good afternoon.  We are going on the record at 1:12 p.m. Mountain Time on August 30th, 2023.

          Please note that this deposition is being conducted virtually.  Quality of recording depends on quality of camera and internet connection of all participants.  What is seen from the witness and heard on screen is what will be recorded.

          Audio and video recording will continue to take place unless all parties agree to go off the record.

          This is the video recorded deposition of David Truong in the matter of Sothinathan Sinnathurai et al. versus Novavax, Inc. et al.

          This deposition is being conducted remotely through Zoom video conferencing.  My name is Andrea Francis representing Veritext.  I am the videographer for today.

          At this time, can all counsel present please state their appearances for the record along with who they represent.

          MR. BROWN:  Thomas Brown of Ropes & Gray on

Page 7

behalf of Defendants, Novavax, the individual defendants, and with me are my colleagues, William Piereson and Eileen Falk.

MR. SCHWARTZ:  David Schwartz with Labaton on behalf of the lead plaintiff, David Truong.  My colleagues with me are Mike Rogers and James Christie, also with Labaton.

MR. ROGERS:  Michael Rogers, also Labaton, on behalf of the witness and the class.

VIDEOGRAPHER:  Is that everybody?

MR. CHRISTIE:  Yeah, David spoke for me. So I think that will --

VIDEOGRAPHER:  Okay.  Great.  The court reporter is Abby Johnson.  You may now swear in the witness and then counsel may proceed.

Thereupon --

DAVID TRUONG,

was called as a witness, and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, testified as follows:

EXAMINATION

BY MR. BROWN:

Q.   Good afternoon, Mr. Truong.  Thanks for joining us here today.  My name is Thomas Brown.  As you heard, I represent Novavax and the individual

Page 8

defendants in this case.  I'll be asking you some questions.  I'll be doing my best to speak clearly and in an understandable fashion.  But if you have any trouble, just let me know and I'll repeat or rephrase as necessary.

Recall that the most important person in the virtual room is our court reporter.  So we need to speak clearly and reasonably slowly so she can get down everything that we say.  She's typing everything that we say word-for-word.  And so if you would please let me finish my questions before you answer.  And I'll do my best to let you finish as well.  She can't get both of us typing -- talking on top of each other.

And please, answers need to be verbal.  You know, "yes," "no," or a statement.  Nods or sounds like "uh-huh" or "huh-uh" don't really come through on the transcript and don't make a clear record.

And if there's any time that you need a break, I'm happy to do that.  The only thing is if there's a pending question, you'll need to answer the question before we can go on break.  As the normal process so far, we've been trying to do those about every hour.  I'll do my best to keep things moving along here.  I know we are starting in the afternoon and everyone wants to be done as quickly as we can.

Page 9

So I need to get through what I need to get through, but we'll try and move along as efficiently as possible.

And your attorneys may, at some points, object to the question.  You need to answer the question unless they give you an explicit instruction not to.  They'll put their objection on the record, and then we sort through those objections later.  So absent a direct instruction, if you would please answer the questions.

Is that clear?  Any questions about the -- about the ground rules here?

A.    It's clear.

Q.    Great.  If you could, please, state your full name and home address for the record.

A.    David Truong, 818 Sandhurst Drive, Salt Lake City, Utah 84103.

Q.    And is that address where you're sitting at this moment now, sir?

A.    It is.

Q.    Okay.  Have you ever been deposed before?

A.    No.

Q.    Have you ever given testimony at a court trial before?

A.    No.

Page 10

Q.    What about at an arbitration?

A.    No.

Q.    If called, are you prepared to appear and testify at the trial of this matter?

A.    Yes.

Q.    What did you do to prepare for your deposition today?

A.    I talked to my attorneys yesterday.  We had a discussion.

Q.    Yeah.  And please don't tell me anything of what you actually discussed with them, but was -- was it just that one discussion that you had to prepare for this deposition?

A.    Yes.

Q.    And about -- was that in-person, Zoom, telephone or some other method?

A.    Zoom.

Q.    Okay.  And approximately how long did that conversation last?

A.    Probably one hour.

Q.    Okay.  And who, besides yourself, was on that conversation?

A.    David Schwartz and Jim Christie.

Q.    Okay.  Independent of that discussion that you had with Mr. Schwartz and Mr. Christie, did you do

any review of documents or other materials, yourself, to prepare for your deposition?

A.   Yes, I did.

Q.   What did you do?

A.   I had the folder of the complaints, and I read through the complaints again.

Q.   Anything else, besides the complaint, that you recall reviewing?

A.   There's some other documents, certification.

Q.   Okay.  Certification that you had provided?

A.   It's not from -- yes.  The certification that I have provided, yes.

Q.   Okay.  Aside from your attorneys, have you spoken to any other person about your deposition today?

A.   No.

Q.   If you could please summarize your post-high school education.

A.   I -- I graduated from the University of Pacific [sic] in California.

Q.   Mm-hmm.

A.   I have a BA in marketing.  That is about it for the education.

Q.   What year did you graduate from the University of the Pacific?

A.    19- -- so I attended 1993 to 1997.

Q.    Okay.  And your graduation was in 1997?

A.    Yes.

Q.    Okay.  Do you hold any professional licenses?

A.    I -- I have a general contractor license in Salt Lake City, Utah.  I'm a -- I'm a real estate developer.

Q.    Do you hold a real estate brokerage license?

A.    I don't.

Q.    Okay.  Do you hold any certifications in financial planning or investing?

A.    I don't.

Q.    Have you ever taken any courses on financial planning or investing?

A.    Just in school.

Q.    By "school," are you referring to your time at the University of the Pacific?

A.    Yes.

Q.    Okay.  And what is your current employment, if any?

A.    I'm president of a real estate development company under the name of Truongs Properties.

Q.    This is a company that you founded?

A.    Yes.

Q.    And what, in general, what types of development activities does your company undertake?

A.    We mainly do townhomes.

Q.    Is that largely in the Salt Lake City area?

A.    It's strictly in the Salt Lake area.

Q.    And are -- and you're the owner of the company?

A.    I am.

Q.    Are you the only owner or are there other investors?

A.    I am the only owner.

Q.    What -- in general, as the head of your development company, what would you consider to be your primary responsibilities?

A.    I do land acquisition and entitlement.

Q.    Is the trading of securities part of the work that you do as a developer or is that separate?

A.    That's separate.

Q.    Okay.  Has your company ever been the subject of an investigation by a state or local regulator?

A.    No.

Q.    Has your company ever been the plaintiff or defendant in a litigation matter?

Page 14

A.    No.

Q.    Have you personally ever been the plaintiff or defendant in a litigation matter, aside from the matter here today?

A.    No.

Q.    What year did you found the company?

A.    About six, seven years ago.

Q.    Okay.  And what about -- sorry?

A.    2- --

Q.    Sorry, I cut you off.

A.    2015, '16.

Q.    And prior to founding your development company in 2015, what -- what did you do for work?

A.    I was the president of a franchise called DaVi Nails, D-a-V-i Nails.  We have over 450 location [sic] inside Walmart.  And I -- so it's still -- the company is still currently running.  I just stepped down as the president.  And my wife is -- is -- is looking over the company.

Q.    Okay.  Do you or your wife have an ownership stake in that company?

A.    Yes.

Q.    Okay.  And is it -- is it a majority ownership stake?

A.    Yes.

Page 15

Q.    Aside from your development company and the DaVi nail company that your wife runs now, do you have an ownership interest in any other companies, setting aside securities trading?

A.    There are many other sister companies to do business underneath DaVi Nails.  It's just smaller companies.  For example, the supplies company to sell to DaVi Nails, we have -- we have ownership in that supply company.

Q.    Okay.

A.    I own -- I own a different construction company to do construction for the Truong Developments as well.

Q.    Now, let me focus now on the question of management as opposed to ownership.

Are you involved in the management of any other companies besides the family of companies with your -- you and your wife's nail business and your development business?

A.    I do.  We actively manage other companies as well.

Q.    Okay.  What other companies do you actively manage?

A.    I manage the M Building [phonetic], which is the sister company for DaVis.  It's a supplier for

all the nails, beauty supplies.  I actively manage Tru
Construction, T-r-u, Tru Construction -- Tru
Construction doing general contractor for Truong
Properties.  I also manage an architecture firm, which
is -- do [sic] architecture and design work for Truong
Properties.

Q.   Are -- are you, yourself, a licensed
architect?

A.   I am not.

Q.   Okay.  You have licensed architects that
work for you as part of the architecture business?

A.   My 50-percent partner is an architect.
That is the partner.  That's our partner.

Q.   When you say "50-percent partner," do you
mean in the architecture business itself?

A.   In the architecture business.

Q.   Okay.  Not in the overall development
company?

A.   Not in the overall, no.

Q.   Understood.

Other than this case that we're involved in
now, this securities lawsuit, have you ever been
involved in any other securities fraud lawsuits?

A.   No.

Q.   Okay.  What are the names or the name of

the law firm or firms that represent you in this case?

A.    In this case?

Q.    Yes, sir.

A.    Labaton.

Q.    And has Labaton been the only firm that's represented you as you've been participating in this case?

A.    I believe Labaton has a partner in this case as well.  I can't recall the name.

Q.    Okay.  But your -- your attorney-client relationship is with the Labaton firm?

A.    With the Labaton firm.

Q.    Okay.  Is there someone at the Labaton firm that you consider to be your lead lawyer in this case?

A.    Yes.

Q.    And who would that be?

A.    David Schwartz.

Q.    In connection with this case, have you had any interactions with -- and again, don't reveal the contents of them -- but just have you had any interactions with lawyers other than the folks at the Labaton firm?

A.    No.

Q.    Okay.  Are you familiar with the concept of a monitoring agreement?

A.     No.

Q.     Okay.  So you're not a party to a monitoring agreement that you're aware of?

A.     I don't know what that is.

Q.     Okay.  Are you being compensated at all for your time here today, sir?

A.     No.

Q.     Are you being compensated at all for your service as the lead plaintiff in this case?

A.     No.

Q.     Other than any recovery that may be obtained pro rata on behalf of the class, do you expect to obtain any compensation for your service as lead plaintiff?

A.     No.

Q.     What's your understanding of what it means for a case to proceed as a class action?

A.     My understanding is you have to have enough witness [sic] and enough people to join the case.

Q.     Were you familiar with the class action prior to your participation in this case?

A.     I heard of it before, yes.

Q.     Okay.  Do you recall what context you had heard of it before?

A.     You mean about this case or the

Page 19

understanding of a class action?

Q.    The understanding, generally, of a class action, yes.

A.    Yeah, the understanding of a general class action, I do.  I understand what it is.

Q.    Okay.  And how did you first become aware of what a class action or do you believe you became aware of what a class action is?

A.    Well, I believe I got included in a few emails.  I believe it was AVIS Car Rental.

Q.    Mm-hmm.

A.    And it was on the credit monitor, I believe, with Experian, also.  And I think I got paid five or six bucks out of that.

Q.    Do you have any understanding, other than what you already articulated, about what a class action is, about what the particular requirements are that have to be met in order for a case to proceed as a class action?

A.    Yeah.  That's -- that's pretty much all I understand is -- that I explained it.  It's -- you've got to have enough victims and witnesses.

Q.    Do you have an understanding of the meaning of the term "class period"?

A.    I don't.

                                                                  Page 20

        Q.    Okay.  With respect to this particular

case, do you have an understanding of a -- of a

particular time period that the claims cover?

        A.    I believe so, yes.

        Q.    And what is your understanding of that time

period?

        A.    I believe the case was filed when -- April

of 2021 --

        Q.    Mm-hmm.

        A.    -- to October or November of 2021.  So, if

that's what you are asking, that was the time period.

        Q.    When you say the -- "the time period," are

you referring to the time period of -- of trades that

might be at issue --

        A.    Yes.

        Q.    -- or the time period of the filing?  Okay.

Just to make sure we are --

        A.    The time period of the trading issue.

        Q.    Okay.

              Do you have an understanding of what -- of

any particular event or events that are considered to

be the beginning or trigger of the time frame that

defines the trades that are relevant to this case?

              MR. SCHWARTZ:  Objection.

///

Page 21

BY MR. BROWN:

Q.    You can answer.

MR. SCHWARTZ:  Mr. Truong, you can go ahead and answer the question.

THE WITNESS:  I -- I don't recall, but I -- could you repeat the question again?

BY MR. BROWN:

Q.    Yeah.  Let me phrase it, perhaps, slightly differently.

Do you have an understanding of what particular event or events are considered to be the trigger for the beginning of the time frame that is relevant for this case?

MR. SCHWARTZ:  Objection.

Mr. Truong, you can go ahead if you understand the question.

THE WITNESS:  I think it's -- I think it's April 2021.

BY MR. BROWN:

Q.    Is there anything in particular that you're aware of that occurred with respect to Novavax in April of 2021 that would lead to it being relevant in this lawsuit?

A.    I believe, during that time, it's -- Novavax overstated their statements, their press

                                                              Page 22

release statements.

          Q.     When you say "overstated their press
release statements," what are you referring to, in
particular?

          A.     As I recall, Novavax was overstating their
timeline that they can bring out the COVID-19 vaccine
in a timely manner.  I think that's when -- during that
period, around April of 2021.

          Q.     Let me move and ask a similar question
related to the end of the relevant time frame.

               Do you have an understanding of a -- of
there being a particular -- or event -- event or events
related to Novavax that would mark the end of the
period that's relevant for this case?

               MR. SCHWARTZ:  Objection.

               THE WITNESS:  I think it was in November of
2021.  I think that's when they come [sic] out with the
correction statements.

BY MR. BROWN:

          Q.     And when you refer to "correction
statements," do you have any particular description you
could give about what those statements were?

          A.     I -- I can't recall.

          Q.     Do you know what format those statements
appeared in?

A.    It could be a quarterly report.

Q.    When you say a "quarterly report," do you mean a quarterly report issued by Novavax?

A.    I -- yes.

Q.    Do you have an understanding of what the proposed definition of the membership of the class in this case would be?

MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    You can answer.

A.    The membership of the class action?

Q.    Correct.

A.    I never heard of the term "membership."

Q.    Okay.  So if I were to phrase the question slightly differently, let -- let me try that and see if that -- if that makes sense to you.

Do you understand who the -- do you have an understanding of who the members of the proposed class in this case would be?

MR. SCHWARTZ:  Objection.

THE WITNESS:  I do.

BY MR. BROWN:

Q.    Okay.  And who would they be?

A.    You would have the lead plaintiffs in the case, and you would have other smaller members in the

Page 24

case.

Q.    Who would those other smaller members be?

A.    I believe they just -- they have smaller loss.  They have smaller losses compared to ours, and they would be the silent members.

Q.    When you refer to "losses," what -- what kind of losses are you talking about?

A.    I believe the lead plaintiff has a [sic] substantial losses compared to the other members.

Q.    When you refer to those losses, are you talking about losses in Novavax stock or in something else?

A.    Losses in Novavax stock.

Q.    Okay.  Do you have an understanding of anyone -- well, withdrawn.

Did you review the operative amended complaint in this case prior to the time it was filed?

A.    Yes.

Q.    Okay.  And without telling me the contents of any of those comments, did you provide any comments on the version of it that you reviewed prior to filing?

A.    No.

Q.    Okay.  Do you recall approximately when it was that you reviewed that draft of the complaint?

MR. SCHWARTZ:  Objection.

Page 25

THE WITNESS:  Yeah.  I can't remember the dates.

BY MR. BROWN:

Q.    Okay.  Do you have a recollection of something -- not about -- about the review, but do you have an approximate idea about when that amended complaint was filed on the court's docket?

A.    It is pretty recently.

Q.    By "pretty recently," how -- how soon ago do you mean?

A.    I believe it's during this year, 2023.

Q.    Separate and apart from any work that your counsel might have done, did you personally undertake any efforts to investigate the allegations that were made in the complaint?

A.    No.

Q.    What is your understanding of the subject matter of the allegedly false or misleading statements that are challenged in the complaint?

MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    You can answer.

A.    Can you restate the question?

Q.    Yeah.  Do you have an understanding of what the subject matter of the allegedly false or misleading

Page 26

statements that are challenged by the complaint were?

A.     What is my understanding --

Q.     Yes.

A.     -- my understanding of the complaints about?

Q.     Yeah.  Of what the subject matter of the complaint is.

A.     Yeah.  Like I previously stated, I believe it's the over- -- the statement that released by Novavax was overstated.  They claimed that they can bring out the COVID-19 vaccine in a timely manner, which they failed to do so.

Q.     Aside from the issue of the timing of the release of the vaccine, do you have an understanding of any other kinds of statements by Novavax or its executives that are at issue in the complaint?

A.     I understood that they claim that I have manufacturer in place and all the chain supply [sic] in place that they can scale the vaccine in a timely manner, also.

Q.     Okay.  Anything else besides that subject and the one you previously described?

A.     I believe they were supposed to apply for the -- for the emergency usage with the FDA in a timely manner, but they failed to do -- they failed to do that

Page 27

as well.

Q.   So aside from the topics that you've just described, are there any other topics that are addressed by the complaint that you recall?

A.   Not that I recall.

Q.   Who are the defendants that are named in this action?

A.   Novavax as the company, I believe the CEO, which is Stanley Erck, and John Trizzino and Glenn Gregory.

Q.   Do you know what John Trizzino's job title at Novavax was?

A.   I believe Stanley is the CEO and John is the CFO.  I'm not sure which -- yeah, I don't.

Q.   Are you familiar with the name Gregory Covino?

A.   Gregory -- what's the last name?

Q.   Covino.

A.   I don't recall.

Q.   Are you familiar with the concept of a confidential witness?

A.   Yes.

Q.   What's your -- sorry.

What's your understanding of what a confidential witness is in the context of a securities

Page 28

litigation?

A.    I believe the confidential witnesses are the one that still works for the company or an ex-employee of the company.

Q.    As you sit here today, do you know the names of any of the people who are named as confidential witnesses in the complaint?

A.    I don't.

Q.    Have you ever spoken, personally -- I'm not talking about your lawyers -- have you personally spoken to any of the people that are named as confidential witnesses in this case?

A.    I never have.

Q.    Aside from whatever work your counsel might have done, have you personally undertaken any efforts to investigate the accuracy of any statement made by a confidential witness in this case?

A.    I have not.

Q.    Yes-or-no question:  Do you have any awareness of what efforts your counsel undertook to verify the accuracy of any confidential witness allegations?

        MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    You can answer.

Page 29

A.    I don't know.

Q.    Are you familiar with a gentleman named Chad Kauffman?

A.    I don't, no.

Q.    So you -- have you ever -- you have never read any material by -- that you knew to be by -- written by someone named Chad Kauffman?

MR. SCHWARTZ:  Objection.

THE WITNESS:  No.

BY MR. BROWN:

Q.    Have you personally had any communications with anyone that you knew to be an employee of Novavax?

A.    No.

Q.    So you've never had any communication, for example, with Mr. Erck, the --

MR. SCHWARTZ:  Objection.  Asked and answered.

THE WITNESS:  No.

BY MR. BROWN:

Q.    Have you had any communication with anyone that you knew to be a former employee of Novavax?

A.    No.

Q.    Are you aware the defendants in this case, so my clients, served requests for production of documents from you in this case?

Page 30

A.    No.

Q.    Okay.  Well, at some point, were you asked to collect and provide documents that you understood were going to be given to the defendants?

A.    Yes.

Q.    Okay.

MR. CHRISTIE:  It might be easier if you showed him the doc request.

BY MR. BROWN:

Q.    What -- what efforts did you undertake to collect whatever documents you provided to be given to us in this case?

A.    Just the electronic file from the trade [sic] company, which is Robinhood.

Q.    When you say the trading company, are you referring to the brokerage firm that you use?

A.    Brokerage firm, yes, electronic statements.

Q.    Okay.  Aside from the Robinhood-related documents, do you recall providing any other kinds of documents that were -- that you understood were going to be given to the defendants in this case?

A.    Not that I can remember, no.

Q.    Okay.  Do you -- are you in possession of any documents, aside from your Robinhood documents, that relate to your trading in Novavax stock?

Page 31

A.   No.

Q.   Did you trade in Novavax stock on -- well, so Robinhood was the primary platform on which you traded in Novavax stock?

MR. SCHWARTZ:  Objection.

THE WITNESS:  Correct.

BY MR. BROWN:

Q.   Did you trade in Novavax stock on any other platform aside from Robinhood?

A.   No.

Q.   Okay.  Is that true at all times or just for the period that you referenced that was relevant to the case?

MR. SCHWARTZ:  Objection.

THE WITNESS:  It's true at all times.

BY MR. BROWN:

Q.   Okay.  So as a general rule, if I wanted to know the entire history of your trading in Novavax stock, the best source for that would be your Robinhood account statements; is that a fair statement?

A.   Yes.

Q.   How is it that you first considered -- or first -- strike that.  Let me start over again.

When is it that you first considered being part of a -- of this lawsuit against Novavax?

Page 32

A.    After I've seen the press release from Labaton on -- on Yahoo! Finance.

Q.    And what do you recall was -- was the contents or subject matter of that press release you're referring to?

A.    If you have losses due to the overstated statements from Novavax, you can join the lawsuit.

Q.    Had you ever had any -- to your knowledge, had you ever had any contact with anyone associated with the Labaton firm prior to reviewing that press release?

A.    No.

Q.    And was that press release what prompted you to contact the Labaton firm?

A.    Yes.

Q.    Do you recall approximately when it was that you saw that press release?

A.    April or May 2021.

Q.    Separate from the precise date when you saw the press release, how long was it between the time that you saw the press release and when you made your first attempt to contact the folks at the Labaton firm?

A.    Probably just a week.

Q.    Is it your understanding that you have been proposed as a representative of the punitive class in

Page 33

this lawsuit?

A.    Yes.

Q.    And what do you understand would be your duties if you were appointed as the representative of a certified class?

A.    I would have the option of working with the lead attorneys directly.  I would have the option to -- to testify.  I would have the option to -- to negotiate in the settlement or the mediation.

Q.    Aside from those duties you just listed, do you have any other duties that you understand that you would have?

A.    No.

Q.    Have you ever met with anyone in -- in the context of this case, have you ever met with anyone at the Labaton firm in person as opposed to by Zoom or by phone?

A.    No.

Q.    Okay.  Again, I'm just looking here for numbers, not about contents of any communications, but approximately how many times have you spoken by phone or by Zoom with the folks at the Labaton firm since you first joined this case?

A.    I would say 10, 11 times.

Q.    Aside from the complaint that we already

Page 34

discussed, do you recall having reviewed any other filings that were made in this case or that you understood were going to be made in this case?

A.    Repeat the question.

Q.    Sure.  Setting aside the complaint that we already discussed, do you recall reviewing any other filings that you understood were going to be made in this case?

A.    Beside [sic] the complaint?

Q.    Yes.

A.    Yeah, I have seen certification to be -- to be signed.  I have seen the mediation and then other documents, but I can't recall the names.

Q.    What's your understanding of the current status of the lawsuit?

A.    The current status is we are able to proceed with -- with the lawsuit.

Q.    And in the context of proceeding with the lawsuit, what's your understanding of what particular activities are going on at the present moment in connection with the lawsuit?

A.    If we don't pass mediation, it's -- probably will be trial.  That's my understanding.

Q.    Do you know the name of the judge presiding over the case?

Page 35

A.    I don't.

Q.    Do you know the name of the court in which the case is pending?

A.    I don't.

Q.    Are you aware of whether there are, presently, any motions that either party has made that are pending before the court?

A.    Not that -- not that it is pending.  No, I don't.

Q.    Are you familiar with Mr. Nuggehalli Nandkumar?

A.    We were in the group call before, but I don't know.  I know he's one of the lead plaintiffs. One of -- one of the three lead plaintiffs.

Q.    So don't tell me anything about what was discussed in that call, but just -- do you -- what -- you're referring to a call.

Was that a call that you and Mr. Nandkumar were on along with other people?

A.    Along with the -- the -- all the lead plaintiffs.

Q.    Okay.  And did that call include or not include counsel on it?

A.    It included counsels.

Q.    Okay.  You referred to another lead

Page 36

plaintiff besides Mr. Nandkumar.

What's the name of that other plaintiff you are referring to?

A.   Gabbert.

Q.   And when, approximately, do you recall the -- the discussion that you're remembering here took -- taking place?

A.   I -- I can't recall the date, no.

Q.   Was it within the last month?

MR. SCHWARTZ:  Objection.

THE WITNESS:  No.

BY MR. BROWN:

Q.   Within the last year?

A.   Yes.

Q.   Okay.  Have you been involved in any other -- besides that one that you are recalling, any other discussions with Mr. -- that included Mr. Nandkumar?

A.   No.

Q.   What about Mr. Gabbert?

A.   No.

Q.   How long have you been investing in the public securities market?

A.   Prior to 2021, five years before that, so since 2016.

Page 37

Q.    Was there anything in particular about 2016 that prompted you to want to start investing in the public securities markets?

A.    No particular reason, no.

Q.    Do you have an overall -- or do you -- do you consider yourself to have kind of -- sort of an overall investment strategy with respect to your investments in the public securities market?

A.    Yes.

Q.    And how would you describe that strategy?

A.    Just as an investment.

Q.    Are there any particular types of companies that you have an interest in with respect to your public securities investments?

A.    I -- I do cryptocurrency.  There are many other companies that I am invested in.

Q.    Do you have particular industries that you focus on when you're selecting companies to invest in?

A.    No.

Q.    Okay.  How would you describe your level of risk tolerance as an investor?

A.    Medium.

Q.    Do you employ, to your knowledge, any type of mathematical model or algorithm to govern the trading in your portfolio?

Page 38

A.    No.

Q.    Do you have any sources of information that you generally rely on when familiarizing yourself with a company you might be interested in investing in?

A.    No.  Pretty much press release [sic] -- press releases and quarter -- quarter [sic] reports -- quarterly reports from the company.

Q.    When you refer to the "quarterly reports," you mean the reports that are filed with the Securities and Exchange Commission?

A.    Yes.

Q.    Are there any sources of radio or television news that you use to gain information relative to your securities investments?

A.    Very much from Yahoo! Finance.

Q.    You access Yahoo! Finance on the internet?

A.    Yes.

Q.    Okay.  Any sites other -- aside from Yahoo! Finance that you tend to pay attention to?

A.    That's pretty much it.

Q.    Do you have an investment advisor?

A.    No.

Q.    Have you, at any point in the past five years, had an investment advisor?

A.    No.

Q.    Do you ever seek out investment advice from any other people that you know personal [sic]?

A.    No.

Q.    Is your wife involved in your investment decisions --

A.    No.

Q.    -- in the securities market?

A.    No.

Q.    Do you consider yourself to be a day trader?

A.    No.

MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    Do you understand the concept of "short selling"?

A.    Yes.

Q.    What's your understanding of "short selling"?

A.    To protect the -- the stock from go [sic] much lower.  So you will come in and short the stock at a lower price.

Q.    Have you, yourself, ever engaged in short selling?

A.    No.

Q.    Do you employ any particular hedging or

Page 40

risk management strategies with respect to your public securities investments?

A.    No.

Q.    Do you have an understanding of what it means to trade "on the margin"?

A.    Yes.

MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    What does that mean?

A.    That means you borrow money from the broker at a -- it hedges against your -- your stock.

Q.    When you're referring to the "hedging," are you -- are you -- are you making a comparison between the stock and the money that you borrowed?

A.    The stock and the money that you borrowed, yes.

Q.    Okay.  Do you, yourself, trade on margin?

A.    I did, yes.

Q.    Okay.  You -- you said you did.

Do you -- do you presently trade on margin?

A.    No.

Q.    At some point in the past, you did trade on margin?

A.    I did, yes.

Q.    And when was it that you stopped trading on

Page 41

margin?

A.    2022.

Q.    Okay.  When did you start trading on margin?

A.    2019.

Q.    And was there a particular reason why you decided to start trading on margin?

A.    It's -- yeah, at that point in 2019, we took a break because of the COVID.  So I did full-time trading.  So that's when I started the margin.

Q.    So you referred to the -- to COVID was your -- your development business did not effectively operate during some period of the COVID crisis; is that fair to say?

A.    Yes.

Q.    For approximately how long were your operations suspended due to COVID?

A.    Pretty close to a year.

Q.    And during that time, did -- did you spend relatively more time than you do now on trading in public securities?

A.    Yes.

Q.    Okay.  Approximately, how much of your time during a day when your business was -- when your development business was suspended would you spend

Page 42

focused on your trading activities?

A.    Six, seven hours a day.

Q.    And why was it that you found trading on margin to be an appealing option with respect to this period of COVID trading?

A.    I needed more capital.  I needed more funds.

Q.    So the -- you -- was the margin leverage you used to increase the amount that you could purchase relative to a straight-up cash purchase?

A.    Yes.

Q.    Okay.  Why was it that you decided to stop trading on margin in -- I believe it was 2022, you said?

A.    Everything was back to normal, so I'm not -- I'm not trading.  I'm not actively trading.

Q.    Did you, at all, depend on your trading activities during the COVID period to support your family while your business operations were suspended?

A.    No.

Q.    What is your understanding of the business of Novavax Incorporated?

A.    It's a biotech company.  But during the COVID, they were hoping to get the COVID vaccine to gain emergency usage approval from the FDA.

Page 43

Q.    How was it that you first became aware of Novavax?

A.    I -- I did some research and they are -- they were one of the companies who got the funding from the Trump Administration to support them with the COVID-19 vaccine.

Q.    The government funding that you referred to in the last answer -- excuse me.

Are you aware of any other companies that received similar types of funding from the government to support COVID vaccines?

A.    I don't recall.

Q.    What's your understanding of the present, as in, you know, today -- as of today, status of the approvals for Novavax's COVID-19 vaccine?

A.    I -- I believe they have full approvals.

Q.    Do you know the name of the current CEO of Novavax?

A.    I don't.

Q.    So I -- I asked about your familiarity with Novavax, how you became aware of it.  So a little bit different question.

What is it that led you to decide that you wanted to invest in Novavax stock?

A.    Just in hope that they will get the

Page 44

emergency usage approval with the FDA.

Q.    Did you invest in any other companies that were -- that you also understood were seeking potential approval for COVID-19 vaccines?

A.    I did, yes.

Q.    And what are some examples of those kinds of companies?

A.    I believe you pronounce it Moderna or Moderna, and then Pfizer also.

Q.    Is it fair to say that during the COVID period you paid particular attention to the -- to the set of companies that were attempting to develop COVID vaccines?

A.    Yes.

Q.    Do you recall approximately when it was that you first invested in Novavax stock?

A.    2019, early 2019.

Q.    And do you still hold any stock in Novavax?

A.    I don't, no.

Q.    When did you cease to hold any stock in Novavax, to your recollection?

A.    2022.

Q.    Are you aware of any point between the first investment in 2019 and the 2022 period, when you said you were out of the stock, that you had a holding

Page 45

of zero shares of Novavax, at any point in that time frame?

MR. SCHWARTZ:  Objection.

THE WITNESS:  Can you rephrase the question?

BY MR. BROWN:

Q.     Sure.  Are -- are you aware, from the point of your first purchase in 2019 --

A.     Okay.

Q.     -- to your last sale in 2022, of any point in that time frame where you had -- where you held zero shares of Novavax?

A.     Zero share [sic]?  No.

Q.     Okay.  Before you made your first purchase of Novavax that you referenced, what do you recall, in particular, having reviewed, in terms of documents about Novavax, before you made that purchase?

A.     I read the company history on the website.

Q.     Mm-hmm.

A.     I read the past few -- past quarterly reports of the company.  And that was it.

Q.     Do you recall reviewing any analyst reports?

A.     Yes.

Q.     Okay.  What would be -- what would have

Page 46

been the source of those analyst reports that you reviewed?

A.    It was from Yahoo! Finance.

Q.    Do -- do you recall the names or affiliations of any of those analysts?

A.    I don't.

Q.    Did you ever, at any time, listen to a live Novavax or earnings call?

A.    Yes.

Q.    Okay.  When do you recall doing that?

A.    Every quarter's report during 2019 to 2022.

Q.    So it was your practice to -- to listen to all of those live?

A.    Yes.

Q.    After listening to them live, would you ever review any written records of those calls?

A.    Yes.

Q.    Where would you obtain those written records?

A.    From Novavax's website.

MR. SCHWARTZ:  Mr. Truong --

BY MR. BROWN:

Q.    Did You --

MR. SCHWARTZ:  -- we have been going --

sorry.  Do you need a break?  Sorry.  We've been going

Page 47

about an hour.  I don't want to --

THE WITNESS:  I'm fine.

MR. SCHWARTZ:  Sorry.

MR. BROWN:  Yeah, I was actually -- David, I -- I have just a couple more questions in this line before I start bringing up some documents.  And I was going to propose we take -- take five or ten then, because it is actually a good, natural breaking point.

MR. SCHWARTZ:  Okay.

MR. BROWN:  Sort of done with this line. So just a -- just a few more things to close this line out and then we can take a break.

MR. SCHWARTZ:  Okay.

BY MR. BROWN:

Q.    So is it -- is it fair to say that COVID vaccine manufacturers was an -- an area of particular interest that you had with respect to your securities investing?

A.    During that time, yes.

Q.    Okay.  Did you have an expectation that all of the companies that you invested in would ultimately achieve approval for their proposed drugs?

A.    Of the companies that I invested in?

Q.    Yes, sir.

A.    Yes.

Page 48

MR. BROWN:  I think this is a good spot for a break.

MR. SCHWARTZ:  Yeah.

MR. BROWN:  Great.

MR. SCHWARTZ:  Thomas, are you going to show him these exhibits?  Are you going to put it up on the Zoom or do you need him to, like, use this particular software?

MR. BROWN:  I -- I will do whatever is easiest for getting them around.  I -- putting them up on Zoom, I mean, he needs to have a copy of them, right, so he can move through them; right?  Because if I have them up there, he can't --

By the way, can we go off -- can we go off the record?  And we can talk about the process off the record.

VIDEOGRAPHER:  The time is 2:10 p.m.  We are off the record.

(Recess was taken.)

VIDEOGRAPHER:  The time now is 2:26 p.m. We are back on the record.

BY MR. BROWN:

Q.    Mr. Truong, you have received, now, an email with our set of exhibits.

So if I could direct your attention first

Page 49

to the file in the email that starts with the name,

"Tab 01."

MR. BROWN:  And if you could open that up?

And Madam Reporter, we will mark this as

Exhibit 1.

(Exhibit No. 1 was marked

for identification.)

THE WITNESS:  Okay.

BY MR. BROWN:

Q.   Do you recognize what this document is,

sir?

MR. SCHWARTZ:  Mr. -- wait.

MR. BROWN:  Yes.

MR. SCHWARTZ:  Do you want to give him a

chance to --

Mr. Truong, do you want to take a chance to

take a look at the document and familiarize yourself

with it?

BY MR. BROWN:

Q.   Go ahead and take a look at it.

MR. SCHWARTZ:  Feel free to take your time,

Mr. Truong.

THE WITNESS:  Okay.  Okay.

BY MR. BROWN:

Q.   Okay.  Are you familiar with this document,

Page 50

sir?

A.    Yes.

Q.    What is it?

A.    I believe the document is to -- to file so I can be the lead plaintiff on -- on the case.

Q.    Do you recall reviewing this document when it was being prepared?

A.    Yes.

Q.    Okay.  And don't tell me of the contents of anything you said, but do you recall providing any comments on the drafts to your attorneys?

A.    Repeat the question.

Q.    Yes, sir.

Do you do you recall providing any comments, oral or written, on this document as it was being drafted?

A.    No, no comments.

Q.    Okay.  Let me show you now, as Exhibit 2, the document that was -- that is in "Tab 01A," is the name of the file.  It's the Exhibit A to the filing that you just looked at.

A.    Okay.

(Exhibit No. 2 was marked for identification.)

///

Page 51

BY MR. BROWN:

Q.    And if I could direct your attention, particularly, to the pages -- I am going to use the page labels that are at the top -- you'll see it says, "Page 2 of 134," "Page 3 of 134."

Do you see that?

A.    Yes.

Q.    Okay.  If you could direct your attention to page 2 of 134, the page that has "Certification" written at the top.

A.    Okay.

Q.    Is it fair to say that this document is a certification that you provided in the context of seeking to be appointed as lead plaintiff?

A.    Yes.

Q.    Did you draft this document?

A.    No.

Q.    Did you provide a signature for this document?

A.    Yes.

Q.    Did you review the document prior to signing?

A.    Yes.

Q.    If you would turn to the page where the "Exhibit A" begins.  On page 4 of 134, you can see

Page 52

"Exhibit A, Transactions of Novavax, Inc."

A.    Yes.

Q.    And it begins -- it begins a table that you can flip through if you wish to see.  I'm -- I'm not going to ask you about any of the line items on here.

A.    Okay.

Q.    You can familiarize yourself with this then if you need to understand the question of what it is.

A.    Okay.

Q.    And as you are reviewing, my question is going to be:  Do you know what this document sets out?  Do you have an understanding of what this document sets out?

A.    Yes.

Q.    And what -- what is your understanding?

A.    These are trades, daily trades.

Q.    Trades by whom and what?

A.    These are trades by -- executed on that -- on the date of those dates, Novavax trades.

Q.    Okay.  Trades in your account?

A.    Yes.

Q.    Did you prepare this document?

A.    No.

Q.    Do you know who did?

A.    I believe it was my attorney.

Q.    Okay.  In the context of -- of seeking to be appointed lead plaintiff, did you provide your attorneys with your trading records in Novavax stock?

A.    Yes, I did.

Q.    Okay.  Did there come a time where you became aware of any -- after its filing, that you became aware of any possible errors or omissions in this document?

A.    I believe so, yes.

Q.    Okay.  And -- and what's your recollection of -- of the context of becoming aware of that?  Again, don't tell me anything your attorney said.  Just what's your understanding of when that happened?

A.    I -- I believe there's some minor errors in the calculation -- in the -- in the calculation, yes.

Q.    Okay.  And did you -- did you discover those errors or did someone else?

A.    Someone else.

Q.    Okay.  Do you recall at some point providing an updated version of this document?

A.    I did not provide the updated.  I believe it's just the calculation error.

Q.    Okay.  Let me try to rephrase that.

Do you recall at some point that an updated version of this document that corrected the errors you

referenced was filed?

A. Yes.

Q. Okay. And we'll take a look at that filing in a minute, but let me just ask you to take a look now at the document that is labeled "Tab 01B."

A. Okay.

MR. BROWN: And we'll label that as Exhibit 3 in this deposition.

(Exhibit No. 3 was marked

for identification.)

BY MR. BROWN:

Q. And on the -- on the top, after the case number, it says, "Document 24-4, Filed 01/11/22, Page" 122 -- excuse me -- "121 of 122."

A. Okay.

Q. If you turn over -- sorry. That looks like it got reversed in the way that it was printed out. That's strange. Let me -- let me direct your attention to the next page. It got out of order. The last one got put first. It sounds Biblical. The page -- the next page that has "Page 1 of 121" at the top.

A. Yes.

Q. And feel free to flip through the PDF to kind of see what's going on there, but my question will be, at the point you're ready to answer it: Do you

have a general understanding of what's laid out in this particular table?

A.    Yes.

Q.    And what is that?

A.    So these also are the sells of these trades -- of the Novavax stocks on -- on -- on these dates.

Q.    When you say "These dates," do you mean the dates --

A.    On the listed dates.

Q.    Okay.  Do you have -- did you prepare this table?

A.    I did not, no.

Q.    And who did?

A.    My attorney.

Q.    Did you review it at or around the same time that you reviewed the document that we just looked at a moment ago, Exhibit 2?  That's the other table.

A.    I believe it was after.

Q.    Okay.  Do you have an understanding of what the difference is between the two tables with respect to the information they're trying to convey?

MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    Go ahead.

Page 56

A.    I'm not too clear of what the differences are, but I know there is error calculation in -- in -- in the first one.

Q.    Okay.  Let me ask you to put that aside and go to the document labeled, "Tab 01C," at the beginning of its title, the fourth of the attachments to Mr. Piereson's email.

A.    Okay.  So this is "Exhibit D"?

Q.    That's right.  That's what the first page of it says, correct.

A.    Okay.

              (Exhibit No. 4 was marked

                  for identification.)

BY MR. BROWN:

Q.    It says "Page 1 of 5," at the top.  And you can flip through and take a look at this document. It's only a few pages long.

            And when you're ready, I will -- I will be starting to ask you questions on the page that's labeled "2 of 5."

A.    Okay.

Q.    Okay.

A.    I read it.

Q.    So first, sir, what's your understanding of what this document is?

A.    It just looks to me like a notification that certifies what I -- my understanding indicates and what my roles are.

Q.    Did you draft this document?

A.    I did not.

Q.    On page 5 of 5, there is an electronic signature.

Did you provide that electronic signature?

A.    Yes.

Q.    Did you review the document prior to signing it?

A.    Yes.

Q.    When you signed it, did you understand that the document was being signed under -- or let me rephrase that.  That's withdrawn.

In signing the document, did that indicate a belief on your part that the statements that you were making in it were accurate?

A.    Yes.

Q.    Let me ask you about the very -- the paragraph labeled No. 1.  So that's on page 3 of 5. I'm using the numbering at the top.

A.    Okay.

Q.    "I'm an adult over the age of 18" -- that's the paragraph that begins there.

Page 58

A.    Yes.

Q.    Okay.  The last sentence of that paragraph in connection with this -- of this declaration states, "I am informed of and understand the requirements and duties imposed by the Private Securities Litigation Reform Act of 1995."

Do you have an understanding, sitting here today, of what the requirements and duties that you're referencing in that sentence are?

A.    It might have been explained to me before, but I -- I don't recall.  I don't remember what it is.

Q.    If you would turn to page -- well, the bottom of page 3 -- of that page, you'll see paragraph 5.

A.    Yes.

Q.    And there is a reference to your -- seeing about Yahoo! Finance and then contacting the gentleman at the Labaton firm.

Do you see that paragraph, sir?

A.    Yes.

Q.    Okay.  If you turn later in that paragraph, I'm going to focus on the last sentence, but feel free to read the whole paragraph to yourself if you need to, to answer the question.

But I'm going to ask you about the

Page 59

reference in the last sentence to a "fair and reasonable fee agreement."  And -- and my question to you is a very simple one.

Does the fee agreement -- did -- did you, in fact, enter into a fee agreement with the Labaton firm in connection with this case?

MR. SCHWARTZ:  Objection.

THE WITNESS:  I don't have a fee agreement.

BY MR. BROWN:

Q.   Okay.  Do you have some sort of written agreement with the Labaton firm that describes the terms of its representation of you in this case?

A.   Can you repeat the question?

Q.   Yes, sir.

Do you have a written engagement agreement with the Labaton firm in connection with this case?

A.   I believe so.

Q.   You can put that document aside, sir.

MR. BROWN:  Will, you can send Tab 3 and -- and exhibits -- here, we will send all of these together.  "Tab 03," "Tab 03A" and "Tab 03C."

So counsel, you're now going to see the class certification brief and a couple of relevant exhibits to that brief.  That's what we're sending right now.

Page 60

MR. SCHWARTZ:  Thank you.

MR. BROWN:  David, James, did those come through yet?

MR. SCHWARTZ:  I have not gotten them yet.

MR. BROWN:  Okay.  Hopefully soon. There's -- only one of them is --

MR. SCHWARTZ:  There we go.

MR. BROWN:  -- the other ones are, like, 100 kilobytes.  So hopefully they're not too delayed. I try not to send any 40 megabyte documents.

MR. CHRISTIE:  Okay.  Mr. Truong, I just sent them.  So you can let us know when you get them from me.

THE WITNESS:  Okay, I got it.

BY MR. BROWN:

Q.    Okay.  So if I could ask you, first, to open up the document that has the title "Tab 03 - Memo of Law."

A.    Okay.

MR. BROWN:  And I believe, Madam Reporter, are we on 5?

COURT REPORTER:  Yeah, this is 5.

MR. BROWN:  Okay.  So let's mark that as Exhibit 5.

(Exhibit No. 5 was marked

Page 61

for identification.)

BY MR. BROWN:

Q.   So take a moment, if you need, sir, to look through that document to familiarize yourself with what it is.  I'll direct you to a few specific places, but --

A.   Okay.

Q.   -- we're not -- we're not going to go through the whole thing by any means.

A.   Okay.

Q.   Okay.  Great.  Have you seen this document before, sir?

A.   I have.

Q.   Were you involved in drafting this document?

A.   No.

Q.   Did you review this document prior to the time that it was filed on the court docket?

A.   Yes.

Q.   And don't tell me what the contents of any of them might have been, but do you recall providing any oral or written comments to a draft of this document?

A.   No comments.

Q.   What do you -- what's your understanding of

Page 62

what the purpose of this particular court filing is in the context of this case?

A.    I believe these are just complaints.

Q.    This particular document or --

A.    This particular document.

Q.    Let me ask you, do -- well, let me ask a different question before I turn to a page in the document.

In connection with this particular filing, the "Plaintiffs' Memorandum of Law in Support of Motion for Class Certification and Appointment of Class Representatives and Class Counsel," do you recall providing, in addition to the review of the draft itself that you discussed, any kind of certification or affidavit or some statement that you made personally?

A.    I don't remember.  I don't recall.

Q.    Okay.  Let me ask you to take a look at "Tab 3A," please.  That's the second document in the attachments.

A.    Okay.

Q.    Labeled, "Declaration in Support of Motion."

A.    Okay.

(Exhibit No. 6 was marked

for identification.)

Page 63

MR. SCHWARTZ:  Mr. Truong, take your time with the document.  Don't feel rushed.

THE WITNESS:  Okay.

MR. BROWN:  Yeah.  So Madam Clerk, I believe this is Exhibit 6?  Madam Reporter, sorry.

COURT REPORTER:  Yes, this is 6.

BY MR. BROWN:

Q.    Okay.  So, sir, I'm looking at the document that has the -- after the case caption heading, has the statement "Declaration of Brian Calandra in Support of Plaintiff's Motion" --

A.    Yes.

Q.    Do you see that one?

A.    Yes.

Q.    Okay.  Great.  In this declaration of Mr. Calandra, if you would, please turn to page 2 and look at paragraph 6.

A.    Okay.

Q.    "Attached hereto as Exhibit D is a true and correct copy of the Declaration of David Truong in support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel."

A.    Okay.

Q.    So sir, after seeing that, does that

Page 64

refresh your recollection that you provided a declaration in connection with the particular motion paper we just looked at?

A.    I believe so.

Q.    Let me ask you now to look at the file that's labeled "Tab 03C" in the -- in the exhibit title.  The cover page is "Exhibit D."  If you turn to the next page --

A.    Okay.

Q.    -- there is a label "Declaration of David Truong," under the case caption.

Let me know when you're there.

A.    Yes, I'm here.

Q.    Okay.

MR. SCHWARTZ:  Mr. Truong, feel free to look --

BY MR. BROWN:

Q.    Yeah, look through that.

MR. SCHWARTZ:  Take your time.

THE WITNESS:  Okay.

MR. SCHWARTZ:  Let us know when you're ready.

(Exhibit No. 7 was marked for identification.)

THE WITNESS:  Okay.  I'm ready.

Page 65

BY MR. BROWN:

Q.   Okay.  Sir, did you draft this document yourself?

A.   I did not.

Q.   Did you review this document --

A.   Yes, I did.

Q.   Okay.  Do you recall -- don't tell me what the contents of them were, but do you recall providing any comments on the contents of this document?

A.   No, I didn't.

Q.   Okay.  Is that your signature at the bottom of page 2?

A.   Yes, it is.

Q.   If you would look at paragraph 4.  So I'm back to page 2 of 3, the first page where it says, "Declaration of David Truong" at the top?

A.   Yes.

Q.   "On January 26, 2022, the Court appointed me as a Lead Plaintiff in this action.  See Dkt. No. 47.  I understand that acting as a class representative in this action involves serving as a fiduciary for the benefit of the class of investors in Novavax stock that it seeks to represent."

Do you see that sentence, sir?

A.   Yes.

Page 66

Q.    What is your understanding of what it means to serve as a fiduciary for the benefit of the class?

A.    That I have -- I probably have to do deposition and testify in this case if it goes to trial.

Q.    Aside from those activities, are there any others that you understand are involved in being a fiduciary for the class -- benefit of the class?

A.    I understand that I have the opinion and -- making a major decision and mediation or settlement.

Q.    Anything else?

A.    That's -- that is -- that's it.

Q.    If you look now to the paragraph 5, at the top of the next page, the second sentence references -- says, "I am well aware of the extensive experience of proposed Class Counsel Labaton Sucharow LLP, and Pomerantz LLP in protecting shareholder rights and class action litigation."

Do you see that, sir?

A.    Yes.

Q.    Do you have any awareness of any securities litigation matters, aside from this one, in which the Labaton Sucharow firm is involved?

A.    No.

Q.    Okay.  And just to make sure my tenses are

Page 67

clear, is that -- that includes in the past and not just in the present?

A.     That's correct.

Q.     Okay.  What about with respect to the Pomerantz firm?  Do you have any familiarity with any actions in which the Pomerantz firm has been or is involved, aside from this one?

A.     No.

Q.     I already asked about that.

Do you recall having reviewed any potential filings in this case that came to you after the date of this particular declaration, so 3/16 of this year, March 16th of this year?

A.     I can't recall.

Q.     Okay.  You can put those documents to the side, sir.

MR. BROWN:  Will, could we start with the March statement now, please?  I think that's "Tab 07." Maybe after this, we can send the rest of the statements in a batch.  My only concern is that the file size might be a little large, that if we try to drop them all in one email, that it will slow it down.

Will, could you tell me roughly what the file sizes for those are?  It looks like they are large.

Page 68

MR. PIERESON:  Yeah.  "Tab 07," which I just sent, is 16 megabytes.  And then all of the statements up until Tabs 13 and 14 are only 1 to 3 megabytes it looks like, so they're manageable.

MR. BROWN:  Okay.

MR. PIERESON:  And then -- and then Tabs 13 and 14 are very large.  They are 25 megabytes and 33 megabytes.

MR. BROWN:  Okay.  Why not -- why don't you go ahead and send all of the small ones in one email and then the two big ones in separate emails after that.  Let's just go ahead and get them in everybody's boxes because it's going to take more time to open them up and identify them than just ask questions about them.

We need to get them authenticated on the record.

MR. SCHWARTZ:  We will hold you to that, Tom.

MR. BROWN:  Yeah.  Well, no promises.

MR. CHRISTIE:  Mr. Truong, I just sent you the first one just now.

THE WITNESS:  Okay.

MR. BROWN:  I wonder if this one is larger.  For some reason, it is a little, visually, not as sharp

Page 69

as the others.  It may be -- may be scanned and the others are just straight to PDF.

We have now used up all of my technological knowledge.

MR. PIERESON:  Okay.

MR. BROWN:  All set?

MR. PIERESON:  Yes.

MR. BROWN:  Okay.  Great.

BY MR. BROWN:

Q.    So Mr. Truong, we are marking this document as Exhibit 8.  It begins with the Bates No. NOVAVAX_TRUONG_ several zeros, beginning with 162 and ending at 278.

(Exhibit No. 8 was marked

for identification.)

THE WITNESS:  Are we talking about the Robinhood statements?

BY MR. BROWN:

Q.    That's correct.

A.    Okay.

Q.    That's right.  Well, you -- you anticipated my question, sir.

Do you know what this document is?

A.    Yes.

Q.    What is it?

Page 70

A.    This is my Robinhood trading statement.

Q.    And is this the statement from the time period March 1st through 31st, 2021?

A.    What was the question of the dates again?

Q.    Is this March -- is this your March statement?  March 1st through 31st?

A.    Yes, it is.  Yes.

Q.    Okay.  And did you provide this statement to your counsel in connection with the preparation of the lead plaintiff motion that we looked at before?

A.    Yes, I did.

Q.    Okay.  And if you wanted to know the records of your trading in Novavax stock in March of 2021, is this the document that you would look at?

A.    Yes.

Q.    Would you need to look at any other document, aside from this one, to know what your trades were in March of 2021 in Novavax stock?

A.    No.

Q.    Is this a -- is this a statement that is prepared for you by Robinhood or that you create through some function on the Robinhood website?

A.    I create from the Robinhood website.

Q.    Okay.  How do you go about creating?

A.    It will give you the time for them to --

Page 71

from what date to what date to run the statement.

Q.   So is it fair to say there is a function at Robinhood that permits you to select a date range --

A.   Yes.

Q.   -- and then when you enter that, it will -- it will generate a statement for the entirety of that period?

A.   That is correct.

Q.   Okay.

A.   Yes.

Q.   Okay.  And just to make sure that I ask this clearly, you -- you created this document using that function yourself?

A.   Yes, I did.

Q.   Does Robinhood, as a matter of course, generate any kind of periodic statement automatically, separate from what you request?

MR. SCHWARTZ:  Objection.

THE WITNESS:  I believe they send you the annual statement once a year.

BY MR. BROWN:

Q.   Okay.  Do they provide you that statement by email or by snail mail or some other method?

A.   By email.

Q.   Okay.  Do you have any reason to doubt the

Page 72

accuracy of the information that was -- that is presented on this statement for March 2021?

A.    No.

Q.    I just want to ask a few questions to make sure I understand the layout of this.

On -- on the first page, is it fair to say that there's a summary of your -- of your total balance and income and expenses for the period of the statement?

A.    Yes.

Q.    Okay.  And if you turn over to the next page, it begins with the heading "Portfolio Summary." And under that there is the label "Securities Held in Account" with a table under it with various columns and headings.

Do you see that?

A.    Yes.

Q.    What do you understand this table to be presenting?

A.    It's got all the securities -- the stocks that I trade --

Q.    Okay.

A.    -- or that I hold.

Q.    What's your understanding -- so let's -- let's get specific with this.  If you look at the

Page 73

bottom of that page, the one we were just looking at, there is a reference to Novavax, and then its symbol, the margin purchase and then the quantity of shares that you own.

Do you see that?

A.    Yes.

Q.    So this period -- this statement is from the period 3/1 to 3/31/2021, according to its cover, what -- do you have an understanding of what date is used to determine the quantity that's listed on the table there?

A.    Of this page, actually, I don't see the date.

Q.    Right.

A.    The one that you point out, the Novavax quality -- quantity was 25-something, but I don't see the date on this one.  Yeah, I do not see the date on that table.

Q.    Separate from the -- from the -- there not appearing to be a date on this particular table, do you have an understanding of whether this, for example, represents holdings at the beginning of the period, at the end of the period or at some other date within the period of the statement?

A.    I believe this is the holding period.

Page 74

Q.    I'm sorry, what do you mean by "holding period"?

A.    Wait.  So what is your question again?

Q.    My question is:  Do you have -- for this table, this securities held and account table --

A.    Huh-uh.

Q.    -- do you -- do you know whether the number that's used for the quantity of shares represents, for example, the beginning of period, the very end of the period, some average, some specific point in the period?

A.    I want to say yeah, I believe that -- the end of the period.

Q.    Okay.  So the holding as of the end date --

A.    Yes.

Q.    -- on the upper page of the statement?

A.    Yes.

Q.    Okay.  Let's move on.  Actually, the other questions I have about this I can ask later on in another statement.

So let's move on to the April statement, please.

A.    Okay.

Q.    So that should be "Tab 08."  Let me just pull out my printed copy.

Page 75

MR. CHRISTIE:  Mr. Truong, do you have those in your inbox?  I sent them.

THE WITNESS:  Okay.

MR. SCHWARTZ:  Is that "Page 1 of 35," Tom?

MR. BROWN:  Correct.  Yeah, it's NOVAVAX_TRUONG 1.

THE WITNESS:  "Tab 08"; right?

MR. SCHWARTZ:  "Tab 08."

THE WITNESS:  April 1st to April 30th?

MR. BROWN:  Correct.  Yeah, the document title in the PDF is "Tab 08."

THE WITNESS:  Okay.

MR. BROWN:  That's where we're at; okay?

So this is Exhibit 9?

COURT REPORTER:  Yes, 9.

(Exhibit No. 9 was marked

for identification.)

BY MR. BROWN:

Q.    Okay.  So Mr. Truong, are you familiar with this document?

A.    Yes.

Q.    And what is it?

A.    It is -- Robinhood statement from April 1st through April 30th of 2021.

Q.    Was this document generated by you in the

Page 76

same way that you described for the March statement that we looked at a moment ago?

A.    Yes.  Yes, I did.

Q.    Okay.  And did you provide this document to your counsel in connection with their application for you to be the lead plaintiff?

A.    Yes.

Q.    Okay.  And if you wanted to know the history of your trading in Novavax stock for the month of April 2021, is this the document that you would look at first?

A.    Yes.

Q.    Would you look at any other document besides this one?

A.    No.

Q.    Okay.  Do you have any reason to dispute the accuracy of the information that appears on this statement?

A.    No.

Q.    Okay.  Put that one aside and pull up the May ones.

(Exhibit No. 10 was marked

for identification.)

MR. BROWN:  One moment, please.  I'm -- I'm a tree killer.  So I have got to switch -- switch in my

Page 77

binder here.

MR. CHRISTIE:  That's "Tab 09"; right?

MR. BROWN:  "Tab 09," yeah.

MR. CHRISTIE:  Okay.

MR. BROWN:  "Tab 09," but Exhibit 10; okay?

BY MR. BROWN:

Q.    Are you ready with this one, sir?

A.    Yes.

Q.    Okay.  And what do you -- do you recognize this document?

A.    Yes.

Q.    And what is it?

A.    This is the Robinhood statement from May 1st through May 31st, 2021.

Q.    Was this statement generated in the same way that you described previously for March and April?

A.    Yes.

Q.    Did you provide this document to your counsel in connection with your application to be a lead plaintiff in this case?

A.    Yes.

Q.    Do you have any reason to dispute the accuracy of the information presented on this statement?

A.    No.

Page 78

Q.   If you wanted to determine what your trades were in Novavax stock for -- in the month of May 2021, is this the document that you would look at?

A.   Yes.

Q.   Is there any document aside from this one that you would look at?

A.   No.

Q.   Okay.  Let me ask you to turn a few pages in.  I want to look at some specific trades.

If you would turn first to the page in the document that's labeled, at the top right-hand corner, "30 of 44," it has, in the bottom right-hand corner, that's what we lawyers call a Bates number, it has the indication NOVAVAX_TRUONG and then the number 308 after a bunch of zeros.

A.   Okay.  Yes.

Q.   So if I could direct your attention to, first, where there is a -- a description beginning with "Novavax" followed by a symbol, account type there.

Do you see that, sir?

A.   Which Novavax?  There are quite a few Novavax on there.

Q.   Well, you're -- you are actually getting at my -- you're getting at my question.  I see that, for example, for this day, you know, 5/10/2021 --

A.    Okay.

Q.    -- there are -- there are a number of Novavax trades that, you know, if you want to continue just to --

A.    Yes.

Q.    -- see them, that they continue on for some number of pages until you get to page 37 of 44.

So my -- my question to you actually was: Is it your understanding that each of these lines represent separately executed trades that you decided to do or do you make a single trading decision and Robinhood breaks it out for whatever reason into separate trades?

A.    It's -- I believe it was one single buy, but they break it up so it can be -- so whenever the share come [sic] in at that price, it would be purchased at -- at that amount.  So that's secured differently, separately, but it was one single -- I believe it was one -- one single order.

Q.    Okay.  And would -- is it your practice that when you trade in -- or with respect to Novavax stock when you would do trading, that you would make one single trading decision on any given day or were there some days where you might make multiple trading decisions?

Page 80

A.    Yeah, it's different day by day.

So this -- I believe this is a result of a limited -- it's called -- "limit amount" that you put on.  You put on a limit amount.  And they will execute whenever it hit [sic] that -- that price.

Q.    So is it fair to say that that kind of instruction would say -- you would say, "I'll buy up to a certain number of shares at a particular price."  When the shares are available at that price, they will execute.  But if they're not available at that price, then it won't execute?

A.    Yes.

Q.    Okay.  Is there a way that you know, on the face of the statement, to tell whether or not multiple trades on a -- that are listed here on -- for a single day, relate to a single trade order or to perhaps two different trade orders that you might have entered on the same day?

A.    I don't know how to tell the difference.

Q.    Okay.  Would you expect that if -- if multiple trades on a single day showed at different prices, that those would reflect distinct trading orders?

MR. SCHWARTZ:  Objection.

THE WITNESS:  Yeah, I don't know.  I don't

Page 81

know the answer to that question.

BY MR. BROWN:

Q.    Okay.  Would you ever put in a trading order where, instead of specifying a specific price, you would provide a price range that you would find acceptable?

MR. SCHWARTZ:  Objection.

THE WITNESS:  No.

BY MR. BROWN:

Q.    Okay.  So any time that you would give an order to Robinhood to trade in Novavax stock, you would always give a specific price for that particular trade order?

A.    No.  It would be either the market price or the limited -- the limit price.

Q.    Do you ever recall issuing orders to both buy and sell Novavax stock on a particular -- on a -- on a single day?

MR. SCHWARTZ:  Objection.

THE WITNESS:  You mean an advanced order to buy and sell at the same time?

BY MR. BROWN:

Q.    No, it doesn't need to be advanced.  I wasn't referring the -- whether it's for the future or for the present.  My question is a little different.

Page 82

So let me withdraw and start again.

On any particular day that you would trade in Novavax stock, do you recall there ever being days where you would give an order to both buy and to sell Novavax stock on the same day?

A.    I don't believe so, no.

Q.    Okay.  If the -- so the page that we were -- let's go back to the other one.

So -- so if you go back to page 31 of 44.

A.    Okay.

Q.    If you look just, for example, at the first two line items on this page 31 of 44.

A.    Okay.

Q.    The first Novavax listing on that page is listed as a "Buy" transaction.  And the second is listed as a "Sell" transaction.

A.    Okay.

Q.    Do you recall, on May 10th, 2021, providing orders to Robinhood to both buy and sell Novavax stock?

A.    I don't believe so, no.

Q.    Okay.  Do you have -- you have an understanding why it would be, if you didn't provide both a buy and a sell order on that date, that your statement would reflect both "Buy" and "Sell" transactions?

Page 83

A.    The "sells" come in after the "buys," so it was for a reason.  But I wouldn't -- not -- not at the same time to make an order, buy and sell at the same time, no.

Q.    Is it possible that you made a "Buy" order at one point in the day and a "Sell" order at some different point in the day?

A.    No.

Q.    So if you don't believe that you would have made "Buy" and "Sell" orders at either the same time or at different points in the same day, why would you -- what would be your explanation for why your statement would have both "Buy" and "Sell" orders on the same day?

MR. SCHWARTZ:  Objection.

THE WITNESS:  On this particular page, it shows that I bought in high and after that, I sell at a lower price.  There has got to be an explanation with some type of news that came out.  That's why I decided to sell some of these shares.

BY MR. BROWN:

Q.    Sitting here today, do you have a specific recollection of whether you gave a buy/sell -- a "Buy" order before a "Sell" order or a "Sell" order before a "Buy" order, any particular --

Page 84

A.    The "Buy" order definitely come in before the sells order.

Q.    Okay.  And is that something that you could tell because of the ordering on the page here or -- or for some other reason?

A.    It's for some other reason.

Q.    And what's that other reason?

A.    I would read the price of the stock.

Q.    Okay.  So it appears from those first two lines that the -- that the "Buy" price listed is higher than the "Sell" price listed on line 2.

Is that a fair statement?

A.    Yes.

Q.    Okay.  Why is it that you would sell at the lower price and buy at the higher price?

A.    I can't recall the exact reason, but I -- I'm thinking it has to be some news that I read that after, I buy the stock at a higher price.

Q.    So -- so I understand what you're saying, your belief is that you made the "Buy" order after you made the "Sell" transaction?

A.    No.

MR. SCHWARTZ:  Objection.

THE WITNESS:  I made the sells order after I buy.

Page 85

BY MR. BROWN:

Q.    Okay.

A.    Because I didn't want it to go any lower.

Q.    Okay.  You can put that document aside, sir.  And we will go on to the next one, the June statement.

MR. SCHWARTZ:  Mr. Truong, do you need to take a break or are you good?

THE WITNESS:  I'm good.

MR. SCHWARTZ:  Okay.

MR. CHRISTIE:  Let me know when you have the document.

MR. BROWN:  I believe this will be Exhibit 10.

COURT REPORTER:  No, this will be 11.

MR. BROWN:  Sorry, yeah.

(Exhibit No. 11 was marked

for identification.)

THE WITNESS:  It is Tab 11.  And we are talking about July 31st?

MR. BROWN:  June.

THE WITNESS:  Oh, June.  That will be "Tab 10"; right?

MR. BROWN:  Yeah, June, "Tab 10."

THE WITNESS:  Okay.  Okay.

Page 86

MR. BROWN: Okay. Let me make sure that I have the PDF opened as well, even though I'm looking at the paper.

BY MR. BROWN:

Q. Okay, sir. So we are looking at Exhibit 11, it begins NOVAVAX_TRUONG 126 and runs through 161.

Do you recognize what this document is, sir?

A. Yes.

Q. And what is it?

A. And this is Robinhood's statement from June 1st to June 30th, 2021.

Q. Did you generate this statement in the same manner that you described for the others?

A. Yes.

Q. Did you provide this document to your counsel in connection with your application to be a lead plaintiff?

A. Yes.

Q. Do you have any reason to dispute the accuracy of the information presented on this statement?

A. No.

Q. If you wanted to know your history of

trading in Novavax stock for June 1st through 30th, 2021, is this the document you would look at first?

A.    Yes.

Q.    Would you look at any document aside from this one?

A.    No.

Q.    Do you have any recollection, sitting here today, of any particular news, relevant to Novavax, that came out in June 2021, that was important to you in your trading decisions that month?

A.    I can't recall.

Q.    You can put that document aside, and we'll move on to the next one.  So this would be "Tab" --

A.    11?

MR. BROWN:  Yes.  "Tab 11," Exhibit 12.

(Exhibit No. 12 was marked

for identification.)

MR. BROWN:  NOVAVAX_TRUONG 99 through 125.

BY MR. BROWN:

Q.    Do you recognize this document, sir?

A.    Yes.

Q.    And what is it?

A.    Robinhood statement from June 1st to June 31st, 2021.  I'm sorry, July 1st, through July 31st, 2021.

Q.    And was this statement generated by you in the same way that you described for the previous ones we looked at?

A.    Yes.

Q.    Did you provide this document to your counsel in connection with your application to be a lead plaintiff?

A.    Yes.

Q.    Do you have any reason to dispute the accuracy of the information presented on this statement?

A.    No.

Q.    If I -- if you wanted to know what your trading history in Novavax was in July of 2021, is this the document you will look at first?

A.    Yes.

Q.    Would you look at any other documents aside from this one?

A.    No.

Q.    If I could direct your attention first to page 6 of 27, it's the one with the Bates number ending in 104 at the bottom.

A.    Okay.

Q.    Do you see there's a reference to a "Buy" -- in the next-to-last line on that page, is the

first of several listings of Novavax "buys" for the date 7/28/2021.

Do you see that?

A.    Yes.

Q.    I'm sorry, am I reading that correctly? I'm sorry.  I think I read that wrongly.  It's 7/26, not 7/28.  I looked on my note sheet.  So 7/26, not 7/28.

Do you, sitting here today, have any recollection of any information that you learned about Novavax on that particular date, 7/26/2021, that would have led you to purchase shares?

A.    I don't -- I don't remember.

Q.    Okay.  If you would turn over two pages to 8 of 27.  One, two, three, four, five lines down, you'll see the first of several references that cover a few pages of sale transactions in Novavax.

A.    Yes.

Q.    Do you see that one?

A.    Yes.

Q.    The first one is 60 shares, but then there's a whole set after that, also for that date, 7/26.  Do you have any recollection, sitting here today, of why it would have been that you would have decided to sell Novavax shares on that date, 7/26/2021?

Page 90

A.    I don't remember.

Q.    Do you have any knowledge, sitting here today, of whether you did -- gave the -- or let me -- let me ask this.

First, were the "Buy" transactions that are listed above that, do those, to your recollection, reflect a single order that you put in or more than one order?

MR. SCHWARTZ:  Objection.

THE WITNESS:  Most likely, a single order.

BY MR. BROWN:

Q.    Okay.  And what about the sales transactions that followed, do you know whether those would have been single or multiple sales orders?

A.    Most likely, those are single orders as well.

Q.    Okay.  And do you have any idea, sitting here today, what -- in what order the -- what -- let me rephrase this so we don't use the same word in multiple meanings.  So withdrawn.

Do you recall, sitting here today, whether you instructed Robinhood to do the "Buy" transaction or the "Sell" transaction first?

A.    It looks to me, the "Buy" transaction first.

Page 91

Q.    And why do you think that?

A.    I would think the statement listed in order of the execution.

Q.    You think the statement is -- the statement listing in order of execution is a -- is a practice across all of the statements that you have from Robinhood?

A.    In my opinion.

Q.    You can put that one aside.  I think that gets us to August.

(Exhibit No. 13 was marked for identification.)

MR. BROWN:  Exhibit 13.  And this is the file that begins with the word "Tab 12."

THE WITNESS:  Okay.

BY MR. BROWN:

Q.    Let me just get that PDF opened as well. So Exhibit 13, NOVAVAX_TRUONG 36 through 98.  And when you're ready, sir, if you could tell me if you recognize what this document is.

A.    Yes.

Q.    And what is it?

A.    This is Robinhood statement August 1st, through August 31st, 2021.

Q.    And did you generate this statement in the

Page 92

same way that you described for the previous statements?

A.    Yes.

Q.    Did you provide this document to your counsel in connection with your application to be a lead plaintiff in this case?

A.    Yes.

Q.    Do you have any reason to doubt the accuracy of the information presented on this statement?

A.    No.

Q.    Do you have any reason to doubt the completeness of the information presented on this statement?

A.    No.

Q.    If you wanted to know your trading history in Novavax stock for August of 2021, is this the document you would look at?

A.    Yes.

Q.    Is there any document, aside from this one, that you would look at with respect to August 2021?

A.    No.

Q.    If I could turn your attention, please, to page 13 of 63.  It has the Bates number ending in 48 at the bottom.

Page 93

A.    Okay.

Q.    So beginning on this date, August 5th, 2021, there's a series over the -- over this and the next pages of "Buy" transactions that are -- that are listed.

A.    Okay.

Q.    I'll represent to you that we added up all the "Buy" shares and cross-checked with the filings that your counsel made, and we came up with 14,600 shares purchased on that day, 8/5/2021.

Would you consider a purchase of 14,000 or more shares to be a significant purchase?

MR. SCHWARTZ:  Objection.

THE WITNESS:  Yes.

BY MR. BROWN:

Q.    Yeah?  Do you have a recollection of why it was on August 5th of 2021 you would purchase a significant number of Novavax shares?

A.    I don't remember.

Q.    Okay.  If you go to page 24 of 63, so flipping on through.  That will get you to the -- the end of the -- of the "Buy" 85 transactions.  I will be looking at the very bottom of that page when you're there.

A.    Okay.

Page 94

Q.    So you see, sir, the next-to-the-last line shows a "Buy" transaction and then the last line shows a "Sell" transaction?

A.    Yes.

Q.    Okay.  And then it's fair to say that there are several other listings of "Sell" transactions on 8/5/2021, that occur on the following pages?

A.    Yes.

Q.    Do you have an understanding of why it would have been on August 5th, 2021, you would have decided to make a sale of Novavax stock?

A.    I can't recall.

Q.    Okay.  Do you have an awareness as to whether you -- is it your assumption that the -- the "Buy" order was a single order that you made, that was then executed in multiple parts?

MR. SCHWARTZ:  Objection.  Asked and answered.

THE WITNESS:  Yes.

BY MR. BROWN:

Q.    Okay.  What about the sale transaction?  The same thing?

A.    Yes, they look like a single order.

Q.    Okay.  Do you know, sitting here today, whether the "Buy" order or the "Sell" order was given

Page 95

by you first?

MR. SCHWARTZ:  Objection.  Asked and answered.

THE WITNESS:  I can't recall.

BY MR. BROWN:

Q.    Okay.  Would it be fair to assume, based on the "buys" appearing first and the "sells" appearing later, that the "Buy" was the first order entered and the "Sell" was the later order entered?

A.    Yes.

Q.    You can put that document aside, sir.  And we will move on.

A.    Now, looking at these statements, it appears to me that they -- they put all of the "Buy" into -- into one -- one page and all the "Sell" into a different page.  But I could be wrong.

MR. CHRISTIE:  Mr. Truong, wait until Mr. -- Mr. Brown asks you a question before you volunteer information.

THE WITNESS:  Okay.

MR. BROWN:  We are going to move on to -- I think this is in a separate email.  So I don't know if this has gone over to him yet, the September one.  It is our "Tab 13," so...

(Exhibit No. 14 was marked

Page 96

for identification.)

THE WITNESS:  "Tab 13"?

MR. BROWN:  Yes, the file begins with the name, "Tab 13."

THE WITNESS:  This one is in a different email?

BY MR. BROWN:

Q.    Yeah, it's in a different email.  Correct.

A.    Okay.  Yes.

Q.    So this is Exhibit 14, NOVAVAX_TRUONG 565 through 738.  Mr. Truong, if you are ready, if you could tell me if you recognize what this document is?

A.    Yes, this is the Robinhood statement for the time period of September 1st to September 30th, 2021.

Q.    And did you generate this statement in the same way that you have described for all of the previous statements we've looked at today?

A.    Yes.

Q.    You have provided -- did you provide this statement to your counsel in connection with your application to be appointed lead plaintiff?

A.    Yes.

Q.    Do you have any reason to doubt the accuracy of the information reported on this statement?

A.    No.

Q.    Do you have any reason to doubt the completeness of the information reported on this statement?

A.    No.

Q.    If you wanted to review your trading history in Novavax stock in September of 2021, is this the document that you would look at?

A.    Yes.

Q.    Would you look at any other document?

A.    No.

Q.    If I could direct your attention to page -- well, this one doesn't have that numbering at the top. So we'll have to use the Bates numbers.  It's Bates No. 594, at the bottom.  And I believe that that's going to be page 30 of 174 in the PDF.

A.    Okay.

Q.    So if I could direct your attention to about three-quarters of the way down the page, there is, in a line there, a reference to a Novavax "Buy" transaction on 9/28.  And just for -- between it, there is a -- there is a 9/27 transaction farther up on that page and then some Moderna transactions in the middle. So I'm looking at the one that's below the Moderna transactions.

Page 98

A.    Okay.  Yes.

Q.    Okay.  So, sir, you can flip through, if you'd like to see, but it appears that the listing of Novavax "Buy" transactions associated with the date 9/28/21, carries on from this page in the document all the way until the document page that bears Bates No. 627.  So that would be 63 of 174 in the PDF.  If you like, you can flip to 63 of 174 and see the point I am referring to.  It's the next-to-the-last line on that page.

A.    Okay.

Q.    So sir, I will -- I will represent to you, we added up all of the share numbers for all of the "Buy" transactions on 9/28, over those pages.

A.    Okay.

Q.    And we came up with 65,000 shares.  So my question to you is:  Do you have any recollection, sitting here today, as to why it would be that you would have given an instruction to purchase 65,000 shares of Novavax on 9/28/2021?

A.    I don't remember.

Q.    Okay.  Would you consider 65,000 shares to be a significant purchase?

MR. SCHWARTZ:  Objection.

THE WITNESS:  Yes.

Page 99

BY MR. BROWN:

Q.    If you see, then, on the last line of that page that I just directed you to, so 63 of 174 in the PDF and then 627 -- I'm sorry, not the last line, the next-to-last line.

Do you see that beginning there, there's a reference to "Sell" transactions?

A.    What -- which page on the document?

Q.    On the -- yeah, on the PDF, 63 of 174, it's 627 on the Bates numbers.

A.    627 on the Bates?  Okay.

Q.    I'm looking at the next-to-last line, where the first line that's labeled "Sell," the one above it is labeled "Buy" and that one is labeled "Sell."

A.    Okay.

Q.    Do you see that one?

A.    Yes.

Q.    And the date is also 9/28/2021.

A.    Okay.

Q.    So is it fair to say that on 9/28/2021, you, in addition to giving at some point, a "Buy" instruction, also gave a "Sell" instruction?

A.    Yes.

Q.    Do you have any knowledge, sitting here today, as to what order you gave those instructions in?

Page 100

A.    I don't.

Q.    Okay.  Would -- would you rely on the order that they appear in the statement to make that determination?

MR. SCHWARTZ:  Objection.  Asked and answered.

THE WITNESS:  No.

BY MR. BROWN:

Q.    You would not?

A.    I would not.

Q.    Okay.  Why not, in this case?

A.    Now, looking at this statement, I believe they put all of the "Buy" into one category and then all the "sells" into one.

Q.    How does that provide you information about the order in which you gave the instructions to buy and sell?

A.    Because it goes the same with other stock as well, not just Novavax.  So it seemed to me they put all the Novavax into one page, a "Buy."  And then they put all the "sells" in the later page.

So I'm -- I'm not sure if it's -- I don't think it's in the order of execution anymore, in my opinion.

Q.    So if you care to, you can flip through all

Page 101

the way to the document -- the page that ends with Bates 664.  And that is page 100 of 174 in the PDF.

A.   Okay.

Q.   And you see that the -- there's only one line on that particular -- I'm sorry, if you go to 665, pardon me.  There's one more.  One more line that was missing.  You'll see that that is also listed as a 9/28/2021 "Sell" transaction in Novavax.  Is that --

A.   Yes.

Q.   -- a fair description of that line?

A.   Yes.

Q.   Okay.  I'll represent to you that we added up the total number of shares that are associated with "Sell" lines on that date and we came up with 66,900.

A.   Okay.

Q.   Do you have an understanding of why it would have been that you would have decided to sell 66,900 shares of Novavax on 9/28?

A.   I don't recall.

Q.   Okay.  You can put that document aside, sir.

A.   Okay.

Q.   And we will move on to the October statement.  That's in -- that's in a separate email.

A.   "Tab 14"?

Page 102

Q.    Yes, sir.

A.    Okay.

Q.    "Tab 14," Exhibit 15.  Hold on.  I'm getting it out of my tree-killer binder.

(Exhibit No. 15 was marked for identification.)

BY MR. BROWN:

Q.    So this is Exhibit 15, NOVAVAX_TRUONG 323 through 564.

So, sir, when you're ready, my question, as with the others, is:  Do you recognize what this document is?

A.    Yes.  This is the Robinhood statement from October 1st to October 31st, 2021.

Q.    And did you generate this statement through Robinhood in the same way that you did the others that we've looked at?

A.    Yes.

Q.    You've provided this document to your counsel in connection with your application to be lead plaintiff?

A.    Yes.

Q.    Do you have any reason to dispute the accuracy of the information in this statement?

A.    No.

```
                                                    Page 103
```

Q.    Do you have any reason to dispute the completeness of the information in this statement?

A.    No.

Q.    If you wanted to know your trading history in Novavax stock for October of 2021, is this the document you would look at?

A.    Yes.

Q.    Would you look at any document aside from this one?

A.    No.

Q.    Do you have a recollection of any particular news or information that you learned about Novavax in the month of October of 2021 that affected your trading decisions?

A.    No.

Q.    Are you familiar with the website Politico?

A.    Yes.

Q.    What's your familiarity with it?

A.    One of the article -- I'm not familiar with them, but I remember one of the articles that's written about Novavax, that crashed the stock about 20 percent.

Q.    And did you -- have you, at any point, read that article?

A.    I did.

Q.    When did you read it?

Page 104

A.    I don't -- I can't recall.

Q.    Would it have been around the time that the article was published?

MR. SCHWARTZ:  Objection.

THE WITNESS:  It was immediately after it was published.

BY MR. BROWN:

Q.    What do you recall, sitting here today, was included in the article that affected the stock price, in your view?

A.    It's -- I can't recall exactly.

Q.    Do you have a recollection of whether the contents of that article led to you want to buy or to sell Novavax stock?

A.    It was the "sells."

Q.    And why would it be -- why would that be the case?

A.    It's -- it definitely was bad news for Novavax.

Q.    And why would bad news for Novavax lead you to want to sell the stock?

A.    I believe the article was saying -- was referring to the supply chain as well as the partnership in other countries' manufacturing.

Q.    Do you recall, sitting in here today,

Page 105

making any sales of the stock after you became aware of that article?

A.    I believe I did.

Q.    Okay.  What about purchases of the stock?

A.    I don't remember purchasing, but it -- it was purchased -- it would be two days later.

Q.    Why -- why do you -- why do you say that you think it would be a few days later that you would have made a purchase?

A.    It would be to capture some of the loss from the sales to get the available average under cost.

Q.    I just have a little bit left, David.  And I think if I could take a break now, I can get my thoughts together and I think we can get done pretty fast after that.

MR. SCHWARTZ:  Okay.

MR. BROWN:  Is that all right with you all and Mr. Truong?

THE WITNESS:  Yeah.

MR. SCHWARTZ:  Sure.

MR. BROWN:  Okay.  Great.  So come back in ten minutes?

MR. SCHWARTZ:  Okay.

VIDEOGRAPHER:  The time now is 3:52 p.m. We are off the record.

Page 106

(Recess was taken.)

VIDEOGRAPHER:  The time now is 4:05 p.m. We are back on the record.

BY MR. BROWN:

Q.    Mr. Truong, you recall before the break, we were talking about the Politico article about Novavax?

A.    Yes.

Q.    Do you regularly read articles on the Politico website?

A.    No, no.

Q.    When the Politico article that you referenced came out, did you make any efforts to look into the accuracy or inaccuracy of any of the information in it?

A.    No.

Q.    Did you seek out any reports by analysts who cover Novavax to see what they had to say about the contents of that article?

A.    No.

Q.    If you could open up the document that was just sent around, it's the "Tab" -- the label of the file begins with "Tab 18."

A.    Okay.

(Exhibit No. 16 was marked

for identification.)

Page 107

MR. BROWN:  We will mark this as Exhibit 16.

BY MR. BROWN:

Q.    It's a document that was filed as No. 99 on the docket of this case, on the day 8/5/23.  It looks like it's 277 pages long and under the caption, it says, "Lead Plaintiff David Truong's Notice of Errata."

Do you see that there, sir?

A.    Yes.

Q.    Do you know why it is that you filed a document labeled "Notice of Errata"?

A.    I believe this to -- the error -- the calculation error that we did.

Q.    The -- the calculation errors you were referencing previously?

A.    Yes.

Q.    Is -- did you review this document before it was filed?

A.    Yes.

Q.    Okay.  And do you have any reason to dispute the accuracy of the information presented in this document?

A.    No.

Q.    Who prepared this document?

A.    My attorney.

Page 108

Q.    Okay.  Did you review it before it was filed?

A.    I'm sorry?

Q.    Did you review it before it was filed?

A.    Yes.

MR. BROWN:  I don't have any further questions today.

MR. SCHWARTZ:  Thank you.  Mr. Truong, just a real quick question.

EXAMINATION

BY MR. SCHWARTZ:

Q.    Mr. Truong, do you consider part of your responsibility as a lead plaintiff to monitor counsel -- to monitor class counsel?  In other words, to oversee the work of Labaton?

A.    Yes.

Q.    Okay.  Thank you very much.  No further questions.

MR. BROWN:  No further questions from me. I think we are done.  Thank you very much for your time today, Mr. Truong.  Thank you.

MR. SCHWARTZ:  Thanks, Mr. Truong.

COURT REPORTER:  Could I get your orders before you guys leave?

What did you want, Mr. Brown?

MR. BROWN:  Whatever we did -- we have done on the last ones.  Will will know better than me.

MR. CHRISTIE:  You can do -- I think that we did -- for the other ones we did for Mr. Gabbert, I think we did a quick turnaround.  I think it was two days.

COURT REPORTER:  Okay.  And you're with the defendants, Mr. Christie?

MR. CHRISTIE:  No, I'm with the plaintiffs.

MR. CALANDRA:  And this is Brian Calandra, also with the plaintiffs.  If Pomerantz could have just a regular turnaround.  We don't need a quick turnaround.

COURT REPORTER:  Okay.  So Mr. Christie, Labaton wants the two-day turnaround?

MR. CHRISTIE:  Yes, please.

COURT REPORTER:  Okay.  And then Ropes & Gray wants regular turnaround?

MR. BROWN:  Regular is fine.

COURT REPORTER:  Okay.  And Pomerantz wants regular?

MR. CALANDRA:  Wants regular.  Yeah, that's right.

VIDEOGRAPHER:  The time now is 4:09 p.m. We are off the record.

**Page 110**

(Concluded at 4:09 p.m.)

-o0o-

**Page 111**

**CERTIFICATE OF DEPONENT**

I have read the foregoing transcript of my deposition and except for any corrections or changes noted on the errata sheet, I hereby subscribe to the transcript as an accurate record of the statements made by me.

_____

**DAVID TRUONG**

SUBSCRIBED AND SWORN before and to me this _____ day of _____, 20____.

_____

**NOTARY PUBLIC**

My Commission expires:

Page 112

REPORTER'S CERTIFICATE

STATE OF UTAH           )

                        )

COUNTY OF SALT LAKE )

I, ABIGAIL D.W. JOHNSON, a Certified Shorthand Reporter and Registered Professional Reporter, hereby certify:

THAT the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was placed under oath to tell the truth, the whole truth, and nothing but the truth; that the proceedings were taken down by me in shorthand and thereafter my notes were transcribed through computer-aided transcription; and the foregoing transcript constitutes a full, true, and accurate record of such testimony adduced and oral proceedings had, and of the whole thereof.

I FURTHER CERTIFY that I am not a relative or employee of any attorney of the parties, nor do I have a financial interest in the action.

( ) Review and signature was requested.

( ) Review and signature was waived.

(X) Review and signature was not requested.

I have subscribed my name on this 1st day of September, 2023.

ABIGAIL D.W. JOHNSON, RPR, CRR, CRC

Page 113

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC
CASE NAME: Sothinathan Sinnathurai, Et Al. v. Novavax,
Inc., Et Al.
DATE OF DEPOSITION: 8/30/2023
WITNESSES' NAME: David Truong

PAGE   LINE (S)        CHANGE              REASON
____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

_____
                 David Truong
SUBSCRIBED AND SWORN TO BEFORE ME
THIS _____ DAY OF _____, 20__.


_____        _____
(NOTARY PUBLIC)               MY COMMISSION EXPIRES:

**[& - 2023]**

**&**

**&** 3:2,7,11 6:25
109:17

**0**

00000001-00...
4:22
00000036-00...
5:3,4
00000099-00...
5:1
00000126-00...
4:25
00000162-00...
4:21
00000279-00...
4:24
00000323-00...
5:7
00000565-00...
5:6
**01** 49:2
**01/11/22** 54:13
**01a** 50:19
**01b** 54:5
**01c** 56:5
**02199-3600** 3:8
**03** 59:21 60:17
**03a** 59:21
**03c** 59:21 64:6
**07** 67:18 68:1
**08** 74:24 75:7,8
75:11
**09** 77:2,3,5

**1**

**1** 4:8 49:5,6
54:21 56:15
57:21 68:3
75:4,6
**10** 4:23 33:24
76:22 77:5
85:14,23,24
**100** 60:9 101:2
**10005** 2:11
**10016** 2:16
**10036-8704** 3:3
**102** 5:7
**104** 88:22
**106** 5:8
**108** 4:4
**10th** 82:18
**11** 4:25 33:24
85:15,17,19
86:6 87:14,15
**12** 5:1 87:15,16
91:14
**121** 54:14,21
**1211** 3:3
**122** 54:14,14
**125** 87:18
**126** 86:6
**13** 5:2 68:3,6
91:11,13,18
92:24 95:24
96:2,4
**134** 51:5,5,9,25
**1340** 2:5
**14** 5:5 68:3,7
95:25 96:10

101:25 102:3
**14,000** 93:11
**14,600** 93:9
**140** 2:10
**15** 5:7 102:3,5
102:8
**16** 5:8 14:11
68:2 106:24
107:2
**161** 86:7
**162** 69:12
**16th** 67:13
**174** 97:16 98:7
98:8 99:3,9
101:2
**18** 57:24
106:22
**19** 12:1 22:6
26:11 43:6,15
44:4
**19801** 2:6
**1993** 12:1
**1995** 58:6
**1997** 12:1,2
**1:12** 1:19 6:1,5
**1st** 70:3,6 75:9
75:23 77:14
86:13 87:1,23
87:24 91:23
96:14 102:14
112:22

**2**

**2** 4:10 14:9
50:18,23 51:5
51:9 55:18

56:20 63:16
65:12,15 84:11
**20** 103:21
111:13 113:22
**20006-6807**
3:12
**2015** 14:11,13
**2016** 36:25
37:1
**2019** 41:5,8
44:17,17,24
45:8 46:11
**202** 3:13
**2021** 4:20,22,23
4:25 5:1,2,4,5,7
20:8,10 21:18
21:22 22:8,17
32:18 36:24
70:3,14,18
72:2 75:24
76:10 77:14
78:2 82:18
86:13 87:2,9
87:24,25 88:14
91:24 92:17,21
93:3,17 94:10
96:15 97:7
102:14 103:5
103:13
**2022** 41:2
42:13 44:22,24
45:10 46:11
65:18
**2023** 1:18 6:1,6
25:11 112:22

**[2099 - 99]**                                                    Page 2

**2099** 3:12
**21-2910** 1:7
**212** 2:12,17 3:4
**24** 93:20
**24-4** 54:13
**25** 68:7 73:16
**26** 65:18
**27** 88:21 89:15
**277** 107:6
**278** 69:13
**28932** 112:24
**2:10** 48:17
**2:26** 48:20

**3**

**3** 4:11 51:5
   54:8,9 57:21
   58:13 59:19
   65:15 68:3
**3/1** 73:8
**3/16** 67:12
**3/31/2021** 73:8
**30** 1:18 6:1
   78:12 97:16
**300** 2:5
**302** 2:7
**308** 78:14
**30th** 6:6 75:9
   75:24 86:13
   87:1 96:14
**31** 82:9,12
**31st** 70:3,6
   77:14 85:20
   87:24,25 91:24
   102:14

**323** 102:8
**33** 68:7
**333rd** 2:16
**35** 75:4
**36** 91:18
**37** 79:7
**3:52** 105:24
**3a** 62:18

**4**

**4** 4:12 51:25
   56:12 65:14
**40** 60:10
**44** 78:12 79:7
   82:9,12
**450** 14:15
**47** 65:20
**48** 92:24
**49** 4:8
**4:05** 106:2
**4:09** 1:19
   109:24 110:1

**5**

**5** 4:13 56:15,20
   57:6,6,21
   58:14 60:21,22
   60:24,25 66:13
**5/10/2021**
   78:25
**50** 4:10 16:12
   16:14
**508-4721** 3:13
**54** 4:11
**56** 4:12

**564** 102:9
**565** 96:10
**573-2540** 2:7
**594** 97:15
**596-9812** 3:4
**5th** 93:2,17
   94:10

**6**

**6** 4:16 62:24
   63:5,6,17
   88:21
**60** 4:13 89:21
**600** 2:16
**617** 3:9
**62** 4:16
**627** 98:7 99:4
   99:10,11
**63** 92:24 93:20
   98:7,8 99:3,9
**64** 4:19
**65,000** 98:16,19
   98:22
**66,900** 101:14
   101:18
**661-110** 2:17
**664** 101:2
**665** 101:5
**69** 4:20

**7**

**7** 4:3,19 64:23
**7/26** 89:6,7,23
**7/26/2021**
   89:11,25

**7/28** 89:7,8
**7/28/2021** 89:2
**738** 96:11
**75** 4:22
**76** 4:23

**8**

**8** 4:20 69:11,14
   89:15
**8/30/2023**
   113:3
**8/5/2021** 93:10
   94:7
**8/5/23** 107:5
**818** 9:16
**84103** 9:17
**85** 4:25 93:22
**87** 5:1

**9**

**9** 4:22 75:14,15
   75:16
**9/27** 97:22
**9/28** 97:21
   98:14 101:18
**9/28/2021**
   98:20 99:18,20
   101:8
**9/28/21** 98:5
**907-0781** 2:12
**91** 5:2,4
**95** 5:5
**951-7427** 3:9
**98** 91:18
**99** 87:18 107:4

| a |
|---|

**abby** 7:14
**abigail** 1:25
  112:4,25
**able** 34:16
**above** 90:6
  99:13
**absent** 9:8
**acceptable** 81:6
**access** 38:16
**account** 31:20
  52:20 72:14
  74:5 78:19
**accuracy** 28:16
  28:21 72:1
  76:17 77:23
  86:22 88:10
  92:9 96:25
  102:24 106:13
  107:21
**accurate** 57:18
  111:6 112:14
**achieve** 47:22
**acquisition**
  13:16
**act** 58:6
**acting** 65:20
**action** 1:7
  18:17,20 19:1
  19:3,5,7,8,16
  19:19 23:11
  27:7 65:19,21
  66:18 112:19
**actions** 67:6

**actively** 15:20
  15:22 16:1
  42:16
**activities** 13:3
  34:20 42:1,18
  66:6
**actually** 10:11
  47:4,8 73:12
  74:18 78:23
  79:8
**added** 93:7
  98:13 101:12
**addition** 62:13
  99:21
**address** 9:15,18
**addressed** 27:4
**adduced**
  112:15
**administration**
  43:5
**adult** 57:24
**advanced**
  81:20,23
**advice** 39:1
**advisor** 38:21
  38:24
**affected** 103:13
  104:9
**affidavit** 62:15
**affiliations**
  46:5
**afternoon** 6:4
  7:23 8:24
**age** 57:24

**ago** 14:7 25:9
  55:18 76:2
**agree** 6:13
**agreement**
  17:25 18:3
  59:2,4,5,8,11
  59:15
**ahead** 21:3,15
  49:20 55:25
  68:10,12
**aided** 112:13
**al** 1:9 6:17,17
  113:2,2
**algorithm**
  37:24
**allegations**
  25:14 28:22
**allegedly** 25:18
  25:25
**amended** 24:16
  25:6
**americas** 3:3
**amount** 42:9
  79:17 80:3,4
**analyst** 45:22
  46:1
**analysts** 46:5
  106:16
**andrea** 3:15
  6:19
**annual** 71:20
**answer** 8:11,20
  9:5,9 21:2,4
  23:10 25:22
  28:25 43:8

  54:25 58:24
  81:1
**answered**
  29:17 94:18
  95:3 100:6
**answers** 8:14
**anticipated**
  69:21
**anymore**
  100:23
**apart** 25:12
**appealing** 42:4
**appear** 10:3
  100:3
**appearances**
  6:23
**appeared** 22:25
**appearing**
  73:20 95:7,7
**appears** 76:17
  84:9 95:14
  98:3
**application**
  76:5 77:19
  86:18 88:6
  92:5 96:22
  102:20
**apply** 26:23
**appointed** 33:4
  51:14 53:2
  65:18 96:22
**appointment**
  4:8,14,17
  62:11 63:22

**[approval - begins]**

**approval** 4:9 42:25 44:1,4 47:22

**approvals** 43:15,16

**approximate** 25:6

**approximately** 10:18 24:23 32:16 33:21 36:5 41:16,23 44:15

**april** 4:22 20:7 21:18,21 22:8 32:18 74:21 75:9,9,23,24 76:10 77:16

**arbitration** 10:1

**architect** 16:8 16:12

**architects** 16:10

**architecture** 16:4,5,11,15,16

**area** 13:5,6 47:16

**article** 103:19 103:23 104:3,9 104:13,22 105:2 106:6,11 106:18

**articles** 103:20 106:8

**articulated** 19:16

**aside** 11:14 14:3 15:1,4 26:13 27:2 28:14 30:18,24 31:9 33:10,25 34:5 38:18 56:4 59:18 66:6,22 67:7 70:17 76:20 78:5 85:4 87:4 87:12 88:17 91:9 92:20 95:11 101:20 103:8

**asked** 29:16 30:2 43:20 67:9 94:17 95:2 100:5

**asking** 8:1 20:11

**asks** 95:18

**associated** 32:9 98:4 101:13

**assume** 95:6

**assumption** 94:14

**attached** 63:19

**attachments** 56:6 62:19

**attempt** 32:22

**attempting** 44:12

**attended** 12:1

**attention** 38:19 44:11 48:25 51:2,8 54:18 78:17 88:20 92:23 97:12,18

**attorney** 17:10 52:25 53:12 55:15 107:25 112:18

**attorneys** 9:4 10:8 11:14 33:7 50:11 53:3

**audio** 6:12

**august** 1:18 5:2 5:4 6:1,6 91:10 91:23,24 92:17 92:21 93:2,17 94:10

**authenticated** 68:16

**automatically** 71:16

**available** 80:9 80:10 105:11

**avenue** 2:5,16 3:3,12

**average** 74:10 105:11

**avis** 19:10

**aware** 18:3 19:6,8 21:21 29:23 35:5 43:1,9,21

44:23 45:7 53:6,7,11 66:15 105:1

**awareness** 28:20 66:21 94:13

**b**

**b** 4:6,11

**ba** 11:22

**back** 42:15 48:21 65:15 82:8,9 105:21 106:3

**bad** 104:18,20

**balance** 72:7

**based** 95:6

**batch** 67:20

**bates** 69:11 78:13 88:21 92:24 97:14,14 98:6 99:10,11 101:2

**bcalandra** 2:17

**bears** 98:6

**beauty** 16:1

**becoming** 53:11

**beginning** 20:22 21:12 56:5 69:12 73:22 74:9 78:18 93:2 99:6

**begins** 51:25 52:3,3 57:25

**[begins - california]**

69:11 72:12 86:6 91:14 96:3 106:22

**behalf** 1:5 7:1,5 7:9 18:12

**belief** 57:17 84:20

**believe** 17:8 19:7,9,10,13 20:4,7 21:24 24:3,8 25:11 26:8,23 27:8 27:13 28:2 42:13 43:16 44:8 50:4 52:25 53:9,14 53:21 55:19 59:17 60:20 62:3 63:5 64:4 71:19 73:25 74:12 79:14,19 80:2 82:6,20 83:9 85:13 97:15 100:12 104:22 105:3 107:12

**benefit** 65:22 66:2,8

**best** 8:2,12,23 31:19

**better** 109:2

**biblical** 54:20

**big** 68:11

**binder** 77:1 102:4

**biotech** 42:23

**bit** 43:21 105:12

**borrow** 40:10

**borrowed** 40:14,15

**boston** 3:8

**bottom** 58:13 65:11 73:1 78:12 88:22 92:25 93:23 97:15

**bought** 83:17

**boxes** 68:13

**break** 8:19,21 41:9 46:25 47:12 48:2 79:15 85:8 105:13 106:5

**breaking** 47:8

**breaks** 79:12

**brian** 2:15 4:16 63:10 109:10

**brief** 59:23,24

**bring** 22:6 26:11

**bringing** 47:6

**broadway** 2:10

**broker** 40:10

**brokerage** 12:9 30:16,17

**brown** 3:2 4:3 6:25,25 7:22 7:24 21:1,7,19 22:19 23:9,22

25:3,21 28:24 29:10,19 30:9 31:7,16 36:12 39:13 40:8 45:6 46:22 47:4,10,14 48:1,4,9,22 49:3,9,13,19,24 51:1 54:7,11 55:24 56:14 59:9,19 60:2,5 60:8,15,20,23 61:2 63:4,7 64:17 65:1 67:17 68:5,9 68:20,24 69:6 69:8,9,18 71:21 75:5,10 75:13,18 76:24 77:3,5,6 81:2,9 81:22 83:21 85:1,13,16,21 85:24 86:1,4 87:15,18,19 90:11 91:13,16 93:15 94:20 95:5,18,21 96:3,7 99:1 100:8 102:7 104:7 105:17 105:21 106:4 107:1,3 108:6 108:19,25 109:1,19

**bucks** 19:14

**building** 15:24

**bunch** 78:15

**business** 15:6 15:18,19 16:11 16:15,16 41:12 41:24,25 42:19 42:21

**buy** 79:14 80:7 81:17,21 82:4 82:15,19,23,24 83:3,5,10,13,23 83:23,25 84:1 84:10,15,18,20 84:25 88:25 90:5,22,24 93:4,8,22 94:2 94:15,25 95:8 95:14 97:20 98:4,14 99:14 99:21 100:13 100:16,20 104:13

**buys** 83:1 89:1 95:7

**c**

**c** 2:1 3:2 6:2

**calandra** 2:15 4:16 63:10,16 109:10,10,22

**calculation** 53:15,15,22 56:2 107:13,14

**california** 11:20

**[call - compared]** Page 6

call  35:12,16,17
  35:18,22 46:8
  78:13
called  7:18 10:3
  14:14 80:3
calls  46:16
camera  6:9
capital  42:6
caption  63:9
  64:11 107:6
capture  105:10
car  19:10
care  100:25
carries  98:5
case  8:1 16:21
  17:1,2,7,9,14
  17:18 18:9,17
  18:19,21,25
  19:18 20:2,7
  20:23 21:13
  22:14 23:7,19
  23:25 24:1,17
  28:12,17 29:23
  29:25 30:12,21
  31:13 33:15,23
  34:2,3,8,25
  35:3 50:5
  54:12 59:6,12
  59:16 62:2
  63:9 64:11
  66:4 67:11
  77:20 92:6
  100:11 104:17
  107:5 113:2

cash  42:10
category
  100:13
cease  44:20
ceo  27:8,13
  43:17
certain  80:8
certificate
  111:1 112:1
certification
  4:14,17 11:10
  11:11,12 34:11
  51:9,13 59:23
  62:11,14 63:21
certifications
  12:12
certified  33:5
  112:4
certifies  57:2
certify  112:6,17
cfo  27:14
chad  29:3,7
chain  26:18
  104:23
challenged
  25:19 26:1
chance  49:15
  49:16
change  113:5
changes  111:5
checked  93:8
christie  2:9 7:6
  7:11 10:23,25
  30:7 60:11
  68:21 75:1

77:2,4 85:11
  95:17 109:3,8
  109:9,14,16
city  9:17 12:7
  13:5
civil  1:7
claim  26:17
claimed  26:10
claims  20:3
class  4:14,15,15
  4:17,18,18 7:9
  18:12,17,20
  19:1,2,4,7,8,16
  19:19,24 23:6
  23:11,18 32:25
  33:5 59:23
  62:11,11,12
  63:21,22,22
  65:20,22 66:2
  66:8,8,16,18
  108:14
clear  8:17 9:11
  9:13 56:1 67:1
clearly  8:2,8
  71:12
clerk  63:4
client  17:10
clients  29:24
close  41:18
  47:11
colleagues  7:2
  7:6
collect  30:3,11
columbia  3:12

columns  72:14
come  8:16
  22:17 39:20
  53:5 60:2
  79:16 83:1
  84:1 105:21
comments
  24:20,20 50:11
  50:15,17 61:22
  61:24 65:9
commission
  38:10 111:20
  113:25
communication
  29:14,20
communicati...
  29:11 33:20
companies  15:3
  15:5,7,17,17,20
  15:22 37:12,16
  37:18 43:4,9
  44:2,7,12
  47:21,23
company  12:24
  12:25 13:3,8
  13:14,20,24
  14:6,13,17,19
  14:21 15:1,2,7
  15:9,12,25
  16:18 27:8
  28:3,4 30:14
  30:15 38:4,7
  42:23 45:18,21
compared  24:4
  24:9

**[comparison - crr]** Page 7

**comparison** 40:13

**compensated** 18:5,8

**compensation** 18:13

**complaint** 11:7 24:17,24 25:7 25:15,19 26:1 26:7,16 27:4 28:7 33:25 34:5,9

**complaints** 11:5,6 26:4 62:3

**completeness** 92:13 97:3 103:2

**computer** 112:13

**concept** 17:24 27:20 39:14

**concern** 67:20

**concluded** 110:1

**conducted** 6:8 6:18

**conferenced** 1:13

**conferencing** 6:19

**confidential** 27:21,25 28:2 28:7,12,17,21

**connection** 6:9 17:18 34:21 58:3 59:6,16 62:9 64:2 70:9 76:5 77:19 86:18 88:6 92:5 96:21 102:20

**consider** 13:14 17:14 37:6 39:9 93:11 98:22 108:12

**considered** 20:21 21:11 31:22,24

**constitutes** 112:14

**construction** 15:11,12 16:2 16:2,3

**contact** 32:9,14 32:22

**contacting** 58:17

**contents** 17:20 24:19 32:4 33:20 50:9 61:20 65:8,9 104:13 106:18

**context** 18:23 27:25 33:15 34:18 51:13 53:1,11 62:2

**continue** 6:12 79:3,6

**contractor** 12:6 16:3

**conversation** 10:19,22

**convey** 55:22

**copy** 48:11 63:20 74:25

**corner** 78:11 78:12

**correct** 23:12 31:6 56:10 63:20 67:3 69:19 71:8 75:5,10 96:8

**corrected** 53:25

**correction** 22:18,20

**corrections** 111:4

**correctly** 89:5

**cost** 105:11

**counsel** 4:9,15 4:18 6:22 7:15 25:13 28:14,20 35:23 59:22 62:12 63:23 66:16 70:9 76:5 77:19 86:18 88:6 92:5 93:9 96:21 102:20 108:14,14

**counsels** 35:24

**countries** 104:24

**county** 112:3

**couple** 47:5 59:23

**course** 71:15

**courses** 12:15

**court** 1:1 7:13 8:7 9:23 35:2,7 60:22 61:18 62:1 63:6 65:18 75:15 85:15 108:23 109:7,14,17,20

**court's** 25:7

**cover** 20:3 64:7 73:8 89:16 106:17

**covid** 22:6 26:11 41:9,11 41:13,17 42:5 42:18,24,24 43:6,11,15 44:4,10,12 47:15

**covino** 27:16 27:18

**crashed** 103:21

**crc** 1:25 112:25

**create** 70:21,23

**created** 71:12

**creating** 70:24

**credit** 19:12

**crisis** 41:13

**cross** 93:8

**crr** 1:25 112:25

**[cryptocurrency - dispute]** Page 8

**cryptocurrency** 37:15
**current** 12:21 34:14,16 43:17
**currently** 14:17
**cut** 14:10

**d**

**d** 4:1,12,19 6:2 14:15 56:8 63:19 64:7
**d.w.** 1:25 112:4 112:25
**daily** 52:16
**date** 32:19 36:8 52:19 67:11 71:1,1,3 73:9 73:13,17,17,20 73:23 74:14 82:23 89:2,11 89:22,25 93:2 98:4 99:18 101:14 113:3
**dates** 25:2 52:19 55:7,8,9 55:10 70:4
**davi** 14:15 15:2 15:6,8
**david** 1:13 2:3 2:4 4:8 5:8 6:16 7:4,5,11 7:17 9:16 10:23 17:17 47:4 60:2 63:20 64:10 65:16 105:12

107:7 111:10 113:3,21
**davis** 15:25
**day** 39:9 41:24 42:2 78:25 79:23 80:1,1 80:16,18,21 81:18 82:2,5 83:6,7,11,14 93:10 107:5 109:15 111:13 112:22 113:22
**days** 79:24 82:3 105:6,8 109:6
**decide** 43:23
**decided** 41:7 42:12 79:10 83:19 89:25 94:11 101:17
**decision** 66:10 79:11,23
**decisions** 39:5 79:25 87:10 103:14
**declaration** 4:16 58:3 62:21 63:10,15 63:20 64:2,10 65:16 67:12
**defendant** 13:25 14:3
**defendants** 1:10 3:1 7:1,2 8:1 27:6 29:23 30:4,21 109:8

**defines** 20:23
**definitely** 84:1 104:18
**definition** 23:6
**delaware** 2:5,6
**delayed** 60:9
**depend** 42:17
**depends** 6:8
**deponent** 111:1
**deposed** 9:21
**deposition** 1:13 6:7,15,18 10:7 10:13 11:2,15 54:8 66:4 111:4 113:3
**describe** 37:10 37:20
**described** 26:22 27:3 76:1 77:16 86:15 88:2 92:1 96:17
**describes** 59:11
**description** 4:7 22:21 78:18 101:10
**design** 16:5
**determination** 100:4
**determine** 73:10 78:1
**develop** 44:12
**developer** 12:8 13:18

**development** 12:23 13:3,14 14:12 15:1,19 16:17 41:12,25
**developments** 15:12
**difference** 55:21 80:19
**differences** 56:1
**different** 15:11 43:22 62:7 80:1,17,21 81:25 83:7,11 95:16 96:5,8
**differently** 21:9 23:15 79:18
**direct** 9:9 48:25 51:2,8 54:18 61:5 78:17 88:20 97:12,18
**directed** 99:3
**directly** 33:7
**discover** 53:16
**discussed** 10:11 34:1,6 35:16 62:14
**discussion** 10:9 10:12,24 36:6
**discussions** 36:17
**dispute** 76:16 77:22 86:21 88:9 102:23 103:1 107:21

**[distinct - examination]** Page 9

**distinct** 80:22
**district** 1:1,2
   3:12
**dkt** 65:20
**doc** 30:8
**docket** 25:7
   61:18 107:5
**document**
   49:10,17,25
   50:4,6,15,19
   51:12,16,19,21
   52:11,12,22
   53:8,20,25
   54:5,13 55:17
   56:5,16,25
   57:4,10,14,16
   59:18 60:17
   61:4,11,15,17
   61:23 62:4,5,8
   62:18 63:2,8
   65:2,5,9 69:10
   69:23 70:14,17
   71:12 75:10,20
   75:25 76:4,10
   76:13 77:10,18
   78:3,5,11 85:4
   85:12 86:8,17
   87:2,4,12,20
   88:5,15 91:20
   92:4,18,20
   95:11 96:12
   97:8,10 98:5,6
   99:8 101:1,20
   102:12,19
   103:6,8 106:20

107:4,11,17,22
107:24
**documents**
   11:1,9 29:25
   30:3,11,19,20
   30:24,24 34:13
   45:16 47:6
   60:10 67:15
   88:17
**doing** 8:2 16:3
   46:10
**doubt** 71:25
   92:8,12 96:24
   97:2
**draft** 24:24
   51:16 57:4
   61:22 62:13
   65:2
**drafted** 50:16
**drafting** 61:14
**drafts** 50:11
**drive** 9:16
**drop** 67:22
**drugs** 47:22
**due** 32:6 41:17
**duly** 7:18
**duties** 33:4,10
   33:11 58:5,8

---

**e**

**e** 2:1,1 4:1,6 6:2
   6:2
**early** 44:17
**earnings** 46:8
**easier** 30:7

**easiest** 48:10
**education**
   11:18,23
**effectively**
   41:12
**efficiently** 9:2
**efforts** 25:14
   28:15,20 30:10
   106:12
**eileen** 3:11 7:3
**eileen.falk** 3:13
**either** 35:6
   81:14 83:10
**electronic**
   30:13,17 57:6
   57:8
**email** 48:24
   49:1 56:7
   67:22 68:10
   71:23,24 95:22
   96:6,8 101:24
**emails** 19:10
   68:11
**emergency**
   26:24 42:25
   44:1
**employ** 37:23
   39:25
**employee** 28:4
   29:12,21
   112:18
**employment**
   12:21
**ends** 101:1

**engaged** 39:22
**engagement**
   59:15
**enter** 59:5 71:5
**entered** 80:17
   95:8,9
**entire** 31:18
**entirety** 71:6
**entitlement**
   13:16
**erck** 27:9 29:15
**errata** 5:9
   107:7,11 111:5
   113:1
**error** 53:22
   56:2 107:12,13
**errors** 53:7,14
   53:17,25
   107:14
**estate** 12:7,9,23
**et** 1:9 6:17,17
   113:2,2
**event** 20:21
   21:11 22:12,12
**events** 20:21
   21:11 22:12
**everybody** 7:10
**everybody's**
   68:12
**ex** 28:4
**exact** 84:16
**exactly** 104:11
**examination**
   4:3,4 7:21
   108:10

**examinations** 4:2

**example** 15:7 29:15 73:21 74:9 78:25 82:11

**examples** 44:6

**except** 111:4

**exchange** 38:10

**excuse** 43:8 54:14

**execute** 80:4,10 80:11

**executed** 52:18 79:10 94:16

**execution** 91:3 91:5 100:23

**executives** 26:16

**exhibit** 4:7,8,10 4:10,11,11,12 4:12,13,16,19 4:19,20,22,23 4:25 5:1,2,5,7,8 49:5,6 50:18 50:20,23 51:25 52:1 54:8,9 55:18 56:8,12 60:24,25 62:24 63:5,19 64:6,7 64:23 69:11,14 75:14,16 76:22 77:5 85:14,17 86:6 87:15,16 91:11,13,18

95:25 96:10 102:3,5,8 106:24 107:2

**exhibits** 48:6 48:24 59:20,24

**expect** 18:12 80:20

**expectation** 47:20

**expenses** 72:8

**experian** 19:13

**experience** 66:15

**expires** 111:20 113:25

**explained** 19:21 58:10

**explanation** 83:12,18

**explicit** 9:6

**extensive** 66:15

**f**

**face** 80:14

**fact** 59:5

**failed** 26:12,25 26:25

**fair** 31:20 41:14 44:10 47:15 51:12 59:1 71:2 72:6 80:6 84:12 94:5 95:6 99:20 101:10

**falk** 3:11 7:3

**false** 25:18,25

**familiar** 17:24 18:20 27:15,20 29:2 35:10 49:25 75:19 103:16,19

**familiarity** 43:20 67:5 103:18

**familiarize** 49:17 52:7 61:4

**familiarizing** 38:3

**family** 15:17 42:19

**far** 8:22

**farther** 97:22

**fashion** 8:3

**fast** 105:15

**fda** 26:24 42:25 44:1

**fee** 59:2,4,5,8

**feel** 49:21 54:23 58:22 63:2 64:15

**fiduciary** 65:22 66:2,8

**file** 30:13 49:1 50:4,20 64:5 67:21,24 91:14 96:3 106:22

**filed** 20:7 24:17 25:7 38:9 54:1 54:13 61:18

107:4,10,18 108:2,4

**filing** 20:16 24:21 50:20 53:6 54:3 62:1 62:9

**filings** 34:2,7 67:11 93:8

**finance** 32:2 38:15,16,19 46:3 58:17

**financial** 12:13 12:16 112:19

**find** 81:5

**fine** 47:2 109:19

**finish** 8:11,12

**firm** 16:4 17:1 17:5,11,12,13 17:22 30:16,17 32:10,14,22 33:16,22 58:18 59:6,11,16 66:23 67:5,6

**firms** 17:1

**first** 7:18 19:6 31:22,23,24 32:22 33:23 43:1 44:16,24 45:8,14 48:25 54:20 56:3,9 56:24 60:16 65:15 68:22 72:6 76:11 78:10,18 82:11

**[first - heard]**

82:14 84:9 87:2 88:15,20 89:1,16,21 90:5,23,25 95:1,7,8 99:13

**five** 19:14 36:24 38:23 47:7 89:15

**flip** 52:4 54:23 56:16 98:2,8 100:25

**flipping** 93:21

**focus** 15:14 37:18 58:22

**focused** 42:1

**folder** 11:5

**folks** 17:21 32:22 33:22

**followed** 78:19 90:13

**following** 94:7

**follows** 7:20

**foregoing** 111:3 112:7,13

**format** 22:24

**former** 29:21

**forth** 112:9

**found** 14:6 42:3

**founded** 12:25

**founding** 14:12

**four** 89:15

**fourth** 56:6

**frame** 20:22 21:12 22:10

45:2,11

**franchise** 14:14

**francis** 3:15 6:20

**fraud** 16:23

**free** 49:21 54:23 58:22 64:15

**full** 9:15 41:9 43:16 112:14

**function** 70:22 71:2,13

**funding** 43:4,7 43:10

**funds** 42:7

**further** 108:6 108:17,19 112:17

**future** 81:24

**g**

**g** 6:2

**gabbert** 2:14 36:4,20 109:4

**gain** 38:13 42:25

**general** 12:6 13:2,13 16:3 19:4 31:17 55:1

**generally** 19:2 38:3

**generate** 71:6 71:16 86:14 91:25 96:16 102:15

**generated** 75:25 77:15 88:1

**gentleman** 29:2 58:17

**getting** 48:10 78:23,24 102:4

**give** 9:6 22:22 49:14 70:25 81:10,12 82:4

**given** 9:23 30:4 30:11,21 79:23 94:25 98:19

**giving** 99:21

**glenn** 27:9

**go** 6:13 8:21 21:3,15 39:19 48:14,14 49:20 55:25 56:5 60:7 61:8 68:10,12 70:24 82:8,9 85:3,5 93:20 101:5

**goes** 66:4 100:18

**going** 6:5 30:4 30:20 34:3,7 34:20 46:24,25 47:7 48:5,6 51:3 52:5,11 54:24 58:22,25 59:22 61:8 68:13 95:21 97:15

**good** 6:4 7:23 47:8 48:1 85:8 85:9

**gotten** 60:4

**govern** 37:24

**government** 43:7,10

**graduate** 11:24

**graduated** 11:19

**graduation** 12:2

**gray** 3:2,7,11 6:25 109:18

**great** 7:13 9:14 48:4 61:11 63:15 69:8 105:21

**gregory** 27:10 27:15,17

**ground** 9:12

**group** 35:12

**guys** 108:24

**h**

**h** 2:9 4:6

**hand** 78:11,12

**happened** 53:13

**happy** 8:19

**head** 13:13

**heading** 63:9 72:12

**headings** 72:15

**heard** 6:10 7:25 18:22,24 23:13

**[hedges - items]**

**hedges** 40:11
**hedging** 39:25
   40:12
**held** 45:11
   72:13 74:5
**hereto** 63:19
**high** 11:18
   83:17
**higher** 84:10,15
   84:18
**history** 31:18
   45:18 76:9
   86:25 88:14
   92:16 97:7
   103:4
**hit** 80:5
**hmm** 11:21
   19:11 20:9
   45:19
**hold** 12:4,9,12
   44:18,20 68:18
   72:23 102:3
**holding** 44:25
   73:25 74:1,14
**holdings** 73:22
**home** 9:15
**hope** 43:25
**hopefully** 60:5
   60:9
**hoping** 42:24
**hour** 8:23
   10:20 47:1
**hours** 42:2
**huh** 8:16,16
   74:6

**i**

**idea** 25:6 90:17
**identification**
   49:7 50:24
   54:10 56:13
   61:1 62:25
   64:24 69:15
   75:17 76:23
   85:18 87:17
   91:12 96:1
   102:6 106:25
**identify** 68:14
**immediately**
   104:5
**important** 8:6
   87:9
**imposed** 58:5
**inaccuracy**
   106:13
**inbox** 75:2
**include** 35:22
   35:23
**included** 19:9
   35:24 36:17
   104:9
**includes** 67:1
**income** 72:8
**incorporated**
   42:22
**increase** 42:9
**independent**
   10:24
**indicate** 57:16
**indicates** 57:2

**indication**
   78:14
**individual** 7:1
   7:25
**individually**
   1:5
**industries**
   37:17
**information**
   38:2,13 55:22
   72:1 76:17
   77:23 86:22
   88:10 89:10
   92:9,13 95:19
   96:25 97:3
   100:15 102:24
   103:2,12
   106:14 107:21
**informed** 58:4
**inside** 14:16
**instructed**
   90:22
**instruction** 9:6
   9:9 80:7 98:19
   99:22,22
**instructions**
   99:25 100:16
**interactions**
   17:19,21
**interest** 15:3
   37:13 47:17
   112:19
**interested** 38:4
**internet** 6:9
   38:16

**invest** 37:18
   43:24 44:2
**invested** 37:16
   44:16 47:21,23
**investigate**
   25:14 28:16
**investigation**
   13:21
**investing** 12:13
   12:16 36:22
   37:2 38:4
   47:18
**investment**
   37:7,11 38:21
   38:24 39:1,4
   44:24
**investments**
   37:8,14 38:14
   40:2
**investor** 37:21
**investors** 13:11
   65:22
**involved** 15:16
   16:21,23 36:15
   39:4 61:14
   66:7,23 67:7
**involves** 65:21
**issue** 20:14,18
   26:13,16
**issued** 23:3
**issuing** 81:16
**items** 52:5
   82:12

**[j - lines]**

**j**

**j** 3:6
**james** 2:9 7:6 60:2
**january** 65:18
**jchristie** 2:11
**jeffrey** 2:14
**jim** 10:23
**job** 27:11
**john** 27:9,11,13
**johnson** 1:25 7:14 112:4,25
**join** 18:19 32:7
**joined** 33:23
**joining** 7:24
**judge** 34:24
**july** 5:1 85:20 87:24,25 88:14
**june** 4:25 85:5 85:21,22,24 86:13,13 87:1 87:9,23,24

**k**

**kauffman** 29:3 29:7
**keep** 8:23
**killer** 76:25 102:4
**kilobytes** 60:9
**kind** 24:7 37:6 54:24 62:14 71:16 80:6
**kinds** 26:15 30:19 44:6

**knew** 29:6,12 29:21
**know** 8:4,15,24 18:4 22:24 27:11 28:5 29:1 31:18 34:24 35:2,13 35:13 39:2 43:14,17 52:11 52:24 56:2 60:12 64:12,21 69:23 70:12,17 74:7 76:8 78:25 79:3 80:13,19,25 81:1 85:11 86:25 88:13 90:13 92:16 94:24 95:22 103:4 107:10 109:2
**knowledge** 32:8 37:23 69:4 90:2 99:24

**l**

**labaton** 2:4,10 7:4,7,8 17:4,5,8 17:11,12,13,22 32:2,10,14,22 33:16,22 58:18 59:5,11,16 66:16,23 108:15 109:15

**labaton.com** 2:6,11,12
**label** 54:7 64:10 72:13 106:21
**labeled** 54:5 56:5,20 57:21 62:21 64:6 78:11 99:13,14 99:14 107:11
**labels** 51:4
**laid** 55:1
**lake** 9:17 12:7 13:5,6 112:3
**land** 13:16
**large** 67:21,25 68:7
**largely** 13:5
**larger** 68:24
**law** 4:13 17:1 60:18 62:10
**lawsuit** 16:22 21:23 31:25 32:7 33:1 34:15,17,19,21
**lawsuits** 16:23
**lawyer** 17:14
**lawyers** 17:21 28:10 78:13
**layout** 72:5
**lead** 2:3 4:8,9 5:8 7:5 17:14 18:9,13 21:22 23:24 24:8 33:7 35:13,14

35:20,25 50:5 51:14 53:2 65:19 70:10 76:6 77:20 86:19 88:7 92:6 96:22 102:20 104:20 107:7 108:13
**learned** 89:10 103:12
**leave** 108:24
**led** 43:23 89:12 104:13
**left** 105:12
**level** 37:20
**leverage** 42:8
**license** 12:6,10
**licensed** 16:7 16:10
**licenses** 12:5
**likely** 90:10,15
**limit** 80:3,4 81:15
**limited** 80:3 81:15
**line** 47:5,10,11 52:5 82:12 84:11 88:25 94:1,2 97:20 98:9 99:2,4,5 99:12,13 101:5 101:6,10 113:5
**lines** 79:9 84:10 89:15 101:14

**listed** 33:10 55:10 73:10 80:15 82:15,16 84:10,11 90:6 91:2 93:5 101:7
**listen** 46:7,12
**listening** 46:15
**listing** 82:14 91:5 98:3
**listings** 89:1 94:6
**litigation** 13:25 14:3 28:1 58:5 66:18,22
**little** 43:21 67:21 68:25 81:25 105:12
**live** 46:7,13,15
**llc** 113:1
**llp** 2:4,10,15 66:16,17
**local** 13:21
**location** 14:15
**long** 10:18 32:20 36:22 41:16 56:17 107:6
**look** 49:17,20 54:3,4 56:16 61:3 62:17 63:17 64:5,16 64:18 65:14 66:13 70:14,16 72:25 76:10,13

78:3,6,9 82:11 87:2,4 88:15 88:17 92:18,21 94:23 97:8,10 103:6,8 106:12
**looked** 50:21 55:17 64:3 70:10 76:2 88:3 89:7 96:18 102:17
**looking** 14:19 33:19 63:8 73:1 86:2,5 93:23 95:13 97:24 99:12 100:12
**looks** 54:16 57:1 67:24 68:4 90:24 107:5
**loss** 24:4 105:10
**losses** 24:4,6,7 24:9,10,11,13 32:6
**lower** 39:20,21 83:18 84:15 85:3

**m**

**m** 3:11 15:24
**madam** 49:4 60:20 63:4,5
**made** 25:15 28:16 32:21 34:2,3,7 35:6

45:14,17 62:15 83:5,10 84:20 84:21,24 93:9 94:15 105:9 111:7
**mail** 71:23
**major** 66:10
**majority** 14:23
**make** 8:17 20:17 66:25 71:11 72:4 79:11,22,24 83:3 86:1 94:11 100:3 106:12
**makes** 23:16
**making** 40:13 57:18 66:10 105:1
**manage** 15:20 15:23,24 16:1 16:4
**manageable** 68:4
**management** 15:15,16 40:1
**manner** 22:7 26:11,20,25 86:15
**manufacturer** 26:18
**manufacturers** 47:16
**manufacturing** 104:24

**march** 4:20 67:13,18 70:3 70:5,5,6,13,18 72:2 76:1 77:16
**margin** 40:5,17 40:20,23 41:1 41:4,7,10 42:4 42:8,13 73:3
**mark** 22:13 49:4 60:23 107:1
**marked** 49:6 50:23 54:9 56:12 60:25 62:24 64:23 69:14 75:16 76:22 85:17 87:16 91:11 95:25 102:5 106:24
**market** 36:23 37:8 39:7 81:14
**marketing** 11:22
**markets** 37:3
**marking** 69:10
**maryland** 1:2
**massachusetts** 3:8
**material** 29:6
**materials** 11:1
**mathematical** 37:24

**matter**  6:16
10:4 13:25
14:3,4 25:18
25:25 26:6
32:4 71:15
**matters**  66:22
**mean**  16:15
18:25 23:3
25:10 38:9
40:9 48:11
55:8 74:1
81:20
**meaning**  19:23
**meanings**
90:20
**means**  18:16
40:5,10 61:9
66:1
**mediation**  33:9
34:12,22 66:10
**medium**  37:22
**megabyte**
60:10
**megabytes**  68:2
68:4,7,8
**members**  23:18
23:25 24:2,5,9
**membership**
23:6,11,13
**memo**  60:17
**memorandum**
4:13 62:10
**met**  19:18
33:14,15

**method**  10:16
71:23
**michael**  2:9 7:8
**middle**  97:23
**mike**  7:6
**minor**  53:14
**minute**  54:4
**minutes**  105:22
**misleading**
25:18,25
**missing**  101:7
**mm**  11:21
19:11 20:9
45:19
**model**  37:24
**moderna**  44:8
44:9 97:23,24
**moment**  9:19
34:20 55:18
61:3 76:2,24
**money**  40:10
40:14,15
**monitor**  19:12
108:13,14
**monitoring**
17:25 18:3
**month**  36:9
76:9 78:2
87:10 103:13
**motion**  4:8,14
4:17 62:10,22
63:11,21 64:2
70:10
**motions**  35:6

**mountain**  6:5
**move**  9:2 22:9
48:12 74:18,21
87:13 95:12,21
101:23
**moving**  8:23
**mrogers**  2:12
**multiple**  79:24
80:14,21 90:14
90:19 94:16

**n**

**n**  2:1 4:1 6:2
**nail**  15:2,18
**nails**  14:15,15
15:6,8 16:1
**name**  6:19 7:24
9:15 12:24
16:25 17:9
27:15,17 34:24
35:2 36:2
43:17 49:1
50:20 96:4
112:21 113:2,3
**named**  27:6
28:6,11 29:2,7
**names**  16:25
28:6 34:13
46:4
**nandkumar**
2:14 35:11,18
36:1,18
**natural**  47:8
**necessary**  8:5
**need**  8:7,14,18
8:20 9:1,1,5

46:25 48:7
52:8 58:23
61:3 68:16
70:16 81:23
85:7 109:12
**needed**  42:6,6
**needs**  48:11
**negotiate**  33:8
**never**  23:13
28:13 29:5,14
**new**  2:11,16,16
3:3,3 113:1
**news**  38:13
83:19 84:17
87:8 103:12
104:18,20
**nods**  8:15
**normal**  8:21
42:15
**notary**  111:17
113:25
**note**  6:7 89:7
**noted**  111:5
**notes**  112:12
**notice**  5:9
107:7,11
**notification**
57:1
**novavax**  1:9
4:21,22,24,25
5:1,3,4,6,7 6:17
7:1,25 21:21
21:25 22:5,13
23:3 24:11,13
26:10,15 27:8

27:12 29:12,21 30:25 31:2,4,8 31:18,25 32:7 42:22 43:2,18 43:21,24 44:16 44:18,21 45:1 45:12,15,17 46:8 52:1,19 53:3 55:6 65:23 69:12 70:13,18 73:2 73:15 75:6 76:9 78:2,14 78:19,21,22 79:3,21 81:11 81:17 82:3,5 82:14,19 86:6 87:1,8,18 88:14 89:1,11 89:17,25 91:18 92:17 93:18 94:11 96:10 97:7,20 98:4 98:20 100:19 100:20 101:8 101:18 102:8 103:5,13,21 104:14,19,20 106:6,17 113:2

**novavax's**
43:15 46:20

**november**
20:10 22:16

**nuggehalli** 2:14
35:10

**number** 54:13
74:7 78:13,14 79:2,7 80:8 88:21 92:24 93:18 101:13

**numbering**
57:22 97:13

**numbers** 33:20
97:14 98:13 99:10

**nw** 3:12

**ny** 2:11

---

**o**

**o** 6:2

**o0o** 5:10 6:3
110:2

**oath** 112:9

**object** 9:5

**objection** 9:7
20:24 21:14 22:15 23:8,20 24:25 25:20 28:23 29:8,16 31:5,14 36:10 39:12 40:7 45:3 55:23 59:7 71:18 80:24 81:7,19 83:15 84:23 90:9 93:13 94:17 95:2 98:24 100:5 104:4

**objections** 9:8

**obtain** 18:13
46:18

**obtained** 18:12

**occur** 94:7

**occurred** 21:21

**october** 5:7
20:10 101:23 102:14,14 103:5,13

**oh** 85:22

**okay** 7:13 9:21
10:18,21,24 11:11,14 12:2 12:4,12,21 13:20 14:8,20 14:23 15:10,22 16:10,17,25 17:10,13,24 18:2,5,23 19:6 20:1,16,19 23:14,23 24:14 24:19,23 25:4 26:21 30:2,6 30:18,23 31:11 31:17 33:19 35:22,25 36:15 37:20 38:18 40:17,19 41:3 41:23 42:12 45:9,14,25 46:10 47:9,13 47:20 49:8,23 49:23,25 50:9 50:18,22 51:8 51:11 52:6,9

52:20 53:1,5 53:10,16,19,23 54:3,6,15 55:11,20 56:4 56:8,11,21,22 57:23 58:2,21 59:10 60:5,11 60:14,16,19,23 61:7,10,11 62:17,20,23 63:3,8,15,18,24 64:9,14,20,25 65:2,7,11 66:25 67:4,15 68:5,9,23 69:5 69:8,20 70:8 70:12,24 71:9 71:11,22,25 72:11,22 74:14 74:18,23 75:3 75:12,13,19 76:4,8,16,20 77:4,5,9 78:8 78:16 79:1,20 80:13,20 81:3 81:10 82:7,10 82:13,17,21 84:3,9,14 85:2 85:4,10,25,25 86:1,5 88:23 89:14 90:12,17 91:15 93:1,6 93:20,25 94:5 94:13,21,24 95:6,20 96:9

**[okay - partner]**

97:17 98:1,2
98:11,15,22
99:11,15,19
100:2,11 101:3
101:12,15,20
101:22 102:2
105:4,16,21,23
106:23 107:20
108:1,17 109:7
109:14,17,20
**omissions** 53:7
**once** 71:20
**ones** 60:8 68:10
68:11 76:21
88:2 109:2,4
**ooooo** 1:3 3:16
**open** 49:3
60:17 68:13
106:20
**opened** 86:2
91:17
**operate** 41:13
**operations**
41:17 42:19
**operative** 24:16
**opinion** 66:9
91:8 100:24
**opposed** 15:15
33:16
**option** 33:6,7,8
42:4
**oral** 50:15
61:22 112:15
**order** 19:18
54:19 79:19

80:16 81:4,11
81:13,20 82:4
82:23 83:3,5,6
83:24,24,24,25
84:1,2,20,24
90:7,8,10,18
91:2,5 94:15
94:15,23,25,25
95:8,9 99:25
100:2,16,23
**ordering** 84:4
**orders** 80:17,23
81:16 82:19
83:10,13 90:14
90:15 108:23
**overall** 16:17
16:19 37:5,7
**oversee** 108:15
**overstated**
21:25 22:2
26:10 32:6
**overstating**
22:5
**own** 15:11,11
73:4
**owner** 13:7,10
13:12
**ownership**
14:21,24 15:3
15:8,15

| p |
|---|

**p** 2:1,1 6:2
**p.m.** 1:19,19
6:1,5 48:17,20
105:24 106:2

109:24 110:1
**pacific** 11:20
11:25 12:19
**page** 4:2,7 51:4
51:5,5,9,9,24
51:25 54:14,19
54:20,21,21
56:9,15,19
57:6,21 58:12
58:13,13 62:7
63:16 64:7,8
65:12,15,15
66:14 72:6,12
73:1,12 74:16
75:4 78:10
79:7 82:7,9,12
82:14 83:16
84:4 88:21,25
92:24 93:20,23
95:15,16 97:12
97:16,19,23
98:5,6,10 99:3
99:8 100:20,21
101:1,2 113:5
**pages** 51:3
56:17 78:8
79:7 89:14,17
93:4 94:7
98:14 107:6
**paid** 19:13
44:11
**paper** 64:3 86:3
**paragraph**
57:21,25 58:2
58:14,19,21,23

63:17 65:14
66:13
**pardon** 101:6
**part** 13:17
16:11 31:25
57:17 108:12
**participants**
6:10
**participating**
17:6
**participation**
18:21
**particular**
19:17 20:1,3
20:21 21:11,20
22:4,12,21
34:19 37:1,4
37:12,17 39:25
41:6 44:11
45:16 47:16
48:8 55:2 62:1
62:4,5,9 64:2
67:12 73:20
80:8 81:12,17
82:2 83:16,25
87:8 89:11
101:5 103:12
**particularly**
51:3
**parties** 6:13
112:18
**partner** 16:12
16:13,13,14
17:8

**[partnership - presently]** Page 18

**partnership** 104:24
**parts** 94:16
**party** 18:2 35:6
**pass** 34:22
**past** 38:23 40:22 45:20,20 67:1
**pay** 38:19
**pdf** 54:23 69:2 75:11 86:2 91:17 97:16 98:7 99:4,9 101:2
**pending** 8:20 35:3,7,8
**pennsylvania** 3:12
**people** 18:19 28:6,11 35:19 39:2
**percent** 16:12 16:14 103:21
**period** 19:24 20:3,6,11,12,13 20:16,18 22:8 22:14 31:12 41:13 42:5,18 44:11,24 70:3 71:7 72:8 73:7 73:8,22,23,24 73:25 74:2,9 74:10,11,13 96:14

**periodic** 71:16
**permits** 71:3
**person** 8:6 10:15 11:15 33:16
**personal** 39:2
**personally** 14:2 25:13 28:9,10 28:15 29:11 62:15
**pfizer** 44:9
**phone** 33:17,21
**phonetic** 15:24
**phrase** 21:8 23:14
**piereson** 3:6 7:3 68:1,6 69:5 69:7
**piereson's** 56:7
**place** 6:13 26:18,19 36:7 112:8
**placed** 112:9
**places** 61:5
**plaintiff** 4:8 5:8 7:5 13:24 14:2 18:9,14 24:8 36:1,2 50:5 51:14 53:2 65:19 70:10 76:6 77:20 86:19 88:7 92:6 96:22 102:21 107:7 108:13

**plaintiff's** 63:11
**plaintiffs** 1:7 2:3 4:13,17 23:24 35:13,14 35:21 62:10 63:21 109:9,11
**planning** 12:13 12:16
**platform** 31:3,9
**please** 6:7,23 8:10,14 9:9,14 10:10 11:17 62:18 63:16 67:18 74:22 76:24 92:23 109:16
**pleggio** 2:6
**point** 30:2 38:23 40:22 41:8 44:23 45:1,7,10 47:8 53:19,24 54:25 73:15 74:10 83:6,7 98:8 99:21 103:22
**points** 9:4 83:11
**politico** 103:16 106:6,9,11
**pomerantz** 2:15 66:17 67:5,6 109:11 109:20

**pomlaw.com** 2:17
**portfolio** 37:25 72:12
**possession** 30:23
**possible** 9:3 53:7 83:5
**post** 11:18
**potential** 44:3 67:10
**practice** 46:12 79:20 91:5
**precise** 32:19
**preparation** 70:9
**prepare** 10:6 10:12 11:2 52:22 55:11
**prepared** 10:3 50:7 70:21 107:24
**present** 3:15 6:22 34:20 43:13 67:2 81:25
**presented** 72:2 77:23 86:22 88:10 92:9,13 107:21
**presenting** 72:19
**presently** 35:6 40:20

**[president - question]** Page 19

president 12:23
14:14,18
presiding 34:24
press 21:25
22:2 32:1,4,10
32:13,17,20,21
38:5,6
pretty 19:20
25:8,9 38:5,20
41:18 105:14
previous 88:2
92:1 96:18
previously 26:8
26:22 77:16
107:15
price 39:21
79:16 80:5,8,9
80:10 81:4,5
81:12,14,15
83:18 84:8,10
84:11,15,15,18
104:9
prices 80:22
primary 13:15
31:3
printed 54:17
74:25
prior 14:12
18:21 24:17,21
32:10 36:24
51:21 57:10
61:17
private 58:5
pro 18:12

probably 10:20
32:23 34:23
66:3
proceed 7:15
18:17 19:18
34:17
proceeding
34:18
proceedings
112:7,11,15
process 8:22
48:15
production
29:24
professional
12:4 112:5
promises 68:20
prompted
32:13 37:2
pronounce
44:8
properties
12:24 16:4,6
propose 47:7
proposed 23:6
23:18 32:25
47:22 66:16
protect 39:19
protecting
66:17
provide 24:20
30:3 51:18
53:2,21 57:8
70:8 71:22
76:4 77:18

81:5 82:22
86:17 88:5
92:4 96:20
100:15
provided 11:11
11:13 30:11
51:13 64:1
96:20 102:19
providing
30:19 50:10,14
53:20 61:21
62:13 65:8
82:18
prudential 3:7
public 36:23
37:3,8,14 40:1
41:21 111:17
113:25
published
104:3,6
pull 74:25
76:20
punitive 32:25
purchase 42:9
42:10 45:8,14
45:17 73:3
89:12 93:11,12
93:17 98:19,23
105:9
purchased
79:17 93:10
105:6
purchases
105:4

purchasing
105:5
purpose 62:1
put 9:7 48:6
54:20 56:4
59:18 67:15
76:20 80:3,4
81:3 85:4
87:12 90:7
91:9 95:11,14
100:13,19,21
101:20
putting 48:10

**q**

quality 6:8,9
73:16
quantity 73:3
73:10,16 74:8
quarter 38:6,6
quarter's 46:11
quarterly 23:1
23:2,3 38:7,8
45:20
quarters 97:19
question 8:20
8:21 9:5,6
15:14 21:4,6
21:16 22:9
23:14 25:23
28:19 34:4
43:22 45:5
50:12 52:8,10
54:24 58:24
59:2,13 62:7
69:22 70:4

**[question - relative]**

74:3,4 78:24
79:8 81:1,25
95:18 98:17
102:10 108:9
**questions**  8:2
8:11 9:10,11
47:5 56:19
68:14 72:4
74:19 108:7,18
108:19
**quick**  108:9
109:5,12
**quickly**  8:25
**quite**  78:21

**r**

**r**  2:1 6:2 16:2
**radio**  38:12
**range**  71:3 81:5
**rata**  18:12
**read**  11:6 29:6
45:18,20 56:23
58:23 84:8,17
89:6 103:22,25
106:8 111:3
**reading**  89:5
**ready**  54:25
56:18 64:22,25
77:7 91:19
96:11 102:10
**real**  12:7,9,23
108:9
**really**  8:16
**reason**  37:4
41:6 68:25
71:25 76:16

77:22 79:12
83:2 84:5,6,7
84:16 86:21
88:9 92:8,12
96:24 97:2
102:23 103:1
107:20 113:5
**reasonable**
59:2
**reasonably**  8:8
**recall**  8:6 11:8
17:9 18:23
21:5 22:5,23
24:23 27:4,5
27:19 30:19
32:3,16 34:1,6
34:13 36:5,8
43:12 44:15
45:15,22 46:4
46:10 50:6,10
50:14 53:19,24
58:11 61:21
62:12,16 65:7
65:8 67:10,14
81:16 82:3,18
84:16 87:11
90:21 94:12
95:4 101:19
104:1,8,11,25
106:5
**recalling**  36:16
**received**  43:10
48:23
**recently**  25:8,9

**recess**  48:19
106:1
**recognize**
49:10 77:9
86:8 87:20
91:20 96:12
102:11
**recollection**
25:4 44:21
53:10 64:1
83:23 87:7
89:10,23 90:6
93:16 98:17
103:11 104:12
**record**  6:5,14
6:23 8:17 9:7
9:15 48:15,16
48:18,21 68:17
105:25 106:3
109:25 111:6
112:15
**recorded**  1:13
6:11,15
**recording**  6:8
6:12
**records**  46:16
46:19 53:3
70:13
**recovery**  18:11
**refer**  22:20
24:6,10 38:8
**reference**  58:16
59:1 73:2
88:24 97:20
99:7

**referenced**
31:12 45:15
54:1 106:12
**references**
66:14 89:16
**referencing**
58:9 107:15
**referred**  35:25
41:11 43:7
**referring**  12:18
20:13 22:3
30:16 32:5
35:17 36:3
40:12 81:24
98:9 104:23
**reflect**  80:22
82:24 90:7
**reform**  58:6
**refresh**  64:1
**registered**
112:5
**regular**  109:12
109:18,19,21
109:22
**regularly**  106:8
**regulator**  13:22
**relate**  30:25
80:16
**related**  22:10
22:13 30:18
**relationship**
17:11
**relative**  38:14
42:10 112:18

**[relatively - rules]** Page 21

**relatively** 41:20
**release** 22:1,3
26:14 32:1,4
32:11,13,17,20
32:21 38:5
**released** 26:9
**releases** 38:6
**relevant** 20:23
21:13,22 22:10
22:14 31:12
59:23 87:8
**rely** 38:3 100:2
**remember** 25:1
30:22 58:11
62:16 89:13
90:1 93:19
98:21 103:20
105:5
**remembering**
36:6
**remotely** 6:18
**rental** 19:10
**repeat** 8:4 21:6
34:4 50:12
59:13
**rephrase** 8:4
45:4 53:23
57:15 90:19
**report** 23:1,2,3
46:11
**reported** 1:25
96:25 97:3
**reporter** 7:14
8:7 49:4 60:20
60:22 63:5,6

75:15 85:15
108:23 109:7
109:14,17,20
112:5,6
**reporter's**
112:1
**reporting**
113:1
**reports** 38:6,7
38:8,9 45:21
45:23 46:1
106:16
**represent** 6:24
7:25 17:1
65:23 79:10
93:7 98:12
101:12
**representation**
59:12
**representative**
32:25 33:4
65:21
**representatives**
4:15,18 62:12
63:22
**represented**
17:6
**representing**
6:20
**represents**
73:22 74:8
**request** 30:8
71:17
**requested**
112:20,21

**requests** 29:24
**requirements**
19:17 58:4,8
**research** 43:3
**respect** 20:1
21:21 37:7,13
40:1 42:4
47:17 55:21
67:4 79:21
92:21
**responsibilities**
13:15
**responsibility**
108:13
**rest** 67:19
**restate** 25:23
**result** 80:2
**reveal** 17:19
**reversed** 54:17
**review** 11:1
24:16 25:5
46:16 51:21
55:16 57:10
61:17 62:13
65:5 97:6
107:17 108:1,4
112:20,20,21
**reviewed** 24:21
24:24 34:1
45:16 46:2
55:17 67:10
**reviewing** 11:8
32:10 34:6
45:22 50:6
52:10

**right** 48:12,12
56:9 59:25
69:21 73:14
75:7 77:2
78:11,12 85:23
105:17 109:23
**rights** 66:17
**risk** 37:21 40:1
**robinhood** 4:20
4:22,23,25 5:1
5:2,4,5,7 30:14
30:18,24 31:3
31:9,19 69:17
70:1,21,22,23
71:3,15 75:23
77:13 79:12
81:11 82:19
87:23 90:22
91:7,23 96:13
102:13,16
**robinhood's**
86:12
**rogers** 2:9 7:6,8
7:8
**roles** 57:3
**room** 8:7
**ropes** 3:2,7,11
6:25 109:17
**ropesgray.com**
3:4,8,13
**roughly** 67:23
**rpr** 1:25 112:25
**rule** 31:17
**rules** 9:12

**run** 71:1
**running** 14:17
**runs** 15:2 86:6
**rushed** 63:2

**s**

**s** 2:1 4:6 6:2
  113:5
**sale** 45:10
  89:17 94:11,21
**sales** 90:12,14
  105:1,11
**salt** 9:16 12:7
  13:5,6 112:3
**sandhurst** 9:16
**saw** 32:17,19
  32:21
**saying** 84:19
  104:22
**says** 51:4 54:13
  56:10,15 65:15
  66:15 107:7
**scale** 26:19
**scanned** 69:1
**school** 11:18
  12:17,18
**schwartz** 2:4
  4:4 7:4,4 10:23
  10:25 17:17
  20:24 21:3,14
  22:15 23:8,20
  24:25 25:20
  28:23 29:8,16
  31:5,14 36:10
  39:12 40:7
  45:3 46:21,24

47:3,9,13 48:3
48:5 49:12,14
49:21 55:23
59:7 60:1,4,7
63:1 64:15,19
64:21 68:18
71:18 75:4,8
80:24 81:7,19
83:15 84:23
85:7,10 90:9
93:13 94:17
95:2 98:24
100:5 104:4
105:16,20,23
108:8,11,22
**screen** 6:11
**second** 62:18
  66:14 82:15
**secured** 79:17
**securities** 13:17
  15:4 16:22,23
  27:25 36:23
  37:3,8,14 38:9
  38:14 39:7
  40:2 41:21
  47:17 58:5
  66:21 72:13,20
  74:5
**see** 23:15 51:4
  51:6,25 52:4
  54:24 58:13,19
  59:22 63:13
  65:19,24 66:19
  72:16 73:5,12
  73:16,17 78:20

78:24 79:6
88:24 89:3,16
89:19 94:1
98:3,8 99:2,6
99:16 101:4,7
106:17 107:8
**seeing** 58:16
  63:25
**seek** 39:1
  106:16
**seeking** 44:3
  51:14 53:1
**seeks** 65:23
**seemed** 100:19
**seen** 6:10 32:1
  34:11,12 61:11
**select** 71:3
**selecting** 37:18
**selection** 4:9
**sell** 15:7 81:17
  81:21 82:4,16
  82:19,23,24
  83:3,6,10,13,17
  83:20,23,24,24
  84:11,14,21
  89:25 90:23
  94:3,6,25 95:9
  95:15 99:7,13
  99:14,22
  100:17 101:8
  101:14,17
  104:14,21
**selling** 39:15,18
  39:23

**sells** 55:5 83:1
  84:2,24 95:7
  100:14,21
  104:15
**send** 59:19,20
  60:10 67:19
  68:10 71:19
**sending** 59:24
**sense** 23:16
**sent** 60:12 68:2
  68:21 75:2
  106:21
**sentence** 58:2,9
  58:22 59:1
  65:24 66:14
**separate** 13:18
  13:19 25:12
  32:19 68:11
  71:17 73:19
  79:13 95:22
  101:24
**separately**
  79:10,18
**september** 5:5
  95:23 96:14,14
  97:7 112:22
**series** 93:3
**serve** 66:2
**served** 29:24
**service** 18:9,13
**serving** 65:21
**set** 44:12 48:24
  69:6 89:22
  112:8

**[sets - state]** Page 23

**sets** 52:11,12
**setting** 15:3
  34:5
**settlement** 33:9
  66:10
**seven** 14:7 42:2
**several** 69:12
  89:1,16 94:6
**share** 45:13
  79:16 98:13
**shareholder**
  66:17
**shares** 45:1,12
  73:3 74:8 80:8
  80:9 83:20
  89:12,21,25
  93:8,10,12,18
  98:16,20,22
  101:13,18
**sharp** 68:25
**sheet** 89:7
  111:5 113:1
**short** 39:14,17
  39:20,22
**shorthand**
  112:5,12
**show** 48:6
  50:18
**showed** 30:8
  80:21
**shows** 83:17
  94:2,2
**sic** 11:20 14:16
  16:5 18:19
  22:17 24:8

26:18 30:14
34:9 38:5,6
39:2,19 45:13
79:16 80:5
**side** 67:16
**signature** 51:18
  57:7,8 65:11
  112:20,20,21
  112:24
**signed** 34:12
  57:13,14
**significant**
  93:12,18 98:23
**signing** 51:22
  57:11,16
**silent** 24:5
**similar** 22:9
  43:10
**similarly** 1:6
**simple** 59:3
**single** 79:11,14
  79:18,19,23
  80:15,16,21
  81:18 90:7,10
  90:14,15 94:15
  94:23
**sinnathurai** 1:4
  6:16 113:2
**sir** 9:19 17:3
  18:6 47:24
  49:11 50:1,13
  56:24 58:19
  59:14,18 61:3
  61:12 63:8,25
  65:2,24 66:19

67:16 69:22
77:7 78:20
85:5 86:5,9
87:20 91:19
94:1 95:11
98:2,12 101:21
102:1,10 107:8
**sister** 15:5,25
**sit** 28:5
**sites** 38:18
**sitting** 9:18
  58:7 83:22
  87:7 89:9,23
  90:2,17,21
  94:24 98:18
  99:24 104:8,25
**situated** 1:6
**six** 14:7 19:14
  42:2
**size** 67:21
**sizes** 67:24
**slightly** 21:8
  23:15
**slow** 67:22
**slowly** 8:8
**small** 68:10
**smaller** 15:6
  23:25 24:2,3,4
**snail** 71:23
**software** 48:8
**soon** 25:9 60:5
**sorry** 14:8,10
  27:23 46:25,25
  47:3 54:16
  63:5 74:1

85:16 87:24
89:5,6 99:4
101:5 108:3
**sort** 9:8 37:6
  47:10 59:10
**sothinathan**
  1:4 6:16 113:2
**sounds** 8:15
  54:20
**source** 31:19
  46:1
**sources** 38:2,12
**speak** 8:2,8
**specific** 61:5
  72:25 74:10
  78:9 81:4,12
  83:22
**specifying** 81:4
**spend** 41:19,25
**spoke** 7:11
**spoken** 11:15
  28:9,11 33:21
**spot** 48:1
**stake** 14:21,24
**stanley** 27:9,13
**start** 31:23
  37:2 41:3,7
  47:6 67:17
  82:1
**started** 41:10
**starting** 8:24
  56:19
**starts** 49:1
**state** 6:23 9:14
  13:21 112:2

**stated**  26:8
**statement**  4:20
  4:22,23,25 5:1
  5:2,4,5,7 8:15
  26:9 28:16
  31:20 62:15
  63:10 67:18
  70:1,2,6,8,20
  71:1,6,16,20,22
  72:2,9 73:7,24
  74:16,20,21
  75:23 76:1,18
  77:13,15,24
  80:14 82:24
  83:12 84:12
  85:6 86:12,14
  86:23 87:23
  88:1,11 91:2,4
  91:4,23,25
  92:10,14 96:13
  96:16,21,25
  97:4 100:3,12
  101:24 102:13
  102:15,24
  103:2
**statements**
  21:25 22:1,3
  22:18,21,22,24
  25:18 26:1,15
  30:17 31:20
  32:7 57:17
  67:20 68:3
  69:17 91:6
  92:2 95:13
  96:18 111:7

**states**  1:1 58:3
**status**  34:15,16
  43:14
**stepped**  14:17
**stock**  24:11,13
  30:25 31:2,4,8
  31:19 39:19,20
  40:11,14,15
  43:24 44:16,18
  44:20,25 53:3
  65:23 70:13,18
  76:9 78:2
  79:22 81:11,17
  82:3,5,19 84:8
  84:18 87:1
  92:17 94:11
  97:7 100:18
  103:5,21 104:9
  104:14,21
  105:1,4
**stocks**  55:6
  72:20
**stop**  42:12
**stopped**  40:25
**straight**  42:10
  69:2
**strange**  54:18
**strategies**  40:1
**strategy**  37:7
  37:10
**strictly**  13:6
**strike**  31:23
**subject**  13:21
  25:17,25 26:6
  26:21 32:4

**subscribe**
  111:6
**subscribed**
  111:12 112:21
  113:22
**substantial**
  24:9
**sucharow**  2:4
  2:10 66:16,23
**suite**  2:5
**summarize**
  11:17
**summary**  72:7
  72:12
**supplier**  15:25
**supplies**  15:7
  16:1
**supply**  15:9
  26:18 104:23
**support**  4:14
  4:17 42:18
  43:5,11 62:10
  62:21 63:10,21
**supposed**  26:23
**sure**  20:17
  27:14 34:5
  45:7 66:25
  71:11 72:5
  86:1 100:22
  105:20
**suspended**
  41:17,25 42:19
**swear**  7:14
**switch**  76:25,25

**sworn**  7:19
  111:12 113:22
**symbol**  73:2
  78:19

**t**

**t**  2:9 4:6 16:2
**tab**  49:2 50:19
  54:5 56:5
  59:19,21,21,21
  60:17 62:18
  64:6 67:18
  68:1 74:24
  75:7,8,11 77:2
  77:3,5 85:19
  85:22,24 87:13
  87:15 91:14
  95:24 96:2,4
  101:25 102:3
  106:21,22
**table**  52:3 55:2
  55:12,18 72:14
  72:18 73:11,18
  73:20 74:5,5
**tables**  55:21
**tabs**  68:3,6
**take**  6:13 47:7
  47:7,12 49:16
  49:17,20,21
  54:3,4 56:16
  61:3 62:17
  63:1 64:19
  68:13 85:8
  105:13
**taken**  1:14,18
  12:15 48:19

**[taken - trading]**

106:1 112:8,11
**talk** 48:15
**talked** 10:8
**talking** 8:13
24:7,11 28:10
69:16 85:20
106:6
**tdc** 1:7
**technological**
69:3
**telephone**
10:16
**television** 38:13
**tell** 7:19 10:10
35:15 50:9
53:12 61:20
65:7 67:23
80:14,19 84:4
91:19 96:12
112:10
**telling** 24:19
**ten** 47:7 105:22
**tend** 38:19
**tenses** 66:25
**term** 19:24
23:13
**terms** 45:16
59:12
**testified** 7:20
**testify** 10:4
33:8 66:4
**testimony** 9:23
112:15
**thank** 60:1
108:8,17,20,21

**thanks** 7:23
108:22
**thereof** 112:16
**thing** 8:19 61:9
94:22
**things** 8:23
47:11
**think** 7:12
19:13 21:17,17
22:7,16,17
48:1 67:18
89:6 91:1,2,4,9
95:22 100:23
105:8,13,14
108:20 109:3,5
109:5
**thinking** 84:17
**thomas** 3:2
6:25 7:24 48:5
**thomas.brown**
3:4
**thoughts**
105:14
**three** 35:14
89:15 97:19
**time** 6:5,22
8:18 12:18
18:6 20:3,5,11
20:12,13,16,18
20:22 21:12,24
22:10 24:17
32:20 41:9,19
41:20,23 45:1
45:11 46:7
47:19 48:17,20

49:21 53:5
55:17 61:18
63:1 64:19
68:13 70:2,25
81:10,21 83:3
83:4,10 96:14
104:2 105:24
106:2 108:20
109:24 112:8,9
**timeline** 22:6
**timely** 22:7
26:11,19,24
**times** 31:11,15
33:21,24
**timing** 26:13
**title** 27:11 56:6
60:17 64:7
75:11
**today** 6:21 7:24
10:7 11:15
14:4 18:6 28:5
43:14,14 58:8
83:22 87:8
89:9,24 90:3
90:18,21 94:24
96:18 98:18
99:25 104:8,25
108:7,21
**together** 59:21
105:14
**tolerance** 37:21
**tom** 68:19 75:4
**took** 36:7 41:9
**top** 8:13 51:4
51:10 54:12,21

56:15 57:22
65:16 66:14
78:11 97:13
**topics** 27:2,3
**total** 72:7
101:13
**tower** 3:7
**townhomes**
13:4
**trade** 30:14
31:2,8 40:5,17
40:20,22 72:21
79:21 80:16,17
81:11,12 82:2
**traded** 31:4
**trader** 39:10
**trades** 20:13,23
52:16,16,17,18
52:19,20 55:6
70:17 78:1,9
79:3,10,13
80:15,21
**trading** 13:17
15:4 20:18
30:15,25 31:18
37:25 40:25
41:3,7,10,20
42:1,3,5,13,16
42:16,17 53:3
70:1,13 76:9
79:11,22,23,24
80:22 81:3
87:1,10 88:14
92:16 97:6
103:4,14

**transaction**
  82:15,16 84:21
  90:22,23,24
  94:2,3,21
  97:21,22 101:8
**transactions**
  52:1 82:25
  89:17 90:5,13
  93:4,22 94:6
  97:23,25 98:4
  98:14 99:7
**transcribed**
  112:12
**transcript**  8:17
  111:3,6 112:14
**transcription**
  112:13
**tree**  76:25
  102:4
**trial**  9:24 10:4
  34:23 66:5
**trigger**  20:22
  21:12
**trizzino**  27:9
**trizzino's**  27:11
**trouble**  8:4
**tru**  16:1,2,2
**true**  31:11,15
  63:19 112:14
**trump**  43:5
**truong**  1:13 2:3
  4:8,21,22,24,25
  5:1,3,4,6,7 6:16
  7:5,17,23 9:16
  15:12 16:3,5

21:3,15 46:21
48:23 49:16,22
60:11 63:1,20
64:11,15 65:16
68:21 69:10,12
75:1,6,19
78:14 85:7
86:6 87:18
91:18 95:17
96:10,11 102:8
105:18 106:5
108:8,12,21,22
111:10 113:3
113:21
**truong's**  5:8
  107:7
**truongs**  12:24
**truth**  7:19,19
  7:20 112:10,10
  112:11
**try**  9:2 23:15
  53:23 60:10
  67:21
**trying**  8:22
  55:22
**turn**  51:24
  54:16 58:12,21
  62:7 63:16
  64:7 72:11
  78:8,10 89:14
  92:23
**turnaround**
  109:5,12,13,15
  109:18

**two**  55:21
  68:11 80:16
  82:12 84:9
  89:14,15 105:6
  109:5,15
**type**  37:23
  78:19 83:19
**types**  13:2
  37:12 43:10
**typing**  8:9,13

**u**

**u**  16:2
**uh**  8:16,16 74:6
**ultimately**
  47:21
**under**  12:24
  57:14 64:11
  72:13,14
  105:11 107:6
  112:9
**underneath**
  15:6
**understand**
  19:5,21 21:16
  23:17 33:3,11
  39:14 52:8
  57:13 58:4
  65:20 66:7,9
  72:5,18 84:19
**understandable**
  8:3
**understanding**
  18:16,18 19:1
  19:2,4,15,23
  20:2,5,20

21:10 22:11
23:5,18 24:14
25:17,24 26:2
26:4,14 27:24
32:24 34:14,19
34:23 39:17
40:4 42:21
43:13 52:12,15
53:13 55:1,20
56:24 57:2
58:7 61:25
66:1 72:24
73:9,21 79:9
82:22 94:9
101:16
**understood**
  16:20 26:17
  30:3,20 34:3,7
  44:3
**undertake**  13:3
  25:13 30:10
**undertaken**
  28:15
**undertook**
  28:20
**united**  1:1
**university**
  11:19,25 12:19
**updated**  53:20
  53:21,24
**upper**  74:16
**usage**  26:24
  42:25 44:1
**use**  30:16 38:13
  48:7 51:3

90:19 97:14
**used** 42:9 69:3
  73:10 74:8
**using** 57:22
  71:12
**utah** 9:17 12:7
  112:2

**v**

**v** 14:15 113:2
**vaccine** 22:6
  26:11,14,19
  42:24 43:6,15
  47:16
**vaccines** 43:11
  44:4,13
**various** 72:14
**verbal** 8:14
**verify** 28:21
**veritext** 1:14
  6:20 113:1
**version** 24:21
  53:20,25
**versus** 6:17
**victims** 19:22
**video** 1:13,13
  6:12,15,19
**videographer**
  3:15 6:4,20
  7:10,13 48:17
  48:20 105:24
  106:2 109:24
**view** 104:10
**virtual** 8:7
**virtually** 6:8

**visually** 68:25
**volunteer**
  95:19
**vs** 1:8

**w**

**wait** 49:12 74:3
  95:17
**waived** 112:20
**walmart** 14:16
**want** 37:2 47:1
  49:14,16 72:4
  74:12 78:9
  79:3 85:3
  104:13,21
  108:25
**wanted** 31:17
  43:24 70:12
  76:8 78:1
  86:25 88:13
  92:16 97:6
  103:4
**wants** 8:25
  109:15,18,20
  109:22
**washington**
  3:12
**way** 48:14
  54:17 76:1
  77:16 80:13
  88:2 92:1
  96:17 97:19
  98:6 101:1
  102:16
**we've** 8:22
  46:25 96:18

102:17
**website** 45:18
  46:20 70:22,23
  103:16 106:9
**wednesday**
  1:18
**week** 32:23
**wife** 14:18,20
  15:2 39:4
**wife's** 15:18
**will.piereson**
  3:8
**william** 3:6 7:2
**wilmington** 2:6
**wish** 52:4
**withdraw** 82:1
**withdrawn**
  24:15 57:15
  90:20
**witness** 6:10
  7:9,15,18
  18:19 21:5,17
  22:16 23:21
  25:1 27:21,25
  28:17,21 29:9
  29:18 31:6,15
  36:11 45:4
  47:2 49:8,23
  59:8 60:14
  63:3 64:20,25
  68:23 69:16
  71:19 75:3,7,9
  75:12 80:25
  81:8,20 83:16
  84:24 85:9,19

85:22,25 90:10
  91:15 93:14
  94:19 95:4,20
  96:2,5 98:25
  100:7 104:5
  105:19 112:9
**witnesses** 19:22
  28:2,7,12
**witnesses'**
  113:3
**wonder** 68:24
**word** 8:10,10
  90:19 91:14
**words** 108:14
**work** 13:18
  14:13 16:5,11
  25:12 28:14
  108:15
**working** 33:6
**works** 28:3
**written** 29:7
  46:16,18 50:15
  51:10 59:10,15
  61:22 103:20
**wrong** 95:16
**wrongly** 89:6

**x**

**x** 4:1,6 112:21

**y**

**yahoo** 32:2
  38:15,16,18
  46:3 58:17
**yeah** 7:11
  10:10 19:4,20

**[yeah - zoom]**　　　　　　　　　　　　　　　　　Page 28

21:8 25:1,24
26:6,8 27:14
34:11 41:8
47:4 48:3
60:22 63:4
64:18 68:1,20
73:17 74:12
75:5,10 77:3
80:1,25 85:16
85:24 93:16
96:8 99:9
105:19 109:22
**year**　11:24 14:6
　25:11 36:13
　41:18 67:12,13
　71:20
**years**　14:7
　36:24 38:24
**yesterday**　10:8
**york**　2:11,16,16
　3:3,3 113:1

**z**

**zero**　45:1,11,13
**zeros**　69:12
　78:15
**zoom**　6:19
　10:15,17 33:16
　33:22 48:7,11

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.