**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SOTHINATHAN SINNATHURAI, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>v.<br><br>NOVAVAX, INC., STANLEY C. ERCK, GREGORY F. COVINO, JOHN J. TRIZZINO, and GREGORY GLENN,<br><br>                              Defendants. | Civil Action No. TDC-21-2910 |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS
REPRESENTATIVES AND CLASS COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT .......................................................................................................2

    A.    Plaintiffs Are Entitled to a Class-Wide Presumption of Reliance ...........2

        1.    All Factors Support Market Efficiency........................................3

        2.    *Cammer* Five Supports Market Efficiency ...................................4

    B.    Defendants Do Not Show a Complete Lack of Price Impact ..................9

        1.    October 19, 2021 Disclosure.........................................................9

        2.    August 5, 2021 Disclosure...........................................................11

    C.    Plaintiffs Have Satisfied the Requirements of Rule 23(a) ....................12

        1.    Kumar Is Typical and Adequate .................................................12

        2.    Gabbert Is Typical and Adequate ...............................................13

        3.    Truong and Kumar Had Sufficient Knowledge and Involvement .............14

III.  CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972)....................................................................................................9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..................................................................................................11

*Basile v. Valeant Pharm. Int'l, Inc.*,
    2017 WL 3641591 (C.D. Cal. 2017)........................................................................12

*Buttonwood Tree Value Partners, LP v. Sweeney*,
    2013 WL 12125980 (C.D. Cal. 2013)........................................................................7

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ..................................................................... *passim*

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*,
    270 F.R.D. 247 (D.S.C. 2010) .................................................................................15

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.,*
    *HQ*,
    322 F. Supp. 3d 676 (D. Md. 2018)................................................................. *passim*

*Di Donato v. Insys Therapeutics, Inc.*,
    333 F.R.D. 427 (D. Ariz 2019) ..................................................................................5

*Erica P. John Fund, Inc. v. Halliburton*,
    563 U.S. 804 (2011)..............................................................................................2, 10

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) ....................................................................................3

*Gelt Trading Ltd. v. Co-Diagnostics, Inc.*,
    2023 WL 5334623 (D. Utah 2023).........................................................................14

*Goldman Sachs Group, Inc. v. Ark. Teacher Ret. Sys.*,
    141 S. Ct. 1951 (2021)...............................................................................2, 9, 10, 11

*In re Groupon, Inc. Sec. Litig.*,
    2015 WL 1043321 (N.D. Ill. 2015) ............................................................................7

*Gordon v. Sonar Cap. Mgmt. LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015)........................................................................12

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ...........................................................................................14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)............................................................................................................9

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
   2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013)....................................................................5

*In re K-V Pharm. Co. Sec. Litig.*,
   2012 WL 1570118 (E.D. Mo. 2012)................................................................................12

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ...................................................................................3, 4

*Luczak v. Nat'l Beverage Corp.*,
   548 F. Supp. 3d 1256 (S.D. Fla. 2021) ...........................................................................14

*Harris v. Sand Canyon Corp.*,
   274 F.R.D. 556, 567-68 (D.S.C. 2010)............................................................................14

*In re Mattel Inc. Sec. Litig.*,
   Case No. 2:19-cv-10860-MCS-PLA (C.D. Cal 2022).....................................................4, 5

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   328 F.R.D. 86 (S.D.N.Y. 2018) .......................................................................................11

*Meyer v. Concordia Int'l Corp.*,
   2018 WL 3104624 (S.D.N.Y. 2018).................................................................................11

*In re Mills Corp. Sec. Litig.*,
   257 F.R.D. 101 (E.D. Va. 2009) ......................................................................................12

*In re NII Holdings, Inc. Sec. Litig.*,
   311 F.R.D. 401 (E.D. Va. 2015) ........................................................................................5

*In re NIO, Inc. Sec. Litig.*,
   2023 WL 5048615 (E.D.N.Y. 2023)...............................................................................9, 10

*In re Novatel Wireless Sec. Litig.*,
   910 F. Supp. 2d 1209 (S.D. Cal. 2012), *vacated*,
   2013 WL 494361 (S.D. Cal.), *vacated in part*,
   2013 WL 12144149 (S.D. Cal.), *vacated*,
   2013 WL 12144150 (S.D. Cal. 2013)................................................................................6

*Passman v. Peloton Interactive, Inc.*,
   2023 WL 3195941, at *17 (S.D.N.Y. 2023).....................................................................15

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)..............................................................................3, 4, 5

*In re Schering-Plough Corp. Sec. Litig.*,
2003 WL 25547564 (D.N.J. 2003) ...............................................................................12

*Sinnathurai v. Novavax, Inc.*,
645 F. Supp 3d 495 (D. Md. 2022) ...............................................................................9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)......................................................................................................14

*In re Teva Sec. Litig.*,
2021 WL 872156 (D. Conn. 2021) ...............................................................................5

*Todd v. STAAR Surgical Co.*,
2017 WL 821662 (C.D. Cal. 2017)...............................................................................6

*In re Under Armour Sec. Litig.*,
631 F. Supp. 3d 285 (D. Md. 2022)........................................................................13, 14

*In re Vivendi Universal, S.A. Sec. Litig.*,
284 F.R.D. 144 (S.D.N.Y. 2012) ...............................................................................13

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011)...........................................................................6

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)...........................................................................................9

*Wilson v. LSB Indus., Inc.*,
2018 WL 3913115 (S.D.N.Y. 2018)...............................................................................5

*Yates v. NewRez LLC*,
2023 WL 5108803 (D. Md. 2023) (Chuang, J.).....................................................14, 15

**Statutes**

Private Securities Litigation Reform Act ("PSLRA")
15 U.S.C. § 78u–4(e) .................................................................................................13

**Other Rules**

Fed R. Civ. P. 23 ...........................................................................................................1
   (a) ............................................................................................................................12

Lead Plaintiffs David Truong ("Truong"), Jeffrey Gabbert ("Gabbert"), Nuggehalli Balmukund Nandkumar ("Kumar") ("Plaintiffs") respectfully submit this reply memorandum of law in further support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (the "Motion") (ECF No. 85).[1]

## I.    **<u>INTRODUCTION</u>**

Defendants' Opposition concedes that Plaintiffs satisfy all but three of Rule 23's requirements—predominance, adequacy, and typicality. Defendants assert that Plaintiffs failed to show Novavax traded in an efficient market. In doing so, they try to convince the Court that Novavax's Class Period trading must be treated differently than every other stock merely because Novavax was developing a Covid-19 vaccine and traded in a volatile market. But nothing is remarkable about market volatility. In fact, Plaintiffs' expert's, Chad Coffman's, statistical analyses account for volatility. The fact of the matter is—despite any purported increased volatility—Coffman's methodologies establish market efficiency.

Indeed, Coffman analyzed the eleven factors that courts *and even Defendants' own expert*, S.P. Kothari, routinely analyze to establish market efficiency, and found that all eleven factors demonstrate market efficiency. Yet, Kothari conveniently ignored nine of those factors, opining on only two: auto-correlation and Coffman's empirical analysis of *Cammer* factor five ("*Cammer* Five"). But Kothari's rebuttal was flawed, incomplete, and inconsistent with his own analyses in other cases. When an empirical event study is properly applied, as Coffman did, an analysis of

---

[1] Unless otherwise noted, all capitalized terms are defined in the Consolidated Amended Class Action Complaint (ECF No. 56) ("Complaint"). All emphasis is added and citations omitted. Citations to "Compl. ¶__" are to the Complaint. "Opening Brief" or "Opening Br." refers to Plaintiffs' memorandum of law in support of the Motion (ECF No. 85-2). "Opposition" or "Opp." refers to Defendants' Corrected Opposition to the Motion (ECF No. 111-1). "Rogers Ex. __" refers to exhibits attached to the accompanying Declaration of Michael H. Rogers. "Coffman Rpt. ¶__" refers to Chad Coffman's expert report submitted in support of the Motion (ECF No. 85-4). "Kothari Rpt. ¶__" refers to Prof. S.P. Kothari's expert report submitted in support of the Opposition (ECF No. 108-1). "Coffman Tr. __" and "Kothari Tr.__" refer to Coffman's and S.P. Kothari's deposition transcripts, respectively (Rogers Exs. A & B). "Coffman Rebuttal ¶__" refers to Coffman's rebuttal expert report filed contemporaneously herewith (Rogers Ex. C).

*Cammer* Five shows a statistically significant cause-and-effect relationship between unexpected news and Novavax stock-price changes. Regardless, even if the Court finds Coffman's *Cammer* Five analysis wanting (which it should not), Plaintiffs still establish market efficiency because all ten remaining factors point to an efficient market. Having established market efficiency, Plaintiffs have met their burden to invoke the *Basic* presumption of reliance, thereby shifting the burden to Defendants to show a **complete** lack of price impact. Defendants fail to do so.

Defendants primarily argue that under *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 141 S. Ct. 1951 (2021), there was a "mismatch" between corrective disclosures and misrepresentations. But *Goldman* applies only if the misrepresentations at issue are so generic that they could not be corrected by specific disclosures. That is not the case here. Not only are the Defendants' misrepresentations specific, they also directly connect to the corrective disclosures. Defendants' other arguments regarding price impact are similarly misplaced, particularly their assertions that certain news had been disclosed and that some disclosures ultimately turned out to be inaccurate, which requires a loss causation analysis inappropriate at class certification. *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 807, 813 (2011) ("*Halliburton I*").

Defendants' adequacy and typicality arguments fare no better. Each Plaintiff has sufficient knowledge about and involvement in the case, and Defendants' assertions concerning Kumar's damages and Gabbert's trading also are easily rejected. The Court should certify the Class.

## II. ARGUMENT

### A. Plaintiffs Are Entitled to a Class-Wide Presumption of Reliance

To determine whether a stock traded in an efficient market, the Fourth Circuit instructs courts to consider the "*Cammer* Factors": (1) average trading volume, (2) number of securities analysts, (3) number of market makers, (4) entitlement to file an S-3 Registration Statement, and (5) evidence of a cause-and-effect relationship between unexpected news and stock-price changes.

2

*See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 368 (4th Cir. 2004) (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989)). In addition, courts also consider the "*Krogman* Factors*": (1) market capitalization; (2) bid-ask spread; and (3) the percentage held by non-insiders ("float"). *See*, *e.g.*, *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 687 (D. Md. 2018) (citing *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001)). Other evidence of market efficiency includes (1) number of institutional investors, (2) absence of persistent autocorrelation, and (3) high volume of options trading. Notably, "[n]o one factor is more important than another when a court undertakes the holistic and fact-intensive inquiry of determining whether a market is efficient." *Cape Coral*, 322 F. Supp. 3d at 687. When evaluating these factors, courts must conduct "a holistic analysis based on the totality of the evidence presented." *In re Petrobras Sec.*, 862 F.3d 250, 277 (2d Cir. 2017).

All eleven factors support the finding that Novavax's stock traded in an efficient market.

### 1.     All Factors Support Market Efficiency

Notwithstanding that all eleven factors support a finding of market efficiency, Defendants attack **only one**, arguing that Coffman's analysis of *Cammer* Five was purportedly flawed and thus Plaintiffs fail to establish market efficiency.[2] Defendants' *Cammer* Five arguments are baseless. Even assuming *Cammer* Five does not support market efficiency—and Coffman demonstrated that it does—a strong showing still exists based on all the other factors. *Emergent*, 322 F. Supp. 3d at 689–90 (first four *Cammer* factors and *Krogman* factors demonstrated market efficiency—even if the court were to disregard *Cammer* Five).

All four other *Cammer* factors support market efficiency. Not only did Novavax's stock

---

[2] Kothari "was not asked to" analyze any factors other than *Cammer* Five, and "wasn't asked to affirmatively test whether market is efficient or not in Novavax." Kothari Tr. 44:14–45:1. He testified that "[g]enerally, all these [factors, with the exception of *Cammer* Five] are…indicative of efficiency." *Id.* at 116:14-117:6.

trade on the NASDAQ, which alone "creates a presumption of market efficiency," *City of Cape Coral*, 322 F. Supp. 3d at 689, but during the Class Period, the average weekly trading volume for Novavax stock was 23.06 million shares, representing 30.98% of shares outstanding (Coffman Rpt. ¶¶28-29, 59). This dwarfs the 2% that *Cammer* held "justif[ies] a strong presumption that the market for the security is an efficient one." 711 F. Supp. at 1293; Opening Br. at 21-22. Further, many financial analysts covered Novavax and multiple designated market makers supervised the trading of Novavax's stock—which again dwarf the threshold amounts for market efficiency. *Id.* at 22. Novavax was also eligible to file a Form S-3. *Id.* at 23.

Further, every *Krogman* factor supports market efficiency. Opening Br. at 25–26. Coffman determined that the large number of institutional investors, the absence of persistent autocorrelation in Novavax's stock returns, and the high volume of options trading support market efficiency. Opening Br. at 27, n.8.[3] Thus, irrespective of *Cammer* Five, the above factors demonstrate market efficiency because "[t]hose factors would add little to the *Basic* analysis if courts only ever considered them after finding a strong showing based on direct evidence alone," *i.e.*, a cause-and-effect relationship under *Cammer* Five. *Petrobras*, 862 F.3d at 278.

### 2. *Cammer* Five Supports Market Efficiency

Plaintiffs have also established a cause-and-effect relationship between unexpected news and Novavax's share price via Coffman's event study and regression analysis. Opening Br. at 23–25. Although Defendants argue that Coffman's *Cammer* Five analysis is deficient (*see* Opp. at 6–14), each of their arguments fail.

***Directionality.*** Defendants argue that "Coffman made no meaningful effort to determine

---

[3] Interestingly, Kothari himself has previously analyzed nine of the same factors in a different matter to support his own finding of market efficiency. Coffman Rebuttal ¶20; *e.g.*, Rogers Ex. D, Expert Report of Professor S.P. Kothari filed April 30, 2021, *In re Mattel Inc. Sec. Litig.*, Case No. 2:19-cv-10860-MCS-PLA (C.D. Cal 2022) ("*Mattel*").

whether Novavax's stock price reacted to positive or negative news in a directionally consistent manner." Opp. at 9–10. This is baseless. Plaintiffs established a statistically significant cause-and-effect relationship between earnings news and price movements; they are not required to do any more at this stage. *Cammer* Five requires only a showing of "empirical facts showing a cause-and-effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price"—and does not mention direction. *Cammer*, 711 F. Supp. at 1287; *Emergent*, 322 F. Supp. 3d at 687. Courts routinely recognize this. *E.g.*, *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 412 (E.D. Va. 2015) (market efficient despite argument that "price movement . . . was inconsistent with the nature of the news").[4]

In any event, Coffman *did* consider directionality. Coffman Rebuttal ¶49.[5] Kothari points to *only one* example of an earnings announcement (March 1, 2021) that he subjectively claims was associated with an inconsistent price response, reasoning that the price fell on positive earnings news. Opp. at 10. Although Kothari's report concluded the price moved in the "wrong direction," he nevertheless conceded at his deposition that the news was "ambiguous at the minimum." Kothari Tr. 138:4–151:11. In other words, Kothari *ignored* explanations for negative price movement, including a larger-than-expected net loss and missed revenue expectations. Coffman Rebuttal ¶¶50–56.

---

[4] *See also Petrobras*, 862 F.3d at 277–78 (rejecting argument that district court gave undue weight to empirical test that measured magnitude of responsive price changes without considering direction of changes); *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *14 (S.D.N.Y. 2018) ("lack of the inclusion of directionality analysis in his event study does not require us to discount this report's usefulness in determining market efficiency"); *In re Teva Sec. Litig.*, 2021 WL 872156, at *29 (D. Conn. 2021) ("failure to assess directionality does not at all diminish the weight I afford his tests"). Defendants misleadingly cite *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427 (D. Ariz 2019) to show that the court there found Coffman's event study unreliable for failing to access directionality. Opp. at 10. However, Defendants quote only *defendants' expert's contention*—not the court's. In fact, not only did the court not discuss directionality, but it held that the market was efficient even without *Cammer* Five. 333 F.R.D. at 442. In light of the Second Circuit's *Petrobras* decision explaining that directionality is not required, *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) does not compel a contrary conclusion.

[5] Kothari testified to having performed a similar directionality analysis in *Mattel* as Coffman did here. Kothari Tr. 95:19-96:2 ("Q. There was a date where you discovered that it didn't move the direction you expected and you explained why the way it moved actually made dense, correct? [Kothari:] Well, that is perfectly fine.").

5

***Estimation Period.*** Defendants argue that Coffman's "rolling" 120-day estimation window is unreliable because it overlaps with the Class Period and thus was based on a "tainted" sample. Opp. at 13–14. But this assertion is incoherent given that Defendants insist that the Class Period was a time of unique volatility that created a "one-of-one" market for Novavax. Defendants assert that Class members invested in Novavax during the Class Period based on the state of affairs that existed ***at that time***, *i.e.*, because the Company was developing a vaccine during an unprecedented pandemic. To use any estimation window other than one that overlaps the Class Period thus does not compare apples to apples because an earlier window does not reflect market forces Defendants insist were present, including the viability of Novavax's vaccine and the Company's schedule for FDA approval. In other words, Defendants are analyzing Novavax in two different contexts, which renders their statistical analysis highly suspect. *See*, *e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 560 (S.D.N.Y. 2011) (using control period that overlaps class period since "Vivendi was a different company both before and after the Class Period").[6]

Tellingly, although Kothari opines that "it is customary to consider a pre-class period estimation period" (Kothari Rpt. ¶70), he used an estimation period overlapping the class period in another case and testified that "in-class" period data may be appropriate, and conceded that his report "doesn't have all the qualifiers" to that effect. Kothari Tr. 186:14–196:7.

***Selection of Outlier Dates.*** Defendants claim that Coffman excluded four dates as "outliers" simply because they impacted his *Cammer* Five analysis and thus his purportedly arbitrary methodology undercuts his conclusions. Opp. at 12–13. But Coffman's methodology was

---

[6] Courts routinely credit expert reports using control periods or estimation windows that overlap with class periods. *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *10 (C.D. Cal. 2017) (accepting report using "year leading up to the last day of the class period . . . as control period" (cleaned up)); *In re Novatel Wireless Sec. Litig.*, 910 F. Supp. 2d 1209, 1217 (S.D. Cal. 2012), *vacated*, 2013 WL 494361 (S.D. Cal.), *vacated in part*, 2013 WL 12144149 (S.D. Cal.), *vacated*, 2013 WL 12144150 (S.D. Cal. 2013) (adopting expert report using 120-day rolling control period and noting that "Defendants' expert Tabak acknowledges that a control period close to the event being analyzed should be used generally"). Defendants' cases thus do not compel a contrary conclusion.

not results-driven; he identified the outliers as they represented clearly defined dates with Novavax-specific news that he expected to be associated with uncharacteristically large returns that would render any statistical analysis severely biased during the relevant measurement period. Coffman Rebuttal ¶59; Coffman Tr. 109:23-110:15. Further, Coffman chose to exclude those dates *before* he knew the outcome of the *Cammer* Five cause-and-effect test. Coffman Rebuttal ¶63.[7] In fact, Kothari testified that he has excluded certain dates from his event studies in other cases. Kothari Tr. 41:12-17.[8] Nothing in Kothari's report or testimony suggests that it is improper to exclude outliers to perform a robust statistical analysis. *See* Coffman Rebuttal ¶¶58-63.

Defendants also argue that Coffman's selection of three of the outliers (February 27 and 28, 2020 and January 29, 2021) is further undermined by the risk of noise trading. Opp. at 13. Kothari claims that there was no new Novavax-specific information released on those dates. Kothari Rpt. ¶¶55, 60-62. However, Coffman details the company-specific news that could be reasonably attributed to stock price movement on those days. Coffman Rebuttal ¶¶70-72, 73-76.[9]

***Noise Trading.*** Defendants contend that Coffman's *Cammer* Five "analysis is also flawed because he failed to evaluate the possibility that Novavax's stock returns were impacted by 'noise trading.'" Opp. at 10–12. Not so. While Kothari testified that "[t]here were a lot of noise in the stock price" (Kothari Tr. 215:8–9) and his report states that there was a "noise trading frenzy" in

---

[7] Courts routinely credit expert reports that remove news-driven outliers. *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321, at *7 (N.D. Ill. 2015) (crediting report that removed "atypical days" to "control for potentially abnormal returns related to earnings announcements" and a day "contemporaneously described as atypical by the news media"); *Buttonwood Tree Value Partners, LP v. Sweeney*, 2013 WL 12125980, at *12 (C.D. Cal. 2013) (crediting report that removed dates of "the most relevant and obvious company-specific events").

[8] In fact, during his deposition, Kothari explicitly stated "I don't have any problem with Mr. Coffman dummying out or excluding the earnings announcement dates." Kothari Tr. 178:6-8. Even using Kothari's alternative method of including the outliers in the study does not change Coffman's market efficiency conclusions. Instead, it is only when Kothari erroneously includes January 29, 2021 in his estimation window that August 6, 2021 is not statistically significant at the 95% level. Coffman Rebuttal ¶126. That is, even including three out of the four outliers in Coffman's event study still renders both of the corrective disclosures statistically significant.

[9] Defendants note that analysts' consensus price target only rose by 10% on that day compared to Novavax's stock price which rose 65%. Opp. at 13. But analysts price targets already incorporated future sales of a successful vaccine, meaning Coffman would not expect analyst price targets to increase the same way. Coffman Rebuttal ¶¶77-79.

Novavax stock (Kothari Rpt. ¶¶60, 63, 65), Kothari cannot objectively identify a noise trader or a minimum threshold for noise trading (Kothari Tr. 17:12–16, 225:18–228:9).[10] Kothari simply speculates that some noise trading must have existed and thus Novavax's stock was volatile and Coffman's analysis is flawed. But without any objective rule to measure how much noise trading is too much, or how to address it, Kothari's criticisms are not credible. Indeed, Plaintiffs are not aware of any study demonstrating that noise trading seriously impacts the efficiency of stocks trading on major U.S. exchanges, and Coffman's analysis already accounts for market volatility. Coffman Rpt. ¶50. Defendants' criticism that more is needed because of noise trading should be rejected. Coffman Rebuttal ¶¶64-88.

**Number of "News" and "No-News" Days.** Defendants argue that Coffman's *Cammer* Five analysis is flawed because it is based on an inappropriately small sample of "news" and "no-news" days and contend that the proportion of days Coffman used in his analysis renders his conclusions unreliable. Opp. at 7–8. But the proportion of days assessed under Coffman's analysis is irrelevant. The appropriate question is simply whether there is enough data to obtain a statistically powerful test between the earnings announcement and "no news" days; here, there was.[11] Coffman Rebuttal ¶¶34–36, n.71 (supporting academic literature); Coffman Tr. 83:18-84:16.[12]

The Court should reject Defendants' criticisms of Coffman's *Cammer* Five analysis.

_____

[10] Defendants also assert that Novavax's volatility was high during the Class Period due to the pandemic (Opp. at 11), but Kothari's suggestion that the fact that a vaccine company's stock was heavily traded and volatile during a pandemic somehow suggests the market was inefficient is unpersuasive and unscientific. The volatility of Novavax stock is explicitly addressed and considered in Coffman's analysis and statistical tests. Coffman Rebuttal ¶92.

[11] Kothari neither disputes this nor Coffman's finding that there is a statistically significant difference between news and no news days Coffman identified. Accordingly, Kothari has no basis to say that Coffman did not evaluate enough data. *Id.*; *see also id.* (example where Kothari performed a cause and effect test in another matter where he analyzed only eight earnings announcements (compared to Coffman's 10) against all other days during a class period).

[12] Because the news and no-news days included in Coffman's analysis are sufficient, Defendants' arguments regarding Coffman's "arbitrary" definition of such days (Opp. at 8-9) are misplaced. Indeed, there are many academic articles and financial treatises supporting the fact that earnings announcements have a significant impact on investors' beliefs regarding the value of a security, making them an objective set of news to test for market efficiency. Coffman Rebuttal ¶109. Defendants' cited cases in support for their baseless assertions are therefore inapposite.

### B.    Defendants Do Not Show a Complete Lack of Price Impact

Since Plaintiffs establish market efficiency and have met their burden to invoke the *Basic* presumption of reliance, the burden shifts to Defendants to rebut that presumption by showing a **complete** lack of price impact. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) ("*Halliburton II*"); *id.* at 278–80 (defendants have substantial burden to prove absence of price impact); *Waggoner v. Barclays PLC*, 875 F.3d 79, 103–05 (2d Cir. 2017) (presumption not rebutted because defendants did not show that there was a complete lack of price impact). Defendants must "in fact . . . sever[] the link" between misrepresentations and the price plaintiffs pay. *Goldman*, 141 S. Ct. at 1962. Defendants do not clear this high bar. They argue that Plaintiffs' reliance presumption "is readily rebutted because the alleged misstatements lacked price impact," contending that "neither disclosure qualifies as a corrective disclosure that related back to Defendants' prior statements about Novavax's manufacturing efforts." Opp. at 15–17. But this flies in the face of facts before the Court, not to mention common sense.[13]

### 1.    October 19, 2021 Disclosure

Defendants try to shoehorn the facts before the Court into *Goldman*'s holding by arguing that the *Politico* Article was not "some comprehensive revelation of 'underlying and undisclosed manufacturing problems.'" *Id.* at 19. Defendants distort *Goldman*, which held that only in certain circumstances a "mismatch between the contents of the misrepresentation and the corrective disclosure" may exist. *Goldman*, 141 S. Ct. at 1961. This is simply not the case here.

*In re NIO, Inc. Securities Litigation* is instructive. 2023 WL 5048615 (E.D.N.Y. 2023). In that case, the court emphasized that "[t]here is no requirement that the corrective disclosure take a

---

[13] Defendants' argument that Plaintiffs are not entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) (Opp. at 14–15) should be rejected. They argue that "Plaintiffs' claims are 'based as much on what is *there* as what is purportedly missing,' making *Affiliated Ute* inapplicable" *Id.* But the Complaint alleges that Defendants omitted material information (Compl. ¶¶178–179, 198, 204), and the Court's MTD Opinion recognized the same (*Sinnathurai v. Novavax, Inc.*, 645 F. Supp 3d 495, 519, 521-23 (D. Md. 2022)).

particular form or be of a particular quality, such that it be a mirror image tantamount to a confession of fraud" (*id.* at \*14), and in citing *Goldman* reasoned:

> [T]he misrepresentations on which [*Goldman*] was premised were "generic statements about [Goldman's] ability to manage conflicts . . . ." The Court explicitly premised its conclusion on the generic nature of the initial disclosure, because it is hard to infer front-end price inflation when "it is less likely that the specific disclosure actually corrected the generic misrepresentation." Although the corrective disclosure is not a perfect match, the alleged misrepresentation here is quite specific . . . making it easier to draw the inference urged by the Plaintiffs.

*Id.* at \*15 (internal citations omitted). Here, Defendants do not, because they cannot, argue that the misrepresentations or the disclosures were generic. Defendants made highly specific statements about manufacturing obstacles that had been overcome and the Company's present ability to apply for an EUA. The *Politico* Article revealed that these manufacturing problems had ***not*** been overcome and that the Company's ability to apply for an EUA was severely compromised. This hand-in-glove connection between statement and corrective disclosure establishes price impact.

Defendants also assert that the *Politico* Article "revealed little new information." Opp. at 18-19. *First*, Defendants tellingly assert only that the *Politico* Article revealed ***little*** new information, not ***no*** new information. *Second*, whether certain disclosures were already disclosed requires a loss causation analysis, which is premature at this stage. *Halliburton I*, at 807, 813 (courts should address loss causation at class certification). Defendants further argue that the new information in the article "was either misleading or incorrect." Opp. at 18–21. However, again, the veracity of particular facts relates to loss causation and is premature at class certification. *Halliburton I*, 563 U.S. at 807, 813. In any event, Defendants themselves even admit that the *Politico* Article disclosed facts that related to the EUA filing timeline (*i.e.*, the subject of prior misrepresentations). Opp. at 20.[14]

---

[14] Defendants also note that Novavax's stock price eventually rebounded. Opp. at 21. However, even if true, this Court emphasized that it has no obligation to "look so far beyond the identified corrective disclosure" and "a demonstration

Defendants also note that some analysts maintained buy ratings. Opp. at 21–22. But what analysts' long-term price targets may have meant cannot rebut the inference created by a 14.76% drop on October 20, 2021 (Coffman Rebuttal ¶¶122-124, 139) and analysts' attribution of the drop to the disclosure. Compl. ¶¶162, 253.[15]

### 2.    August 5, 2021 Disclosure

Despite the fact that Coffman found with 99% confidence that Novavax's stock price fell 19.61% in response to the information disclosed on August 5 (Opening Br. at 24), Defendants argue that "there is no back-end impact from which to infer a corresponding amount of front-end inflation." Opp. at 23. However, Defendants' similar mismatch argument should be rejected for the same reasons that their mismatch argument regarding the October 19 corrective should be rejected. The misrepresentations made here were far more specific than those made in *Goldman*. Indeed, the Company disclosed on August 5 that it further delayed its EUA filing, and that the government has "instructed the Company to prioritize alignment with the [FDA] on the Company's analytic methods before conducting additional U.S. manufacturing." Compl. ¶194. Unlike in *Goldman*, this disclosure partially corrected **specific** misrepresentations. *See, e.g.*, *id.* ¶¶178–181.

Yet, Defendants again rely on analysts' optimism about Novavax after the stock drop to reject August 5 as a corrective disclosure. Opp. at 24. But contrary to Defendants' contention, analysts and the media were shocked by the August 5 revelations and disclosures. For example,

---

of price impact after the corrective disclosure . . . is sufficient." *Emergent*, 322 F. Supp. 3d at 690 n.4. Nor does Defendants' assertion that post-*Politico* stock drop purchases of Novavax stock demonstrate that the price was not artificially inflated prior to the stock drop. Opp. at 21. "Courts have repeatedly recognized" that "engag[ing] in subsequent purchases [*i.e.*, purchasing after price decreases,] in order to decrease the average cost of their investment," is a common strategy. *Meyer v. Concordia Int'l Corp.*, 2018 WL 3104624, at *3 (S.D.N.Y. 2018).

[15] Defendants argue that the Court should shorten the Class Period, contending that it should end on August 5, 2021. Opp. at 22–23. This is a thinly disguised truth-on-the-market defense that is not properly decided at class certification. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481 (2013). Whether a corrective disclosure fully cured a misstatement is a merits issue "better suited for summary judgment or trial." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 100 (S.D.N.Y. 2018).

on August 6, 2021, J.P. Morgan reported, "[w]ith respect to filing timelines in the US, the US [government] has requested the completion of manufacturing validation activities prior to a regulatory submission, as such a US EUA filing is now anticipated in 4Q (3Q prior)." *See* Compl. ¶¶145, 196, 239–240.[16]

### C.   Plaintiffs Have Satisfied the Requirements of Rule 23(a)

#### 1.   Kumar Is Typical and Adequate

Defendants assert that Kumar is atypical and inadequate because he did not suffer damages.[17] Opp. at 26. But damages ***amounts*** should not be considered at class certification. *See*, *e.g.*, *Basile v. Valeant Pharm. Int'l, Inc.*, 2017 WL 3641591, at *5 (C.D. Cal. 2017) (refusing to exclude representative who "was a net 'winner'"); *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 107 (E.D. Va. 2009) (rejecting argument that movants "suffered no actual injury [and] are subject to unique defenses" because economic loss need not be shown at class certification). Further, Defendants' analysis of Kumar's trades cannot be credited because it relies on his purchases of 21,000 shares ***prior*** to the Class Period, and "***[a]ny capital gains made with respect to the sale of shares purchased before the Class Period are irrelevant***" to appointing a class representative. *In re Schering-Plough Corp. Sec. Litig.*, 2003 WL 25547564, at *9 (D.N.J. 2003).[18]

Defendants' analysis is also flawed because it simply compares the ***number*** of shares purchased and sold by Kumar without calculating his gains and losses. Opp. at 28-30; *In re K-V Pharm. Co. Sec. Litig.*, 2012 WL 1570118, at *5 (E.D. Mo. 2012) ("match[ing] purchases and sales . . . is necessary to determine whether a gain or loss was associated with the fraud-related

---

[16] Defendants also note that Novavax's stock supposedly "fully rebounded by August 12," an entire week later. Opp. at 24. However, as explained above, this Court has held that a later rebound of a stock price does not demonstrate a lack of price impact after the corrective disclosure. *Emergent,* 322 F. Supp. 3d at 690.

[17] References to Kumar's damages are to Kumar and his son Shawn's damages, collectively. *See* ECF No. 26-7.

[18] *Gordon v. Sonar Cap. Mgmt. LLC* is thus inapposite because the defendants there offset gains solely from ***class-period purchases***. 92 F. Supp. 3d 193, 201–02, 205 (S.D.N.Y. 2015); *cf Basile*, 2017 WL 3641591, at *5 (observing that *Gordon* only netted gains from "purchases by the plaintiff ***during the class period***." (emphasis in original)).

disclosure"). Defendants ask the Court to **assume** that Kumar profited (*i.e.*, was a "net gainer") solely because he was a "net seller" (*i.e.*, sold more shares during the Class Period than he bought). Opp. at 29-30. A net seller, however, can be a class representative if he **lost money on class period investments**. *See, e.g., In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 307 (D. Md. 2022) ("plaintiff who sold stock but suffered a net loss may still have been injured by the alleged fraud").

Kumar, like the movant in *Under Armour*, sustained **massive** losses on his Class Period investments and thus his "trading activity is unlikely to become a major focus of the litigation and detract from the classwide issues at trial." *Id.* Counsel compared the price Kumar paid for each Novavax share to the price at which he sold each share, using reasonable assumptions regarding the share price inflation from Defendants' alleged misrepresentations,[19] and Kumar[20] incurred damages on shares purchased during the Class Period of $648,740 when such purchases are matched to subsequent sales on a first-in, first-out ("FIFO") basis,[21] and $434,875 when matched on a last-in, first out ("LIFO") basis.[22] Accordingly, Kumar incurred substantial cognizable damages on his trades in Novavax shares because he never reaped any gains on those trades.[23]

### 2.    Gabbert Is Typical and Adequate

Defendants assert that Gabbert cannot serve as a class representative because (i) the *Politico* Article is not a corrective disclosure and (ii) he is inadequate and atypical because he may

---

[19] Assuming that the level of price inflation present during the Class Period stems from the amount of Novavax's share price declines in response to corrective disclosures, which occurred after market close on both August 5, 2021 and October 19, 2021 (net of market and industry factors), then Novavax's share price was inflated by: $59.79 from May 10, 2021 through August 5, 2021; $23.20 from August 6, 2021 through October 19, 2021; and $0.00 thereafter. Attached is a schedule prepared at the direction of counsel showing Kumar's damages calculations. Rogers Ex. G.

[20] These calculations incorporate the 90-day "lookback" provision of the PSLRA. *See* 15 U.S.C. § 78u–4(e).

[21] Under FIFO, sales of Novavax shares are matched against previous purchases in chronological order, beginning with the earliest purchase made during the Class Period.

[22] Under LIFO, sales of Novavax shares are matched against previous purchases in reverse chronological order, beginning with the last purchase made during the Class Period.

[23] Defendants suggest that even if Kumar sold shares at a loss, his losses should be considered "gains" because "he lost less money . . . than he would have." Opp. at 27. Courts routinely reject this methodology. *E.g., In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 159 (S.D.N.Y. 2012) (netting at trial only those gains directly attributable to defendants' fraud via sales of pre-class period holdings that occurred after the first corrective disclosure).

not be able to demonstrate that the August 6, 2021 disclosure caused him any losses. Opp. at 30-32. Defendants are wrong. *First*, per Section II.B.1, *supra*, the *Politico* Article **is** a corrective disclosure. Thus, even if Gabbert's losses are limited to purchases after the August 6 partial corrective disclosure, but prior to the October 19, 2021 *Politico* Article, Gabbert is still adequate and typical because a class representative's damages can arise solely from purchases after partial corrective disclosures. *See, e.g.*, *Under Armour*, 631 F. Supp. 3d at 304 (representatives "purchased shares after Under Armour's partial disclosures"). *Second*, losses caused by one, but not all, alleged corrective disclosures do not result in atypicality or inadequacy. *Gelt Trading Ltd. v. Co-Diagnostics, Inc.*, 2023 WL 5334623, at *5 (D. Utah 2023) (class representative need not demonstrate loss causation for every corrective disclosure (citing cases)).[24]

### 3. Truong and Kumar Had Sufficient Knowledge and Involvement

Defendants attempt to downplay Truong's and Kumar's knowledge (Opp. at 33-35). But the Fourth Circuit routinely holds that a class representative "need not have extensive knowledge of the facts." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003); *Yates v. NewRez LLC*, 2023 WL 5108803, at *8 (D. Md. 2023) (Chuang, J.) (same). Here, Truong has sufficient knowledge of the action to be an adequate class representative as he reviewed the Complaint (Rogers Ex. E, "Truong Tr." 24:16–18), reviewed the class certification motion and his declaration (*id.*, 59:22–61:19, 65:5–6), understood the claims (*id.*, 21:20–23:4, 103:16–21), knew Defendants' names and positions (*id.*, 26:6–27:14), and understood his duty to vigorously pursue

---

[24] *Luczak v. Nat'l Beverage Corp.* is inapposite because that movant's theory of loss causation was ***mutually exclusive*** of the class's theory. 548 F. Supp. 3d 1256, 1262, 1266 & n.5 (S.D. Fla. 2021) ("the difference in Plaintiff's factual position makes him atypical since Plaintiff and the Putative Class will be required to prove that ***their losses were caused by distinct and separate events***"). Here, Gabbert and every class member who held shares to the end of the Class Period must show that the *Politico* Article is a corrective disclosure. *Harris v. Sand Canyon Corp.*, unlike here, involved facts and theories inapplicable to all class members. 274 F.R.D. 556, 567-68 (D.S.C. 2010). And *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.6 (2016), merely held that a class representative must experience some injury, and Defendants concede Gabbert was harmed if the *Politico* Article is a corrective disclosure. Opp. at 30-32.

litigation on the class's behalf (*id.*, 33:3–13, 66:1–12, 108:12–16); *Emergent*, 322 F. Supp. 3d at 684 (plaintiff adequate where he reviewed complaint and was familiar with its contents, had a "general idea" of claims, and received communications from counsel regarding case progress).[25] Truong's adequacy is not undermined by not identifying the Complaint's filing date, recalling all pending motions, and identifying the judge. Opp. at 34; *Yates*, 2023 WL 5108803, at *8 (plaintiff adequate even when she did not remember what the case was about, could not describe what a class action was, and did not remember reading different versions of the complaint).

Kumar also had sufficient knowledge and involvement. He understood this Action was a class action concerning misrepresentations during a class period (Rogers Ex. F, "Kumar Tr." 24:19-26:6); reviewed and authorized his Lead Plaintiff motion and the Complaint (*id.*, 27:9-16, 27:20-28:16), knew the Action stemmed from misstatements by the Company and Erck regarding FDA approval of the Vaccine Candidate (*id.*, 29:9-31:1, 159:6-18), was committed to actively participating in and directing the litigation by attending depositions and trial (*id.*, 14:18-21, 35:2-7, 37:1-6), bought Novavax shares based on Erck's statements (*id.*, 112:13-113:11), spoke with counsel throughout the action (*id.*, 35:19-36:21, 70:11-71:19), reviewed court opinions (*id.*, 74:16-75:11), knew confidential witnesses were referenced in complaint (*id.*, 32:4-10), and knew the case had survived a motion to dismiss (*id.*, 37:1-6). *Emergent*, 322 F. Supp. 3d at 684.[26]

III.    **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

---

[25] Defendants' reliance on *Passman v. Peloton Interactive, Inc.* to show that Truong "lacked even a basic understanding of his duties to the absent putative class members" (Opp. at 33, 34–35) is misplaced. In *Passman*, the representative was inadequate because "[w]hen asked whether he had 'any responsibilities as a class representative,'" he responded, "no." 2023 WL 3195941, at *17 (S.D.N.Y. 2023). Truong's answers, however, show his desire to pursue the litigation vigorously and a general understanding of his duties. *See* Truong Tr. at 33:3–13; 66:1–12.

[26] Commenting on the Complaint is not required. *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 253 (D.S.C. 2010) (adequate despite not participating in complaint). Nor is it disqualifying that Kumar did not name Trizzino, especially since he identified Erck, who made most of the actionable misstatements. *See* Kumar Tr. 29:9-31:1; *Yates*, 2023 WL 5108803, at *8 (adequate even if "did not know [] defendants by name").

Dated: November 13, 2023

Respectfully submitted,

**LABATON SUCHAROW LLP**

*/s/ Michael H. Rogers*
Michael P. Canty (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
David J. Schwartz (*pro hac vice*
  forthcoming)
James T. Christie (admitted *pro hac vice*)
Philip J. Leggio (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
mrogers@labaton.com
dschwartz@labaton.com
jchristie@labaton.com
pleggio@labaton.com

**POMERANTZ LLP**

*/s/ Brian Calandra*
Jeremy A. Lieberman (admitted *pro hac vice*)
Brian Calandra (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
bcalandra@pomlaw.com

***Counsel for Co-Lead Plaintiffs and
Co-Lead Counsel for the Class***

**COHEN MILSTEIN SELLERS &
TOLL PLLC**

Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

16

stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Local Counsel for Plaintiffs and the Class*

**PORTNOY LAW FIRM**

Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, California 90067
Tel: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Plaintiff Nandkumar*

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of November, 2023, I served a copy of the

foregoing Plaintiffs' Reply Memorandum Law in Further Support of Motion for Class

Certification and Appointment of Class Representatives and Class Counsel via email upon:

C. Thomas Brown
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7464
Thomas.Brown@ropesgray.com

Peter L. Welsh
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7865
Peter.Welsh@ropesgray.com

Edward R. McNicholas
Bar No. 24833
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 508-4779
Edward.McNicholas@ropesgray.com

Stefan P. Schropp
Bar No. 21699
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9938
Stefan.Schropp@ropesgray.com
Counsel for Defendants

SO CERTIFIED this 13th day of November, 2023

/s/ *Michael H. Rogers*
Michael H. Rogers

18