# EXHIBIT E

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

-ooOoo-

SOTHINATHAN SINNATHURAI,   :
Individually and on
Behalf of All Others      :
Similarly Situated,

                          :

          Plaintiffs,          Civil Action No.
                          :     TDC-21-2910
vs.

                          :
NOVAVAX, INC., et al.,

                          :
          Defendants.

_____

VIDEO-CONFERENCED VIDEO RECORDED
DEPOSITION OF DAVID TRUONG
TAKEN THROUGH
VERITEXT

Taken on Wednesday, August 30, 2023
1:12 p.m. to 4:09 p.m.

Reported by:  Abigail D.W. Johnson, RPR, CRR, CRC

Page 20

Q.    Okay.  With respect to this particular case, do you have an understanding of a -- of a particular time period that the claims cover?

A.    I believe so, yes.

Q.    And what is your understanding of that time period?

A.    I believe the case was filed when -- April of 2021 --

Q.    Mm-hmm.

A.    -- to October or November of 2021.  So, if that's what you are asking, that was the time period.

Q.    When you say the -- "the time period," are you referring to the time period of -- of trades that might be at issue --

A.    Yes.

Q.    -- or the time period of the filing?  Okay. Just to make sure we are --

A.    The time period of the trading issue.

Q.    Okay.

Do you have an understanding of what -- of any particular event or events that are considered to be the beginning or trigger of the time frame that defines the trades that are relevant to this case?

MR. SCHWARTZ:  Objection.

///

Page 21

BY MR. BROWN:

Q.    You can answer.

MR. SCHWARTZ:  Mr. Truong, you can go ahead and answer the question.

THE WITNESS:  I -- I don't recall, but I -- could you repeat the question again?

BY MR. BROWN:

Q.    Yeah.  Let me phrase it, perhaps, slightly differently.

Do you have an understanding of what particular event or events are considered to be the trigger for the beginning of the time frame that is relevant for this case?

MR. SCHWARTZ:  Objection.

Mr. Truong, you can go ahead if you understand the question.

THE WITNESS:  I think it's -- I think it's April 2021.

BY MR. BROWN:

Q.    Is there anything in particular that you're aware of that occurred with respect to Novavax in April of 2021 that would lead to it being relevant in this lawsuit?

A.    I believe, during that time, it's -- Novavax overstated their statements, their press

Page 22

release statements.

Q.    When you say "overstated their press release statements," what are you referring to, in particular?

A.    As I recall, Novavax was overstating their timeline that they can bring out the COVID-19 vaccine in a timely manner.  I think that's when -- during that period, around April of 2021.

Q.    Let me move and ask a similar question related to the end of the relevant time frame.

Do you have an understanding of a -- of there being a particular -- or event -- event or events related to Novavax that would mark the end of the period that's relevant for this case?

MR. SCHWARTZ:  Objection.

THE WITNESS:  I think it was in November of 2021.  I think that's when they come [sic] out with the correction statements.

BY MR. BROWN:

Q.    And when you refer to "correction statements," do you have any particular description you could give about what those statements were?

A.    I -- I can't recall.

Q.    Do you know what format those statements appeared in?

A.    It could be a quarterly report.

Q.    When you say a "quarterly report," do you mean a quarterly report issued by Novavax?

A.    I -- yes.

Q.    Do you have an understanding of what the proposed definition of the membership of the class in this case would be?

MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    You can answer.

A.    The membership of the class action?

Q.    Correct.

A.    I never heard of the term "membership."

Q.    Okay.  So if I were to phrase the question slightly differently, let -- let me try that and see if that -- if that makes sense to you.

Do you understand who the -- do you have an understanding of who the members of the proposed class in this case would be?

MR. SCHWARTZ:  Objection.

THE WITNESS:  I do.

BY MR. BROWN:

Q.    Okay.  And who would they be?

A.    You would have the lead plaintiffs in the case, and you would have other smaller members in the

case.

Q.    Who would those other smaller members be?

A.    I believe they just -- they have smaller loss.  They have smaller losses compared to ours, and they would be the silent members.

Q.    When you refer to "losses," what -- what kind of losses are you talking about?

A.    I believe the lead plaintiff has a [sic] substantial losses compared to the other members.

Q.    When you refer to those losses, are you talking about losses in Novavax stock or in something else?

A.    Losses in Novavax stock.

Q.    Okay.  Do you have an understanding of anyone -- well, withdrawn.

Did you review the operative amended complaint in this case prior to the time it was filed?

A.    Yes.

Q.    Okay.  And without telling me the contents of any of those comments, did you provide any comments on the version of it that you reviewed prior to filing?

A.    No.

Q.    Okay.  Do you recall approximately when it was that you reviewed that draft of the complaint?

MR. SCHWARTZ:  Objection.

Page 25

THE WITNESS:  Yeah.  I can't remember the dates.

BY MR. BROWN:

Q.    Okay.  Do you have a recollection of something -- not about -- about the review, but do you have an approximate idea about when that amended complaint was filed on the court's docket?

A.    It is pretty recently.

Q.    By "pretty recently," how -- how soon ago do you mean?

A.    I believe it's during this year, 2023.

Q.    Separate and apart from any work that your counsel might have done, did you personally undertake any efforts to investigate the allegations that were made in the complaint?

A.    No.

Q.    What is your understanding of the subject matter of the allegedly false or misleading statements that are challenged in the complaint?

MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    You can answer.

A.    Can you restate the question?

Q.    Yeah.  Do you have an understanding of what the subject matter of the allegedly false or misleading

statements that are challenged by the complaint were?

A.   What is my understanding --

Q.   Yes.

A.   -- my understanding of the complaints about?

Q.   Yeah.  Of what the subject matter of the complaint is.

A.   Yeah.  Like I previously stated, I believe it's the over- -- the statement that released by Novavax was overstated.  They claimed that they can bring out the COVID-19 vaccine in a timely manner, which they failed to do so.

Q.   Aside from the issue of the timing of the release of the vaccine, do you have an understanding of any other kinds of statements by Novavax or its executives that are at issue in the complaint?

A.   I understood that they claim that I have manufacturer in place and all the chain supply [sic] in place that they can scale the vaccine in a timely manner, also.

Q.   Okay.  Anything else besides that subject and the one you previously described?

A.   I believe they were supposed to apply for the -- for the emergency usage with the FDA in a timely manner, but they failed to do -- they failed to do that

as well.

Q.    So aside from the topics that you've just described, are there any other topics that are addressed by the complaint that you recall?

A.    Not that I recall.

Q.    Who are the defendants that are named in this action?

A.    Novavax as the company, I believe the CEO, which is Stanley Erck, and John Trizzino and Glenn Gregory.

Q.    Do you know what John Trizzino's job title at Novavax was?

A.    I believe Stanley is the CEO and John is the CFO.  I'm not sure which -- yeah, I don't.

Q.    Are you familiar with the name Gregory Covino?

A.    Gregory -- what's the last name?

Q.    Covino.

A.    I don't recall.

Q.    Are you familiar with the concept of a confidential witness?

A.    Yes.

Q.    What's your -- sorry.

What's your understanding of what a confidential witness is in the context of a securities

litigation?

A.    I believe the confidential witnesses are the one that still works for the company or an ex-employee of the company.

Q.    As you sit here today, do you know the names of any of the people who are named as confidential witnesses in the complaint?

A.    I don't.

Q.    Have you ever spoken, personally -- I'm not talking about your lawyers -- have you personally spoken to any of the people that are named as confidential witnesses in this case?

A.    I never have.

Q.    Aside from whatever work your counsel might have done, have you personally undertaken any efforts to investigate the accuracy of any statement made by a confidential witness in this case?

A.    I have not.

Q.    Yes-or-no question:  Do you have any awareness of what efforts your counsel undertook to verify the accuracy of any confidential witness allegations?

          MR. SCHWARTZ:  Objection.

BY MR. BROWN:

Q.    You can answer.

Page 32

A.    After I've seen the press release from Labaton on -- on Yahoo! Finance.

Q.    And what do you recall was -- was the contents or subject matter of that press release you're referring to?

A.    If you have losses due to the overstated statements from Novavax, you can join the lawsuit.

Q.    Had you ever had any -- to your knowledge, had you ever had any contact with anyone associated with the Labaton firm prior to reviewing that press release?

A.    No.

Q.    And was that press release what prompted you to contact the Labaton firm?

A.    Yes.

Q.    Do you recall approximately when it was that you saw that press release?

A.    April or May 2021.

Q.    Separate from the precise date when you saw the press release, how long was it between the time that you saw the press release and when you made your first attempt to contact the folks at the Labaton firm?

A.    Probably just a week.

Q.    Is it your understanding that you have been proposed as a representative of the punitive class in

this lawsuit?

A.    Yes.

Q.    And what do you understand would be your duties if you were appointed as the representative of a certified class?

A.    I would have the option of working with the lead attorneys directly.  I would have the option to -- to testify.  I would have the option to -- to negotiate in the settlement or the mediation.

Q.    Aside from those duties you just listed, do you have any other duties that you understand that you would have?

A.    No.

Q.    Have you ever met with anyone in -- in the context of this case, have you ever met with anyone at the Labaton firm in person as opposed to by Zoom or by phone?

A.    No.

Q.    Okay.  Again, I'm just looking here for numbers, not about contents of any communications, but approximately how many times have you spoken by phone or by Zoom with the folks at the Labaton firm since you first joined this case?

A.    I would say 10, 11 times.

Q.    Aside from the complaint that we already

Page 34

discussed, do you recall having reviewed any other filings that were made in this case or that you understood were going to be made in this case?

A.    Repeat the question.

Q.    Sure.  Setting aside the complaint that we already discussed, do you recall reviewing any other filings that you understood were going to be made in this case?

A.    Beside [sic] the complaint?

Q.    Yes.

A.    Yeah, I have seen certification to be -- to be signed.  I have seen the mediation and then other documents, but I can't recall the names.

Q.    What's your understanding of the current status of the lawsuit?

A.    The current status is we are able to proceed with -- with the lawsuit.

Q.    And in the context of proceeding with the lawsuit, what's your understanding of what particular activities are going on at the present moment in connection with the lawsuit?

A.    If we don't pass mediation, it's -- probably will be trial.  That's my understanding.

Q.    Do you know the name of the judge presiding over the case?

Page 58

A.    Yes.

Q.    Okay.  The last sentence of that paragraph in connection with this -- of this declaration states, "I am informed of and understand the requirements and duties imposed by the Private Securities Litigation Reform Act of 1995."

Do you have an understanding, sitting here today, of what the requirements and duties that you're referencing in that sentence are?

A.    It might have been explained to me before, but I -- I don't recall.  I don't remember what it is.

Q.    If you would turn to page -- well, the bottom of page 3 -- of that page, you'll see paragraph 5.

A.    Yes.

Q.    And there is a reference to your -- seeing about Yahoo! Finance and then contacting the gentleman at the Labaton firm.

Do you see that paragraph, sir?

A.    Yes.

Q.    Okay.  If you turn later in that paragraph, I'm going to focus on the last sentence, but feel free to read the whole paragraph to yourself if you need to, to answer the question.

But I'm going to ask you about the

Page 59

reference in the last sentence to a "fair and reasonable fee agreement."  And -- and my question to you is a very simple one.

Does the fee agreement -- did -- did you, in fact, enter into a fee agreement with the Labaton firm in connection with this case?

MR. SCHWARTZ:  Objection.

THE WITNESS:  I don't have a fee agreement.

BY MR. BROWN:

Q.    Okay.  Do you have some sort of written agreement with the Labaton firm that describes the terms of its representation of you in this case?

A.    Can you repeat the question?

Q.    Yes, sir.

Do you have a written engagement agreement with the Labaton firm in connection with this case?

A.    I believe so.

Q.    You can put that document aside, sir.

MR. BROWN:  Will, you can send Tab 3 and -- and exhibits -- here, we will send all of these together.  "Tab 03," "Tab 03A" and "Tab 03C."

So counsel, you're now going to see the class certification brief and a couple of relevant exhibits to that brief.  That's what we're sending right now.

Page 60

MR. SCHWARTZ:  Thank you.

MR. BROWN:  David, James, did those come through yet?

MR. SCHWARTZ:  I have not gotten them yet.

MR. BROWN:  Okay.  Hopefully soon. There's -- only one of them is --

MR. SCHWARTZ:  There we go.

MR. BROWN:  -- the other ones are, like, 100 kilobytes.  So hopefully they're not too delayed. I try not to send any 40 megabyte documents.

MR. CHRISTIE:  Okay.  Mr. Truong, I just sent them.  So you can let us know when you get them from me.

THE WITNESS:  Okay, I got it.

BY MR. BROWN:

Q.   Okay.  So if I could ask you, first, to open up the document that has the title "Tab 03 - Memo of Law."

A.   Okay.

MR. BROWN:  And I believe, Madam Reporter, are we on 5?

COURT REPORTER:  Yeah, this is 5.

MR. BROWN:  Okay.  So let's mark that as Exhibit 5.

(Exhibit No. 5 was marked

Page 61

for identification.)

BY MR. BROWN:

Q.    So take a moment, if you need, sir, to look through that document to familiarize yourself with what it is.  I'll direct you to a few specific places, but --

A.    Okay.

Q.    -- we're not -- we're not going to go through the whole thing by any means.

A.    Okay.

Q.    Okay.  Great.  Have you seen this document before, sir?

A.    I have.

Q.    Were you involved in drafting this document?

A.    No.

Q.    Did you review this document prior to the time that it was filed on the court docket?

A.    Yes.

Q.    And don't tell me what the contents of any of them might have been, but do you recall providing any oral or written comments to a draft of this document?

A.    No comments.

Q.    What do you -- what's your understanding of

Page 62

what the purpose of this particular court filing is in the context of this case?

A.    I believe these are just complaints.

Q.    This particular document or --

A.    This particular document.

Q.    Let me ask you, do -- well, let me ask a different question before I turn to a page in the document.

In connection with this particular filing, the "Plaintiffs' Memorandum of Law in Support of Motion for Class Certification and Appointment of Class Representatives and Class Counsel," do you recall providing, in addition to the review of the draft itself that you discussed, any kind of certification or affidavit or some statement that you made personally?

A.    I don't remember.  I don't recall.

Q.    Okay.  Let me ask you to take a look at "Tab 3A," please.  That's the second document in the attachments.

A.    Okay.

Q.    Labeled, "Declaration in Support of Motion."

A.    Okay.

(Exhibit No. 6 was marked

for identification.)

Page 64

refresh your recollection that you provided a declaration in connection with the particular motion paper we just looked at?

A.    I believe so.

Q.    Let me ask you now to look at the file that's labeled "Tab 03C" in the -- in the exhibit title.  The cover page is "Exhibit D."  If you turn to the next page --

A.    Okay.

Q.    -- there is a label "Declaration of David Truong," under the case caption.

Let me know when you're there.

A.    Yes, I'm here.

Q.    Okay.

MR. SCHWARTZ:  Mr. Truong, feel free to look --

BY MR. BROWN:

Q.    Yeah, look through that.

MR. SCHWARTZ:  Take your time.

THE WITNESS:  Okay.

MR. SCHWARTZ:  Let us know when you're ready.

(Exhibit No. 7 was marked

for identification.)

THE WITNESS:  Okay.  I'm ready.

Page 65

BY MR. BROWN:

Q.    Okay.  Sir, did you draft this document yourself?

A.    I did not.

Q.    Did you review this document --

A.    Yes, I did.

Q.    Okay.  Do you recall -- don't tell me what the contents of them were, but do you recall providing any comments on the contents of this document?

A.    No, I didn't.

Q.    Okay.  Is that your signature at the bottom of page 2?

A.    Yes, it is.

Q.    If you would look at paragraph 4.  So I'm back to page 2 of 3, the first page where it says, "Declaration of David Truong" at the top?

A.    Yes.

Q.    "On January 26, 2022, the Court appointed me as a Lead Plaintiff in this action.  See Dkt. No. 47.  I understand that acting as a class representative in this action involves serving as a fiduciary for the benefit of the class of investors in Novavax stock that it seeks to represent."

Do you see that sentence, sir?

A.    Yes.

Page 66

Q.    What is your understanding of what it means to serve as a fiduciary for the benefit of the class?

A.    That I have -- I probably have to do deposition and testify in this case if it goes to trial.

Q.    Aside from those activities, are there any others that you understand are involved in being a fiduciary for the class -- benefit of the class?

A.    I understand that I have the opinion and -- making a major decision and mediation or settlement.

Q.    Anything else?

A.    That's -- that is -- that's it.

Q.    If you look now to the paragraph 5, at the top of the next page, the second sentence references -- says, "I am well aware of the extensive experience of proposed Class Counsel Labaton Sucharow LLP, and Pomerantz LLP in protecting shareholder rights and class action litigation."

Do you see that, sir?

A.    Yes.

Q.    Do you have any awareness of any securities litigation matters, aside from this one, in which the Labaton Sucharow firm is involved?

A.    No.

Q.    Okay.  And just to make sure my tenses are

clear, is that -- that includes in the past and not just in the present?

A.    That's correct.

Q.    Okay.  What about with respect to the Pomerantz firm?  Do you have any familiarity with any actions in which the Pomerantz firm has been or is involved, aside from this one?

A.    No.

Q.    I already asked about that.

Do you recall having reviewed any potential filings in this case that came to you after the date of this particular declaration, so 3/16 of this year, March 16th of this year?

A.    I can't recall.

Q.    Okay.  You can put those documents to the side, sir.

MR. BROWN:  Will, could we start with the March statement now, please?  I think that's "Tab 07."  Maybe after this, we can send the rest of the statements in a batch.  My only concern is that the file size might be a little large, that if we try to drop them all in one email, that it will slow it down.

Will, could you tell me roughly what the file sizes for those are?  It looks like they are large.

Q.    Yes, sir.

A.    Okay.

Q.    "Tab 14," Exhibit 15.  Hold on.  I'm getting it out of my tree-killer binder.

(Exhibit No. 15 was marked for identification.)

BY MR. BROWN:

Q.    So this is Exhibit 15, NOVAVAX_TRUONG 323 through 564.

So, sir, when you're ready, my question, as with the others, is:  Do you recognize what this document is?

A.    Yes.  This is the Robinhood statement from October 1st to October 31st, 2021.

Q.    And did you generate this statement through Robinhood in the same way that you did the others that we've looked at?

A.    Yes.

Q.    You've provided this document to your counsel in connection with your application to be lead plaintiff?

A.    Yes.

Q.    Do you have any reason to dispute the accuracy of the information in this statement?

A.    No.

Page 103

Q.    Do you have any reason to dispute the completeness of the information in this statement?

A.    No.

Q.    If you wanted to know your trading history in Novavax stock for October of 2021, is this the document you would look at?

A.    Yes.

Q.    Would you look at any document aside from this one?

A.    No.

Q.    Do you have a recollection of any particular news or information that you learned about Novavax in the month of October of 2021 that affected your trading decisions?

A.    No.

Q.    Are you familiar with the website Politico?

A.    Yes.

Q.    What's your familiarity with it?

A.    One of the article -- I'm not familiar with them, but I remember one of the articles that's written about Novavax, that crashed the stock about 20 percent.

Q.    And did you -- have you, at any point, read that article?

A.    I did.

Q.    When did you read it?

Page 104

A.    I don't -- I can't recall.

Q.    Would it have been around the time that the article was published?

MR. SCHWARTZ:  Objection.

THE WITNESS:  It was immediately after it was published.

BY MR. BROWN:

Q.    What do you recall, sitting here today, was included in the article that affected the stock price, in your view?

A.    It's -- I can't recall exactly.

Q.    Do you have a recollection of whether the contents of that article led to you want to buy or to sell Novavax stock?

A.    It was the "sells."

Q.    And why would it be -- why would that be the case?

A.    It's -- it definitely was bad news for Novavax.

Q.    And why would bad news for Novavax lead you to want to sell the stock?

A.    I believe the article was saying -- was referring to the supply chain as well as the partnership in other countries' manufacturing.

Q.    Do you recall, sitting in here today,

Page 107

MR. BROWN:  We will mark this as Exhibit 16.

BY MR. BROWN:

Q.    It's a document that was filed as No. 99 on the docket of this case, on the day 8/5/23.  It looks like it's 277 pages long and under the caption, it says, "Lead Plaintiff David Truong's Notice of Errata."

Do you see that there, sir?

A.    Yes.

Q.    Do you know why it is that you filed a document labeled "Notice of Errata"?

A.    I believe this to -- the error -- the calculation error that we did.

Q.    The -- the calculation errors you were referencing previously?

A.    Yes.

Q.    Is -- did you review this document before it was filed?

A.    Yes.

Q.    Okay.  And do you have any reason to dispute the accuracy of the information presented in this document?

A.    No.

Q.    Who prepared this document?

A.    My attorney.

Page 108

Q.    Okay.  Did you review it before it was filed?

A.    I'm sorry?

Q.    Did you review it before it was filed?

A.    Yes.

MR. BROWN:  I don't have any further questions today.

MR. SCHWARTZ:  Thank you.  Mr. Truong, just a real quick question.

EXAMINATION

BY MR. SCHWARTZ:

Q.    Mr. Truong, do you consider part of your responsibility as a lead plaintiff to monitor counsel -- to monitor class counsel?  In other words, to oversee the work of Labaton?

A.    Yes.

Q.    Okay.  Thank you very much.  No further questions.

MR. BROWN:  No further questions from me. I think we are done.  Thank you very much for your time today, Mr. Truong.  Thank you.

MR. SCHWARTZ:  Thanks, Mr. Truong.

COURT REPORTER:  Could I get your orders before you guys leave?

What did you want, Mr. Brown?

Page 109

MR. BROWN:  Whatever we did -- we have done on the last ones.  Will will know better than me.

MR. CHRISTIE:  You can do -- I think that we did -- for the other ones we did for Mr. Gabbert, I think we did a quick turnaround.  I think it was two days.

COURT REPORTER:  Okay.  And you're with the defendants, Mr. Christie?

MR. CHRISTIE:  No, I'm with the plaintiffs.

MR. CALANDRA:  And this is Brian Calandra, also with the plaintiffs.  If Pomerantz could have just a regular turnaround.  We don't need a quick turnaround.

COURT REPORTER:  Okay.  So Mr. Christie, Labaton wants the two-day turnaround?

MR. CHRISTIE:  Yes, please.

COURT REPORTER:  Okay.  And then Ropes & Gray wants regular turnaround?

MR. BROWN:  Regular is fine.

COURT REPORTER:  Okay.  And Pomerantz wants regular?

MR. CALANDRA:  Wants regular.  Yeah, that's right.

VIDEOGRAPHER:  The time now is 4:09 p.m. We are off the record.

Page 112

REPORTER'S CERTIFICATE

STATE OF UTAH           )

                        )

COUNTY OF SALT LAKE )

I, ABIGAIL D.W. JOHNSON, a Certified Shorthand Reporter and Registered Professional Reporter, hereby certify:

THAT the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was placed under oath to tell the truth, the whole truth, and nothing but the truth; that the proceedings were taken down by me in shorthand and thereafter my notes were transcribed through computer-aided transcription; and the foregoing transcript constitutes a full, true, and accurate record of such testimony adduced and oral proceedings had, and of the whole thereof.

I FURTHER CERTIFY that I am not a relative or employee of any attorney of the parties, nor do I have a financial interest in the action.

( ) Review and signature was requested.

( ) Review and signature was waived.

(X) Review and signature was not requested.

I have subscribed my name on this 1st day of September, 2023.

ABIGAIL D.W. JOHNSON, RPR, CRR, CRC