**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

|  |  |
|---|---|
| SOTHINATHAN SINNATHURAI,<br>Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>v.<br><br>NOVAVAX, INC, STANLEY C. ERCK,<br>GREGORY F. COVINO, JOHN J. TRIZZINO, and<br>GREGORY M. GLENN,<br><br>                           Defendants. | Civil Action No. TDC-21-2910 |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>APPROVAL OF PLAN OF ALLOCATION</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................4

I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL AAPPROVAL..................................................4

    A. The Law Favors and Encourages Settlement of Class Action Litigation ......................4

    B. The Standards for Final Approval..................................................................................4

    C. Application of Rule 23(e)(2) and *Jiffy Lube* Factors .....................................................6

        1. Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class .......................................................................6

        2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel ...........................................7

        3. The Relief Provided by the Settlement Is Adequate ...........................................10

            (a) Risks of Establishing Liability and Damages Support Approval of the Settlement ........................................................................12

            (b) The Settlement Is Reasonable In Light of Potential Recovery in the Action ................................................................................16

            (c) Costs and Delay of Continued Litigation Support Approval of the Settlement ...................................................................................17

            (d) The Effective Process for Distributing Relief to the Settlement Class.......................................................................................18

            (e) The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Related to the Settlement...........................19

        4. Class Members Are Treated Equitably Relative to One Another........................20

        5. Reaction of the Settlement Class to Date Supports Approval of the Settlement..................................................................................................20

II. PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE........................21

III. NOTICE SATISFIED RULE 23 AND DUE PROCESS ...................................................22

CONCLUSION.......................................................................................................................23

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
    28 F.4th 513 (4th Cir. 2022) ............................................................................4, 5

*Benway v. Res. Real Est. Servs., LLC*,
    No. Civ. A. WMN-05-3250, 2011 WL 1045597 (D. Md. Mar. 16, 2011) ..............................15

*Boger v. Citrix Sys., Inc.*,
    No. 19-CV-01234-LKG, 2023 WL 1415625 (D. Md. Jan. 31, 2023) .................4, 5, 10, 16, 22

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014)............................................................................21

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
    No. 12-MD- 02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................19

*Fagen v. Enviva Inc.*,
    No. Civ. A. DKC 22-2844, 2023 WL 1415628 (D. Md. Jan. 31, 2023)................................10

*Feinberg v. T. Rowe Price Grp., Inc.*,
    610 F. Supp. 3d 758 (D. Md. 2022)..............................................................11, 21, 22

*George v. Duke Energy Ret. Cash Balance Plan*,
    259 F.R.D. 225 (D.S.C. 2009) ............................................................................6

*Goldman Sachs Group, Inc. v. Ark. Teacher Ret. Sys.*,
    141 S. Ct. 1951 (2021)....................................................................................13

*Graham v. Famous Dave's of Am., Inc.*,
    No. Civ. A. DKC 19-0486, 2022 WL 17584274 (D. Md. Dec. 12, 2022) ..............................9

*Harper v. 2U, Inc.*,
    No. Civ. A. TDC-19-3455, 2020 WL 13569349 (D. Md. June 1, 2020)................................10

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    855 F. Supp. 825 (E.D.N.C. 1994)......................................................................17

*Hunt v. Constantine Com. Constr., Inc.*,
    No. 8:20-CV-01846-AAQ, 2023 WL 5003137 (D. Md. Aug. 4, 2023) ................................9

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ......................................................................... *passim*

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
No. 1:08-CV-13102009, WL 3094955 (E.D. Va. Sept. 28, 2009) .......................................4, 9

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales
Practices & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ...........................................................................................6, 8

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) ...............................................................................................22

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ...................................................................................14

*Miller v. Asensio & Co., Inc.*,
364 F.3d 223 (4th Cir. 2004) ..............................................................................................15

*In re Montgomery Cnty. Real Est. Antitrust Litig.*,
83 F.R.D. 305 (D. Md. 1979).............................................................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)...........................................................................................................22

*In re Mut. Funds Inv. Litig.*,
No. 04-MD-15862, 2010 WL 2077213 (D. Md. May 19, 2010).............................................10

*National Rural Tele. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................................16

*India Globalization Cap., Inc. v. MuKunda*,
No. Civ. A. DKC 18-3698, 2020 WL 3639978 (D. Md. July 6, 2020) ...................................20

*Orman v. Am. Online, Inc.*,
No. Civ. A. 97-264-A, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998) .....................................16

*Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v.
Emergent Biosolutions Inc.*,
No. PWG-21-1189, 2021 WL 6072812 (D. Md. Dec. 23, 2021) ............................................10

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...........................................................................................15

*Robinson v. Nationstar Mortg. LLC*,
No. 8:14-CV-03667-TJS, 2020 WL 13119703 (D. Md. Aug. 19, 2020)................................17

*Sharp Farms v. Speaks*,
917 F.3d 276 (4th Cir. 2019) ..............................................................................................11

*Smith v. David's Loft Clinical Programs, Inc.*,
No. 21-CV-03241-LKG, 2022 WL 16553228 (D. Md. Oct. 31, 2022)...................................10

*Stuckey v. Geupel*,
854 F.2d 1317 (4th Cir. 1988) ...................................................................................15

*Taylor v. First Union Corp. of S.C.*,
857 F.2d 240 (4th Cir. 1988) ....................................................................................15

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ................................................................................16

*Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*,
No. Civ. A. ELH-21-1520, 2023 WL 185178 (D. Md. Jan. 13, 2023)..............................6, 8

**Statutes**

15 U.S.C. § 78u-4(a) ..............................................................................................20, 23

Freedom of Information Act ..........................................................................................2, 7

PSLRA .............................................................................................................19, 20, 23

**Other Authorities**

https://consumerfed.org/ ...............................................................................................19

https://www.cnn.com/2023/03/01/investing/novavax-covid-vaccine-going-
concern/index.html......................................................................................................3

Fed. R. Civ. P. 23 ............................................................................................ *passim*

*Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone
Research 2024)..........................................................................................................17

*PR Newswire*......................................................................................................21, 23

*The Wall Street Journal* .........................................................................................21, 23

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Jeffrey A. Gabbert, Nuggehalli Balmukund Nandkumar, and David Truong (collectively, "Lead Plaintiffs"),[1] on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") and approval of the proposed plan of allocation for the proceeds of the Settlement (the "Plan of Allocation").

## PRELIMINARY STATEMENT

Lead Plaintiffs and Defendants[2] have agreed to a settlement of the claims in the Action, and the release of all Released Plaintiffs' Claims and Released Defendants' Claims, in exchange for a payment of $47,000,000 in cash.  The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court.  *See* ECF No. 127-3.

As detailed in the accompanying Joint Declaration of Brian Calandra and Michael H. Rogers in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Joint Declaration"),[3] before agreeing to settle, Lead Plaintiffs, through Co-

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings given to them in the Stipulation and Agreement of Settlement, dated January 12, 2024 (the "Stipulation"). *See* ECF No. 127-3.

[2] Defendants are Novavax, Inc. ("Novavax" or the "Company"), and Stanley Erck, Gregory Covino, John Trizzino, and Gregory Glenn (collectively, the "Individual Defendants," and, with Novavax, the "Defendants").

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for, among other things, a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.  Citations to "¶" in this memorandum refer to paragraphs in the Joint Declaration.  All exhibits referenced below are attached to the Joint Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___."  The first numerical reference is to the designation

*(continued … )*

1

Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts by, among other things, reviewing and analyzing Novavax's filings with the U.S. Securities and Exchange Commission ("SEC"), filing requests pursuant to the Freedom of Information Act ("FOIA") to procure documents from government agencies for review and analysis, and interviewing former Novavax employees and other potential witnesses with relevant information (eight of whom were cited in the Complaint as confidential witnesses); (ii) opposed Defendants' motion to dismiss; (iii) briefed a motion to compel discovery; (iv) conducted extensive discovery that included serving document requests and analyzing the production of approximately 57,680 documents (312,063 pages) from Defendants and third parties; (v) fully briefed a motion for class certification; (vi) exchanged expert reports addressing market efficiency; (vii) completed class discovery, including defending three plaintiff depositions and the deposition of Lead Plaintiffs' market efficiency expert, and deposing Defendants' market efficiency expert; and (viii) participated in numerous meet-and-confer calls with Defendants. As a result, at the time the Settlement was reached, Lead Plaintiffs had a keen understanding of the strengths and weaknesses of the claims and defenses. *See generally*, ¶¶26-73.

The Settlement is the product of extensive arm's-length negotiations between the Parties, which included two full-day mediation sessions under the auspices of a respected and experienced mediator, Gregory P. Lindstrom of Phillips ADR. ¶¶51-55. Following the second mediation, the Parties agreed, in principle, to the terms of the Settlement, subject to the negotiation of a mutually acceptable long form stipulation of settlement. ¶53.

---

of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

The Settlement is a very favorable result for the Settlement Class in light of the risks of continued litigation and Defendants' financial outlook. While Lead Plaintiffs and Co-Lead Counsel believe that the claims asserted against Defendants are strong, they recognize that the Action presented a number of obstacles, including convincing this Court and a jury that Defendants' alleged misstatements were actionable, made intentionally or recklessly, and caused Lead Plaintiffs' and the Settlement Class's losses. While Lead Plaintiffs can advance strong counter arguments to Defendants' liability defenses, they nonetheless recognize that there were credible risks that Defendants might succeed at summary judgment or trial. These risks are in addition to the genuine risk of a much smaller recovery, or no recovery at all, at the conclusion of trial or potential subsequent appeals.

Moreover, these risks were exacerbated in February 2023 when Novavax disclosed to investors that "substantial doubt exists regarding our ability to continue as a going concern," which suggested to investors and industry analysts that the Company faced significant risk of bankruptcy and/or delisting. Such a development would have put the chances of ***any recovery***, via judgment or settlement, at great risk.[4]

In light of the substantial recovery for the Settlement Class and the risks to continued litigation, as discussed below and in the Joint Declaration, Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court.

Additionally, Lead Plaintiffs request that the Court approve the proposed Plan of Allocation governing the distribution of the Net Settlement Fund, which was set forth in full in the long-form Notice posted on the Claims Administrator's webpage for the Settlement (the

---

[4] *See* Paul R. La Monica, *COVID Vaccine Maker Novavax Says It May Not Survive*, CNN, Mar. 1, 2023, https://www.cnn.com/2023/03/01/investing/novavax-covid-vaccine-going-concern/index.html.

"Settlement Webpage"). *See* Ex. 1 - B ¶¶ 54-71. The Plan of Allocation, which was developed by Co-Lead Counsel in consultation with Lead Plaintiffs' damages expert, provides a reasonable and equitable method for allocating the Net Settlement Fund among Class Members who submit valid claims, and thus should likewise be approved.

## ARGUMENT

I.   **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL AAPPROVAL**

A.   **The Law Favors and Encourages Settlement of Class Action Litigation**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval and should be approved when the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). Courts have long recognized that public and judicial policy favor the settlement of disputed claims among private litigants, particularly in class actions. *See, e.g.*, *Boger v. Citrix Sys., Inc.*, No. 19-CV-01234-LKG, 2023 WL 1415625, at *3 (D. Md. Jan. 31, 2023) ("There is an overriding public interest in favor of settlement, particularly in class action suits.") (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).[5]

B.   **The Standards for Final Approval**

Pursuant to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)   class representatives and counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

---

[5] Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, the Fourth Circuit has held that district courts should consider the factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991) when evaluating a class action settlement. *See*, *e.g.*, *1988 Tr.*, 28 F.4th at 525; *Boger*, 2023 WL 1415625, at *3. The *Jiffy Lube* factors are consistent with the Rule 23(e)(2) factors. Under *Jiffy Lube*, to assess the threshold factor of the fairness of a settlement, courts consider, "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." *Jiffy Lube,* 927 F.2d at 159. Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.*

Under the second *Jiffy Lube* threshold factor of the adequacy of the proposed settlement, courts consider: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. 927 F.2d at 159.

5

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the court of appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Committee Notes to 2018 Amendments. Lead Plaintiffs will primarily discuss the fairness, reasonableness, and adequacy of the Settlement in relation to the four factors set forth in Rule 23(e)(2), since these factors "almost completely overlap" with the *Jiffy Lube* factors and "the outcome[s] [are] the same under both" sets of factors. *Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, No. CV ELH-21-1520, 2023 WL 185178, at \*4 (D. Md. Jan. 13, 2023) (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)). However, each of the Rule 23(e)(2) and *Jiffy Lube* factors readily support approval of the proposed Settlement.

  **C.**  **Application of Rule 23(e)(2) and *Jiffy Lube* Factors**

    **1.**  **Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class**

In determining whether to approve a class action settlement, the Court should consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The adequacy requirement "involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Yost*, 2023 WL 185178 (D. Md. Jan. 13, 2023) (quoting *George v. Duke Energy Retirement Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009)).

Throughout the Action, Lead Plaintiffs and Co-Lead Counsel have zealously represented

6

the Settlement Class in both their vigorous prosecution of the Action and in their negotiation and achievement of the Settlement. Lead Plaintiffs have been active and informed participants in the litigation efforts and were consulted on, and approved, the terms of the Settlement. *See generally, e.g.*, Joint Decl. Exs. 9, 10. Consistent with their obligations, Co-Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) conducting a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Novavax filings with the SEC, a review of documents from several government agencies in response to Co-Lead Counsel's FOIA requests, and interviews with former Novavax employees and other potential witnesses with relevant information (eight of whom were cited in the Complaint as confidential witnesses); (ii) briefing Defendants' motion to dismiss; (iii) extensive discovery efforts that included serving document requests and analyzing the production of approximately 57,680 documents (312,063 pages) from Defendants and third parties; (iv) briefing Lead Plaintiffs' motion for class certification; (v) exchanging expert reports addressing market efficiency; and (vi) completing class discovery, including defending three plaintiff depositions, defending the deposition of Lead Plaintiffs' market efficiency expert, and deposing Defendants' market efficiency expert. In consultation with its damages expert, Co-Lead Counsel also evaluated the potential damages in the case and negotiated in multiple mediation sessions to secure the $47 million recovery. It cannot be disputed that Lead Plaintiffs and the Co-Lead Counsel have adequately represented the Settlement Class.

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In weighing a class action settlement at final approval, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). To determine whether the settlement was fairly negotiated, the Court also evaluates the four *Jiffy Lube* "fairness"

factors: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Yost*, 2023 WL 185178 at *4 (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020); *In re Jiffy Lube*, 927 F.2d at 159). These factors demonstrate that the Settlement was reached through arm's-length negotiations amid thorough litigation efforts and with no hint of collusion.

In particular, the significant amount of discovery that was conducted before the Parties' agreement in principle dispels any concerns of possible collusion. *See Jiffy Lube*, 927 F.2d at 159 (acknowledging that a settlement reached, unlike here, "at a very early stage in the litigation and prior to any formal discovery, rais[es] questions of possible collusion"). Here, as detailed in the Joint Declaration, the Settlement was reached only after an extensive investigation by Co-Lead Counsel, the defeat in substantial part of Defendants' motion to dismiss the Complaint, substantial fact and class discovery, and briefing a motion for class certification that included dueling expert reports. *See* ¶¶36-50.

The Parties' robust discovery included Defendants' production to Lead Plaintiffs of approximately 57,676 documents (totaling about 311,690 pages), and Lead Plaintiffs' production of approximately 88 documents (about 2,330 pages) to Defendants. Lead Plaintiffs also served a subpoena in connection with the Action and obtained an initial production of approximately 4 documents (about 373 pages). ¶¶44-50. Lead Plaintiffs submitted reports from, and defended the deposition of, a highly qualified expert, Chad Coffman of Global Economics Group LLC (n/k/a Peregrine Economics), who was retained to provide an expert opinion on market efficiency, loss causation, and damages. ¶¶46-47. Lead Plaintiffs also deposed Defendants' expert, Prof. S.P.

Kothari, Professor of Accounting and Finance at MIT's Sloan School of Management, who submitted an expert report supporting Defendants' opposition to Lead Plaintiffs' motion for Class Certification. ¶47. "When the parties have had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of the case, this factor favors settlement approval." *Hunt v. Constantine Com. Constr., Inc.*, No. 8:20-CV-01846-AAQ, 2023 WL 5003137, at *3 (D. Md. Aug. 4, 2023)) (quoting *Lomascolo*, 2009 WL 3094955, at *11).

As noted above, at the time of settlement, the Parties had already litigated Defendants' motion to dismiss and briefed Lead Plaintiffs' motion for class certification. Motion practice, combined with discovery and lengthy settlement negotiations, weighs in favor of final approval. *See Graham v. Famous Dave's of Am., Inc.*, No. CV DKC 19-0486, 2022 WL 17584274, at *8 (D. Md. Dec. 12, 2022) (finding fairness factors weigh towards final approval where parties had engaged in "some motions practice," "lengthy settlement negotiations," and "some preliminary discovery"). The substantial discovery and motion practice in this case provided each side with further insight to evaluate the merits and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

Moreover, the settlement negotiations were conducted at arm's-length by experienced class action litigators with the assistance of an experienced mediator. In June and November 2023, Co-Lead Counsel and Defendants' Counsel participated in two full-day mediation sessions before the Mediator. In advance of the mediations, the Parties provided detailed mediation statements and exhibits to the Mediator, which addressed issues of both liability and damages. Although the first session was unsuccessful, as both sides zealously advocated their positions, the second session ultimately led to an agreement in principle to settle after the presentation of a "mediator's recommendation" to settle for $47 million. ¶¶52-53.

Finally, the fourth fairness factor is "the experience of counsel in the area of class action litigation." *Boger*, 2023 WL 1415625, at \*8 (citing *Jiffy Lube,* 927 F.2d at 159).  Here, Co-Lead Counsel are among the most highly qualified securities class actions firms in the country (*see* Exs. 3-4) and have a wealth of experience litigating and resolving securities class actions in the District of Maryland and nationwide.  *See, e.g.*, *Fagen v. Enviva Inc.*, No. CV DKC 22-2844, 2023 WL 1415628, at \*3 (D. Md. Jan. 31, 2023); *Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc.*, No. PWG-21-1189, 2021 WL 6072812, at \*6 (D. Md. Dec. 23, 2021); *Harper v. 2U, Inc.*, No. CV TDC-19-3455, 2020 WL 13569349, at \*2 (D. Md. June 1, 2020); *In re Mut. Funds Inv. Litig.*, No. 04-MD-15862, 2010 WL 2077213, at \*2 (D. Md. May 19, 2010).  Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded consideration in determining whether a class settlement is fair and adequate.  *See Smith v. David's Loft Clinical Programs, Inc.*, No. 21-CV-03241-LKG, 2022 WL 16553228, at \*5 (D. Md. Oct. 31, 2022).

Additionally, Lead Plaintiffs supervised, monitored, and were actively involved throughout the prosecution and settlement of the Action.  For example, Lead Plaintiffs regularly communicated with Co-Lead Counsel regarding the progress of the case; reviewed court filings and other material documents throughout the case; participated in discussions regarding litigation strategy and significant developments in the Action; worked with counsel to respond to discovery requests, including producing documents and providing deposition testimony; and were involved in the mediation process that ultimately led to the proposed Settlement, including the decision to agree to the Settlement.  *See, e.g.*, Exs. 9 ¶3, 10 ¶3.

Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(B).

### 3.    The Relief Provided by the Settlement Is Adequate

The proposed Settlement readily satisfies Rule 23(e)(2)(C) (and the *Jiffy Lube* adequacy

factors).[6]  Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors.  Fed. R. Civ. P.  23(e)(2)(C).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement.  *See, e.g.*, *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 768 (D. Md. 2022) (the first two *Jiffy Lube* factors are "the most important factors in this analysis," comparing "the relative strength of Plaintiffs' case on the merits and the existence of any difficulties of proof or strong defenses the Plaintiffs are likely to encounter if the case goes to trial") (quoting *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019)).  Because the $47 million Settlement represents a very good recovery for the Settlement Class, particularly in light of the risks of litigation and potential outcomes at trial, Lead Plaintiffs respectfully submit that the Settlement provides adequate relief to the Settlement Class.

As discussed below and in the Joint Declaration, if this Action were to continue, Lead Plaintiffs would have to clear substantial hurdles before obtaining any recovery.  While Lead Plaintiffs believe that the claims asserted against Defendants were strong and that substantial evidence to support the allegations has been adduced, they recognize that the Action presented a number of challenges to establishing both liability and damages.

---

[6] This factor under Rule 23(e)(2)(C) encompasses four of the five factors of the traditional *Jiffy Lube* adequacy analysis: "(1) The relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, [and] (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment."  *Jiffy Lube*, 927 F.2d at 159.

**(a)    Risks of Establishing Liability and Damages Support Approval of the Settlement**

Despite overcoming, in large part, Defendants' motion to dismiss, Lead Plaintiffs would face challenges in proving to the ultimate finder of fact that the statements made by Defendants were materially false and misleading. *See* ¶57. For example, Defendants would likely assert that statements concerning "major challenges," a "big breakthrough," and "serious hurdles" were non-actionable puffery because they were too general and loosely optimistic for investors to rely on them. *Id.* Defendants would further assert that other statements were opinions or forward-looking statements that were not actionable as a matter of law. *Id.* Finally, Defendants are likely to argue that certain manufacturing problems did not require disclosure because the securities laws do not require the Company to take a "gloomy" or "defeatist" view of its prospects. *Id.* Given the nature of Defendants' statements and the arguably temporary nature of the Company's manufacturing problems, Lead Plaintiffs faced a real risk that a jury would disagree that these statements were fraudulent.

Defendants would also likely argue that even if the alleged misstatements were found to be misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter). For example, Defendants would seek to admit testimonial evidence that (i) none of the Individual Defendants knew, at the time they spoke, information that contradicted their public statements, (ii) the allegedly misleading statements were supported by information available to Novavax at the time of the statements, and (iii) the statements aligned with Novavax's internal assessment of the allege manufacturing issues. ¶58. Defendants would likely further emphasize that Novavax was attempting to develop a novel vaccine in a challenging, quickly evolving environment and on an accelerated timeline. *Id.* Additionally, Defendants would likely continue to assert that none of the

Individual Defendants' insider sales supports scienter because, among other things, they purportedly were pursuant to nondiscretionary trading plans. *Id.*

Even assuming that Lead Plaintiffs overcame the risk of establishing Defendants' liability, as discussed above, Plaintiffs would confront considerable challenges in establishing loss causation and class-wide damages. Defendants would likely assert that Lead Plaintiffs cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused Novavax's stock price to decline. ¶¶59-63. In particular, Defendants would have continued to argue that the disclosures by Novavax were materializations of risks fully known to investors (and disclosed by Defendants) prior to their purchases during the Class Period. *Id.* Indeed, as they argued in opposing class certification, Defendants would continue to assert that there was a "mismatch" between the contents of the alleged misrepresentations and the corrective disclosures, as contemplated by the Supreme Court's decision, *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 141 S. Ct. 1951 (2021). Additionally, Defendants would also continue to argue that the October 19, 2021 corrective disclosure revealed little or no new information, and that the new information that was revealed was factually incorrect and therefore not corrective of the alleged misstatements. *Id.* Finally, Defendants would assert that Novavax's stock showed frequent and dramatic upswings and downswings not connected to the release of any company or industry-specific news, and thus that the trading and price behavior of Novavax's stock reflected investor speculation on the likelihood of developing a market-leading vaccine, and thus was significantly based on macro, political and regulatory trends, as well as market sentiment, and not merely Novavax operating fundamentals or other company-specific news. *Id.*

Lead Plaintiffs' damages expert has estimated that class-wide maximum reasonably recoverable damages are approximately $917 million, after removing gains on pre-Class Period

13

purchases.  ¶59.  This estimated amount assumes Lead Plaintiffs' complete success in establishing Defendants' liability, and further assumes that the trier of fact would reject all of Defendants' loss causation and damages arguments.  If Defendants' arguments were credited by the Court at summary judgment, or the jury at trial, the class's damages could have been significantly reduced or eliminated altogether.  For instance, had Lead Plaintiffs been unable to establish the second stock drop that occurred on October 19, 2021, damages could have been reduced to approximately $113 million.

The fact that Lead Plaintiffs overcame Defendants' motion to dismiss was not a guarantee of ultimate success.  Lead Plaintiffs would have to prevail at several later stages of the litigation, each of which presents significant risks in complex class actions such as this Action.  ¶¶64-73.  Lead Plaintiffs faced ongoing risks associated with their pending motion for class certification, as well as Defendants' forthcoming summary judgment motions, *in limine* motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all.  *Id.*  The Court's denial of class certification or granting of summary judgment in Defendants' favor would result in zero recovery for the Settlement Class, and a lengthy appellate process.  *Id.*

Even surviving a summary judgment challenge in full and prevailing at trial would not guarantee a recovery larger than the $47 million Settlement.  A jury's reaction to expert testimony on damages is highly unpredictable, and Lead Plaintiffs recognize that, in a such a battle, there is the possibility that a jury could be swayed by Defendants' expert(s) and find there were no damages, or that they were only a fraction of the amount claimed by Plaintiffs.  *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 (E.D. Va. 2001) ("[T]he damages issue would have become a battle of experts at trial, with no guarantee of the outcome in the eyes of the

14

jury."). Furthermore, post-trial motions or appeals could reverse a judgment for Lead Plaintiffs or reduce a favorable damages award. *See Miller v. Asensio & Co., Inc.*, 364 F.3d 223, 235 (4th Cir. 2004) (affirming judgment on jury verdict determining liability but awarding zero damages to plaintiffs); *Taylor v. First Union Corp. of South Carolina*, 857 F.2d 240, 243, 247 (4th Cir. 1988) (after two trials, reversing jury verdict on material misrepresentation grounds); *Stuckey v. Geupel*, 854 F.2d 1317, 1317 (4th Cir. 1988) (upholding judgment notwithstanding the verdict setting aside $2.1 million award to plaintiffs on loss causation grounds); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

Another weighty concern here was that Defendants' applicable insurance policies could have been depleted by the costs of litigating this Action through summary judgment and trial (as well as related derivative actions), potentially leaving next to nothing for Lead Plaintiffs and class members. *See, e.g.*, *Benway v. Res. Real Est. Servs., LLC*, No. CIV.A. WMN-05-3250, 2011 WL 1045597, at *1 (D. Md. Mar. 16, 2011) (proposed settlement is limited by parties to remaining insurance coverage because defendants "are without sufficient assets to pay a substantial *settlement*"). This uncertainty sets a necessary backdrop when also considering the solvency of Defendants in relation to the amount of the Settlement.

Moreover, Novavax itself disclosed to investors on February 28, 2023 that "significant uncertainty" existed as to whether revenues would be sufficient for the company to continue operations. ¶¶68-69. The obvious import of this announcement was the stark realization that Novavax faced possible bankruptcy and/or delisting, which would necessarily impact Defendants' ability to satisfy a judgment or fund a settlement. *See, e.g.*, *In re Montgomery Cnty. Real Est. Antitrust Litig.*, 83 F.R.D. 305, 317 (D. Md. 1979) (approving settlement where doubts over

15

defendants' ability to satisfy a cash judgment "most strongly counsels settlement"); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009) (approving settlement "when also considering the solvency of the defendants" and their "significant financial hardships during the pendency of this suit").

Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(i).

**(b)      The Settlement Is Reasonable In Light of Potential Recovery in the Action**

In addition to the risks of litigation discussed above, the Settlement is also fair and reasonable in light of the potential recovery of available damages.  Lead Plaintiffs' consulting damages expert has estimated that class-wide maximum reasonably recoverable damages are approximately $917 million, after removing gains on pre-Class Period purchases.  This estimated amount assumes Lead Plaintiffs' complete success in establishing Defendants' liability, and further that the trier of fact would reject all of Defendants' loss causation and damages arguments. The $47 million Settlement represents 5.12% of these estimated damages.  If the October 19, 2021 allegedly corrective disclosure had been eliminated, damages could have decreased to approximately $113 million, and the Settlement represents approximately 42% of damages at this level.

As such, the Settlement falls within the range that courts commonly approve.  *See, e.g.*, *Boger v. Citrix Sys.*, Inc., No. 19-CV-01234-LKG, 2023 WL 3763974, at *11, *11 n. 7 (D. Md. June 1, 2023) (approving settlement payments of 8.8% of maximum potential damages because "it is well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery") (quoting *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)); *Orman v. Am. Online, Inc.*, Civ. A. No. 97-264-A, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998) (approving $35 million settlement amounting to approximately

16

5% of the maximum potential damages); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 833 (E.D.N.C. 1994) (approving a 5% recovery while noting cases in other circuits granting 3% recovery).

According to Cornerstone Research, which conducts annual and semi-annual reviews of securities class action settlements, for cases with total estimated damages (based on Cornerstone's method of analysis) ranging from $500 million to $999 million, median settlements from 2014 to 2022 recovered 3.3% of total estimated damages and 4.6% of damages in 2023. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 2, at 6. These percentages of recovery dropped to 2.6% and 2.0%, respectively, for cases with damages estimated at more than $1 billion. *Id.*

Additionally, the $47 million recovery is more than three times the median recovery of $15 million in securities class action settlements in 2023. *Id.* at 1. For the period from 2018 through 2022, the median settlement value was $11.7 million and $13.5 million in 2022. *Id.*

**(c)   Costs and Delay of Continued Litigation Support Approval of the Settlement**

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming. Further, the Company's disclosure that it may not be able to continue operating as a going concern raised the risk that Lead Plaintiffs would not be able to obtain any recovery for the Settlement Class. The fact that the Settlement eliminates the substantial delay and expense of summary judgment motions, *in limine* motions, trial, and likely appeals, a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all, strongly weighs in favor of approval. *See, e.g.*, *Robinson v. Nationstar Mortg. LLC*, No. 8:14-CV-03667-TJS, 2020 WL

17

13119703, at *3 (D. Md. Aug. 19, 2020) ("Here, as in most class actions, there is risk to both parties in continuing towards trial.").

Accordingly, for the foregoing reasons, the proposed Settlement satisfies Rule 23(e)(2)(C)(i).

### (d)    The Effective Process for Distributing Relief to the Settlement Class

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. Here, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), is employing a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶¶ 23-30. Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶¶ 30(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶ 39) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the

Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Any *de minimis* balance that still remains in the Net Settlement Fund will be donated to the Consumer Federation of America, or such other non-profit and non-sectarian organization(s) chosen by Lead Plaintiffs and approved by the Court.[7] *Id.* Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).[8]

> **(e)** **The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Related to the Settlement**

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On November 30, 2023, the Parties entered into a settlement term sheet, and on January 12, 2024, they entered into the Stipulation and a confidential Supplemental Agreement regarding requests for exclusion (the "Supplemental Agreement") dated as of January 11, 2024. *See* Stipulation at ¶ 41.

The Supplemental Agreement provides that Novavax has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is being kept confidential to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25,

---

[7] Information about the Consumer Federation of America ("CFA") is available at https://consumerfed.org/. "CFA is an association of non-profit consumer organizations that was established in 1968 to advance the consumer interest through research, advocacy, and education." *Id.*

[8] The bases of Co-Lead Counsels' request for an award of attorneys' fees, litigation expenses, and awards to Lead Plaintiffs pursuant to the PSLRA are addressed in the accompanying Fee and Expense Application.

2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court in camera or under seal.  The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

### 4.    Class Members Are Treated Equitably Relative to One Another

The Settlement treats members of the Settlement Class equitably relative to one another. As set forth above, eligible claimants will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.  Lead Plaintiffs will receive the same type of *pro rata* recovery under the Plan of Allocation as all Authorized Claimants.[9]

### 5.    Reaction of the Settlement Class to Date Supports Approval of the Settlement

Courts have found significant indication of fairness where no/few objections are filed.  *See Erny on behalf of India Globalization Cap., Inc. v. MuKunda*, No. CV DKC 18-3698, 2020 WL 3639978, at *3 (D. Md. July 6, 2020) ("Finally, and perhaps most importantly, this settlement remains unopposed.").  Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, SCS, mailed copies of the Postcard Notice to record holders identified in the Company's transfer records and potential Class Members and their nominees.  *See* Declaration of Margery Craig Regarding (A) Mailing of Notice; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date, dated April 11, 2024 ("Initial Mailing Decl."), Ex. 1 at ¶¶2-9.  As of April 10, 2024, SCS has mailed or emailed 305,335 copies of the Postcard

---

[9] Lead Plaintiffs are seeking reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA.  This does not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

Notice to potential Class Members. *Id*. at ¶9. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire* on February 20, 2024 *Id*. at ¶10.

While the deadline set by the Court for Class Members to object or request exclusion (May 2, 2024) has not yet passed, to date, no objections have been received, and only one request for exclusion has been received. *See* Initial Mailing Decl., Ex. 1 - D. Lead Plaintiffs will file reply papers no later than May 9, 2024 addressing any objections and any other requests for exclusion.

## II.    PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

In addition to seeking final approval of the Settlement, Lead Plaintiffs seek approval of the proposed Plan of Allocation for the Settlement proceeds. Approval of a plan of allocation for settlement proceeds is governed by the same standards of fairness and reasonableness applicable to the settlement as a whole. *See, e.g., Feinberg*, 610 F. Supp. at 769 ("[T]he plan of allocation must also meet the standards of fairness, reasonableness, and adequacy") (quoting *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014)). "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Id.*

The proposed Plan of Allocation for the proceeds of the Settlement is set forth in pages 12-16 of the long form Notice (Initial Mailing Decl., Ex. 1 - B), which was posted on the Settlement Webpage and available from SCS upon request. The proposed plan was developed by Co-Lead Counsel in consultation with Lead Plaintiffs' damages expert, who calculated the estimated amounts of alleged artificial inflation in the per share prices of Novavax common stock that are used within the Plan. The Plan provides for the distribution of the Net Settlement Fund to Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on the extent of their alleged injuries attributable to the alleged fraud.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Novavax common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. The sum of a claimant's Recognized Loss Amounts for all of their purchases of Novavax common stock during the Class Period will be the basis for deriving the Claimant's proportionate share of the Net Settlement Fund. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the Claimant's Recognized Loss as compared to the total Recognized Losses of all Claimants. *Id.*

Co-Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members who suffered losses as result of the alleged misconduct. To date, no objections to the proposed Plan of Allocation have been received. ¶14.

## III.   NOTICE SATISFIED RULE 23 AND DUE PROCESS

The notice program satisfied the requirements of Rule 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice program also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Boger*, 2023 WL 3763974 at *12 (citing *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Both the substance of the notices and the method of their dissemination to potential members of the Settlement Class satisfied these standards. In accordance with the Preliminary Approval Order, Epiq began mailing copies of the Postcard Notice to potential Class Members on February 5, 2024. *See* Initial Mailing Decl., Ex. 1 at ¶¶4-9. As of April 10, 2024, SCS has mailed

or emailed 305,335 copies of the Postcard Notice to potential Class Members and nominees. *See Id.* at ¶7. SCS also established the Settlement Webpage and posted the long form Notice, Claim Form, and other relevant documents. The Notice included all the information required by the PSLRA, 15 U.S.C. § 78u-4(a)(7). In addition, SCS caused the Summary Notice to be published in the *Wall Street Journal* and transmitted over the *PR Newswire* on February 20, 2024. *See id.* ¶10.

This combination of economical individual mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and transmitted over a newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate. Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

DATED: April 11, 2024                  Respectfully submitted,

                                       **COHEN MILSTEIN SELLERS &
                                       TOLL PLLC**


                                       */s/ Daniel S. Sommers*
                                       Steven J. Toll (Md. Bar No. 15824)
                                       Daniel S. Sommers (Md. Bar No. 15822)
                                       S. Douglas Bunch
                                       1100 New York Avenue N.W.
                                       Suite 500, East Tower
                                       Washington, DC 20005
                                       Tel: (202) 408-4600
                                       Fax: (202) 408-4699
                                       Email: stoll@cohenmilstein.com

23

dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

***Local Counsel for Lead Plaintiffs***

**POMERANTZ LLP**


*/s/ Brian Calandra*
Jeremy A. Lieberman (admitted *pro hac vice*)
Brian Calandra (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
        bcalandra@pomlaw.com


**LABATON KELLER SUCHAROW LLP**


*/s/ Michael H. Rogers*
Michael P. Canty (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
David J. Schwartz (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Philip J. Leggio (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile (212) 818-0477
Email: mcanty@labaton.com
        mrogers@labaton.com
        dschwartz@labaton.com
        jchristie@labaton.com
        pleggio@labaton.com

***Counsel for Lead Plaintiffs and***
***Co-Lead Counsel for the Settlement Class***


**PORTNOY LAW FIRM**

Lesley F. Portnoy
1800 Century Park East, Suite 600

24

Los Angeles, California 90067
Tel: (310) 692-8883
Email: lesley@portnoylaw.com

***Additional Counsel for Lead Plaintiffs and the Settlement Class***

25

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2024, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ S. Douglas Bunch*
S. Douglas Bunch