**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

|  |  |
|---|---|
| SOTHINATHAN SINNATHURAI, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>v.<br><br>NOVAVAX, INC., STANLEY C. ERCK, GREGORY F. COVINO, JOHN J. TRIZZINO, and GREGORY M. GLENN,<br><br>                              Defendants. | Civil Action No. TDC-21-2910 |

**CO-LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.....................................2

    A. The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate ....................................................................2

    B. A Fee Equal to 33.4% of the Settlement Fund Is Comparable to Awards in Similar Cases ................................................................................................5

    C. Co-Lead Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Factors..............................................................................................6

        1. Co-Lead Counsel Obtained a Very Favorable Result for the Settlement Class..........................................................................................8

        2. The Presence or Absence of Substantial Objections by Members of the Settlement Class.......................................................................................10

        3. Co-Lead Counsel Are Skilled and Efficient Litigators..............................11

        4. The Duration and Complexity of This Action Support the Requested Fee ...........................................................................................11

        5. Co-Lead Counsel Faced the Significant Risk of Nonpayment ..................13

        6. Plaintiffs' Counsel Necessarily Devoted Over 6,800 Hours to Prosecuting the Action..............................................................................15

        7. Public Policy Considerations Support the Requested Fee .........................15

        8. 33.4% of the Settlement Fund Would Provide a Fee Comparable to Those Approved in Similar Cases................................................................16

    D. A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request .......................................................................17

III. CO-LEAD COUNSEL'S REQUEST FOR PAYMENT OF THE LITIGATION EXPENSES IS REASONABLE..............................................................................20

IV. THE REQUESTED PSLRA AWARDS ARE REASONABLE ....................................21

V. CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Archbold v. Wells Fargo Bank, N.A.*,
No. 3:13-CV-24599, 2015 WL 4276295 (S.D.W. Va. July 14, 2015) ......................................4

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) ........................................................................................7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)......................................................................................................15

*Blum v. Stenson*,
465 U.S. 886 (1984)........................................................................................................3

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).......................................................................................................3

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014)........................................................................................7

*Camden I. Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ........................................................................................3

*In re Celebrex (Celecoxib) Antitrust Litig.*,
No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) .....................................5, 6

*In re Comput. Sci. Corp. Sec. Litig.*,
No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436
(E.D. Va. Sept. 20, 2013)...........................................................................................21, 22

*Decohen v. Abbasi, LLC*,
299 F.R.D. 469 (D. Md. 2014).......................................................................................18

*Deem v. Ames True Temper, Inc.*,
No. 6:10-CV-01339, 2013 WL 2285972 (S.D.W. Va. May 23, 2013)..................................4, 5

*Earls v. Forga Contracting, Inc.*,
No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921 (W.D.N.C. June 8, 2020) ......................5

*Galloway v. Williams*,
No. 3:19-CV-470, 2020 WL 7482191 (E.D. Va. Dec. 18, 2020) ...........................................7

*In re Genworth Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................................ *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3rd Cir. 1995) ...................................................................................................3

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2nd Cir. 2000).................................................................................................3, 7

*Goldenberg v. Marriott PLP Corp.*,
  33 F. Supp. 2d 434 (D. Md. 1998) ........................................................................................18

*Good v. W. Va. Am. Water Co.*,
  No. 14-1374, 2017 WL 2884535 (S.D.W.Va. July 6, 2017) .......................................................11

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .................................................................................................3

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000).................................................................................................7

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)..............................................................................6

*Heien v. Archstone, et al.*,
  837 F.3d 97 (1st Cir. 2016)...................................................................................................3

*Hicks v. Morgan Stanley, et al.*,
  No 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................................16

*Johnson v. Georgia Highway Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................................................7

*Jones v. Dominion Res. Servs., Inc.*,
  601 F. Supp. 2d 756 (S.D.W. Va. 2009) .......................................................................... *passim*

*Kruger v. Novant Health, Inc.*,
  No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016).......................................5, 18

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
  No. 3:14CV238 (DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ...................................4

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) .........................................................................................8

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ....................................................................................8

*In re MicroStrategy, Inc. Sec. Litig.*,
  172 F. Supp. 2d 778 (E.D. Va. 2001) ...................................................................16, 18, 19

*Miller v. Asensio & Co.*,
  364 F.3d 223 (4th Cir. 2004) ..............................................................................................13

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ..................................................................... *passim*

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ........................................................................................5, 18

*Phillips v. Triad Guar. Inc.*,
No. 1:09CV71, 2016 WL 2636289 (M.D.N.C. May 9, 2016) .................................13

*Rawa v. Monsanto Co.*,
934 F.3d 862 (8th Cir. 2019) ..................................................................................3

*Rawlings v. Prudential-Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) ......................................................................................3

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .........................17

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................................14

*Reynolds v. Fidelity Invs. Instutional Operations Co.*,
No. 1:18-CV-423, 2020 WL 92092 (M.D.N.C. Jan. 8, 2020) ...........................20, 21

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..............................................................................14

*Schuler v. Meds. Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ........................8

*Seaman v. Duke Univ.*,
No. 1:15-CV-462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) ...................15, 18

*Singleton v. Domino's Pizza, LLC*,
976 F. Supp. 2d 665 (D. Md. 2013) ..................................................................18, 20

*Smith v. Krispy Kreme Doughnut Corp.*,
No. 1:05cv00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ..............................11

*Spell v. McDaniel*,
852 F.2d 762 (4th Cir. 1988) ................................................................................20

*Sponn v. Emergent Biosolutions, Inc.*,
No. 8:16-cv-02625-RWT, 2019 WL 11731087 (D. Md. Jan. 25, 2019) ................21

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) ...........................................................................4

*Stuckey v. Geupel*,
854 F.2d 1317 (4th Cir. 1988) ...............................................................................14

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ....................................................................................3

*Taylor v. First Union Corp. of S.C.*,
    857 F.2d 240 (4th Cir. 1988) ...............................................................................13, 14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ................................................................................................15

*Thomas v. FTS USA, LLC*,
    No. 3:13cv825(REP), 2017 WL 1148283 (E.D. Va. Jan. 9, 2017) ...............................4, 8, 17

*In re Titanium Dioxide Antitrust Litig.*,
    No. 10-CV-00318 (RDB), 2013 WL 6577029 (D. Md. Dec. 13, 2013) ...................................5

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ....................................................................................3

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................................3

## Docketed Cases

*In re 2U Inc. Sec. Litig.*,
    No. 8:19-cv-03455-TDC, ECF No. 258 (D. Md. Dec. 9, 2022) ..............................................5

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    No. 17-1580-LGS, ECF No. 446 (S.D.N.Y. Aug. 5, 2022) ...................................................6

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*,
    No. 0:10-cv-04372, ECF No. 686 (D. Minn. Aug. 18, 2014) ..................................................6

*Grae v. Corrections Corp. of Am.*,
    No. 3:16-cv-02267, ECF No. 478 (M.D. Tenn. Nov. 8, 2021) .................................................6

*Landmen Partners, Inc. v. The Blackstone Grp., L.P.*,
    No. 1:08-cv-03601, ECF No. 191 (S.D.N.Y. Dec. 18, 2013) ..................................................6

*In re Perrigo Co. PLC Sec. Litig.*,
    No. 19-CV-70 (DLC), ECF No. 331 (S.D.N.Y. Feb. 18, 2022) ............................................5, 6

## Statutes

15 U.S.C. §78(u)-4(a)(4) ...........................................................................................1, 2, 21

## Rules

Fed. R. Civ. P.23(h) ..................................................................................................2, 3

Co-Lead Counsel respectfully submit this motion for an Order: (1) awarding Plaintiffs' Counsel[1] attorneys' fees of 33.4% of the Settlement Fund and Litigation Expenses of $628,893.83, and (2) awarding Lead Plaintiffs Jeffrey A. Gabbert and Nuggehalli Balmukund Nandkumar $60,000, in the aggregate, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78(u)-4(a)(4), to be paid from the Settlement Fund.

## I.    INTRODUCTION

In awarding fees from a common fund in a class action, courts within the Fourth Circuit consider several factors, as discussed below.  Here, Plaintiffs' Counsel devoted over 6,800 hours to obtain the very favorable $47 million Settlement for the Settlement Class.  The $47 million all-cash recovery was achieved through the skill, experience, and effective advocacy of Plaintiffs' Counsel in the face of considerable risk and an aggressive defense mounted by Defendants.  *See generally* Joint Declaration of Brian Calandra and Michael H. Rogers in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Joint Declaration"), submitted herewith.[2]  Among other things, Plaintiffs' Counsel overcame, in significant part, a complex motion to dismiss by Defendants; analyzed more than 300,000 pages of documents produced by Defendants and third-parties during discovery; took or

---

[1]    "Plaintiffs' Counsel" means Labaton Keller Sucharow LLP, Pomerantz LLP, Cohen Milstein Sellers & Toll LLP, Portnoy Law Firm, Hagens Berman Sobol Shapiro LLP, and Johnson Fistel, LLP.  All capitalized terms used and not otherwise defined in this Memorandum have the meanings given to them in the Stipulation and Agreement of Settlement, dated as of January 12, 2024 (the "Stipulation"), previously filed with the Court (ECF No. 127-3).  Emphasis is added and citations are omitted throughout, unless otherwise noted.

[2]    All exhibits referenced herein are attached to the Joint Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___."  The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

- 1 -

defended five depositions and engaged in expert discovery; and briefed a motion for class certification. *Id.*, ¶¶26-54.

As compensation for their efforts, Co-Lead Counsel respectfully request an award of attorneys' fees of 33.4% of the Settlement Fund and payment of Litigation Expenses of $628,893.83, plus interest on both amounts at the same rate and for the same period of time as that earned by the Settlement Fund.  Plaintiffs' Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Through Plaintiffs' Counsel's significant amount of work, they have demonstrated that they were prepared to take this case through trial if the Parties were unable to agree to a resolution that provided fair, reasonable, and adequate relief to the Settlement Class.  In addition, Lead Plaintiffs – who have overseen the Action – approve of and endorse the requested fee.

Separately, Lead Plaintiffs Gabbert and Nandkumar seek awards of $30,000 each pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Settlement Class.  They support their applications with declarations setting forth the basis for the awards.  *See* Declaration of Jeffrey A. Gabbert ("Gabbert Decl."), ¶¶5-6, Ex. 9; and Declaration of Nuggehalli Balmukund Nandkumar ("Nandkumar Decl."), ¶¶5-6, Ex. 10.

For all the following reasons, Co-Lead Counsel respectfully request that the Court: (1) award Plaintiffs' Counsel attorneys' fees of 33.4% of the Settlement Fund and Litigation Expenses of $628,893.83; and (2) award Mr. Gabbert and Mr. Nandkumar $60,000, in the aggregate, pursuant to the PSLRA.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.     The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's

fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the Supreme Court has recognized, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common fund doctrine is based on the inherent powers of the federal court to "prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*

The two methods of calculating attorneys' fees in class actions are the percentage-of-the-fund method and the lodestar method. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009). The percentage-of-the-fund method involves an award based on a percentage of the class's recovery, set by the court based on several factors. *Id.* The lodestar method requires multiplying the number of hours worked by counsel by a reasonable hourly rate, the product of which the court can then adjust by employing a "multiplier." *Id.* The Supreme Court has suggested that percentage-of-recovery is the appropriate method for awarding fees under the common fund doctrine. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ."). Most federal courts of appeals have also endorsed the percentage-of-recovery method as the appropriate method for determining an award of attorneys' fees in common fund cases.[3]

---

[3]    *See, e.g.*, *Heien v. Archstone, et al.*, 837 F.3d 97, 100 (1st Cir. 2016); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3rd Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential- Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993).

"While the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases." *Mills*, 265 F.R.D. at 260; *see, e.g.*, *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *5 (E.D. Va. Mar. 15, 2016) ("District Courts within this Circuit have also favored the percentage method."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 4276295, at *5 (S.D.W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases."); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.").

These courts recognize that the percentage-of-the-fund method is "more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang*, 890 F. Supp. at 503.  It also better aligns the interests of class counsel and class members because it ties the attorneys' fee award to the overall result achieved, rather than hours expended by the attorneys. *Thomas v. FTS USA, LLC*, No. 3:13cv825(REP), 2017 WL 1148283, at *3 (E.D. Va. Jan. 9, 2017), *see also Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *5 (S.D.W. Va. May 23, 2013) ("The percentage method 'is designed to allow courts to award fees from the fund in a manner that

- 4 -

rewards counsel for success and penalizes it for failure.'" (quoting *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).

Co-Lead Counsel's application based on the percentage-of-fund method is therefore consistent with the law in this and other circuits. As explained below, the factors courts consider when assessing percentage-of-fund requests demonstrate the reasonableness of Co-Lead Counsel's requested fee, as does a cross-checking of the requested amount against Plaintiffs' Counsel's calculated lodestar.

### B.      A Fee Equal to 33.4% of the Settlement Fund Is Comparable to Awards in Similar Cases

The Supreme Court has observed that it has "consistently looked to the marketplace as our guide to what is 'reasonable.'" *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). "Within the Fourth Circuit, contingent fees of roughly 33% are common." *Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921 at *4 (W.D.N.C. June 8, 2020). Courts in this District, including the Court, and elsewhere regularly award attorneys' fees of a third of a settlement fund. *See, e.g., In re 2U Inc. Sec. Litig.,* No. 8:19-cv-03455-TDC, ECF No. 258 (D. Md. Dec. 9, 2022) (awarding 33.4% of $37 million settlement) (Ex. 13);[4] *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318 (RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding 33.33% of $163.5 million settlement fund); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (awarding 33.33% of $32 million settlement fund); *see also In re Perrigo Co. PLC Sec. Litig.*, No. 19-CV-70 (DLC), ECF No. 331 (S.D.N.Y. Feb. 18, 2022) (awarding 33 1/3% of $31.9

---

[4] Unreported "slip" opinions are provided in Exhibit 13 to the Joint Declaration.

million settlement) (Ex. 13); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, No. 17-1580-LGS, ECF No. 446, at 2 (S.D.N.Y. Aug. 5, 2022) (awarding 33 1/3% of $44 million settlement) (Ex. 13); *Landmen Partners, Inc. v. The Blackstone Grp., L.P.*, No. 1:08-cv-03601, ECF No. 191, at 5 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million settlement fund) (Ex. 13); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *16 (S.D. Ill. Dec. 16, 2018) (33.3% of a $250 million settlement); *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*, No. 0:10-cv-04372, ECF No. 686, at 7 (D. Minn. Aug. 18, 2014), (awarding 33.33% of $62.5 million settlement fund) (Ex. 13); *Grae v. Corrections Corp. of Am.*, No. 3:16-cv-02267, ECF No. 478 at 1-2 (M.D. Tenn. Nov. 8, 2021), (awarding 33.33% of $56 million settlement fund) (Ex. 13).

Accordingly, it is respectfully submitted that Co-Lead Counsel's request for 33.4% of the $47 million Settlement here would be consistent with a substantial body of case law in this Circuit and elsewhere.

### C. Co-Lead Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Factors

"In determining the reasonableness of attorneys' fees, courts look at the following factors: (1) the result obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by the plaintiffs' counsel; and (7) awards in similar cases." *In re Genworth Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016). Certain district courts in this Circuit have applied a slightly different version of this standard, replacing the sixth factor with public policy considerations. *See, e.g.*, *Celebrex*, 2018 WL 2382091, at *4; *Mills*, 265 F.R.D. at 261 (citing, *inter alia*, *Goldberger*, 209 F.3d at 50).

There is also some disagreement as to whether to apply the above seven factors, which were adopted from the Third Circuit's opinion in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000), or the 12-factor test from the Fifth Circuit adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).[5]  *See Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at \*5 (E.D. Va. Dec. 18, 2020); 5 Newberg on Class Actions §15:82 (5th ed. 2011) ("The Fourth Circuit utilized the Fifth Circuit's *Johnson* factors in a statutory fee-shifting case, so some district courts have utilized those factors in setting a percentage in common fund cases, while other district courts have used the Second Circuit's *Goldberger* factors and/or the Third Circuit's *Gunter* factors."). However, many of these *Johnson/Barber* factors overlap with the *Gunter* factors or are "subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate." *Galloway*, 2020 WL 7482191, at \*6, 10-11; *see also Genworth*, 210 F. Supp. 3d at 843 (using the 7-factor Third Circuit test in evaluating the reasonableness of the requested fee and incorporating the *Johnson/Barber* factors into the lodestar cross-check).

Notably, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'"  *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014).  Given the overlap in the factors

---

[5]  The *Johnson/Barber* factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber*, 577 F.2d at 226 n.28.  Here, factors seven and eleven are not probative.

considered within the Fourth Circuit, a consideration of the relevant factors under each of the standards supports Co-Lead Counsel's requested fee.

**1.    Co-Lead Counsel Obtained a Very Favorable Result for the Settlement Class**

"The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843; *see also Thomas*, 2017 WL 1148283, at *3 ("[T]he Court gives the most weight to the results obtained." (citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The Settlement provides $47 million in cash for the benefit of the Settlement Class and reflects 5.12% of Lead Plaintiffs' expert's maximum estimate of reasonably recoverable aggregate damages and 41.59% of estimated damages if the Court, at summary judgment, or jury, at trial, were to find that the October 19, 2021 stock drop was not actionable.[6] This percentage of recovery is comparable to that of other approved securities settlements. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 n.22 (E.D. Va. 2001) (citing *Orman v. Am. Online, Inc.*, CIV. A. No. 97-264-A, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998), which approved a $35 million settlement amounting to approximately 5% of the maximum potential recovery); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages"); *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving settlement representing approximately 4% of estimated damages, noting that the recovery "fell squarely within the range of previous settlement

---

[6] Lead Plaintiffs' damages expert has estimated class-wide damages of approximately $917 million, after removing gains on pre-Class Period purchases and assuming both alleged corrective disclosures were established at trial. ¶59. If only the August 5, 2021 allegedly corrective disclosure were established, damages would have decreased substantially – to approximately $113 million. ¶61.

approvals"). According to Cornerstone Research, which conducts annual and semi-annual reviews of securities class action settlements, for cases with total estimated damages (based on Cornerstone's method of analysis) ranging from $500 million to $999 million, median settlements from 2014 to 2022 recovered 3.3% of total estimated damages and 4.6% of damages in 2023. *See* Ex. 2, Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), at 6. These percentages of recovery dropped to 2.6% and 2.0%, respectively, for cases with damages estimated at more than $1 billion. *Id*.

Additionally, the $47 million recovery is more than triple the median recovery of $15 million in securities class action settlements in 2023. *See* Ex. 2 at 1. For the period from 2018 through 2022, the median settlement value was $11.7 million and $13.5 million in 2022. *Id*.

Co-Lead Counsel obtained this recovery as a result of their effective advocacy on behalf of the Settlement Class and efficient prosecution of this case through a decision on Defendants' motion to dismiss the Complaint and the progression into fact and expert discovery, including Lead Plaintiffs' review of hundreds of thousands of pages of documents produced by Defendants and third parties. Furthermore, Lead Plaintiffs' motion for certification of the class was fully briefed and pending at the time of settlement. As discussed in the Joint Declaration and Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through continued litigation to a jury trial, followed by inevitable appeals. For example, Lead Plaintiffs would face challenges in proving to the ultimate fact finder that the statements made by Defendants were materially false and misleading since Defendants would likely assert that many of the statements were either non-actionable opinions or forward-looking

statements or were too general and loosely optimistic for investors to rely on them. Defendants would also likely continue to argue that the misleading statements were not made with the requisite state of mind. Lead Plaintiffs would also face considerable challenges in establishing loss causation and damages because Defendants would likely assert that Lead Plaintiffs cannot identify a correction of an alleged misstatement that caused Novavax's stock price to decline. Finally, these risks are in addition to the genuine risk of a much smaller recovery, or no recovery at all, at the conclusion of trial or potential subsequent appeals, in connection with, but not limited to, the fact that in February 2023 Novavax disclosed to investors that "substantial doubt exists regarding our ability to continue as a going concern."[7]

Balanced against the many significant challenges of continued litigation and compared to the results achieved in many other securities class action settlements, the Settlement provides an excellent result for the Settlement Class and supports Co-Lead Counsel's request for attorneys' fees.

### 2.    The Presence or Absence of Substantial Objections by Members of the Settlement Class

"A lack of objections by class members as to fees requested by counsel weighs in favor of the reasonableness of the fees." *Genworth*, 210 F. Supp. 3d at 844. To date, not a single Settlement Class Member has objected to the Settlement or Co-Lead Counsel's fee request. However, the deadline for objections is May 2, 2024, and Co-Lead Counsel will further address this factor in their reply papers, which are due on May 9, 2024.

---

[7] *See* Paul R. La Monica, *COVID Vaccine Maker Novavax Says It May Not Survive*, CNN, Mar. 1,2023,https://www.cnn.com/2023/03/01/investing/novavax-covid-vaccine-going-concern/index.html.

### 3.    Co-Lead Counsel Are Skilled and Efficient Litigators

The quality of the representation is another factor supporting Co-Lead Counsel's fee request.  *See id.* ("The skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial attorneys' fees award in this case."). Co-Lead Counsel have substantial experience litigating securities class action cases nationwide and within the Fourth Circuit, and reputations for achieving significant results.  *See* ¶¶115-17, Exs. 3 - D, & 4 - D.

Further, courts often evaluate the quality of the work performed by plaintiff's counsel in light of the quality of the opposition's representation.  *See, e.g.*, *Mills*, 265 F.R.D. at 262 (noting that counsel reached a favorable settlement against "experienced and sophisticated defense attorneys"); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."). Here, Defendants are represented by highly skilled and experienced securities litigators at Ropes & Gray LLP, one of the leading defense law firms in the United States.

It was in the face of such skilled and vigorous opposition that Co-Lead Counsel were able to obtain the benefits for the Settlement Class that they did.  This factor weighs in favor of the requested fee award.

### 4.    The Duration and Complexity of This Action Support the Requested Fee

Courts recognize that "there are good reasons to award higher-than-typical fees when the issues in a case are particularly 'novel and complex.'" *Good v. W. Va. Am. Water Co.*, No. 14-1374, 2017 WL 2884535, at *25 (S.D.W.Va. July 6, 2017).  Securities cases are routinely found to be particularly complex as they "require significant showings of fact in order to prevail before

a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish.'" *Genworth*, 210 F. Supp. 3d at 844 (quoting *Mills*, 265 F.R.D. at 263).   Additionally, "[i]n evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement and the amount and nature of discovery." *Jones*, 601 F. Supp. 2d at 761.

Here, the claims not only involved the complexities of establishing securities fraud violations under the Exchange Act, but securities claims within the context of a failed attempt to bring a COVID-19 vaccine candidate to market and the commercial and regulatory environment surrounding this unique type of drug development.

Against this unique and difficult backdrop, Plaintiffs' Counsel efficiently achieved the Settlement through vigorous, hard-fought litigation, which included: (i) filing complaints after conducting a comprehensive investigation into the allegedly wrongful acts, by, among other efforts, a review and analysis of Novavax filings with the SEC, a review of documents from several government agencies in response to Co-Lead Counsel's requests submitted pursuant to the Freedom of Information Act, and interviews with former Novavax employees and other potential witnesses with relevant information (eight of whom were cited in the Complaint as confidential witnesses); (ii) fully briefing Defendants' wide-ranging motion to dismiss; (iii) extensive discovery efforts that included serving document requests and analyzing the production of approximately 57,680 documents (312,063 pages) from Defendants and third parties; (iv) fully briefing Lead Plaintiffs' motion for class certification; (v) submitting expert reports addressing market efficiency; (vi) completing class discovery, including defending three plaintiff depositions, defending the deposition of Lead Plaintiffs' market efficiency expert, and deposing Defendants'

market efficiency expert; and (vii) participating in numerous meet-and-confer calls with Defendants.  In consultation with its damages expert, Co-Lead Counsel evaluated the potential damages in the case and negotiated in multiple mediation sessions to secure the $47 million recovery. ¶¶26-54.

Accordingly, this case's complexity and litigation efforts strongly support the reasonableness of Co-Lead Counsel's request.

### 5.    Co-Lead Counsel Faced the Significant Risk of Nonpayment

Co-Lead Counsel undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever.  *See* Joint Decl. ¶¶56-72, 120-126.  The risk of receiving little or no recovery is a factor courts in this Circuit recognize when considering an award of attorneys' fees.  *See, e.g.*, *Mills*, 265 F.R.D. at 263 ("'[C]ounsel bore a substantial risk of nonpayment . . . [t]he outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation.'"); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *6 (M.D.N.C. May 9, 2016) (finding fee award justified where, …"[l]ead [c]ounsel bore the risks involved with surviving dispositive motions, obtaining class certification, proving liability, causation, and damages, prevailing with experts, and litigating through trial and possible appeals" knowing "'that the only way [they] would be compensated was to achieve a successful result'").

In addition to the risk of non-recovery at trial, "any victory at trial in this case would have to withstand appeals which could reverse or limit any award by a jury." *Genworth*, 210 F. Supp. 3d at 844. Numerous securities claim successes have been eliminated in appellate proceedings. *See, e.g., Miller v. Asensio & Co.,* 364 F.3d 223, 235 (4th Cir. 2004) (affirming judgment on jury verdict finding liability but awarding zero damages to plaintiffs); *Taylor v. First Union Corp. of S.C.,* 857 F.2d 240, 243, 247 (4th Cir. 1988) (after two trials, reversing jury verdict on material

misrepresentation grounds); *Stuckey v. Geupel*, 854 F.2d 1317, 1317 (4th Cir. 1988) (upholding judgment notwithstanding the verdict and setting aside $2.1 million award to plaintiffs on loss causation grounds); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

Moreover, even with a final judgment in hand, there was significant uncertainty with respect to Defendants' ability to satisfy a judgment given wasting insurance policies and the Company's prospects for remaining a going concern. For example, applicable insurance policies could have been depleted by the costs of litigating this Action through summary judgment and trial (as well as related derivative actions), potentially leaving next to nothing for Lead Plaintiffs and class members. There was also significant uncertainty surrounding Novavax's future financial prospects and ability to remain a going concern. Joint Decl. ¶¶67-72.

Lastly, Plaintiffs' Counsel incurred $628,893.83 in Litigation Expenses to prosecute the case, which would not have been repaid absent a successful result. *See Mills*, 265 F.R.D. at 263 (noting uncertainty of the case outcome, defendants' rigorous defense, and that "[l]ead [c]ounsel devoted thousands of hours on the case and fronted nearly $3 million in costs in the process" to conclude that factor weighed in favor of awarding the requested fee); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money . . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). Accordingly, the risk of non-payment weighs in favor of the requested fee award.

- 14 -

### 6.    Plaintiffs' Counsel Necessarily Devoted Over 6,800 Hours to Prosecuting the Action

Plaintiffs' Counsel devoted considerable time and effort to researching, investigating, and litigating this case.  As set forth in the Joint Declaration and Plaintiffs' Counsel's individual Fee and Expense Declarations,[8] Plaintiffs' Counsel dedicated 6,864 hours to prosecuting this case, resulting in a total lodestar of $4,903,403.25.  Plaintiffs' Counsel could have spent this significant attorney time litigating other matters, which weighs in favor of awarding the requested fees.  *See, e.g.*, *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *4 (M.D.N.C. Sept. 25, 2019) (highlighting that the "attorneys and staff have worked over 12,500 hours since it began" which "was time and money the attorneys could have directed to other simpler and less risky opportunities" supported the fee request).  The time and resources Plaintiffs' Counsel committed to the Action similarly weigh in favor of the requested fee.

### 7.    Public Policy Considerations Support the Requested Fee

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement" of the securities laws and "are a necessary supplement to [SEC] action"). Compensating counsel for bringing these actions is important because "[s]uch actions could not

---

[8]    Plaintiffs' Counsel's Fee and Expense Declarations include the following: Declaration of Michael H. Rogers Filed on Behalf of Labaton Keller Sucharow LLP ("Labaton Fee Decl."), Ex. 3; Declaration of Brian Calandra Filed on Behalf of Pomerantz LLP ("Pomerantz Fee Decl."), Ex. 4; Declaration of S. Douglas Bunch Filed on Behalf of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein Fee Decl."), Ex. 5; Declaration of Lucas E. Gilmore Filed on Behalf of Hagens Berman Sobol Shapiro LLP ("Hagens Fee Decl."), Ex. 6; Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP ("Johnson Fee Decl."), Ex. 7; and Declaration of Lesley Portnoy Filed on Behalf of Portnoy Law Firm ("Portnoy Fee Decl."), Ex. 8.

be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley, et al.*, No 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). A "central factor in fixing the amount of attorneys' fees is 'to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class." *Mills*, 265 F.R.D. at 260.

In complex securities cases, fee awards have been enhanced by courts "to provide an incentive for competent lawyers to pursue such actions in the future." *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001). Public policy "generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions." *Jones*, 601 F. Supp. 2d at 765 (citing *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y. 2008); *MicroStrategy*, 172 F. Supp. 2d at 789 n.36). "The cost and difficulty [of bringing a meritorious complex class action] naturally stands as a deterrent from doing so, and one object of an award of attorneys' fees should be to counteract this deterrence and incentivize competent attorneys to pursue these cases when necessary." *Mills*, 265 F.R.D. at 263.

Accordingly, it is respectfully submitted that these public policy considerations support awarding the fee requested here, which would fairly compensate Plaintiffs' Counsel for their work.

### 8. 33.4% of the Settlement Fund Would Provide a Fee Comparable to Those Approved in Similar Cases

Courts look "to fee awards in analogous cases to determine the reasonableness of the percentage requested." *Mills*, 265 F.R.D at 263-64. Here, Co-Lead Counsel's request of 33.4% is reasonable when considering the awards in similar cases in this District and in the Fourth Circuit. *See* Section II.B., *supra*.

Additionally, "[t]he percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering his or her services in the private marketplace." *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at \*16 (D.N.J. Nov. 9, 2005). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *Id.*; *see also Thomas*, 2017 WL 1148283, at \*5 ("[A]ny discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements."). Consideration of the awards in similar cases strongly supports the requested award of 33.4% of the Settlement Fund.

> ### D. A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request

Courts often supplement their analysis of the percentage-of-fund method with the lodestar "cross-check." "A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case," and "then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier." *Genworth*, 210 F. Supp. 3d at 845. When using the lodestar as a cross-check, courts "take a somewhat truncated approach to the lodestar analysis" and "generally do not apply the same scrutiny in a lodestar cross-check as they do when using the lodestar method to calculate the fee." *Thomas*, 2017 WL 1148283, at \*6; *see also Jones*, 601 F. Supp. 2d at 765 (explaining that when "using the lodestar method as a cross-check," the court "need not apply the 'exhaustive scrutiny' normally required by that method").

Since fee awards in contingent class actions, particularly securities class actions, are designed to encourage efficient litigation and great results, courts recognize that a fee award should "include a reward or enhancement beyond the lodestar figure to account for the difficulty of the

case, the degree of success achieved, and other qualitative factors." *MicroStrategy*, 172 F. Supp. 2d at 787 (stating that a fee should "adequately compensate lead counsel for the time expended on the case"). Multipliers are appropriate to encourage efficiency and to compensate for the delay in payment and additional risks because, unlike defense firms who are guaranteed payment win or lose and paid immediately, plaintiffs' counsel are only paid at the end of the case and only if the case is successful. *See, e.g.*, *id.* at 788 (noting because PSLRA cases are essentially contingent fee cases, "there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery").

Plaintiffs' Counsel and their professionals have expended more than 6,800 hours in the prosecution of this Action with a resulting lodestar of $4,903,403.25 based on their current hourly rates,[9] yielding a 3.2 multiplier on Plaintiffs' Counsel's lodestar, assuming a 33.4% fee award. *See* ¶112; Exs. 3 - 8; and Summary Table of Lodestars and Expenses, Ex. 12. This lodestar multiplier is within the range of reasonableness in contingency fee cases within the Fourth Circuit. "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013); *see also Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (approving fee award of "3.69 times the lodestar"); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (approving fee award of "3.9 times the lodestar rate."); *Jones,* 601 F. Supp. at 766 (approving "fee [that] returns a lodestar multiplier between 3.4 and

---

[9]  This lodestar is based on counsel's current rates, which is "appropriate to account for the delay in payment to counsel." *Seaman*, 2019 WL 4674758, at *5. The Supreme Court and many other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri*, 491 U.S. at 283-84.

4.3"); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 (D. Md. 1998) (approved 3.6 multiplier).

Plaintiffs' Counsel's hourly rates are "within the range of reasonableness for PSLRA cases, where the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials." *MicroStrategy*, 172 F. Supp. 2d at 788.  The hourly rates of Co-Lead Counsel are based on periodic analyses of rates used by firms performing comparable work.  *See* Labaton Fee Decl., ¶4, Ex. 3; Pomeranz Fee Decl., ¶3, Ex. 4.  Co-Lead Counsel recognize that, in some instances, their rates may be higher than the prevailing rates in this District. However, and leaving aside the specialized nature of Co-Lead Counsel's practice area, given that the lodestar multiplier is reasonable, even if their rates were reduced, the lodestar multiplier would still be within the acceptable range.  Lastly, it is highly likely that Co-Lead Counsel's hourly rates compare favorably with those of Defendants' Counsel.  Exhibit 11 contains tables of hourly rates for defense firms doing comparably complex commercial litigation compiled by Labaton from fee applications submitted by such firms nationwide in bankruptcy proceedings in 2023. The analysis shows that across all types of attorneys, Plaintiffs' Counsel's rates are consistent with, or lower than, the firms surveyed.

As detailed in the Joint Declaration, the number of hours spent by Plaintiffs' Counsel was reasonable given their robust investigation, litigation of Defendants' motion to dismiss, discovery efforts, and briefing class certification.  The complexity of the legal issues involved, and the intensity and skill of Defendants' Counsel, also support the number of hours spent by Plaintiffs' Counsel.  Notably, Co-Lead Counsel anticipate expending additional time in connection with administering the Settlement, for which Plaintiffs' Counsel will not seek additional compensation.

Considering these factors, particularly the complexity and challenges in the Action and the skill and experience of counsel, it is respectfully submitted that the lodestar cross-check confirms the reasonableness of the requested fee, and that, overall, an award of the requested 33.4% fee would be reasonable under the circumstances of this case.

### III. CO-LEAD COUNSEL'S REQUEST FOR PAYMENT OF THE LITIGATION EXPENSES IS REASONABLE

Co-Lead Counsel also request an award of reasonable and necessary Litigation Expenses incurred to prosecute this Action. Since the inception of the case, Plaintiffs' Counsel have incurred $628,893.83 in Litigation Expenses.[10]

"It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award." *Singleton*, 976 F. Supp. 2d at 689. Such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).

The amount requested is based on the declarations of Plaintiffs' Counsel.[11] The expenses are broken down in each declaration by type and amount. The categories of expenses for which an award is sought include, among other things, expert costs (73.9% of total expenses), electronic discovery costs (4.81% of total expenses), mediation fees (8.3% of total expenses), filing and service fees, work-related travel and meal costs, duplicating, overnight mail, deposition services and transcripts (3% of total expenses), and electronic research. These are precisely the type of expenses routinely paid by hourly clients in non-contingent private litigation. *See, e.g.*, *Reynolds*

---

[10]  The total amount of the expenses is far less than the maximum amount stated in the Notice, *i.e.*, that Co-Lead Counsel would request up to $1,000,000 in Litigation Expenses. *See* Joint Decl., Ex. 1–B, ¶¶4, 40.

[11]  *See* Exs. 3 – C, 4 – C, 5 – C, 6 – C, 7 – C.

*v. Fidelity Invs. Institutional Operations Co.,* No. 1:18-CV-423, 2020 WL 92092, at \*4 (M.D.N.C. Jan. 8, 2020) (explaining that "mailing costs, online legal research, long-distance telephone use, expert and mediator fees, travel expenses for mediation and court proceedings, and court filing fees. . . . are 'reasonable out-of-pocket expenses . . . which are normally charged to a fee-paying client, in the course of providing legal services'") (quoting *Singleton*, 976 F. Supp. 2d at 689).

Co-Lead Counsel's request for the payment of $628,893.83 in expenses from the common fund is reasonable and should be approved.

## IV.    THE REQUESTED PSLRA AWARDS ARE REASONABLE

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  Lead Plaintiffs Jeffrey A. Gabbert and Nuggehalli Balmukund Nandkumar request approval of awards in the amount of $30,000 each, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with the time they dedicated to representing the Settlement Class.[12]

District courts in the Fourth Circuit have approved such awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for the "hours of . . .time related to the supervision of this action." *Genworth*, 210 F. Supp. 3d at 846; *see also In re Comput. Sci. Corp. Sec. Litig.*, No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436, at \*2 (E.D. Va. Sept. 20, 2013) (awarding "[c]lass [r]epresentative reimbursement of its reasonable costs for the time devoted to the matter");

---

[12] *See* Exs. 9 and 10.  Lead Plaintiff Truong is not making a request.

*Sponn v. Emergent Biosolutions, Inc.*, No. 8:16-cv-02625-RWT, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) (same).

Here, as described in Mr. Gabbert and Mr. Nandkumar's declarations, they have been committed to pursuing the Settlement Class's claims—and have taken an active role in so doing. *See* Ex. 9 at ¶¶5-6  and Ex. 10 at ¶¶5-6.  Each (i) regularly communicated with counsel regarding the posture and progress of the Action; (ii) reviewed significant pleadings and motions filed in the Action; (iii) produced documents and written discovery responses to Defendants; (iv) expended substantial time and effort preparing for and testifying during depositions conducted by defense counsel; and (v) evaluated and approved the proposed Settlement. *Id*. These efforts required them to dedicate time and resources to the Action that they would have otherwise devoted to the professional endeavors and, thus, represented a cost to the Lead Plaintiffs.

Like the litigation expenses in this case, the requested PSLRA awards are consistent with cost and expense awards in similar cases.  *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 846 (awarding $23,128 for time relating to supervision of the action); *Comput. Sci.*, 2013 WL 12155436, at *2 (awarding $28,881 for time and $32,024 for expenses).  Lead Plaintiff Gabbert and Nandkumar respectfully request that their awards be approved.

## V.    CONCLUSION

For the reasons discussed above, Co-Lead Counsel respectfully request that the Court: (1) award Co-Lead Counsel, on behalf of Plaintiffs' Counsel, 33.4% of the Settlement Fund as attorneys' fees, including accrued interest; (2) approve payment of Litigation Expenses incurred by Plaintiffs' Counsel in the amount of $628,893.83, plus accrued interest; and (3) award Lead Plaintiffs Gabbert and Nandkumar $30,000 each, pursuant to the PSLRA.  A proposed order will

be submitted with Co-Lead Counsel's reply papers, after the deadline for objections has passed.

DATED: April 11, 2024                    Respectfully submitted,

                                         **COHEN MILSTEIN SELLERS &
                                         TOLL PLLC**


                                         */s/ Daniel S. Sommers*
                                         Steven J. Toll (Md. Bar No. 15824)
                                         Daniel S. Sommers (Md. Bar No. 15822)
                                         S. Douglas Bunch
                                         1100 New York Avenue N.W.
                                         Suite 500, East Tower
                                         Washington, DC 20005
                                         Tel: (202) 408-4600
                                         Fax: (202) 408-4699
                                         Email: stoll@cohenmilstein.com
                                         dsommers@cohenmilstein.com
                                         dbunch@cohenmilstein.com

                                         ***Local Counsel for Lead Plaintiffs***

                                         **POMERANTZ LLP**


                                         */s/ Brian Calandra*
                                         Jeremy A. Lieberman (admitted *pro hac vice*)
                                         Brian Calandra (admitted *pro hac vice*)
                                         600 Third Avenue, 20th Floor
                                         New York, New York 10016
                                         Telephone: (212) 661-1100
                                         Facsimile: (917) 463-1044
                                         Email: jalieberman@pomlaw.com
                                                 bcalandra@pomlaw.com


                                         **LABATON KELLER SUCHAROW LLP**


                                         */s/ Michael H. Rogers*

Michael P. Canty (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
David J. Schwartz (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Philip J. Leggio (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile (212) 818-0477
Email: mcanty@labaton.com
      mrogers@labaton.com
      dschwartz@labaton.com
      jchristie@labaton.com
      pleggio@labaton.com

***Counsel for Lead Plaintiffs and
Co-Lead Counsel for the Settlement Class***


**PORTNOY LAW FIRM**

Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, California 90067
Tel: (310) 692-8883
Email: lesley@portnoylaw.com

***Additional Counsel for Lead Plaintiffs and the
Settlement Class***

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2024, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ S. Douglas Bunch*
S. Douglas Bunch