## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

| | |
|---|---|
| SOTHINATHAN SINNATHURAI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NOVAVAX, INC., STANLEY C. ERCK, GREGORY F. COVINO, JOHN J. TRIZZINO, and GREGORY M. GLENN,<br><br>Defendants. | Civil Action No. TDC-21-2910 |

**DECLARATION OF MARGERY CRAIG CONCERNING:
(A) MAILING OF THE POSTCARD NOTICE; (B) PUBLICATION OF THE
SUMMARY NOTICE; AND (C) REQUESTS FOR EXCLUSION
RECEIVED TO DATE**

I, Margery Craig, declare as follows:

1.      I am a Project Manager of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over sixteen years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception. I have personal knowledge of the facts set forth herein and, if called on to do so, I could and would testify competently thereto.

### MAILING OF THE POSTCARD NOTICE

2.      Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, dated January 23, 2024 (ECF No. 129, the "Preliminary Approval

Order"), the Court approved the retention of SCS as the Claims Administrator in connection with the Settlement[1] of the above-captioned Action.

3.     To provide individual notice to those who purchased or otherwise acquired Novavax, Inc. ("Novavax") publicly traded common stock during the period from May 11, 2021 through October 19, 2021, inclusive ("Class Period"), SCS, pursuant to the Preliminary Approval Order, printed and mailed the Postcard Notice to potential members of the Settlement Class. **Exhibit A** is a copy of the Postcard Notice.

4.     On January 30 and January 31, 2024, Counsel for Novavax provided SCS with a file containing the names and addresses of registered purchasers of Novavax publicly traded common stock during the Class Period.  On February 6, 2024, SCS mailed, by first class mail, postage prepaid, the Postcard Notice to the 13 individuals identified on the shareholder list.

5.     As in most class actions of this nature, the large majority of potential class members are expected to be beneficial purchasers whose securities are held in "street name" — *i.e.,* the securities are purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers.  The names and addresses of these beneficial purchasers are known only to the nominees.  SCS maintains a proprietary master list consisting of 1,136 banks and brokerage companies ("Nominee Account Holders"), as well as 1,341 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups").  On February 5, 2024, SCS caused a letter with the Postcard Notice to be mailed or emailed to the 2,477 nominees contained in the SCS master mailing list. The letter notified them of the Settlement and requested that they, within 10 calendar days from

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of January 12, 2024 (ECF No. 127-3, the "Stipulation").

the date of the letter and receipt of the Postcard Notice, provide SCS with a list of the names, mailing addresses, and email addresses (to the extent available) of such beneficial owners so that SCS could promptly mail the Postcard Notice and email (to the extent available) the direct link to the long-form Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice") and Proof of Claim and Release Form ("Claim Form") (collectively, the "Notice and Claim") or request sufficient copies of the Postcard Notice to forward to their customers who may be beneficial owners.  A true and correct copy of the Notice and Claim is attached as **Exhibit B**.

6.     On February 6, 2024, SCS also sent the Depository Trust Company ("DTC") a copy of the Notice and Claim for the DTC to publish on its Legal Notice System ("LENS"). LENS provides DTC participants, namely nominees and institutional investors, the ability to search and download legal notices, as well as receive email alerts based on particular notices or particular CUSIPs once a legal notice is posted.

7.     SCS then mailed, by first class mail, postage prepaid, the Postcard Notice to 42,931 names and addresses of potential Settlement Class Members received from individuals or nominees requesting that a Postcard Notice be mailed by SCS.  SCS also received requests from three nominees for 187,180 Postcard Notices so that the nominees could forward them to their customers.  SCS also received notification from three nominees that they printed and mailed the Postcard Notice to 1,225 of their customers.  To date, 233,826 Postcard Notices have been mailed to potential Settlement Class Members and nominees.

8.     Additionally, SCS also received 71,509 email addresses from individuals or nominees requesting the direct link to the Notice and Claim. SCS promptly emailed a direct link

to the Notice and Claim to these potential Settlement Class Members.  To date, 71,509 emails have been sent to potential Settlement Class Members.

9.    In total, 305,335 potential Settlement Class Members and nominees were notified by either mailed Postcard Notice or emailed direct link to the Notice and Claim.[2]

## PUBLICATION OF THE SUMMARY NOTICE

10.    Pursuant to the Preliminary Approval Order, the Summary Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses ("Summary Notice") was published in *The Wall Street Journal* and transmitted over *PR Newswire* on February 20, 2024, as shown in the confirmations of publication attached hereto as **Exhibit C.**

## TOLL-FREE PHONE LINE

11.    SCS maintains a toll-free telephone number (1-866-274-4004) for callers to obtain information about the Settlement, as well as to request the Notice and Claim to be mailed to them. SCS has promptly responded to each telephone inquiry and will continue to address inquiries.

## WEBSITE

12.    On February 5, 2024, SCS's website was updated to include a specific webpage for this Settlement, www.strategicclaims.net/Novavax/. The webpage is accessible 24 hours a day, 7 days a week.  The webpage contains the current status of the case; important Settlement-related deadlines; an online claim filing link; and downloadable copies of the Notice and Claim, the Postcard Notice, the Preliminary Approval Order, the Stipulation, the Motion to Dismiss Order, the Motion to Dismiss Memorandum Order, and the Consolidated Amended Class Action

---

[2] SCS received eight requests from potential Settlement Class Members to mail them a Notice and Claim.  SCS immediately mailed them a Notice and Claim.

Complaint for Violations of the Federal Securities Laws. To date, there have been 30,523 pageviews by 7,524 unique users.

## REPORT ON EXCLUSION REQUESTS TO DATE

13.    The Postcard Notice, Notice, Summary Notice, and the Settlement webpage inform potential Settlement Class Members that written requests for exclusion are to be mailed to SCS such that they are received no later than May 2, 2024.  SCS has been monitoring all mail received for this case.  As of the date of this declaration, SCS has received one request for exclusion. A redacted copy of the request for exclusion, with personal information removed, is attached hereto as **Exhibit D.**

14.    According to the Notice, Settlement Class Members seeking to object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or Co-Lead Counsel's Fee and Expense Application are required to submit their objection in writing such that the objection is received by Co-Lead Counsel and Defendants' Counsel, as well as filed with the Clerk of the Court, no later than May 2, 2024.  As of the date of this declaration, SCS has not received any misdirected objections.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 10th day of April 2024, in Media, Pennsylvania.

Margery Craig

5

# EXHIBIT A

*Novavax, Inc. Securities Settlement*
c/o Strategic Claims Services, Inc.
600 N. Jackson St., Suite 205
Media, PA 19063

**COURT-ORDERED LEGAL NOTICE**

*Sinnathurai v. Novavax, Inc., et al.,*
No. 8:21-cv-02910-TDC (D. Md.)

**Your legal rights may be affected by this securities class action settlement. You may be eligible for a cash payment. Please read this postcard carefully.**

**For more information, please visit www.strategicclaims.net/novavax/ or call (866) 274-4004**



The Parties in the class action *Sinnathurai v. Novavax, Inc., et al.*, 8:21-cv-02910-TDC (D. Md.) have reached a proposed settlement of the claims against Defendants. If approved, the Settlement will resolve a lawsuit in which Plaintiffs alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Defendants deny any liability or wrongdoing. You received this postcard because you, or an investment account for which you serve as a custodian, may be a member of the Settlement Class: **all persons or entities who or which, during the period from May 11, 2021 through October 19, 2021, inclusive ("Class Period"), purchased or otherwise acquired the publicly traded common stock of Novavax, Inc. and were damaged thereby.**

Pursuant to the Settlement, Defendants have agreed to pay $47,000,000. This amount, plus accrued interest, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Expenses, and Taxes, will be allocated among Settlement Class Members who submit valid claims, in exchange for the settlement of the Action and the release of all claims asserted in the Action and related claims. **For additional information regarding the Settlement and procedures, please review the long-form Notice at www.strategicclaims.net/novavax/.** Your *pro rata* share of the Settlement proceeds will depend on the number of valid claims submitted, and when you purchased shares of Novavax. If all Settlement Class Members participate in the Settlement, the estimated average recovery will be $1.24 per allegedly damaged share before deduction of Court-approved fees and expenses and approximately $0.80 per share after. Your share of the Settlement proceeds will be determined by the plan of allocation set forth in the Notice, or such other plan that may be approved by the Court.

**To qualify for payment, you must submit a valid Claim Form. Receipt of this Postcard does not mean you are eligible for a recovery.** The Claim Form can be found at www.strategicclaims.net/novavax/, or you can request that one be mailed to you. You can also submit a claim via the website. **Claim Forms must be postmarked (if mailed) to:** *Novavax, Inc. Securities Settlement,* **c/o Strategic Claims Services, Inc., 600 N. Jackson St., Suite 205, P.O. Box 230, Media, PA 19063, or submitted online, by May 18, 2024. If you do not want to be legally bound by any releases, judgments or orders in the Action, you must exclude yourself from the Settlement Class by May 2, 2024**. If you exclude yourself, you may be able to sue Defendants about the claims being settled, but you cannot get money from the Settlement. **If you want to object to any aspect of the Settlement, you must file and serve an objection by May 2, 2024**. The Notice provides instructions on how to submit a Claim Form, exclude yourself, or object, and you must comply with all of the instructions in the Notice.

The Court will hold a hearing on **May 23, 2024 at 2:30 p.m.**, to consider whether to approve the Settlement and a request by Co-Lead Counsel for up to 33.4% of the Settlement Fund in attorneys' fees, plus expenses of no more than $1 million. You may attend the hearing and ask to speak, but do not have to. **For more information, call (866) 274-4004, email info@strategicclaims.net or visit the website to review the Notice.**

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| SOTHINATHAN SINNATHURAI,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>                     Plaintiff,<br><br>v.<br><br>NOVAVAX, INC., STANLEY C. ERCK,<br>GREGORY F. COVINO, JOHN J. TRIZZINO,<br>and GREGORY M. GLENN,<br><br>                    Defendants. | Civil Action No. TDC-21-2910 |

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT,
AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

If you purchased or otherwise acquired the publicly traded common stock of Novavax, Inc. ("Novavax" or the "Company") during the period from May 11, 2021 through October 19, 2021, inclusive, (the "Class Period") and were damaged thereby, you may be entitled to a payment from a class action settlement.

*A Federal Court authorized this Notice.  This is __not__ a solicitation from a lawyer.*

- This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement of this securities class action, wish to object, or wish to be excluded from the Settlement Class.[1]
- If approved by the Court, the proposed Settlement will create a $47,000,000 fund, plus earned interest, for the benefit of eligible Settlement Class Members after the deduction of Court-approved attorneys' fees, expenses, and Taxes.  This is an average recovery of approximately $1.24 per allegedly damaged share before deductions for awarded attorneys' fees and Litigation Expenses, and $0.80 per allegedly damaged share after deductions for awarded attorneys' fees and Litigation Expenses.
- The Settlement resolves claims by Court-appointed Lead Plaintiffs Jeffrey A. Gabbert, Nuggehalli Balmukund Nandkumar, and David Truong ("Lead Plaintiffs" or "Plaintiffs") that have been asserted on behalf of the Settlement Class (defined below) against Novavax, and Stanley Erck, Gregory Covino, John Trizzino, and Gregory Glenn (collectively, the "Individual Defendants" and, with Novavax, "Defendants").  The Settlement avoids the costs and risks of continuing the litigation, pays money to eligible investors, and releases the Released Defendant Parties (defined below) from liability.

---

[1] The terms of the Settlement are in the Stipulation and Agreement of Settlement, dated January 12, 2024 (the "Stipulation"), which can be viewed at www.strategicclaims.net/novavax/.  All capitalized terms not defined in this Notice have the same meanings as defined in the Stipulation.

**If you are a Settlement Class Member, the Settlement will affect your legal rights whether you act or do not act. Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY MAY 18, 2024** | The only way to get a payment. *See* Question 8 for details. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY MAY 2, 2024** | Get no payment. This is the only option that, assuming your claim is timely brought, might allow you to ever bring or be part of any other lawsuit against Defendants and/or the other Released Defendant Parties concerning the Released Plaintiffs' Claims. *See* Question 10 for details. |
| **OBJECT BY MAY 2, 2024** | Write to the Court about why you do not like the Settlement, the Plan of Allocation for distributing the proceeds of the Settlement, and/or Co-Lead Counsel's Fee and Expense Application. If you object, you will still be in the Settlement Class. *See* Question 14 for details. |
| **PARTICIPATE IN A HEARING ON MAY 23, 2024 AND FILE A NOTICE OF INTENTION TO APPEAR BY MAY 2, 2024** | Ask to speak in Court at the Settlement Hearing about the fairness of the Settlement and other requested relief. *See* Questions 16 and 18 for details. |
| **DO NOTHING** | Get no payment. Give up all legal rights relating to the claims at issue. Still be bound by the terms of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained below.
- The Court in charge of this case still has to decide whether to approve the proposed Settlement. Payments will be made to all eligible Settlement Class Members who timely submit valid Claim Forms, if the Court approves the Settlement and after any appeals are resolved.

## WHAT THIS NOTICE CONTAINS

PSLRA Summary of the Notice — Page 3
Why did I get the Postcard Notice? — Page 4
How do I know if I am part of the Settlement Class? — Page 5
Are there exceptions to being included? — Page 5
Why is this a class action? — Page 5
What is this case about and what has happened so far? — Page 5
What are the reasons for the Settlement? — Page 7
What does the Settlement provide? — Page 7
How can I receive a payment? — Page 7
What am I giving up to receive a payment and by staying in the Settlement Class? — Page 7-9
How do I exclude myself from the Settlement Class? — Page 9
If I do not exclude myself, can I sue Defendants and the other Released Defendant Parties for the same reasons later? — Page 9-10
Do I have a lawyer in this case? — Page 10
How will the lawyers be paid? — Page 10
How do I tell the Court that I do not like something about the proposed Settlement? — Page 10-11

2

What is the difference between objecting and seeking exclusion?     Page 11
When and where will the Court decide whether to approve the
 Settlement?                                                        Page 11
Do I have to come to the Settlement Hearing?                        Page 11-12
May I speak at the Settlement Hearing?                              Page 12
What happens if I do nothing at all?                                Page 12
Are there more details about the Settlement?                        Page 12
How will my claim be calculated?                                    Page 12-13
Special Notice to Securities Brokers and Nominees                   Page 17

**PSLRA SUMMARY OF THE NOTICE**

## Statement of the Settlement Class's Recovery

1.      Lead Plaintiffs have entered into the proposed Settlement with Defendants which, if approved by the Court, will resolve the Action in its entirety.  Subject to Court approval, Lead Plaintiffs, on behalf of the Settlement Class, have agreed to settle the Action in exchange for a payment of $47,000,000 in cash (the "Settlement Amount"), which will be deposited into an interest-bearing Escrow Account (the "Settlement Fund").  Based on Lead Plaintiffs' consulting damages expert's estimate of the number of shares of Novavax publicly traded common stock eligible to participate in the Settlement, and assuming that all investors eligible to participate in the Settlement do so, it is estimated that the average recovery, before deduction of any Court-approved fees and expenses, such as attorneys' fees, Litigation Expenses, Taxes, and Notice and Administration Expenses, would be approximately $1.24 per allegedly damaged share.[2]  If the Court approves Co-Lead Counsel's Fee and Expense Application (discussed below), the average recovery would be approximately $0.80 per allegedly damaged share.  **These average recovery amounts are only estimates and Settlement Class Members may recover more or less than these estimates.**  A Settlement Class Member's actual recovery will depend on, for example: (i) the number and value of claims submitted; (ii) the amount of the Net Settlement Fund; (iii) when and how many shares of Novavax publicly traded common stock the Settlement Class Member purchased during the Class Period; and (iv) whether and when the Settlement Class Member sold Novavax publicly traded common stock.  *See* the Plan of Allocation beginning on page 12 for information about the calculation of your Recognized Claim.

## Statement of Potential Outcome of Case if the Action Continued to Be Litigated

2.      The Parties disagree about both liability and damages and do not agree about the amount of damages that would be recoverable if Lead Plaintiffs were to prevail on each claim.  The issues that the Parties disagree about include, for example: (i) whether Defendants made any statements or omissions that were materially false or misleading, or were otherwise actionable under the federal securities laws; (ii) whether any such statements or omissions were made with the requisite level of intent; (iii) the amount by which the price of Novavax publicly traded common stock was allegedly artificially inflated, if at all, during the Class Period; and (iv) the extent to which factors unrelated to the alleged fraud, such as general market, economic, and industry conditions, influenced the trading prices of Novavax publicly traded common stock during the Class Period.

3.      Defendants have denied and continue to deny any and all allegations of wrongdoing or fault asserted in the Action, deny that they have committed any act or omission giving rise to any liability or violation of law, and deny that Lead Plaintiffs and the Settlement Class have suffered any loss attributable to Defendants' actions or omissions.

---

[2] An allegedly damaged share might have been traded, and potentially damaged, more than once during the Class Period, and the average recovery indicated above represents the estimated average recovery for each share that allegedly incurred damages.

3

**Statement of Attorneys' Fees and Expenses Sought**

4.        Co-Lead Counsel, on behalf of Plaintiffs' Counsel,[3] will apply to the Court for attorneys' fees from the Settlement Fund in an amount not to exceed 33.4% of the Settlement Fund, which includes any accrued interest, or $15,698,000, plus accrued interest.  Co-Lead Counsel will also apply for payment of Litigation Expenses incurred in prosecuting the Action in an amount not to exceed $1,000,000, plus accrued interest, which may include an application pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the reasonable costs and expenses (including lost wages) of Lead Plaintiffs directly related to their representation of the Settlement Class (which will not exceed $30,000 for each Lead Plaintiff).  If the Court approves Co-Lead Counsel's Fee and Expense Application in full, the average amount of fees and expenses is estimated to be approximately $0.44 per allegedly damaged share of Novavax publicly traded common stock.  A copy of the Fee and Expense Application will be posted on www.strategicclaims.net/novavax/ after it has been filed with the Court.

**Reasons for the Settlement**

5.        For Lead Plaintiffs, the principal reason for the Settlement is the guaranteed cash benefit to the Settlement Class.  This benefit must be compared to, among other factors, the uncertainty of being able to prove the allegations in the Complaint and certify a litigation class; the difficulties and delays inherent in completing discovery and litigation like this; the risk that the Court may grant some or all of the anticipated summary judgment motions to be filed by Defendants; the uncertainty of a greater recovery after a trial and appeals; and the difficulties and risks in enforcing a judgment against Defendants after trial.

6.        For Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to end the burden, expense, uncertainty, and risk of further litigation.

**Identification of Representatives**

7.        Lead Plaintiffs and the Settlement Class are represented by Co-Lead Counsel, Michael H. Rogers, Esq., Labaton Keller Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com; and Brian Calandra, Esq., Pomerantz LLP, 600 Third Avenue, 20th Floor, New York, NY 10016, (212) 661-1100, www.pomlaw.com, bcalandra@pomlaw.com.

8.        Further information regarding this Action, the Settlement, and this Notice may be obtained by contacting the Claims Administrator: *Novavax, Inc. Securities Settlement*, c/o Strategic Claims Services, Inc., 600 N. Jackson Street, Suite 205, P.O. Box 230, Media, PA 19063, (866) 274-4004, www.strategicclaims.net/novavax/.

**PLEASE DO NOT CALL THE COURT WITH QUESTIONS ABOUT THE SETTLEMENT**

**BASIC INFORMATION**

| **1.  Why did I get the Postcard Notice?** |
| --- |

9.        You may have received a Postcard Notice about the proposed Settlement.  This long-form Notice provides additional information about the Settlement and related procedures.  The Court authorized that the Postcard Notice be sent to you because you or someone in your family may have purchased or otherwise acquired Novavax publicly traded common stock during the period from May 11, 2021 through October 19, 2021, inclusive.  **Receipt of the Postcard Notice does not mean that you are a Member of the Settlement Class or that you will be entitled to receive a payment.  The Parties to the Action do not have access to your individual investment information.  If you wish to be eligible for a payment,**

---

[3] "Plaintiffs' Counsel" are Pomerantz LLP, Labaton Keller Sucharow LLP, Cohen Milstein Sellers & Toll PLLC, Portnoy Law Firm, Hagens Berman Sobol Shapiro LLP, and Johnson Fistel, LLP.

4

**you are required to submit the Claim Form that is available at www.strategicclaims.net/Novavax/.** *See* **Question 8 below.**

10.    The Court directed that the Postcard Notice be sent to Settlement Class Members because they have a right to know about the proposed Settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.

11.    The Court in charge of the Action is the United States District Court for the District of Maryland, and the case is known as *Sinnathurai v. Novavax, Inc., et al.*, Case No. 8:21-cv-02910-TDC. The Action is assigned to the Honorable Theodore D. Chuang, United States District Judge.

## 2.  How do I know if I am part of the Settlement Class?

12.    The Court directed that everyone who fits the following description is a Settlement Class Member and subject to the Settlement unless they are an excluded person (*see* Question 3 below) or take steps to exclude themselves from the Settlement Class (*see* Question 10 below):

> **All persons or entities who or which, during the period from May 11, 2021 through October 19, 2021, inclusive, purchased or otherwise acquired the publicly traded common stock of Novavax and were damaged thereby.**

13.    If one of your mutual funds purchased Novavax publicly traded common stock during the Class Period, that does not make you a Settlement Class Member, although your mutual fund may be. You are a Settlement Class Member only if you individually purchased Novavax publicly traded common stock during the Class Period.  Check your investment records or contact your broker to see if you have any eligible purchases or acquisitions.  **The Parties to the Action do not independently have access to your trading information.**

## 3.  Are there exceptions to being included?

14.    Yes.  There are some individuals and entities who are excluded from the Settlement Class by definition.  Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Families of any Defendant who is an individual; (iii) any person who was an officer or director of Novavax during the Class Period; (iv) any firm or entity in which any Defendant has or had a controlling interest; (v) parents, affiliates, or subsidiaries of Novavax; and (vi) the Company's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s). Also excluded from the Settlement Class is anyone who timely and validly seeks exclusion from the Settlement Class in accordance with the procedures described in Question 10 below.

## 4.  Why is this a class action?

15.    In a class action, one or more persons or entities (in this case, Lead Plaintiffs) sue on behalf of people and entities who have similar claims.  Together, these people and entities are a "class," and each is a "class member."  A class action allows one court to resolve, in a single case, many similar claims that, if brought separately by individual people, might be too small economically to litigate.  One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt out," from the class.  In this Action, the Court has appointed Jeffrey A. Gabbert, Nuggehalli Balmukund Nandkumar, and David Truong to serve as Lead Plaintiffs and Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) and Pomerantz LLP to serve as Co-Lead Counsel.

## 5.  What is this case about and what has happened so far?

16.    Novavax is a pharmaceutical drug company that developed a vaccine against COVID-19, a process Novavax began in the early stages of the COVID-19 pandemic.  On March 11, 2022, Lead Plaintiffs filed the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 56) asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  Among other things, the Complaint alleged that Defendants made materially false and misleading statements and omissions with

respect to the production and development of Novavax's COVID-19 vaccine candidate. The Complaint further alleged that the price of Novavax common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions and declined when the truth was allegedly revealed through a series of partial corrective disclosures.

17. On April 25, 2022, Defendants filed a motion to dismiss the Complaint, which Lead Plaintiffs opposed. On December 12, 2022, the Court entered a Memorandum Opinion denying in part and granting in part Defendants' motion to dismiss the Complaint, which eliminated some of the Complaint's alleged misstatements, dismissed the claims against some individual Defendants, and shortened the class period (the "MTD Opinion").

18. On December 27, 2022, Defendants filed their Answer to the Complaint and discovery commenced.

19. Prior to the start of formal discovery in the Action, Lead Plaintiffs, through Co-Lead Counsel, had conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses.

20. Lead Plaintiffs also submitted requests to the U.S. Food and Drug Administration ("FDA") and the SEC pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and to the U.S. Government Accountability Office ("GAO") pursuant to the Code of Federal Regulations, Public Availability of Government Accountability Office Records, 4 C.F.R. §81.

21. On March 16, 2023, Lead Plaintiffs filed their motion for class certification and appointment of class representatives and class counsel, which Defendants opposed.

22. In connection with formal discovery, Defendants produced approximately 57,676 documents (about 311,690 pages) to Lead Plaintiffs, and Lead Plaintiffs produced approximately 88 documents (about 2,330 pages) to Defendants. In total, approximately 58,000 documents were produced by the Parties and third parties in formal discovery.

23. In connection with Lead Plaintiffs' March 16, 2023 class certification motion, Defendants deposed each of the Lead Plaintiffs, as well as Lead Plaintiffs' market efficiency and price impact expert, Chad Coffman of Peregrine Economics (formerly part of Global Economics Group LLC). In addition, Lead Plaintiffs deposed Defendants' own expert on market efficiency and price impact, Prof. S.P. Kothari, Professor of Accounting and Finance at MIT's Sloan School of Management.

24. The Parties began exploring the possibility of a settlement in June 2023. Specifically, the Parties agreed to engage in mediation and subsequently retained Gregory P. Lindstrom of Phillips ADR Services to act as mediator in the case (the "Mediator"). On June 27, 2023, Co-Lead Counsel and Defendants' Counsel, among others, participated in a full-day, in-person mediation session before the Mediator. In advance of that session, the Parties submitted detailed mediation statements to the Mediator, together with numerous supporting exhibits, which addressed both liability and damages issues. The session ended without any agreement being reached. The Parties continued discussions with the Mediator following the mediation to further explore the possibility of a settlement.

25. The Parties participated in a second in-person mediation session before the Mediator on November 30, 2023. In advance of this session, Co-Lead Counsel submitted a supplemental mediation statement for the Mediator's eyes only, and further exhibits. At the conclusion of that mediation session, the Parties reached an agreement in principle to settle the Action, which was memorialized in a term sheet finalized on November 30, 2023, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers.

26. The Stipulation was executed on January 12, 2024.

| 6. **What are the reasons for the Settlement?** |
|---|

27.    The Court did not finally decide in favor of Lead Plaintiffs or Defendants. Instead, both sides agreed to a settlement. Lead Plaintiffs and Co-Lead Counsel believe that the claims asserted in the Action have merit. They recognize, however, the expense and length of continued proceedings needed to pursue the claims through trial and appeals, as well as the difficulties in establishing liability. Assuming the claims proceeded to trial, the Parties would present factual and expert testimony on each of the disputed issues, and there is risk that the Court or jury would resolve these issues unfavorably against Lead Plaintiffs and the class. In light of the Settlement and the guaranteed cash recovery to the Settlement Class, Lead Plaintiffs and Co-Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

28.    Defendants have denied and continue to deny each and every one of the claims alleged by Lead Plaintiffs in the Action, including all claims in the Complaint, and specifically deny any wrongdoing and that they have committed any act or omission giving rise to any liability or violation of law. Defendants deny the allegations that they knowingly, recklessly, or otherwise, made any material misstatements or omissions; that any Member of the Settlement Class has suffered damages; that the prices of Novavax's publicly traded common stock were artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; that Members of the Settlement Class were harmed by the conduct alleged; or that the Action may properly proceed as a class action. Nonetheless, Defendants have concluded that continuation of the Action would be protracted and expensive, and have taken into account the uncertainty and risks inherent in any litigation, especially a complex case like this Action.

## THE SETTLEMENT BENEFITS

| 7. **What does the Settlement provide?** |
|---|

29.    In exchange for the Settlement and the release of the Released Plaintiffs' Claims against the Released Defendant Parties (*see* Question 9 below), Defendants have agreed to cause a $47,000,000 payment to be made, which, along with any interest earned, will be distributed, after deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court (the "Net Settlement Fund"), to Settlement Class Members who submit valid and timely Claim Forms and are found to be eligible to receive a distribution from the Net Settlement Fund.

| 8. **How can I receive a payment?** |
|---|

30.    To qualify for a payment from the Net Settlement Fund, you must submit a timely and valid Claim Form. A Claim Form may be obtained from the Claims Administrator's website: www.strategicclaims.net/novavax/, or you can submit a claim online at www.strategicclaims.net/novavax/. You can also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at (866) 274-4004.

31.    Please read the instructions contained in the Claim Form carefully, fill out the form, include all the documents the form requests, sign it, and mail or submit it online to the Claims Administrator so that it is **postmarked or received no later than May 18, 2024.**

| 9. **What am I giving up to receive a payment and by staying in the Settlement Class?** |
|---|

32.    If you are a Settlement Class Member and do not timely and validly exclude yourself from the Settlement Class, you will remain in the Settlement Class and that means that, upon the Effective Date of the Settlement, you will release all Released Plaintiffs' Claims against the Released Defendant Parties. All of the Court's orders about the Settlement, whether favorable or unfavorable, will apply to you and legally bind you.

(a)    **"Released Plaintiffs' Claims"** means any and all claims and causes of action of every nature and description, whether known or Unknown, contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable

7

theory and whether arising under federal, state, common, or foreign law, that Lead Plaintiffs or any other member of the Settlement Class: (a) asserted in the Action; or (b) could have asserted in the Action or any forum that arise out of, are based upon, or relate to, both (1) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action and (2) the purchase or acquisition of Novavax publicly traded common stock during the Class Period.  Released Plaintiffs' Claims shall not include: (i) claims to enforce the Settlement and (ii) claims brought in the following actions: *Meyer v. Erck, et al.*, No. 8:21-cv-02996-TDC (D. Md.) (filed November 22, 2021) (the "Meyer Action"); *Yung v. Erck, et al.*, No. 8:21-cv-03248-TDC (D. Md.) (filed December 21, 2021) (the "Yung Action"); *Kirst, et al. v. Erck, et al.*, No. C-15-CV-21-000618 (Md. Cir. Ct.) (filed December 28, 2021) (the "Kirst Action"); *Snyder v. Erck, et al.*, No. 8:22-cv-01415-TDC (D. Md.) (filed June 10, 2022) (the "Snyder Action"); *Blackburn, et al. v. Erck, et al.*, No. 1:22-cv-01417-TDC (D. Md.) (filed June 10, 2022) (the "Blackburn Action"); *Mesa v. Erck, et al.*, No. 2022-0770-NAC (Del. Ch.) (filed August 30, 2022) (the "Mesa Action"); *Acosta v. Erck, et al.*, No. 2022-1133-NAC (Del. Ch.) (filed December 7, 2022) (the "Acosta Action"); *Needelman v. Erck, et al.*, No. C-15-CV-23-001550 (Md. Cir. Ct.) (filed May 23, 2023) (the "Needelman Action").

(b)    **"Released Defendant Parties"** means Defendants and each of their respective former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities and affiliates and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, general or limited partners or partnerships, limited liability companies, members, joint ventures and insurers and reinsurers of each of them, in their capacities as such; and the predecessors, successors, assigns, estates, Immediate Family, heirs, executors, trusts, trustees, administrators, agents, legal representatives, and assignees of each of them, in their capacities as such, as well as any trust of which any Released Defendant Party is the settlor or which is for the benefit of any of their Immediate Family members.

(c)    "**Unknown Claims**" means any and all Released Plaintiffs' Claims that Lead Plaintiffs or any other Settlement Class Member do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class.  With respect to any and all Released Plaintiffs' Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiffs, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the Action, the Released Plaintiffs' Claims or the Released Defendants' Claims, but Lead Plaintiffs and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have fully, finally, and forever settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and

8

released, fully, finally, and forever, any and all Released Plaintiffs' Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiffs and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiffs' Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

(d)     The "**Effective Date**" will occur when an Order entered by the Court approving the Settlement becomes Final and is not subject to appeal.

33.     Upon the Effective Date, Defendants will also provide a release of any claims against Lead Plaintiffs, the Settlement Class, and Plaintiffs' Counsel arising out of or related to the institution, prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement or any claims against any person who submits a request for exclusion that is accepted by the Court.

### EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

34.     If you want to keep any right you may have to sue or continue to sue Defendants and the other Released Defendant Parties on your own concerning the Released Plaintiffs' Claims, then you must take steps to remove yourself from the Settlement Class. This is called excluding yourself or "opting out." **Please note: If you decide to exclude yourself from the Settlement Class, there is a risk that any lawsuit you may file to pursue claims alleged in the Action may be dismissed, including because the suit is not filed within the applicable time periods required for filing suit.** Defendants have the option to terminate the Settlement if a certain amount of Settlement Class Members request exclusion.

| **10. How do I exclude myself from the Settlement Class?** |
| --- |

35.     To exclude yourself from the Settlement Class, you must mail a signed letter stating that you request to be "excluded from the Settlement Class in *Sinnathurai v. Novavax, Inc., et al.*, 8:21-cv-02910-TDC (D. Md.)." You cannot exclude yourself by telephone or email. Each request for exclusion must also: (i) state the name, address, telephone number, and email address (if any) of the Person seeking exclusion; (ii) include the date(s), price(s), and number(s) of shares for each purchase/acquisition and sale (if any) of Novavax, Inc. publicly traded common stock by the Person seeking exclusion during the Class Period; and (iii) be signed by the Person requesting exclusion. Requests must be submitted with documentary proof of purchases during the Class Period that demonstrates the requester's status as a beneficial owner of the shares. A request for exclusion must be mailed so that it is **received no later than May 2, 2024** at:

*Novavax, Inc. Securities Settlement*
c/o Strategic Claims Services, Inc.
600 N. Jackson Street, Suite 205
P.O. Box 230
Media, PA 19063

36.     This information is needed to determine whether you are a member of the Settlement Class. Your exclusion request must comply with these requirements in order to be valid.

37.     If you ask to be excluded, do not submit a Claim Form because you cannot receive any payment from the Net Settlement Fund. Also, you cannot object to the Settlement because you will not be a Settlement Class Member and the Settlement will not affect you. If you submit a valid exclusion request, you will not be legally bound by anything that happens in the Action, and you may be able to sue (or continue to sue) Defendants and the other Released Defendant Parties in the future.

| **11. If I do not exclude myself, can I sue Defendants and the other Released Defendant Parties for the same reasons later?** |
| --- |

38.     No. Unless you properly exclude yourself, you will give up any rights to sue Defendants and the other Released Defendant Parties for any and all Released Plaintiffs' Claims. If you have a

9

pending lawsuit against any of the Released Defendant Parties, **speak to your lawyer in that case immediately**.  You must exclude yourself from this Settlement Class to continue your own lawsuit. Remember, the exclusion deadline is **May 2**, **2024.**

## THE LAWYERS REPRESENTING YOU

| 12.  Do I have a lawyer in this case? |
| --- |

39.      Labaton Keller Sucharow LLP and Pomerantz LLP are Co-Lead Counsel in the Action and represent all Settlement Class Members.  You will not be separately charged for these lawyers.  The Court will determine the amount of attorneys' fees and Litigation Expenses, which will be paid from the Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 13.  How will the lawyers be paid? |
| --- |

40.      Co-Lead Counsel, together with the other Plaintiffs' Counsel, have been prosecuting the Action on a contingent basis and have not been paid for any of their work.  Co-Lead Counsel, on behalf of themselves and the other Plaintiffs' Counsel, will seek an attorneys' fee award of no more than 33.4% of the Settlement Fund, which will include accrued interest.  Co-Lead Counsel have agreed to share the awarded attorneys' fees with other Plaintiffs' Counsel. Co-Lead Counsel will also seek payment of Litigation Expenses incurred by Plaintiffs' Counsel in the prosecution of the Action of no more than $1,000,000, plus accrued interest, which may include an application in accordance with the PSLRA for the reasonable costs and expenses (including lost wages) of Lead Plaintiffs directly related to their representation of the Settlement Class (of no more than $30,000 each).  As explained above, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund.

## OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION

| 14.  How do I tell the Court that I do not like something about the proposed Settlement? |
| --- |

41.      If you are a Settlement Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or Co-Lead Counsel's Fee and Expense Application.  You may write to the Court about why you think the Court should not approve any or all of the Settlement terms or related relief.  If you would like the Court to consider your views, you must file a proper objection within the deadline, and according to the following procedures.

42.      To object, you must send a signed letter stating that you object to the proposed Settlement, the Plan of Allocation, and/or the Fee and Expense Application in *"Sinnathurai v. Novavax, Inc., et al.*, 8:21-cv-02910-TDC (D. Md.)."  The objection must also: (i) state the name, address, telephone number, and email address of the objector and must be signed by the objector; (ii) state the objection(s) and the specific reasons for each objection, including whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and any legal and evidentiary support, and witnesses, the Settlement Class Member wishes to bring to the Court's attention; and (iii) include documents sufficient to show the objector's membership in the Settlement Class, including the number of shares of Novavax publicly traded common stock purchased during the Class Period by the objector, as well as the dates and prices of each such purchase/acquisition and sale (if any).  Objectors who are represented by counsel must also provide the name, address, and telephone number of all counsel, if any, who represent them, including their former or current counsel who may be entitled to compensation in connection with the objection; the number of times the objector and their counsel have filed an objection to a class action settlement in the last five years; the nature of each such objection in each such case; and the name and docket number of each such case.  Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be unable to make any objection to the proposed Settlement, the Plan of Allocation, and/or Co-Lead Counsel's Fee and Expense Application.

43.    Your objection must be filed with the Court **no later than May 2, 2024 and** be mailed or delivered to the following counsel so that it is **received no later than May 2, 2024:**

| Court | Co-Lead Counsel | Defendants' Counsel |
|---|---|---|
| **Clerk of the Court** <br> United States District Court <br> District of Maryland <br> 6500 Cherrywood Lane <br> Greenbelt, MD 20770 | **Labaton Keller Sucharow LLP** <br> Michael H. Rogers, Esq <br> 140 Broadway <br> New York, NY 10005 <br><br> **Pomerantz LLP** <br> Brian Calandra, Esq. <br> 600 Third Avenue <br> 20th Floor <br> New York, NY 10016 | **Ropes & Gray LLP** <br> C. Thomas Brown, Esq. <br> Prudential Tower <br> 800 Boylston Street <br> Boston, MA 02199 |

44.    You do not need to attend the Settlement Hearing to have your written objection considered by the Court.  However, any Settlement Class Member who has complied with the procedures described in this Question 14 and below in Question 18 may appear at the Settlement Hearing and be heard, to the extent allowed by the Court.  An objector may appear in person or arrange, at his, her, or its own expense, for a lawyer to represent him, her, or it at the Settlement Hearing.

| **15.  What is the difference between objecting and seeking exclusion?** |
|---|

45.    Objecting is telling the Court that you do not like something about the proposed Settlement, Plan of Allocation, or Co-Lead Counsel's Fee and Expense Application.  You can still recover money from the Settlement.  You can object *only* if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself from the Settlement Class, you have no basis to object because the Settlement and the Action no longer affect you.

## THE SETTLEMENT HEARING

| **16.  When and where will the Court decide whether to approve the Settlement?** |
|---|

46.    The Court will hold the Settlement Hearing on **May 23, 2024 at 2:30 p.m.**, either remotely or in person, at the United States Courthouse, United States District Court, District of Maryland, 6500 Cherrywood Lane, Greenbelt, MD 20770.

47.    At this hearing, the Honorable Theodore D. Chuang will consider whether: (i) the Settlement is fair, reasonable, adequate, and should be approved; (ii) the Plan of Allocation is fair and reasonable, and should be approved; and (iii) the application of Co-Lead Counsel for an award of attorneys' fees and payment of Litigation Expenses is reasonable and should be approved.  The Court will take into consideration any written objections filed in accordance with the instructions in Question 14 above.  We do not know how long it will take the Court to make these decisions.

48.    The Court may change the date and time of the Settlement Hearing, or hold the hearing remotely, without another individual notice being sent to Settlement Class Members.  If you want to attend the hearing, you should check with Co-Lead Counsel beforehand to be sure that the date and/or time has not changed, or periodically check the Claims Administrator's website at www.strategicclaims.net/novavax/ to see if the Settlement Hearing has stayed as scheduled or has changed.

| **17.  Do I have to come to the Settlement Hearing?** |
|---|

49.    No.  Co-Lead Counsel will answer any questions the Court may have.  But, you are welcome to attend at your own expense.  If you submit a valid and timely objection, the Court will consider it and you do not have to come to Court to discuss it.  You may have your own lawyer attend (at your own

expense), but it is not required.  If you do hire your own lawyer, he or she must file and serve a Notice of Appearance in the manner described in the answer to Question 18 below **no later than May 2, 2024**.

| **18.  May I speak at the Settlement Hearing?** |
|---|

50.     You may ask the Court for permission to speak at the Settlement Hearing.  To do so, you must, **no later than May 2, 2024,** submit a statement that you, or your attorney, intend to appear in *"Sinnathurai v. Novavax, Inc., et al*., 8:21-cv-02910-TDC (D. Md.)."* If you intend to present evidence at the Settlement Hearing, you must also include in your objections (prepared and submitted according to the answer to Question 14 above) the identities of any witnesses you may wish to call to testify and any exhibits you intend to introduce into evidence at the Settlement Hearing.  You may not speak at the Settlement Hearing if you exclude yourself from the Settlement Class or if you have not provided written notice of your intention to speak at the Settlement Hearing in accordance with the procedures described in this Question 18 and in Question 14 above.

## IF YOU DO NOTHING

| **19.  What happens if I do nothing at all?** |
|---|

51.     If you do nothing and you are a member of the Settlement Class, you will receive no money from the Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Plaintiffs' Claims.  To share in the Net Settlement Fund, you must submit a Claim Form (*see* Question 8 above).  To start, continue, or be a part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Plaintiffs' Claims, you must exclude yourself from the Settlement Class (*see* Question 10 above).

## GETTING MORE INFORMATION

| **20.  Are there more details about the Settlement?** |
|---|

52.     This Notice summarizes the proposed Settlement.  More details are contained in the Stipulation.  You may review the Stipulation filed with the Court or other documents in the case during business hours at the Office of the Clerk of the United States District Court, District of Maryland, 6500 Cherrywood Lane, Greenbelt, MD 20770.  (Please check the Court's website, www.mdd.uscourts.gov, for information about Court closures before visiting.)  Subscribers to PACER, a fee-based service, can also view the papers filed publicly in the Action through the Court's on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

53.     You can also get a copy of the Stipulation, and other documents related to the Settlement, as well as additional information about the Settlement, by visiting the Claims Administrator's website, www.strategicclaims.net/novavax/.  You may also call the Claims Administrator toll free at (866) 274-4004 or write to the Claims Administrator at *Novavax, Inc. Securities Settlement,* c/o Strategic Claims Services, Inc., 600 N. Jackson Street, Suite 205, P.O. Box 230, Media, PA 19063.  **Please do not call the Court with questions about the Settlement.**

## PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND

| **21.  How will my claim be calculated?** |
|---|

54.     The Plan of Allocation set forth below is the plan for calculating claims and distributing the proceeds of the Settlement that is being proposed by Lead Plaintiffs and Co-Lead Counsel to the Court for approval.  The Court may approve this Plan of Allocation or modify it without additional individual notice to the Settlement Class.  Any order modifying the Plan of Allocation will be posted on the Claims Administrator's website at www.strategicclaims.net/novavax/.

55.     As noted above, the Settlement Amount and the interest it earns is the Settlement Fund. The Settlement Fund, after deduction of Court-approved attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court is the Net Settlement Fund.  The Net Settlement Fund will be distributed to members of the Settlement Class who

timely submit valid Claim Forms that show a "Recognized Claim" according to the proposed Plan of Allocation (or any other plan of allocation approved by the Court) ("Authorized Claimants"). Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund, but will still be bound by the Settlement. Claimants bear the burden of establishing their eligibility to recover from the Net Settlement Fund.

56. The objective of this Plan of Allocation is to equitably distribute the Net Settlement Fund among claimants who allegedly suffered economic losses as a result of the alleged wrongdoing. To design this Plan, Co-Lead Counsel conferred with Lead Plaintiffs' consulting damages expert. This Plan is intended to be generally consistent with an assessment of, among other things, the damages that Lead Plaintiffs and Co-Lead Counsel believe were recoverable in the Action. The Plan of Allocation, however, is not a formal damages analysis and the calculations made pursuant to the Plan are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. The calculations pursuant to the Plan of Allocation are also not estimates of the amounts that will be paid to Authorized Claimants. An individual Settlement Class Member's recovery will depend on, for example: (i) the total number and value of claims submitted; (ii) when the claimant purchased Novavax publicly traded common stock; and (iii) whether and when the claimant sold his, her, or its shares of Novavax publicly traded common stock. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund. The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim."

57. For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of the securities at issue. In this case, Lead Plaintiffs allege that Defendants issued materially false statements and omitted material facts during the Class Period, which allegedly artificially inflated the price of Novavax publicly traded common stock. It is alleged that corrective information released to the market after market close on August 5, 2021 and after market close on October 19, 2021 impacted the market price of Novavax common stock in a statistically significant manner and removed the alleged artificial inflation from the share price on August 6, 2021 and October 20, 2021. Accordingly, in order to have a compensable loss in the Settlement, the shares of Novavax common stock must have been purchased/acquired during the Class Period and held through at least one of the alleged corrective disclosure dates listed above.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

58. For purposes of determining whether a claimant has a "Recognized Claim," if a Settlement Class Member has more than one purchase/acquisition or sale of Novavax publicly traded common stock during the Class Period, all purchases/acquisitions and sales will be matched on a "First In/First Out" (FIFO) basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

59. A "Recognized Loss Amount" will be calculated as set forth below for each purchase/acquisition of Novavax common stock during the Class Period from May 11, 2021 through October 19, 2021, inclusive, that is listed in the Claim Form and for which adequate documentation is provided. To the extent that the calculation of a claimant's Recognized Loss Amount results in a negative number, that number shall be set to zero.

60. For each share of Novavax publicly traded common stock purchased/acquired during the Class Period and sold before the close of trading on January 14, 2022, an "Out of Pocket Loss" will be calculated. Out of Pocket Loss is defined as the purchase price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

13

61.     **For each share of Novavax common stock purchased or otherwise acquired from May 11, 2021 through and including October 19, 2021, and:**

A.  Sold before August 6, 2021, the Recognized Loss Amount for each such share shall be zero.

B.  Sold during the period from August 6, 2021 through October 19, 2021, the Recognized Loss Amount for each such share shall be *the lesser of*:

1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below; or

2.  the Out of Pocket Loss.

C.  Sold during the period from October 20, 2021 through January 14, 2022, the Recognized Loss Amount for each such share shall be *the least of*:

1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2.  the actual purchase/acquisition price of each such share *minus* the average closing price from October 20, 2021, up to the date of sale as set forth in **Table 2** below; or

3.  the Out of Pocket Loss.

D.  Held as of the close of trading on January 14, 2022, the Recognized Loss Amount for each such share shall be *the lesser of*:

1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2.  the actual purchase/acquisition price of each such share *minus* $165.45.[4]

**TABLE 1**
**Novavax Common Stock Alleged Artificial Inflation**
**for Purposes of Calculating Purchase and Sale Inflation**

| Transaction Date | Artificial Inflation Per Share |
|---|---|
| May 11, 2021 – August 5, 2021 | $59.79 |
| August 6, 2021 – October 19, 2021 | $23.20 |

---

[4] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Novavax common stock during the "90-day look-back period," October 20, 2021 through January 14, 2022. The mean (average) closing price for Novavax common stock during this 90-day look-back period was $165.45.

14

**TABLE 2**
**Novavax Common Stock Closing Price and Average Closing Price**
**October 20, 2021 – January 14, 2022**

| Date | Closing Price | Average Closing Price Between October 20, 2021 and Date Shown | Date | Closing Price | Average Closing Price Between October 20, 2021 and Date Shown |
|---|---|---|---|---|---|
| 10/20/2021 | $136.86 | $136.86 | 12/3/2021 | $160.48 | $172.61 |
| 10/21/2021 | $138.79 | $137.83 | 12/6/2021 | $141.86 | $171.68 |
| 10/22/2021 | $134.56 | $136.74 | 12/7/2021 | $182.85 | $172.01 |
| 10/25/2021 | $135.35 | $136.39 | 12/8/2021 | $181.75 | $172.29 |
| 10/26/2021 | $134.99 | $136.11 | 12/9/2021 | $177.38 | $172.43 |
| 10/27/2021 | $141.55 | $137.02 | 12/10/2021 | $166.56 | $172.27 |
| 10/28/2021 | $150.62 | $138.96 | 12/13/2021 | $169.06 | $172.19 |
| 10/29/2021 | $148.83 | $140.19 | 12/14/2021 | $168.43 | $172.09 |
| 11/1/2021 | $172.45 | $143.78 | 12/15/2021 | $179.49 | $172.28 |
| 11/2/2021 | $195.30 | $148.93 | 12/16/2021 | $194.92 | $172.83 |
| 11/3/2021 | $195.20 | $153.14 | 12/17/2021 | $217.32 | $173.89 |
| 11/4/2021 | $179.41 | $155.33 | 12/20/2021 | $201.95 | $174.54 |
| 11/5/2021 | $159.19 | $155.62 | 12/21/2021 | $191.07 | $174.92 |
| 11/8/2021 | $173.02 | $156.87 | 12/22/2021 | $183.30 | $175.10 |
| 11/9/2021 | $169.30 | $157.69 | 12/23/2021 | $177.25 | $175.15 |
| 11/10/2021 | $164.19 | $158.10 | 12/27/2021 | $157.80 | $174.78 |
| 11/11/2021 | $169.38 | $158.76 | 12/28/2021 | $155.84 | $174.38 |
| 11/12/2021 | $169.89 | $159.38 | 12/29/2021 | $153.25 | $173.95 |
| 11/15/2021 | $172.45 | $160.07 | 12/30/2021 | $154.83 | $173.57 |
| 11/16/2021 | $170.49 | $160.59 | 12/31/2021 | $143.07 | $172.97 |
| 11/17/2021 | $183.99 | $161.71 | 1/3/2022 | $142.90 | $172.39 |
| 11/18/2021 | $191.05 | $163.04 | 1/4/2022 | $138.45 | $171.75 |
| 11/19/2021 | $192.34 | $164.31 | 1/5/2022 | $122.41 | $170.84 |
| 11/22/2021 | $207.99 | $166.13 | 1/6/2022 | $121.50 | $169.94 |
| 11/23/2021 | $200.71 | $167.52 | 1/7/2022 | $126.70 | $169.17 |
| 11/24/2021 | $200.07 | $168.77 | 1/10/2022 | $134.99 | $168.57 |
| 11/26/2021 | $217.97 | $170.59 | 1/11/2022 | $130.68 | $167.92 |
| 11/29/2021 | $193.96 | $171.43 | 1/12/2022 | $130.17 | $167.28 |
| 11/30/2021 | $208.63 | $172.71 | 1/13/2022 | $112.38 | $166.36 |
| 12/1/2021 | $192.65 | $173.37 | 1/14/2022 | $110.82 | $165.45 |
| 12/2/2021 | $161.97 | $173.00 | | | |

## ADDITIONAL PROVISIONS OF THE PLAN OF ALLOCATION

62.     The sum of a claimant's Recognized Loss Amounts will be the claimant's "Recognized Claim."

63.     If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  The *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all

Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

64.    Purchases or acquisitions and sales of Novavax publicly traded common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" or "sale" date.  The receipt or grant of shares of Novavax publicly traded common stock by gift, inheritance, or operation of law during the Class Period will not be deemed an eligible purchase or acquisition of these shares of Novavax publicly traded common stock for the calculation of a claimant's Recognized Claim, nor will the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such shares of such Novavax publicly traded common stock unless: (i) the donor or decedent purchased such shares of Novavax publicly traded common stock during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Novavax publicly traded common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

65.    In accordance with the Plan of Allocation, the Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero. The Recognized Loss Amount on a "short sale" that is not covered by a purchase or acquisition is also zero.

66.    If a claimant has an opening short position in Novavax publicly traded common stock at the start of the Class Period, the earliest Class Period purchases or acquisitions will be matched against such opening short position in accordance with the FIFO matching described above and any portion of such purchases or acquisition that covers such short sales will not be entitled to recovery.  If a claimant newly establishes a short position during the Class Period, the earliest subsequent Class Period purchase or acquisition will be matched against such short position on a FIFO basis and will not be entitled to a recovery.

67.    Novavax publicly traded common stock is the only security eligible for recovery under the Plan of Allocation.  With respect to Novavax publicly traded common stock acquired or sold through the exercise of an option, the acquisition/sale date of the Novavax publicly traded common stock is the exercise date of the option and the acquisition/sale price is the exercise price of the option.

68.    The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

69.    Distributions will be made to eligible Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and Litigation Expenses, if any, redistribute such balance, in an equitable and economic fashion, among Authorized Claimants who have cashed their checks.  Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to Consumer Federation of America, or such other private, non-profit, non-sectarian 501(c)(3) organization designated by Lead Plaintiffs and approved by the Court.

70.    Payment pursuant to the Plan of Allocation or such other plan of allocation as may be approved by the Court will be conclusive against all claimants.  No person will have any claim against Lead Plaintiffs, Plaintiffs' Counsel, their consulting damages expert, the Claims Administrator, or other agent designated by Co-Lead Counsel, arising from determinations or distributions to claimants made

16

substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or further orders of the Court.  Lead Plaintiffs, Defendants, Defendants' Counsel, and all other Released Parties will have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Claim Form or non-performance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

71.    Each claimant is deemed to have submitted to the jurisdiction of the United States District Court for the District of Maryland with respect to his, her, or its claim.

### SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES

72.    If you purchased or otherwise acquired Novavax publicly traded common stock (CUSIP: 670002401) during the Class Period for the beneficial interest of a person or entity other than yourself, the Court has directed that **WITHIN TEN (10) CALENDAR DAYS OF YOUR RECEIPT OF THE POSTCARD NOTICE**, **YOU MUST EITHER**: (a) provide a list of the names and addresses of all such beneficial owners to the Claims Administrator and the Claims Administrator is ordered to send the Postcard Notice promptly to such identified beneficial owners; or (b) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and **WITHIN TEN (10) CALENDAR DAYS** of receipt of those Postcard Notices from the Claims Administrator forward them to all such beneficial owners. Nominees shall also provide email addresses for all such beneficial owners to the Claims Administrator, to the extent they are available. Nominees who elect to send the Postcard Notice to their beneficial owners SHALL ALSO send a statement to the Claims Administrator confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in the Action.  Nominees are not authorized to print the notices for dissemination.  Notices may only be printed for dissemination by the Claims Administrator.

73.    Upon FULL AND TIMELY compliance with these directions, such nominees may seek reimbursement of their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners of up to: $0.03 per Postcard Notice, plus postage at the current pre-sort rate used by the Claims Administrator, for notices mailed by nominees; or $0.03 per mailing record provided to the Claims Administrator, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Such properly documented expenses incurred by nominees in compliance with the above shall be paid from the Settlement Fund, and any unresolved disputes regarding reimbursement of such expenses shall be subject to review by the Court. All communications concerning the foregoing should be addressed to the Claims Administrator:

*Novavax, Inc. Securities Settlement*
c/o Strategic Claims Services, Inc.
600 N. Jackson Street, Suite 205
P.O. Box 230
Media, PA 19063
(866) 274-4004
www.strategicclaims.net/novavax/
info@strategicclaims.net

Dated: February 6, 2024                     BY ORDER OF THE U.S. DISTRICT COURT
                                            DISTRICT OF MARYLAND

17

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| SOTHINATHAN SINNATHURAI,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>NOVAVAX, INC., STANLEY C. ERCK,<br>GREGORY F. COVINO, JOHN J. TRIZZINO,<br>and GREGORY M. GLENN,<br><br>          Defendants. | Civil Action No. TDC-21-2910 |

**PROOF OF CLAIM AND RELEASE FORM**

**I. GENERAL INSTRUCTIONS**

1. To recover as a member of the Settlement Class based on your claims in the action entitled *Sinnathurai v. Novavax, Inc., et al.,* 8:21-cv-02910-TDC (D. Md.) (the "Action"), you must complete and, on page 22 below, sign this Proof of Claim and Release form ("Claim Form"). If you fail to submit a timely and properly addressed (as explained in paragraph 3 below) Claim Form, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement. Submission of this Claim Form, however, does not assure that you will share in the proceeds of the Settlement.

**2. THIS CLAIM FORM MUST BE SUBMITTED ONLINE AT WWW.STRATEGICCLAIMS.NET/NOVAVAX/ NO LATER THAN MAY 18, 2024 OR, IF MAILED, BE POSTMARKED NO LATER THAN MAY 18, 2024, ADDRESSED AS FOLLOWS:**

*Novavax, Inc. Securities Settlement*
c/o Strategic Claims Services, Inc.
600 N. Jackson Street, Suite 205
P.O. Box 230
Media, PA 19063
www.strategicclaims.net/novavax/

3. Copies of the long-form Notice and Stipulation and Agreement of Settlement, dated January 12, 2024, may be downloaded at www.strategicclaims.net/novavax/.

4. If you are a member of the Settlement Class and you do not timely and properly request exclusion, you are bound by and subject to the terms of any judgment entered in the Action, including the releases provided for, WHETHER OR NOT YOU SUBMIT A CLAIM FORM OR RECEIVE A PAYMENT.

**II. CLAIMANT IDENTIFICATION**

5. If you purchased or otherwise acquired shares of Novavax, Inc. ("Novavax") publicly traded common stock during the period from May 11, 2021 through October 19, 2021, inclusive (the "Class Period"), and held the shares in your name, you are the beneficial owner as well as the record owner. If, however, you purchased/acquired Novavax publicly traded common stock during the Class

Period through a third party, such as a brokerage firm, you are the beneficial owner and the third party is the record owner.

6.      Use **Part I** of this form entitled "Claimant Identification" to identify each beneficial owner of Novavax publicly traded common stock that forms the basis of this claim, as well as the owner of record if different.  THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL OWNERS OR THE LEGAL REPRESENTATIVE OF SUCH OWNERS.

7.      All joint owners must sign this claim.  Executors, administrators, guardians, conservators, trustees, and other legal representatives must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.     IDENTIFICATION OF TRANSACTIONS

8.      Use **Part II** of this form entitled "Schedule of Transactions in Novavax Publicly Traded Common Stock" to supply all required details of your transaction(s) in Novavax publicly traded common stock.  If you need more space or additional schedules, attach separate sheets providing all the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

9.      On the schedules, provide all the requested information with respect to your holdings, purchases/acquisitions, and sales of Novavax publicly traded common stock, whether the transactions resulted in a profit or a loss.  Failure to report all such transactions may result in the rejection of your claim.

10.      The date of covering a "short sale" is deemed to be the date of purchase/acquisition of Novavax publicly traded common stock.  The date of a "short sale" is deemed to be the date of sale.

11.      Copies of broker confirmations or other documentation of your transactions must be attached to your claim.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.  **THE PARTIES TO THE ACTION DO NOT HAVE INFORMATION ABOUT YOUR TRANSACTIONS IN NOVAVAX PUBLICLY TRADED COMMON STOCK.**  Claimants bear the burden of establishing their eligibility to recover from the Settlement.

12.      NOTICE REGARDING INSTITUTIONAL FILERS: Certain filers submitting claims on behalf of other beneficial owners ("Representative Filers") with large numbers of transactions may request to, or may be asked to, submit information regarding their transactions in electronic files. (This is different than the online claim portal on the Claims Administrator's website.)  All such Representative Filers MUST also submit a manually signed paper Claim Form whether or not they also submit electronic copies.  If you are a Representative Filer and wish to submit your claim electronically, you must contact the Claims Administrator at (866) 274-4004 or visit their website at https://www.strategicclaims.net/institutional-filers/to obtain the required file layout.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

13.      NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.strategicclaims.net/novavax/. If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator prior to filing.  You will receive an automated e-mail confirming receipt once your Claim Form has been submitted. If you are unsure if you should submit your claim as a Representative Filer, please contact the Claims Administrator at info@strategicclaims.net or (866) 274-4004. If you are not a Representative Filer, but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form.

## PART I – CLAIMANT IDENTIFICATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

| | | |
|---|---|---|
| Beneficial Owner's Name | | |
| Co-Beneficial Owner's Name | | |
| Entity Name (if claimant is not an individual) | | |
| Representative or Custodian Name (if different from Beneficial Owner(s) listed above) | | |
| Address 1 (street name and number): | | |
| Address 2 (apartment, unit, or box number): | | |
| City | State | ZIP/Postal Code |
| Foreign Country (only if not USA) | Foreign County (only if not USA) | |
| Telephone Number (home) | Telephone Number (work) | |
| Email Address | | |
| Account Number (if filing for multiple accounts, file a separate Claim Form for each account) | | |
| Social Security Number (last four digits only) | **OR** | Taxpayer Identification Number (last four digits only) |

Claimant Account Type (check appropriate box):
- ☐ Individual (includes joint owner accounts)          ☐ Pension Plan          ☐ Trust
- ☐ Corporation          ☐ Estate
- ☐ IRA/401K          ☐ Other _____ (please specify)

NOVAVAX

## PART II – SCHEDULE OF TRANSACTIONS IN NOVAVAX PUBLICLY TRADED COMMON STOCK

| | | | |
|---|---|---|---|
| 1. BEGINNING HOLDINGS – State the total number of shares of Novavax publicly traded common stock held as of the opening of trading on May 11, 2021. If none, write "0" or "Zero." (Must submit documentation.) _____ | | | |

**2. PURCHASES/ACQUISITIONS DURING THE CLASS PERIOD** – Separately list each and every purchase/acquisition of Novavax publicly traded common stock from after the opening of trading on May 11, 2021 through and including the close of trading on October 19, 2021. (Must submit documentation.)

| Date of Purchase (List Chronologically) (MM/DD/YY) | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**3. PURCHASES/ACQUISITIONS DURING 90-DAY LOOKBACK PERIOD** – State the total number of shares of Novavax publicly traded common stock purchased/acquired from after the opening of trading on October 20, 2021 through and including the close of trading on January 14, 2022.[5] (Must submit documentation.)

_____

**4. SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every sale of Novavax publicly traded common stock from after the opening of trading on May 11, 2021 through and including the close of trading on January 14, 2022. (Must submit documentation.)

| Date of Sale (List Chronologically) (MM/DD/YY) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**5. ENDING HOLDINGS –** State the total number of shares of Novavax publicly traded common stock held as of the close of trading on January 14, 2022. If none, write "0" or "Zero." (Must submit documentation.) _____

| |
|---|
| **IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐ |

---

[5] Information requested in this Claim Form with respect to your transactions after the opening of trading on October 20, 2021 through and including the close of trading on January 14, 2022 is needed only for the Claims Administrator to confirm that you have reported all relevant transactions. Purchases/acquisitions during this period, however, are not eligible for a recovery because these purchases/acquisitions are outside of the Class Period.

22

## IV.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

14.    By signing and submitting this Claim Form, the claimant(s) or the person(s) acting on behalf of the claimant(s) certify(ies) that: I (We) submit this Claim Form under the terms of the Plan of Allocation of Net Settlement Fund described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the District of Maryland (the "Court") with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the releases set forth in the Settlement.  I (We) further acknowledge that I (we) will be bound by and subject to the terms of any judgment entered in connection with the Settlement of the Action, including the releases provided for.  I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in eligible publicly traded Novavax common stock, if required to do so.  I (We) have not submitted any other claim covering the same transactions in publicly traded Novavax common stock during the Class Period and know of no other person having done so on my (our) behalf.

## V.    RELEASES, WARRANTIES, AND CERTIFICATION

15.    I (We) hereby warrant and represent that I am (we are) a Settlement Class Member as defined in the Notice, that I am (we are) not excluded from the Settlement Class, that I am (we are) not one of the "Released Defendant Parties" as defined in the Notice.

16.    As a Settlement Class Member, I (we) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, and discharge with prejudice the Released Plaintiffs' Claims as to each and all of the Released Defendant Parties (as these terms are defined in the Notice).  This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

17.    I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

18.    I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions, and sales of publicly traded Novavax common stock that occurred during the requested time period and the number of shares held by me (us), to the extent requested.

19.    I (We) certify that I am (we are) NOT subject to backup tax withholding.  (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, 2024

_____          _____
Signature of claimant                                        Type or print name of claimant

_____          _____
Signature of joint claimant, if any                     Type or print name of joint claimant

_____          _____
Signature of person signing on behalf          Type or print name of person signing
of claimant                                                          on behalf of claimant

_____
Capacity of person signing on behalf of claimant, if other than an individual (*e.g.,* Administrator, Executor, Trustee, President, Custodian, Power of Attorney, etc.)

23

THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK

Novavax, Inc. Securities Settlement
c/o Strategic Claims Services, Inc.
600 N. Jackson Street, Suite 205
Media, PA 19063

**IMPORTANT LEGAL NOTICE – PLEASE FORWARD**

**REMINDER CHECKLIST:**

1. Please sign this Claim Form.
2. DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.
3. Attach only copies of supporting documentation as these documents will not be returned to you.
4. Keep a copy of your Claim Form for your records.
5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. **Your claim is not deemed submitted until you receive an acknowledgment postcard.** If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll free at (866) 274-4004.
6. If you move after submitting this Claim Form please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.

# EXHIBIT C

## AFFIDAVIT

**STATE OF NEW JERSEY**                     )

                                                   ) ss:

**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX )**

I, Wayne Sidor, being duly sworn, depose and say that I am the Advertising Clerk of the

Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general

circulation throughout the United States, and that the notice attached to this Affidavit

has been regularly published in THE WALL STREET JOURNAL for National

distribution for

1 insertion(s) on the following date(s):  02/20/2024

ADVERTISER: NOVAVAX, INC.

and that the foregoing statements are true and correct to the best of my knowledge.

_Wayne Sidor_

Sworn to
before me this 21th
day of February 2024

Notary Public



**B2** | Tuesday, February 20, 2024

THE WALL STREET JOURNAL.

## INDEX TO BUSINESSES

These indexes cite notable references to most parent companies and businesspeople in today's edition. Articles on regional page inserts aren't cited in these indexes.

### A
Advanced Micro Devices ...... B6,B10
Airbnb ...................................... A1
Albemarle ........................ B1,B10
Ally Financial ........................ R8
Alphabet ........................ B6,B10
Amazon.com .................... B6,B10
AMC Entertainment ........ B6
Apple ............................ B6,B10
Arrival ................................ B2

### B
BHP Group ............................ B1
Boston Consulting ............. R8
BYD ...................................... B4
ByteDance ............................ B1

### C-D
Capital One .......................... A1
Charles Schwab ................. B2
Chegg .................................... B6
Cheung Kei Group ............. B5
Chevron ............................... B2
China Evergrande ............. B5
Cisco ..................................... R8
Currys .................................... B9
Diamondback Energy ........ B1

### Discover Financial
Discover Financial .............. A1
DoorDash .............................. A1

### F
Fasken Oil and Ranch ....... A3
Ford Motor ........................... B2

### G
General Motors ................... B2
Glencore ............................... B1
GlobalFoundries ................ B1

### H
Habitat Property .................. B5
Hess ..................................... B2
Home Depot .......................... B9

### I
IGO ........................................ B2
Intel ...................................... B2

### J
JD.com .................................. B9

### K
Kyokuto Securities ........... B10

### L-M
Liberty Energy ................... B2
Liontown Resources ........ B10
Meta Platforms ................... B6

### Micron Technology
Micron Technology ............. B1
Microsoft ............................ B10
Morgan Stanley ................... B6

### N
Netflix .................................. B6
Nvidia .......................... B9,B10

### P
Pilbara Minerals ............... B10

### R
Robinhood Markets ............ B6

### S
Samsung Electronics ........ B1
Savills .................................. B1
Sigma Lithium .................... B2
Sony Group ........................... B3
SoundThinking ................... A3
SpaceX .................................. B4

### T-X
Taiwan Semiconductor ...... B1
Teladoc Health ................... B6
Tesla ............... B2,B4,B6,B10
Visa ...................................... A1
Walmart ............................... B9
Walt Disney .................... B3, B6
Xoo ....................................... B1

## INDEX TO PEOPLE

### A
Allan, Victoria ..................... B5

### B
Bueno, Caroline Orr ........... B4
Buffett, Warren .................... B4

### C
Chancellor, Walt ................ B2
Cheng, Victor ...................... B5
Chen Hongtian ................... B5
Chittum, Thomas ................ A3
Christin, Angèle ................. R5
Craig, Peter ........................ B2

### F
Fisher, James ..................... B5

### G
Gantz, Benny ....................... A6
Gelsinger, Pat ..................... B2

### H
Harper, Brian ...................... B5
Horsnell, Paul ...................... B1
Hui, Ka Yan ......................... B5

### I
Iyer, Sesh ............................. R8

### K
Kikuchi, Hiroyuki ............. B10
Kikuchi, Kazuhiro ............ B10
Kwai Sze Hoi ....................... B5

### L
Lai, Cherrie ......................... B1
Lannan, Kelly ...................... B6
Lute, Douglas ...................... A7

### M
Martielli, James ................. B6
Muthukrishnan, Sathish ... R8

### N
Noriega, Ally ....................... R5
Noriega, Ricardo ................ R5

### O
Oestmann, Michael ........... B2

### P
Previn, Fletcher ................. R8

### R
Rabois, Keith ....................... A1
Raffiee, Joe .......................... R5
Raimondo, Gina .................. B2
Rhodes, Michael ................. A2

### S
Sampson, David .................. B5
Smith, Pamela ..................... B6
Stoltenberg, Jens ............... A7
Symington, Charles ........... B5

### V
Virts, Terry ........................... B4

### W
Wright, Chris ...................... B2

### Y
Yazdian, Allison .................. R5

### Z
Zeringue, Angelyn Treutel ................................. B5
Zumwalt-Forbes, Ashley ... B2

## BUSINESS & FINANCE



Some automakers such as General Motors are delaying investments and striking a more cautious tone about the EV outlook.

CARLOS OSORIO/ASSOCIATED PRESS

## EV Metals Demand Is Cooling

*Continued from page B1*
business for an unspecified period, cautioning that it doesn't anticipate a quick market recovery. BHP has supply deals with **Tesla** and **Ford Motor**.

The world is suddenly awash with the metals after producers geared up new projects to feed the global EV industry and sales of the vehicles have been losing momentum.

Several automakers, including Ford, **General Motors** and Volvo, are delaying investments and striking a more cautious tone about the outlook for EV consumer demand. British electric-vehicle maker **Arrival**'s U.K. business filed for bankruptcy this month, citing challenging macroeconomic and market conditions that delayed its products getting to market.

Boom-and-bust cycles are commonplace in metals markets, given demand can be unpredictable and new mines typically take many years to develop.

Some analysts see the scale of the cutbacks to date as subdued, a possible indication that some miners remain sanguine about longer-term demand.

EV adoption is happening, just not as rapidly as anticipated, and sharply lower metal prices could help automotive companies reignite sales growth by luring buyers with cheaper models and discounts. The mining slowdown risks shortages of the metals if demand quickly heats up, once again leaving carmakers scrambling for supplies.

Most large suppliers in the fledgling lithium industry have favored pausing coming projects over shutting down existing operations, bolstered by cash piles built up in recent years when prices for the commodity were surging.

In the more-established nickel industry, some miners say they have been left with no choice but to close unprofitable mines that are struggling to compete with cheap Indonesian exports. The downturn has wiped out more than one-fifth of Australia's mine supply, according to Benchmark Mineral Intelligence.

Australian officials on Friday designated nickel as a critical mineral, a move that will give companies the opportunity to apply for government grants.

Some Western policymakers fear the current situation will derail recent efforts to diversify critical-mineral supply chains away from China. Officials also have concerns that global markets will be full of metal from low-cost but high-polluting mines if producers with stricter standards are priced out.

"The global nickel situation is dire and it is, in my view, an extreme threat to national/international security as well as the environment," U.S. Department of Energy deputy director for batteries and critical materials Ashley Zumwalt-Forbes said in a LinkedIn post.

Until recently, American lithium giant Albemarle was riding high, pursuing aggressive expansion plans. Now its share price is down 57% from a year ago.

Albemarle hasn't said how long it might hold back spending on the proposed South Carolina plant, which was supposed to begin construction this year and produce enough lithium for roughly 2.4 million electric vehicles annually.

Chief Executive Kent Masters told investors last week that "where prices are today, the economics aren't there for those projects," but that the company would continue to seek permits. He said the South Carolina plant project is delayed, not canceled, though the company isn't doing construction and has stopped engineering work on it.

If prices stay where they are, production will come off and eventually push prices upward, Masters said.

Some lithium producers are trying to take advantage of the tumult. **Sigma Lithium**, which has operations in Brazil, is capturing market share because of its lower costs of processing, said Chief Executive Ana Cabral.

"We're investing. If the market dips further, we're going to keep on producing. We'll make less money, but we'll make money," Cabral said.

Some nickel miners don't have that option. **IGO**, an Australian battery metals producer, says it couldn't find any way to make its Cosmos nickel operation in Western Australia viable. It will shutter that operation by the end of May.

Mothballing any mine is a difficult choice, mining executives say, as companies pay ongoing maintenance costs that can run into millions of dollars a month when they aren't producing anything to sell.

"Everyone was so excited because [nickel] had found a home" in batteries needed for the EV boom, said Peter Craig, who runs a contracting business that offers garbage removal and other services from an Australian nickel-mining town. He anticipated a sustained boom that now seems less of a sure bet.

"We thought, here's the future for nickel for the next 25 years. But, you know, nobody can predict these things," Craig said.

## Boom in U.S. Oil Weakens

*Continued from page B1*
half the Permian Basin's production increase between December 2019 and March 2023, according to S&P Global Commodity Insights.

The Permian Basin, which straddles West Texas and southeast New Mexico, has accounted for nearly all the country's oil output growth since the pandemic. Last year, the U.S. produced an estimated 12.9 million barrels of oil a day, which would be a record and more than any other country.

But the number of oil rigs operating in the U.S. has dropped nearly 20% since the end of 2022 to about 500, according to oilfield services firm Baker Hughes.

The decline signals a huge deceleration in growth could be coming, since so many wells have been drilled recently and because a shale well's output declines most rapidly early in its life, said Standard Chartered's Horsnell.

Thirty-nine private exploration and production companies were also acquired by public companies in 2023, according to analytics firm Enverus. That includes four of the big 10 that powered the Permian's postpandemic comeback.

Deal-making mania has depleted the country's supply of untapped wells. Companies looking to sell themselves often frack previously drilled wells to boost output and appear more attractive to buyers.

**Hess**, for example, dramatically ramped up fracking in North Dakota's Bakken region before its takeover by **Chevron** was announced in October, according to research firm Energy Aspects.

Meanwhile, bigger players have to work on integrating their acquisitions. They also tend to narrow their focus to the best prospects of the combined companies, said Michael Oestmann, chief executive of Tall City Exploration, a Permian-based private operator.

"The buyer gets it and now he starts prioritizing," said Oestmann.

Still, some analysts believe the U.S. oil industry could surprise the market again. Walt Chancellor, an energy strategist at Macquarie, expects it to produce 660,000 barrels a day more in December of this year than it did in the same month in 2023 since drilling efficiencies tend to rise as rig counts fall. The remaining private companies—along with new ones—also could step up production, he said.

"We've seen these guys re-emerge over and over and over, so that's one of the key things to watch in 2024," said Chancellor.

Even large public companies will find a way to amp up output if prices are high enough for long enough, said Chris Wright, the chief executive of fracking firm **Liberty Energy.**

"People are not going to change plans for short-term blips," Wright said, "but the U.S. capacity to grow oil production, that's not gone."

> **Production's 'ease in growth has gone,' according to one analyst.**



### Listen to a Podcast: ARK's Cathie Wood On the AI Boom—and Nvidia



Scan this code for a podcast with Cathie Wood, CEO and chief investment officer of ARK Invest—who recently went from a buyer to a seller of chipmaker Nvidia's stock —on what she sees ahead for investors.

LIANNA APISUKH FOR THE WALL STREET JOURNAL

## First Grants Announced For Chips

*Continued from page B1*
sands of hardworking Americans in automotive manufacturing sites all across the country," Commerce Secretary Gina Raimondo said in a call with reporters.

In addition to boosting domestic chip making, the U.S. has sought to limit China's influence in the industry, including by cutting China off from advanced semiconductors used in artificial-intelligence computing over worries they could be used in military and cyber-espionage operations.

Rollout of the Chips Act hasn't been smooth, and the pace of progress has frustrated some industry executives. It has taken more than a year to set up the office that oversees the grant program and start making big awards.

The act represents a rare U.S. foray into industrial policy, which some critics see as problematic because of the government's role in picking winners.

The chip industry seeks to recover from an extended downturn. Global chip sales fell 8.2% in 2023 to $526.8 billion, although the pace picked up in the year's second half.

Some of the biggest chip makers, such as TSMC and Intel, have slowed construction on factories from their initial plans. The chip makers have said they are committed to finishing their projects, however.

Other project barriers remain, even as the market recovers. Projects at the scale planned by some chip makers could face permitting issues; federal environmental reviews can take several years. Companies also have expressed concerns about whether there will be enough skilled workers.

The $1.5 billion award to GlobalFoundries will help fund a new chip factory in Malta, N.Y., a town about 30 miles north of Albany, and expand existing facilities there, according to the Commerce Department. GlobalFoundries is a major manufacturer of chips for cars, and last year reached a long-term supply agreement with **General Motors**.

The new investment will help the company triple its manufacturing capacity in New York over the next decade, the Commerce Department said.

Another factory in Burlington, Vt., will be updated for high-volume manufacture of gallium-nitride chips, which are critical in electric-vehicle and telecommunications applications.

In addition to the grant funding, the U.S. is making $1.6 billion of loans available to the company. The total potential investment in the projects would be about $12.5 billion, with the government grant and loan covering a portion of the cost.

The projects are expected to create 9,000 construction jobs and 1,500 manufacturing jobs. GlobalFoundries is also agreeing to support workforce-development initiatives and extend an existing $1,000 annual child-care subsidy to construction workers.

Before Monday's announcement, the office within the Commerce Department that oversees grants had made two awards. The first, in December, was worth $35 million and went to **BAE Systems**. The second, in January, was worth $162 million and went to **Microchip Technology.**

Raimondo said there would be many more announcements in the coming months. More than 170 companies have applied for manufacturing grants.

Chip-industry executives have said they are expecting big awards to be announced before President Biden's State of the Union address on March 7. Intel Chief Executive Pat Gelsinger attended the address in 2022.

---

**ADVERTISEMENT**

# The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

## CLASS ACTION

**IN THE UNITED STATES DISTRICT COURT, DISTRICT OF MARYLAND**

SOTHINATHAN SINNATHURAI, Individually and on Behalf of All Others Similarly Situated,
    Plaintiff,
v.
NOVAVAX, INC., STANLEY C. ERCK, GREGORY F. COVINO, JOHN J. TRIZZINO, and GREGORY M. GLENN,
    Defendants.

Civil Action No.
TDC-21-2910

**SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**To: all persons or entities who or which, during the period from May 11, 2021 through October 19, 2021, inclusive, (the "Class Period") purchased or otherwise acquired the publicly traded common stock of Novavax, Inc. ("Novavax") and were damaged thereby (the "Settlement Class").**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Maryland, that Court-appointed Lead Plaintiffs, on behalf of themselves and all members of the proposed Settlement Class; and Novavax; and Stanley Erck, Gregory Covino, John Trizzino, and Gregory Glenn (collectively, the "Individual Defendants" and, with Novavax, "Defendants"), have reached a proposed settlement of the claims in the above-captioned class action (the "Action") in the amount of $47,000,000 (the "Settlement").

A hearing will be held before the Honorable Theodore D. Chuang, either in person or remotely in the Court's discretion, on May 23, 2024, at 2:30 p.m. at the United States Courthouse, United States District Court, District of Maryland, 6500 Cherrywood Lane, Greenbelt, MD 20770 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated January 12, 2024; (iii) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (iv) approve Co-Lead Counsel's Fee and Expense Application. The Court may change the date of the Settlement Hearing, or hold it remotely, without providing another notice. You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

**IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT.** If you have not yet received a Postcard Notice, you may obtain copies of the Postcard Notice, long-form Notice, and Claim Form by visiting the Claims Administrator's website, www.strategicclaims.net/novavax/, or by contacting the Claims Administrator at:

Novavax, Inc. Securities Settlement
c/o Strategic Claims Services, Inc.
600 N. Jackson Street, Suite 205, P.O. Box 230, Media, PA 19063
(866) 274-4004
info@strategicclaims.net

Inquiries, other than requests for copies of notices or about the status of a claim, may also be made to Co-Lead Counsel:

**LABATON KELLER SUCHAROW LLP**
Michael H. Rogers, Esq.
140 Broadway, New York, NY 10005
www.labaton.com
settlementquestions@labaton.com
(888) 219-6877

**POMERANTZ LLP**
Brian Calandra, Esq.
600 Third Avenue, 20th Floor, New York, NY 10016
www.pomlaw.com
bcalandra@pomlaw.com
(212) 661-1100

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form *postmarked or submitted online no later than May 18, 2024.* If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice available on the Claims Administrator's website, and such request must be *received no later than May 2, 2024.* If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Co-Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice available on the Claims Administrator's website, such that they are *received no later than May 2, 2024.*

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE**

DATED: FEBRUARY 20, 2024
BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT, DISTRICT OF MARYLAND

---

## BUSINESS OPPORTUNITIES

**MEDICAL WHOLESALER FOR SALE**
**Distributor in Canada,**
**Established over 70 years ago.**
Ideal opportunity to enter the North American market through an acquisition. Has developed an extensive network of sub-distributors throughout Canada and to a lesser extent in the USA. Possess all the certifications and licenses to sell medical supplies to government ,hospitals and educational institutions ,which break the barriers to entry.
Also service the dental ,veterinary ,industrial first aid, home health care laboratory, physiotherapy and pharmacy sectors.
**Contact Arthur Marks**
lasyentas@hotmail.com

## TRAVEL



**Paddle in the Arctic this Summer?**

• Seaplane-accessed true wilderness journeys
• By canoe or kayak, for every skill level & age
• Expert guides for small group or private trips
Venture deep into the Canadian Arctic. **Interested?**
Email: dan@jackpinepaddle.com

## mcraig@strategicclaims.net

| | |
|---|---|
| **From:** | phhubs@prnewswire.com |
| **Sent:** | Tuesday, February 20, 2024 9:00 AM |
| **To:** | mcraig@strategicclaims.net |
| **Subject:** | PR Newswire: Press Release Distribution Confirmation for Labaton Keller Sucharow LLP. ID#4082818-1-1 |

Hello

Your press release was successfully distributed at: 20-Feb-2024 09:00:00 AM ET


Release headline: Labaton Keller Sucharow LLP and Pomerantz LLP Announce Proposed Settlement of Class Action on Behalf of Purchasers of Novavax, Inc. Publicly Traded Common Stock in Sinnathurai v. Novavax, Inc., et al., No. 8:21-cv-02910-TDC (D. Md.)
Word Count: 793
Product Selections:
US1
Visibility Reports Email
Complimentary Press Release Optimization
PR Newswire ID: 4082818-1-1


View your release:* https://www.prnewswire.com/news-releases/labaton-keller-sucharow-llp-and-pomerantz-llp-announce-proposed-settlement-of-class-action-on-behalf-of-purchasers-of-novavax-inc-publicly-traded-common-stock-in-sinnathurai-v-novavax-inc-et-al-no-821-cv-02910-tdc-d-md-302060017.html?tc=eml_cleartime

Thank you for choosing PR Newswire!

Regards,

Your 24/7 Content Services Team
888-776-0942
PRNCS@prnewswire.com

Achieve your communications goals every time you distribute content, with these tips for crafting your next perfect press release: https://www.cision.com/us/resources/tip-sheets/easy-pr-sharing-guide/?sf=false

US Members, find audience, engagement and other key metrics for your release by accessing your complimentary Visibility Reports in the Online Member Center: https://portal.prnewswire.com/Login.aspx

* If the page link does n ot load immediately, please refresh and try again after a few minutes.

1

# EXHIBIT D

# EXCLUSION REQUEST NO. 1

Novavax, Inc. Securities Settlement

℅ Strategic Claims Services, Inc.

600 N. Jackson Street, Suite 205

P.O. Box 230

Media, PA19063

13/03/2024

Dear Sir/Madam

RE: Novavax Inc. - Class Action Litigation

I wish to exclude myself from the Settlement Class in Sinnathurai v. Novavax Inc., et al., 8:21-cv02910-TDC (D. Md.).

I purchased 5 USD0.01 Novavax shares on 24/09/2021 @ USD 251 and sold the 5 shares on 27/09/2021 @ USD 234.69003841. I enclose a copy of the contract note for the purchase.


Yours faithfully


David Harden

My address is
and e-mail address is                    Sidcup, Kent, DA144JU, UK. My phone is

Hargreaves Lansdown is a trading name of Hargreaves Lansdown Asset Management Limited. Authorised and regulated by the Financial Conduct Authority, No. 115248 Company registered in England and Wales No. 01896481. A member firm of the London Stock Exchange. A Wholly Owned Subsidiary of Hargreaves Lansdown Plc.

# HARGREAVES LANSDOWN

# Contract Note

One College Square South
Anchor Road
Bristol
BS1 5HL

Share Dealing:
(0117) 980 9800
Fund Dealing:
(0117) 980 9807
Helpdesk:
(0117) 900 9000
www.hl.co.uk

**Mr David Harden**

**Sidcup**
**Kent**
**DA14 4JU**

**A/C Designation :**

Date  **24/09/2021**         Time **14:37**         Contract Note No.
(To be quoted in all correspondence)

We have today on your instructions          **\*\*BOUGHT\*\***          the security detailed below.

# IMPORTANT

Please check all details are correct.
You should advise us of any discrepancy immediately

| Quantity | Security | Price | Consideration |
|---|---|---|---|
| 5.00 | US6700024010  **STOCK CODE: NVAX**<br>Novavax Inc<br>USD0.01<br><br>Price (USD)  251<br>Exchange rate  0.7305<br>Price (pence)  18335.55<br><br><br>Market Order<br>Venue of Execution: London Stock Exchange MTF (XLO<br>Broker: Peel, Hunt & Co | | **GBP 916.78** |
| | Dealing charge<br>FX Charge<br><br>Total Charges | | 5.95<br>9.17<br><br>15.12 |
| | These shares/units have been dealt using the following account: | | |
| **HL Stocks & Shares ISA** | Settlement Date:  **28/09/2021** | | **931.90** |

E and OE

Note:
Retain this document as a record of your investment.
Always quote your client number and contract note number in correspondence.
This contract is subject to our normal terms and conditions of business and may also be subject to the rules of the London Stock Exchange.
Details of any commission shared with third parties is available upon request.

£2.20

BY AIR MAIL
par avion
Royal Mail®

NOVAVAX, INC. SECURITIES SETTLEMENT
c/o STRATEGIC CLAIMS SERVICES, INC.
600 N. JACKSON STREET, SUITE 205
P.O. BOX 230
MEDIA, PA 19063
U.S.A.