**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| SOTHINATHAN SINNATHURAI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NOVAVAX, INC, STANLEY C. ERCK, GREGORY F. COVINO, JOHN J. TRIZZINO, and GREGORY M. GLENN, <br><br> Defendants. | Civil Action No. TDC-21-2910 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF (1) LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION, AND (2) CO-LEAD COUNSEL'S MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 4

I.     THE REACTION OF THE SETTLEMENT CLASS SUPPORTS APPROVAL OF THE SETTLEMENT AND THE PLAN OF ALLOCATION. ........................ 4

II.    THE REACTION OF THE SETTLEMENT CLASS SUPPORTS APPROVAL OF THE REQUESTED ATTORNEYS' FEES AND EXPENSES. ...................... 6

III.   THE OBJECTIONS TO APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND ATTORNEYS' FEE AND EXPENSE APPLICATION SHOULD BE OVERRULED ................................................................................ 6

        A.    The Settlement Is a Very Favorable Result for the Settlement Class in the Face of Great Uncertainty ............................................................................ 7

        B.    The Sekula Objection to the Plan of Allocation Should Be Overruled .... 12

        C.    The Objections to Co-Lead Counsel's Fee and Expense Application Should Be Overruled .................................................................................. 14

IV.   CONCLUSION ..................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AT&T Corp. Sec. Litig.*,
 Civ. No. 00–5364 (GEB), 2005 WL 6716404 (D.N.J. Apr. 25, 2005) ......................................5

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
 No. 09 MDL 2058(DC), 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ...................................11

*Berry v. Schulman*,
 807 F.3d 600 (4th Cir. 2015) ..................................................................................................6

*Boger v. Citrix Sys., Inc.*,
 No. 19-CV-01234-LKG, 2023 WL 3763974 (D. Md. June 1, 2023) ........................................9

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.,
 HQ*,
 322 F. Supp. 3d 676 (D. Md. 2018) .......................................................................................10

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) ...............................................................................................................10

*Earls v. Forga Contracting, Inc.*,
 No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921 (W.D.N.C. June 8, 2020) .....................14

*Ferrell v. Buckingham Prop. Mgmt.*,
 No. 119CV00332NONESAB, 2020 WL 4364647 (E.D. Cal. July 30, 2020) .........................15

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 855 F. Supp. 825 (E.D.N.C. 1994) ......................................................................................5, 9

*In re Celebrex (Celecoxib) Antitrust Litig.*,
 No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) .........................................14

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ......................................................................................5

*In re Conventry Healthcare, Inc. Sec. Litig.*,
 No. 08:09-CV-2337-AW, 2011 WL 3880431 (S.D.N.Y. 2013) .............................................10

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales
 Pracs.*,
 No. 1:15-md-2627, 2018 WL 11203065 (E.D. Va. Oct. 9, 2018), *aff'd*, 952
 F.3d 471 (4th Cir. 2020) ......................................................................................................4, 5

*In re MicroStrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) ...........................................................................8

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ...........................................................4, 5, 6, 10, 13

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)..................................15

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir.2005)................................................................................6

*Krakauer v. Dish Network, L.L.C.*,
   No. 1:14-CV-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) .........................................6, 14

*Orman v. Am. Online, Inc.*,
   Civ. A. No. 97-264-A, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998) .....................................9

*Taylor v. First Union Corp. of South Carolina*,
   857 F.2d 240 (4th Cir. 1988) ............................................................................8

## Other Authorities

*Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone
   Research 2024)...........................................................................................7

Lead Plaintiffs and Co-Lead Counsel respectfully submit this reply memorandum of law in further support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (ECF No. 131), and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (ECF No. 133) (collectively, the "Motions").[1]

## INTRODUCTION

On January 23, 2024, the Court entered an order preliminarily approving the Settlement and approving the methods of providing notice to the Settlement Class. ECF No. 129 (the "PAO"). Pursuant to the PAO, on February 6, 2024, Court-appointed Claims Administrator Strategic Claims Services ("SCS") mailed the Postcard Notice to all shareholders of record identified by Novavax's transfer agent. *See* Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Requests for Exclusion Received to Date ("Initial Mailing Decl.") (ECF No. 135-1), at ¶¶ 3-4. Because most Settlement Class Members are expected to be beneficial purchasers whose securities are held in "street name," SCS also mailed the Postcard Notice to its proprietary list of the largest and most common banks, brokers, and other nominees on February 5, 2024. *Id.* at ¶¶ 5-7. SCS further sent notice to the Depository Trust Company (DTC) to publish on its Legal Notice System ("LENS"), which reaches nominees and institutional investors. *Id.* at ¶ 6. Finally, pursuant to the PAO, the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet via *PR Newswire* on February 20, 2024. *Id.* at ¶ 10. The long-form Notice and Claim Form were also posted for review and

---

[1] "Lead Plaintiffs" means Lead Plaintiffs Jeffrey A. Gabbert, Nuggehalli Balmukund Nandkumar, and David Truong. "Plaintiffs' Counsel" means Labaton Keller Sucharow LLP, Pomerantz LLP, Cohen Milstein Sellers & Toll LLP, Portnoy Law Firm, Hagens Berman Sobol Shapiro LLP, and Johnson Fistel, LLP. All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated January 12, 2024 (the "Stipulation"), previously filed with the Court (ECF No. 127-3).

download on the settlement webpage created by SCS. *Id.* at ¶ 12.

The PAO and notifications requested that nominees who purchased or otherwise acquired Novavax common stock during the Class Period for the beneficial interest of a person or entity other than themselves to either: (i) within ten calendar days of receipt of the Postcard Notice, request sufficient copies of the Postcard Notice to forward to all such beneficial owners and within ten calendar days of receipt of the Postcard Notices, to forward them to all such beneficial owners; or (ii) within ten calendar days of receipt of the Postcard Notice, provide a list of the names and addresses (and e-mail addresses, if available) of all such beneficial owners to SCS. *Id.* at ¶ 5.

Thereafter, SCS received, and timely responded to, requests from nominees for additional unaddressed copies of the Postcard Notices and names/addresses/emails from nominees for forwarding of notices directly by SCS to potential Settlement Class Members identified by the nominee. *Id.* at ¶ 7. Through April 10, 2024, 305,335 potential Settlement Class Members and nominees were notified of the Settlement and its terms by either mailed Postcard Notice or emailed direct link to the notice documents. *Id.* at ¶¶ 7-9. As of May 13, 2024, 305,367 potential Settlement Class Members and nominees have been notified of the Settlement and its terms by either mailed Postcard Notice or emailed direct link to the notice documents. *See* Supplemental Declaration of Josephine Bravata Concerning (A) Mailing of the Postcard Notice; (B) Report on Requests for Exclusion and Objections Received to Date; and (C) Claims Received to Date, at ¶ 3 ("Supplemental Mailing Decl."), filed simultaneously herewith. Further, as of May 13, 2024, the webpage SCS established and maintains for this Settlement has received 128,907 pageviews by 26,408 unique users. *Id.* at ¶ 5.

The notices described, *inter alia*, the elements of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, and the right to object or to seek to be

excluded from the Settlement Class. *See generally* Mailing Decl., Exs. A & B. The notices also gave the deadlines for objecting, seeking exclusion, and submitting claims, and advised potential Settlement Class Members of the scheduled Settlement Hearing before this Court. *Id.* The deadline to object to the Settlement or request exclusion from the Settlement Class was May 2, 2024. *Id.* at 3.

In response to the dissemination of over 305,367 Postcard Notices or emails to potential Settlement Class Members and their nominees, there have been only three objections to the Settlement, the Plan of Allocation and/or Co-Lead Counsel's motion for attorneys' fees and expenses. Supplemental Mailing Decl. at ¶ 3, 7 and Ex. B at 2-6 ("Sekula Obj."), at 7-16 ("Floor Obj."), at 11-23 ("Kovarik Obj." together, the "Objections"). These three Objections represent a total of approximately 740 common shares out of upwards of 70 million shares outstanding during the Class Period and tens of millions of allegedly damaged shares. *See* Sekula Obj. (140 shares); Floor Obj. (300 shares); Kovarik Obj. (300 shares reported); *see also* Expert Report of Chad Coffman, CFA dated March 16, 2023 ("Expert Report") (ECF No. 85-4) at 32 (the number of Novavax shares outstanding during the Class Period ranged from 74.1 million to 75.4 million). Moreover, the Claims Administrator received only seven requests for exclusion, concerning a total of only 1,015 shares. *See* Initial Mailing Decl., Ex. D; Supplemental Mailing Decl., Ex. A. The three Objections and seven requests for exclusion are identified in Exhibit A to the [Proposed] Final Order and Judgment, filed herewith. No institutional investor has requested exclusion from the Settlement Class or objected to any aspect of the Settlement.

By contrast to the small number of objections and exclusion requests, over 9,198 claims have been received by SCS. Supplemental Mailing Decl. at ¶ 9. Although the deadline for claims is not until May 18 and SCS has not completed its review of the claims (which involves requesting

additional documentation and information from claimants and rigorous quality assurance reviews), the claims already loaded into the Settlement database report over 79.8 million shares. *Id*. at ¶ 9-10. It is respectfully submitted that the reaction of the Settlement Class strongly supports approval of both Motions.

With respect to the Objections, each are general objections to the amount of the Settlement and the Fee and Expense Application. The Kovarik Objection also argues that the Objector should have additional time to lodge his objection (or seek exclusion) and believes options on Novavax common stock should have been part of the class definition and the Settlement. The Sekula Objection also misunderstands the claims in the Action and the proposed Plan of Allocation. For the reasons discussed below, as well as the arguments in the opening motion papers, Lead Plaintiffs and Co-Lead Counsel respectfully submit that the Objections should be overruled.

## **ARGUMENT**

### I.   **THE REACTION OF THE SETTLEMENT CLASS SUPPORTS APPROVAL OF THE SETTLEMENT AND THE PLAN OF ALLOCATION.**

As explained in Lead Plaintiffs' opening papers, *see* ECF No. 132 ("Approval Memorandum") and 135 ("Joint Declaration")), the degree of opposition to the settlement is a factor to be considered in connection with the adequacy of a proposed class action settlement. *See also, In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009) ("[t]he final *Jiffy Lube* 'adequacy' factor looks to the reaction of the Class to the proposed settlement"). Indeed, "[t]he opinion of class members concerning the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Lumber Liquidators Chinese-Manufactured Flooring*

*Prod. Mktg. Sales Pracs.*, No. 1:15-md-2627, 2018 WL 11203065, at \*6 (E.D. Va. Oct. 9, 2018), *aff'd*, 952 F.3d 471 (4th Cir. 2020).[2]

Here, the Settlement Class has overwhelmingly accepted the Settlement and Plan of Allocation. Since notice was provided, only three objections have been received, and only seven Class Members have requested exclusion. *See* Supplemental Mailing Decl., at ¶¶ 6-7. This reaction is strong evidence that the Settlement is fair, adequate, and in the best interests of the Settlement Class. *See, e.g.*, *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 833–34 (E.D.N.C. 1994) (16 exclusions and one objection "strongly favors a finding of adequacy"); *Lumber Liquidators,* 2018 WL 11203065, at \*6 (12 objections and 94 exclusions are "low opt-out and objection rates [that] indicate widespread approval among the class").

Similarly, the fact that there were only two objections to the Plan of Allocation (Sekula Obj. and Kovarik Obj.) provides strong support for the plan. *See, e.g., Mills*, 265 F.R.D. at 260 (approving plan of allocation as fair, reasonable, and adequate where there was one objection).

Importantly, no institutional investors—sophisticated investors with the resources to carefully evaluate the Settlement and Plan of Allocation and to object or opt-out if they find them unreasonable—have objected to the Settlement or Plan of Allocation, or requested to be excluded from the Settlement Class. This further strongly supports approval of the Settlement. *See, e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (that "not a single objection was received from any of the institutional investors" supported settlement); *In re AT&T Corp. Sec. Litig.*, Civ. No. 00–5364 (GEB), 2005 WL 6716404, at \*4 (D.N.J. Apr. 25, 2005) (the reaction of

---

[2] Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations, and footnotes are omitted.

the class "weigh[ed] heavily in favor of approval" when "no objections were filed by any institutional investors who had great financial incentive to object").

## II.    THE REACTION OF THE SETTLEMENT CLASS SUPPORTS APPROVAL OF THE REQUESTED ATTORNEYS' FEES AND EXPENSES.

Only [three] settlement class members, and no institutional investors, have objected to Co-Lead Counsel's motion for an award of attorneys' fees and payment of expenses. The fact that there have been so few objections is strong evidence that the requested amount of fees and expenses is reasonable. *See, e.g., Berry v. Schulman*, 807 F.3d 600, 618 (4th Cir. 2015) ("Finally, the fact that only one [of the class members] objects to the award of attorneys' fees is relevant to our decision . . . . That almost complete lack of objection to the fee request provides additional support.") (citing *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir.2005) (noting that only two of 300,000 class members objecting is a "rare phenomenon" supports fee award)); *Mills*, 265 F.R.D. at 261 ("Further indicating the Class'[s] approval of the result realized by this Settlement, of the one hundred twenty-eight thousand potential class members, only two filed objections to the proposed fee and expense awards."); *see also Krakauer*, 2018 WL 6305785, at *3–4 (awarding 33.33% fees because with "[o]nly 40" objectors, "[t]he absence of a significant number of objections to the settlement . . . weighs in favor of their requested award").

Furthermore, although the notices informed Settlement Class Members that Co-Lead Counsel may seek up to $1 million in litigation expenses, ECF No. 129-1 at 5, Co-Lead Counsel have requested $628,893.83 (plus accrued interest) in litigation expenses. ECF No. 135 at ¶ 3.

## III.    THE OBJECTIONS TO APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND ATTORNEYS' FEE AND EXPENSE APPLICATION SHOULD BE OVERRULED

As noted, only three objections to the Settlement and the Fee and Expense Application have been received. *See* Supplemental Mailing Decl., Ex. B. Only two are directed to the Plan of

Allocation.[3]  *See* Sekula Obj. & Kovarik Obj.  All the Objections boil down to vague criticism that a larger recovery was not obtained, and hope for a larger recovery, both by increasing the settlement amount and by reducing attorneys' fees. Although Co-Lead Counsel understand the Objectors' desire for a greater recovery in light of their individual losses, as set forth below and in the opening motion papers,  Co-Lead Counsel respectfully submit that the Settlement represents a favorable and definite recovery for the Settlement Class in the face of substantial uncertainty that each of the Objectors fails to acknowledge.  Further, Co-Lead Counsel respectfully submit that their fee request is reasonable and consistent with awards in similar class actions, especially given the substantial resources counsel has dedicated to the litigation on behalf of the Settlement Class— including, but not limited to, over 6,800 hours of work.

### A.     The Settlement Is a Very Favorable Result for the Settlement Class in the Face of Great Uncertainty

Although the Objectors would hold out for a greater recovery, seek compensation for losses not recoverable pursuant to Section 10(b) of the Exchange Act, and assert that the Settlement should be on behalf of a different class, it is respectfully submitted that the Settlement represents a very favorable, certain and immediate recovery on behalf of the Settlement Class in the face of significant uncertainty that is not appreciated by the Objectors.

---

[3] Although the May 9 Kovarik Objection is captioned as "Objections to the Settlement, the Plan of Allocation, and the Fee and Expense Application," the Plan of Allocation is not addressed in the objection argument. Instead, the May 9 Kovarik Objection states generally that the Settlement is "not very favorable," questions why the Settlement and the Settlement Class do not include options, and generally states that the requested fee is high in comparison to the recovery and losses. Kovarik also objects to notice, stating that he did not receive notice. However, a Postcard Notice was sent on April 4, 2024 to 211 Ridge Rd., Annville, PA 17003, *i.e.*, the address listed in the objection.  *See* Supplemental Mailing Decl. at ¶ 8.  Moreover, Mr. Kovarik was clearly able to submit responses on both May 2 and May 9, after the Court gave him an additional week to respond.

### 1.    The Settlement Amount Is a Very Good Result for the Settlement Class

As set forth in the Approval Memorandum, Defendants have vigorously pursued defenses concerning the elements of falsity, scienter, and loss causation that have the potential to defeat Lead Plaintiffs' case at summary judgment or trial.  *See* Approval Memorandum at 12-14.  Further, even if Lead Plaintiffs defeated a summary judgment challenge and prevailed at trial, a jury could have awarded no or less damages than those proffered by Lead Plaintiffs' testifying expert, or the Court could have reversed the jury's determination in post-trial motions or an appeal.  *Id.* at 14-15; *see, e.g., In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 (E.D. Va. 2001) ("[T]he damages issue would have become a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury."); *Taylor v. First Union Corp. of South Carolina*, 857 F.2d 240, 243, 247 (4th Cir. 1988) (reversing jury verdict after two trials).

Importantly, the Objections do not consider the Company's financial condition at the time the Settlement was reached and the risks to being able to enforce a judgment greater than the Settlement Amount.  As explained in the Approval Motion, the practical uncertainty of collecting a judgment in this case would only increase over time, given the unclear solvency of Defendants at the time of settlement negotiation. *See, e.g.,* Joint Decl. ¶¶ 67-73; Paul R. La Monica, "COVID Vaccine Maker Novavax Says It May Not Survive," CNN, Mar. 1, 2023, https://www.cnn.com/2023/03/01/investing/novavax-covid-vaccine-going-concern/index.html. This uncertainty is further underscored by Novavax seeking additional cash infusions since the Settlement was reached. *See, e.g.,* Kevin Dunleavy, "Sanofi keeps Novavax afloat with \$1.2B bet on its vaccine platform," *Fierce Pharma*, May 10, 2024, https://www.fiercepharma.com/pharma/sanofi-keeps-novavax-afloat-12b-bet-its-vaccine-platform. Defendants' applicable insurance policies could also have been depleted by the costs of litigation, potentially leaving nothing for class members. Joint Decl. ¶ 67.  In the face of these

significant uncertainties, the Settlement represents a valuable and certain win for the Settlement Class.

These uncertainties are why courts regularly approve securities settlements that recover similar proportions of maximum potential damages. Here, the Settlement guarantees a recovery of 5.12% of estimated maximum damages of $917 million. *See* Joint Decl. ¶¶ 59-63, 74-75. This recovery in fact compares favorably to similar securities settlements. *See* Approval Memorandum at 16-17; *see also, Orman v. Am. Online, Inc.*, Civ. A. No. 97-264-A, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998) ($35 million settlement, 5% of damages); *Horton*, 855 F. Supp. at 833 (approving 5% recovery and noting cases granting 3% recovery); *see also Boger v. Citrix Sys., Inc.,* No. 19-CV-01234-LKG, 2023 WL 3763974, at *11 n. 7 (D. Md. June 1, 2023) ("it is well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *see also* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Joint Decl. Ex. 2, at 6 (median settlements from 2014 to 2022 recovered 3.3% of total estimated damages and 4.6% of damages in 2023).

Not only is the proportion of the recovery obtained by the Settlement favorable, but the aggregate amount of the $47 million Settlement is more than **three times** the median recovery of $15 million in securities class action settlements in 2023. *Id*. at 1. For the period from 2018 through 2022, the median settlement value was $11.7 million and $13.5 million in 2022. *Id*.

Moreover, the Objectors appear to conflate their overall losses on their investments in Novavax with losses that are recoverable in the Action under Section 10(b) of the Exchange Act. *See, e.g.,* Sekula Obj. (providing table of personal losses); Floor Obj. As this Court knows, and setting aside the "90-day lookback" cap on damages under the Private Securities Litigation Reform

Act of 1995 ("PSLRA"), damages in securities fraud actions pursuant to Section 10(b) of the Exchange Act are based on the amount of artificial inflation caused or maintained by a defendant's actionable misrepresentation, which is often reflected in the decline of an issuer's share price immediately after disclosure of the truth. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346–47 (2005). Even when there is a statistically significant price decrease, the full amount of the decrease must be proven to be related to the corrective disclosure and the alleged fraud. Thus, although the Objectors obviously hope to recover the full price declines in their investments in Novavax from Defendants, such a recovery simply is not available under the securities laws and could never be recovered in any settlement.

### 2. The Settlement Is Appropriately Structured to Provide a Recovery for the Class Alleged in This Action

The Sekula Objection faults the Settlement for not providing a recovery for shares bought and sold outside the class period. Sekula Objection ("I don't see the reason why these shares [bought pre-class period] should be excluded . . . . This doesn't consider the continued miscommunications after these dates which moved the stock down even lower in subsequent months"). However, these losses are simply outside the Class Period sustained by the Court in this case, *i.e.*, "unrelated to [the alleged] fraud." *Mills*, 265 F.R.D. at 260; *see, e.g., City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 682 (D. Md. 2018) (limiting class period to first well-pled misrepresentation); *In re Conventry Healthcare, Inc. Sec. Litig.*, No. 08:09-CV-2337-AW, 2011 WL 3880431, at *6 (D. Md. Aug. 30, 2011) (limiting class period to last alleged corrective disclosure).

The original class period alleged in the Complaint was February 24, 2021 through October 19, 2021. *See* Complaint, ECF No. 56, p. 1. However, the class period was shortened by the Court's Order on Defendants' motion to dismiss, which dismissed claims based on the alleged

false and misleading statements or material omissions made on, among other dates, February 24, 2021 and May 10, 2021. *See* Memorandum Opinion, ECF No. 75, p. 49.   Additionally, Lead Plaintiffs' Complaint alleges that corrective disclosures were made to the market on August 5, 2021 and October 19, 2021, fully revealing the alleged fraud to the market. *See* Complaint, ECF No. 56 at ¶¶ 234-253.  Defendants would undoubtedly argue a "truth on the market" defense to claims based on news after October 19, 2021.  Regardless, the alleged fraud in this case ended on October 19, 2021. Accordingly, the Settlement Class and Settlement are proper in scope.

In this same vein, the Kovarik Objection faults the Settlement for not providing a recovery for options traded during the Class Period. However, the Complaint did not allege a class involving option trades or damages stemming from option trades, the Settlement in not on behalf of a class involving option trades, and the PAO did not certify a class that included option trades.  *See generally* ECF No. 56 at 1 ("on behalf of all persons . . . [who] purchased the publicly traded common stock of Novavax"); ECF No. 129 (certifying the Settlement Class).  It is perfectly appropriate for the Settlement to settle the claims of the class, as alleged in the Action.  It is well-recognized that "a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class*." In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09 MDL 2058(DC), 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010).

In sum, the Settlement provides Settlement Class Members, whose claims have been sustained in the Action, with a certain and guaranteed recovery, above the median securities fraud settlement, while eliminating the uncertainties attendant to potentially years of future legal proceedings, and it should readily be approved by the Court.

**B.　　The Sekula Objection to the Plan of Allocation Should Be Overruled**

The Sekula Objection objects to the Plan of Allocation by incorrectly arguing that it pays a flat $0.80 per share for claims. Sekula Objection at 2. ("All I see is that the class members will receive $.8 per share"). It appears Mr. Sekula has confused the "average recovery per share" in the Postcard Notice and paragraph 1 of the Notice, which the PSLRA requires be included, with the Recognized Loss calculation methodology in the Plan of Allocation. *Compare* ECF No. 129-1 at ¶ 1 with ¶ 61. The Plan of Allocation does, in fact, "account for the varying degree of losses" through the calculations of Recognized Loss Amounts.

More specifically, pursuant to the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase/acquisition of Novavax common stock during the Class Period from May 11, 2021 through October 19, 2021, inclusive, that is listed in the Claim Form and for which adequate documentation is provided:

- To the extent that the calculation of a Claimant's Recognized Loss Amount results in a negative number (again), that number will be set to zero. For shares sold before August 6, 2021 (the first alleged corrective disclosure), the Recognized Loss Amount for each such share will also be zero.

- For shares **sold** during the period from August 6, 2021 through October 19, 2021, the Recognized Loss Amount for each such share will be the lesser of:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in Table 1 of the Plan _minus_ the dollar artificial inflation applicable to each such share on the date of sale as set forth in Table 1; or[4]

2. the Out of Pocket Loss (*i.e.,* the claimant's trading loss).

---

[4] Table 1 states:

| Transaction Date | Artificial Inflation Per Share |
|---|---|
| May 11, 2021 – August 5, 2021 | $59.79 |
| August 6, 2021 – October 19, 2021 | $23.20 |

- For shares **sold** during the period from October 20, 2021 through January 14, 2022 (the PSLRA's 90-day Look Back Period), the Recognized Loss Amount for each such share will be the least of:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in Table 1; or

2. the actual purchase/acquisition price of each such share *minus* the average closing price from October 20, 2021, up to the date of sale as set forth in Table 2 (the average closing prices during the 90-day Look Back Period); or

3. the Out of Pocket Loss.

- For shares **held** as of the close of trading on January 14, 2022 (the end of the 90-day Look Back Period), the Recognized Loss Amount for each such share will be the lesser of**:**

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in Table 1 below; or

2. the actual purchase/acquisition price of each such share minus $165.45.[5]

These Recognized Loss calculations are very standard calculations in securities settlements that are routinely approved by courts across the country and they take individual claimants' trading into account. *See, e.g.*, *Mills*, 265 F.R.D. at 251–52 (E.D. Va. 2009) (judgment approving, among other things, similar plan of allocation); *In Re 2U, Inc. Sec. Class Action*, Case No. 8:19-cv-03455-TDC, ECF No. 258 (D. Md. Dec. 9, 2022) (same).

---

[5] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Novavax common stock during the "90-day look-back period," October 20, 2021 through January 14, 2022. The mean (average) closing price for Novavax common stock during this 90-day look-back period was $165.45.

Accordingly, it is respectfully submitted that the Objections to the Plan of Allocation should be overruled.

### C.    The Objections to Co-Lead Counsel's Fee and Expense Application Should Be Overruled

Although the Objectors also contest Co-Lead Counsel's fee request, the request is reasonable in light of all of the factors considered within the Fourth Circuit and, in particular, the significant, complex work performed by Plaintiffs' Counsel during the course of this Action.

Plaintiffs' Counsel dedicated 6,864 hours to prosecuting this case. *See* Joint Decl. ¶¶ 108-114, ECF No. 134 at 15 ("Fee Memorandum").  These hours were spent on complex work, including filing and amending the Complaint, ECF No. 1, ECF No. 56, opposing a motion to dismiss, ECF No. 64, moving to certify the class, ECF No. 122, and moving to compel discovery, ECF No. 97. These filings required interviewing witnesses (eight of whom were cited in the Complaint), reviewing expert reports addressing market efficiency and loss causation, and conducting extensive discovery (including analyzing 57,680 documents, defending four depositions, and taking one expert deposition). *See* Fee Memorandum at 11-13.  This effort is completely ignored by the Objectors. *See, e.g., Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785, at *3–4 (M.D.N.C. Dec. 3, 2018) (overruling objections that "do not adequately consider the amount of work undertaken by Class Counsel, the significant success achieved, or the fact that, without the potential for fee awards . . . there would be no compensation at all for class members").

Further, Co-Lead Counsel's request for 33.34% of the Settlement Fund is consistent with awards in this Circuit. *See, e.g., Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921 at *4 (W.D.N.C. June 8, 2020) ("Within the Fourth Circuit, contingent fees of roughly 33% are common."); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018

WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund); *see also* Fee Memorandum at 16-17.  Such fee awards are also regularly granted where the settlement recovers a similar proportion of estimated damages.  *See, e.g., Ferrell v. Buckingham Prop. Mgmt.*, No. 119CV00332NONESAB, 2020 WL 4364647, at *2 (E.D. Cal. July 30, 2020) (35% fee approved where settlement was 5.3% of estimated damages); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *12–14 (E.D.N.Y. Jan. 21, 2022) (33.33% fee, 6.4% of estimated damages).

Accordingly, it is respectfully submitted that the Objections to the fee request should be overruled.

## IV.    CONCLUSION

For the reasons discussed above and in the opening motion papers seeking final approval of the Settlement and the Plan of Allocation, and approval of the requested attorneys' fees, litigation expenses, and PSLRA awards to Lead Plaintiffs (ECF Nos. 131-135), Lead Plaintiffs and Co-Lead Counsel respectfully request that the Court: (1) grant final approval of the Settlement and Plan of Allocation; (2) award Co-Lead Counsel 33.34% of the Settlement Fund as attorneys' fees; (3) award litigation expenses incurred by Plaintiffs' Counsel in the amount of $628,893.83, plus accrued interest; and (4) grant Lead Plaintiffs Gabbert and Nandkumar awards of $30,000 each, pursuant to the PSLRA.

Lead Plaintiffs and Co-Lead Counsel respectfully request that the Court enter the [Proposed] Final Order and Judgment negotiated by the Parties, the [Proposed] Order Approving Plan of Allocation, and the [Proposed] Order Awarding Attorneys' Fees and Expenses, each filed contemporaneously herewith.

DATED: May 13, 2024

Respectfully submitted,

**COHEN MILSTEIN SELLERS &
TOLL PLLC**

*/s/ Daniel S. Sommers*
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email: stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

**POMERANTZ LLP**


*/s/ Brian Calandra*
Jeremy A. Lieberman (admitted *pro hac vice*)
Brian Calandra (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
bcalandra@pomlaw.com


**LABATON KELLER SUCHAROW LLP**


*/s/ Michael Rogers*
Michael P. Canty (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
David J. Schwartz (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Philip J. Leggio (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile (212) 818-0477

- 16-

Email: mcanty@labaton.com
   mrogers@labaton.com
   dschwartz@labaton.com
   jchristie@labaton.com
   pleggio@labaton.com

***Counsel for Lead Plaintiffs and
Co-Lead Counsel for the Settlement Class***


**PORTNOY LAW FIRM**

Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, California 90067
Tel: (310) 692-8883
Email: lesley@portnoylaw.com

***Additional Counsel for Lead Plaintiffs and the
Settlement Class***

- 18-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2024, I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Daniel S. Sommers*
Daniel S. Sommers